### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| and the states of CALIFORNIA, | ) | |
| ILLINOIS, NORTH CAROLINA, | ) | |
| and OHIO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  09-3073 |
| | ) | |
| DISH NETWORK, L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |

### <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Dish Network, L.L.C.'s (Dish Network) Motion to Dismiss and Motion for Oral Argument (d/e 9).  The Motion for Oral Argument is denied because the parties have thoroughly briefed the issues, and so, oral argument is unnecessary.  For the reasons set forth below, the Motion to Dismiss (Motion) is denied.

### <u>STATEMENT OF FACTS</u>

The Plaintiffs' claims are set forth in the First Amended Complaint and Demand for Jury Trial (d/e 5) (Complaint).  For purposes of this

Motion, the Court must accept as true all well-pleaded factual allegations contained in the Complaint and draw all inferences in the light most favorable to the Plaintiffs. Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996). The Court may also consider matters of public record. Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994). When read in that light, the Complaint must set forth a short and plain statement of the claims showing that the Plaintiffs are entitled to relief. Fed. R. Civ. P. 8(a); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559-63 (2007); Airborne Beepers & Video, Inc. v. AT & T Mobility LLC, 499 F.3d 663 (7th Cir. 2007). In doing so, the allegations must plausibly suggest that the Plaintiffs are entitled to relief. Twombly, 550 U.S. at 569 n.14. Allegations of bare legal conclusions or labels alone are not sufficient. Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009).

The Plaintiffs allege that Dish Network and its authorized dealers (Dealers) used illegal telephone solicitation techniques to sell Dish Network's products and services. Pursuant to the Federal Trade Commission Act (FTC Act) and the Telemarketing and Consumer Fraud and Abuse Prevention Act (Telemarketing Act), the Federal Trade

2

Commission (FTC) promulgated the Telemarketing Sales Rule (TSR). 15 U.S.C. §§ 45(a), 56(a), 57b, and 6105; 16 C.F.R. Part 310, as amended. Pursuant to the TSR, the FTC established the Do Not Call Registry ("Do Not Call List" or "List"). Consumers were permitted to register their personal telephone numbers on the Do Not Call List. The TSR prohibited sellers and telemarketers from calling telephone numbers on the List to market goods and services, except in certain defined circumstances. The TSR also prohibited sellers from causing telemarketers to make prohibited calls to telephone numbers on the List. 16 C.F.R. § 310.4(b)(1)(iii)(B).[1]

The TSR also prohibited sellers and telemarketers from abandoning outbound calls. 16 C.F.R. § 310.4(b)(1)(iv). A call is abandoned if a person answers the call and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting. 16 C.F.R. § 310.4(b)(1)(iv). The TSR effectively prohibited use of a prerecorded sales pitch because the call must be connected to a sales representative within the two second time limit. Again, the TSR prohibited

---

[1]A seller is any person who offers or provides goods or services through telemarketing. A telemarketer is a person who initiates or receives telephone calls from potential customers for the purpose of offering products or services for sale. A "person" is an individual, group, unincorporated association, limited or general partnership. 16 C.F.R. §§ 310.2(v), (z), and (bb).

sellers from causing telemarketers to abandon outbound calls.  Id.

The TSR also included a provision entitled Assisting and Facilitating. This provision prohibited a person from providing substantial assistance or support to any telemarketer when the person knew or consciously avoided knowing that the telemarketer was engaged in any practice that violated the TSR.  16 C.F.R. § 310.3(b).

Any violation of the TSR constituted an unfair and deceptive act or practice in or affecting commerce in violation of § 5(a) of the FTC Act.  15 U.S.C. §§ 45(a), 57a(d)(3), 6102(c).  The FTC may authorize the Attorney General to bring actions on behalf of the United States against anyone violating § 5(a) of the FTC Act.  The United States may seek injunctive relief and, in appropriate cases, civil penalties.  15 U.S.C. §§ 45(m), 53(b), 56(a)(1).  The United States brought this action pursuant to such authorization from the FTC.  Complaint, at 1.

The Telephone Consumer Protection Act (TCPA) authorized the Federal Communication Commission (FCC) to promulgate regulations to prevent unwanted telephone solicitations.  47 U.S.C. § 227(c).  The FCC promulgated a rule (FCC Rule) that prohibited sellers and telemarketers from making telephone solicitations to telephone numbers on the List.  The

FCC Rule also explicitly prohibited the use of pre-recorded messages in telephone solicitations. 47 C.F.R. § 64.1200. The FCC Rule defined a seller as "the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of . . . goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(7).

The TCPA further authorized state Attorneys General to bring actions on behalf of the citizens of such states for violations of the TCPA. Each Attorney General could seek injunctive relief and secure actual damages or $500 per violation, or both. The Attorneys General could also recover treble damages for willful or knowing violations. 47 U.S.C. § 227(f)(1).

The Plaintiffs alleged that Dish Network, through its own sales force and its Dealers, violated the TSR and the FCC Rule. The Plaintiffs alleged that Dish Network and its Dealers: (1) called numbers on the Do Not Call List; (2) abandoned calls; and (3) used pre-recorded sales pitches. The Plaintiffs alleged that Dish Network authorized the Dealers to engage in telemarketing on behalf of Dish Network to sell Dish Network products and services. Dish Network authorized Dealers to use Dish Network trademarks and trade names, to collect money for Dish Network, and to perform other

services as part of their positions as authorized dealers. Dish Network paid commissions and other financial incentives to the Dealers for telemarketing services.

The Plaintiffs also alleged that Dish Network received complaints from consumers regarding the Dealers' telemarketing practices, and thereby, knew or consciously avoided knowing that the Dealers were violating the TSR and the FCC Rule. The Plaintiffs alleged Dish Network was contractually entitled to terminate its relationship with a Dealer at any time. The Plaintiffs alleged Dish Network, however, continued to retain the Dealers to perform telemarketing services to market Dish Network products and services after receiving consumer complaints.

Based on these allegations, the United States has sought an injunction and civil penalties for violation of the FTC Act and the Telemarketing Act. Count I alleged that Dish Network called telephone numbers on the Do Not Call List and caused its Dealers to do the same. Count II alleged that Dish Network abandoned outbound calls and caused its Dealers to do the same. Count III alleged that Dish Network provided substantial assistance and support to certain Dealers when Dish Network knew or consciously avoided knowing that the Dealers were abandoning outbound calls in violation of

the TSR.  <u>Complaint</u>, Counts I, II, and III.

In Counts IV and V, the Attorneys General of California, Illinois, North Carolina, and Ohio have sought injunctions and damages for violations of the TCPA.  Count IV alleged that Dish Network, either directly or through third parties acting on its behalf, called telephones on the Do Not Call List in violation of the TCPA.  Count V alleged that Dish Network, either directly or through third parties acting on its behalf, used pre-recorded sales pitches in violation of the TCPA.  <u>Complaint</u>, Counts IV and V.

In addition to these federal claims, each state Attorney General also has sought relief under each state's respective statute that prohibit these forms of telephone solicitations.  <u>Complaint</u>, Counts VI- XI.

<u>ANALYSIS</u>

Dish Network seeks partial dismissal of the Complaint.  Dish Network seeks dismissal of the Plaintiffs' claims in Counts I-V based on acts by a Dealer rather than directly by Dish Network.  Dish Network argues that the Plaintiffs have failed to state claims that Dish Network is liable for the actions of the Dealers.  In the alternative, Dish Network argues that even if these claims survive, the United States has failed to state a claim for civil

penalties for the actions of the Dealers under FTC Act § 5(m). 15 U.S.C. § 45(m). Dish Network also seeks to dismiss state law claims in Counts VII-XI based on interstate calls. Dish Network argues that TCPA preempts all state laws regulating interstate telephone solicitations. The Court will address the TSR claims in Counts I, II, and III, then the FTC Act § 5(m) civil penalties issue, then the TCPA claims in Counts IV and V, and finally the state law claims in Counts VI-XI.

A.    COUNTS I and II

Dish Network's Motion to Dismiss parts of Counts I and II turns on the meaning of the verb "cause". The TSR states: "It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in," certain prohibited acts, including calling a telephone number on the List and abandoning a call. 16 C.F.R. § 310.4(b)(1). Dish Network argues that Counts I and II fail to allege that Dish Network caused the Dealers to engage in a prohibited act. Dish Network argues that it did not cause the Dealers to violate the TSR because it did not direct, request, or coerce them to engage in a prohibited act. Rather, the Dealers were independent businesses that controlled their own conduct. Defendant's Memorandum

8

of Law in Support of its Motion to Dismiss (d/e 10), at 10. Therefore, according to Dish Network, Counts I and II fail to state claims.

The United States argues that Dish Network caused the Dealers to violate the TSR because Dish Network engaged the Dealers to perform in telemarketing, sold its goods and services through the Dealers' telemarketing, provided the Dealers with the means to violate the TSR, and provided financial incentives and compensation to engage in telemarketing. According to the United States, the seller, Dish Network, was responsible for the conduct of its telemarketers even if the telemarketers were independent businesses. Thus, Dish Network caused the Dealers' violations of the TSR.

The TSR does not define the verb "cause". In such circumstances, the Court looks to the plain meaning of the word. Varhol v. National R.R. Passenger Corp., 909 F.2d 1557, 1573 (7th Cir. 1990) (Mannion, J. concurring). The Court must also defer to the FTC's construction of the TSR unless that interpretation is plainly erroneous or inconsistent with the regulation. Joseph v. Holder, 579 F.3d 827, 832 (7th Cir. 2009); Clancy v. Office of Foreign Assets Control of United States Dept. of Treasury, 559 F.3d 595, 606 (7th Cir. 2009); Sierra Club v. Franklin County Power of

<u>Illinois, LLC</u>, 546 F.3d 918, 931 (7th Cir. 2008).[2]

The verb "cause" means to bring about a consequence: for example, earth's gravity causes objects to fall. The verb "cause", standing alone, does not denote or connote the degree of connection between the action and the outcome. An action may cause an outcome directly, indirectly, immediately, proximately, remotely or otherwise. The verb "cause" also does not denote or connote intent or motive. A person may cause an outcome intentionally, unintentionally, recklessly, negligently, innocently, accidentally or otherwise. The relevant section of the TSR, § 310.4(b)(1), contains no additional language that would either limit the degree of connection between the action and the outcome, or add an intent or motive requirement.

In contrast, the Assisting and Facilitating provision of the TSR contains language that defines both a degree of connection between the action and the rule violation and the actor's intent. The provision states:

It is a deceptive telemarketing act or practice and a violation of

---

[2]The Court of Appeals previously questioned whether courts must show so much deference to agency interpretations contained in business guides, briefs, legal proceedings, and other statements outside of formal rule makings or adjudications. <u>Keys v. Barnhart</u>, 347 F.3d 990, 993 (7th Cir. 2003). The subsequent cases cited above indicate that the Court of Appeals has resolved the issue in favor of this level of deference.

> this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates . . . this Rule.

16 C.F.R. § 310.3(b). The person must provide substantial assistance or support. The person must also know or consciously avoid knowing that the seller or telemarketer is violating the Rule. The fact that the FTC included such limiting language in § 310.3(b), but chose not to include such limiting language in § 310.4(b), supports the inference that the FTC did not intend to limit the scope of the plain meaning of the verb "cause" in the latter section. Thus, under the plain meaning, a seller causes a telemarketer to violate the TSR, if the seller takes an action that results in the telemarketer's violation of the TSR, without an express limitation on the degree of connection between the action and the violation, and without regard to motive or intent.

The TSR's use of the verb "cause" without limitation arguably created strict liability for sellers for the actions of its telemarketers. The FTC recognized the possibility of strict liability and included a safe harbor provision in the original TSR to avoid this problem. The Notice of Proposed Rulemaking for the 2003 amendments explained that:

"Commenters generally supported the safe harbor, stating that strict liability is inappropriate where a company has made a good faith effort to comply with the Rule's requirements and has implemented reasonable procedures to do so." Plaintiffs' Response to Dish Network's Motion to Dismiss (d/e 14) (Plaintiffs' Response), Exhibit 5, Notice or Proposed Rulemaking (selected excerpts), 67 Fed. Reg. 4492, 4520 (January 30, 2002). The safe harbor provision limited a person's liability for a telemarketer's actions. 16 C.F.R. § 310.4(b)(3).

The safe harbor states:

(3)   A seller or telemarketer will not be liable for violating § 310.4(b)(1)(ii) and (iii) if it can demonstrate that, as part of the seller's or telemarketer's routine business practice:

(i)   It has established and implemented written procedures to comply with § 310.4(b)(1)(ii) and (iii);

(ii)   It has trained its personnel, and any entity assisting in its compliance, in the procedures established pursuant to § 310.4(b)(3)(i);

(iii)   The seller, or telemarketer or another person acting on behalf of the seller or charitable organization, has maintained and recorded a list of telephone numbers the seller or charitable organization may not contact, in compliance with § 310.4(b)(1)(iii)(A);

(iv)   The seller or a telemarketer uses a process to prevent telemarketing to any telephone number on any list

established pursuant to § 310.4(b)(3)(iii) or 310.4(b)(1)(iii)(B), employing a version of the "do-not-call" registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and maintains records documenting this process;

(v)     The seller or a telemarketer or another person acting on behalf of the seller or charitable organization, monitors and enforces compliance with the procedures established pursuant to § 310.4(b)(3)(i); and

(vi)    Any subsequent call otherwise violating § 310.4(b)(1)(ii) or (iii) is the result of error.

16 C.F.R. § 310.4(b)(3). Thus, if a seller or telemarketer uses a current version of the List, has written procedures for compliance with TSR, and monitors and enforces compliance with the TSR and the written procedures, then a telemarketer's call that violates the TSR made in error will not result in liability. The implication is that if a seller does not comply with the safe harbor provisions, then the seller is liable for a telemarketer's violation of the TSR. This implication is consistent with the plain meaning of the verb "cause".

The FTC interpretation of the TSR is not plainly erroneous or inconsistent with the plain meaning of the verb "cause". The FTC published a guide to help sellers comply with the TSR. Plaintiffs' Response, Exhibit 6, Complying with the Telemarketing Sales Rule (selected excerpts)

(Guide).  The Guide discussed the seller's liability for the telemarketer's

actions:

> **What happens if a consumer is called after he or she has asked not to be called?**  If a seller or telemarketer calls a consumer who has:
>
> - placed his number on the National Registry [the List]
>
> - not given written and signed permission to call
>
> - either no established business relationship with the seller, or has asked to get no more calls from or on behalf of that seller . . .
>
> the seller and telemarketer may be liable for a Rule violation.  If an investigation reveals that neither the seller nor the telemarketer had written Do Not Call procedures in place, both will be liable for the Rule violation.  If the seller had written Do Not Call procedures, but the telemarketer ignored them, the telemarketer will be liable for the Rule violation; the seller also might be liable, unless it could demonstrate that it monitored and enforced Do Not Call compliance and otherwise implemented its written procedures.  Ultimately, a seller is responsible for keeping a current entity-specific Do No Call list, either through a telemarketing service it hires or its own efforts.

Id., at 42 (emphasis in the original).  Under the FTC interpretation of the

TSR, a seller "causes" the telemarketing activity of a telemarketer by

retaining the telemarketer and authorizing the telemarketer to market the

seller's products and services.  According to the Guide, the seller is liable for

the telemarketer's violations of the TSR unless the safe harbor provisions

apply.

The Court must defer to the FTC interpretation. As explained above, the FTC's position is consistent with the plain meaning of the verb "cause". The FTC interpretation in also consistent with the statement in the 2002 Notice of Propose Rulemaking that the safe harbor provisions avoid the problem of strict liability for sellers. The FTC, therefore, stated a claim in Counts I and II when it alleged that Dish Network engaged the Dealers to perform telemarketing services for Dish products and services, gave the Dealers the means and support to perform such services for Dish, and the Dealers violated the TSR by calling numbers on the List and by abandoning calls.

Dish Network argues that the verb "cause" in the TSR means an affirmative act by the seller to further illegal conduct. Dish cites a footnote in the original Notice of Proposed Rulemaking that contained an example of how a seller could cause a telemarketer to violate the proposed TSR. The footnote stated: "A seller may cause a telemarketer to engage in such calls by providing the telemarketer with a customer contact list that includes customers that should not be called." Plaintiffs' Response, Exhibit 1, Notice of Proposed Rulemaking (selected excerpts), 60 Fed. Reg. 8313, 8318 n. 27

(February 14, 1995).  Dish Network argues that this example indicates that a seller must engage in some affirmative act that furthers the illegal conduct.

Dish Network also cites a statement in the Statement of Basis and Purpose for the 2003 final amended TSR regarding a consumer's right to ask a seller or telemarketer to put the consumer on list of people that the seller will no longer call (a "seller do-not-call list").  The relevant provision of the TSR stated that:

> (1) It is . . . violation of this Rule . . . for a seller to cause a telemarketer to engage in, the following conduct:
>
> . . . .
>
> (ii) Denying or interfering in any way, directly or indirectly, with a person's right to be placed on any registry of names and/or telephone numbers of persons who do not wish to receive outbound telephone calls . . . .

16 C.F.R. § 310.4(b)(1)(ii).

The Statement of Basis and Purpose discussed this section as follows:

> In addition, § 310.4(b)(1)(ii) prohibits anyone from directing another person to deny or interfere with a person's right to be placed on a [seller] "do-not-call" list.  This aspect of the provision is intended to ensure that sellers who use third-party telemarketers cannot shield themselves from liability under this provision by suggesting that the violation was a single act by a "rogue" telemarketer where there is evidence that the seller caused the telemarketer to deny or defeat "do-not-call" requests.

Statement of Basis and Purpose for Final Amended Telephone Sales Rule, 68 Fed. Reg. 4580, 4628 (January 29, 2003). Dish Network argues that this statement explained that the verb "cause" in § 310.4(b)(1), quoted above, was designed to prohibit, "anyone from directing another person," to violate the TSR. Dish Network argues that these two examples show that the verb "cause" in the TSR means affirmatively directing, requesting, or coercing another to perform an act.

The Court disagrees. The two examples cited by Dish Network fit within the FTC interpretation of the regulation. Each example describes an action by a seller that results in a violation by the telemarketer. The examples are not exhaustive and are consistent with the FTC interpretation and the plain meaning of the word.

In addition, the language from the 2003 Statement of Basis and Purpose cited by Dish Network supports the FTC's interpretation. The Statement said that the "cause" language in § 310.4(b)(1) was "intended to ensure that sellers who use third-party telemarketers cannot shield themselves from liability under this provision by suggesting that the violation was a single act by a "rogue" telemarketer . . . ." 68 Fed. Reg. at 4628. Dish Network's proposed narrowed definition of the verb "cause"

would frustrate this goal. Sellers could shield themselves from liability by using third-party telemarketers as long as the sellers did not give the telemarketers any directions or guidance. Dish Network's proposed definition restricts the plain meaning of the verb "cause" and is contrary to FTC interpretation of the TSR.

Dish Network also argues that the FTC interpretation of "cause" violates the Administrative Procedures Act. Dish Network essentially argues that the Court is engaged in rule making. The Court disagrees. The FTC has only interpreted the meaning of a word in a regulation, and the FTC interpretation is consistent with the plain meaning of the verb "cause". There is no rule making. Counts I and II state claims.

B. COUNT III

Count III alleged that Dish Network provided substantial assistance to the Dealers who violated the TSR by abandoning calls. Count III states a claim. As explained above, a person provides substantial assistance when he or she:

> [P]rovide[s] substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates . . . this Rule.

16 C.F.R. § 310.3(b). To constitute substantial assistance, there must be a connection between the assistance provided and the resulting violations of the core provisions of the TSR. <u>Plaintiffs' Response</u>, Exhibit 2, <u>Revised Notice of Proposed Rulemaking (selected excerpts)</u>, 60 Fed. Reg. 30406, 30414 (August 23, 1995). The alleged assistance here was paying Dealers to engage in telemarketing. The Dealers allegedly abandoned calls in violation of the TSR as part of their telemarketing activity. Thus, Dish Network's alleged assistance was directly connected to the Dealers' violations of the core provisions of the TSR.

Dish Network states that this interpretation of § 310.3(b) is absurd. <u>Defendant Dish Network L.L.C.'s Motion for Leave to File a Reply Memorandum of Law in Support of Its Motion to Dismiss (d/e 15)</u>, attached <u>Defendant's Reply Memorandum of Law in Support of Its Motion to Dismiss</u>, at 8, n.3. However, no assistance could be more substantial or more directly connected to the core violations of the TSR than paying someone to commit the acts that violated the TSR. Dish Network paid the Dealers to commit the act of telemarketing Dish Network's products and services, and Dealers allegedly violated the TSR when they engaged in telemarketing. The United States alleged that Dish Network provided

substantial assistance.

The United States also alleged that Dish Network provided substantial assistance when it knew or consciously avoided knowing that Dealers were violating the TSR. The United States alleged that Dish Network received complaints from consumers about Dealers' violations of the TSR. Dish Network allegedly knew, or consciously avoided knowing, that the Dealers were violating the TSR, but kept paying them to continue the violations. Dish Network, therefore, allegedly violated § 310.3(b) of the TSR for assisting and facilitating the Dealers in their violations. Count III states a claim.

C.   FTC ACT § 5(m) CIVIL PENALTIES LIABILITY

Dish Network argues, alternatively, that if Counts I, II, and III state claims, then the United States has not alleged a claim for civil penalties under FTC Act § 5(m). 15 U.S.C. § 45(m). Section 5(m) authorizes imposition of civil penalties for knowing violations of FTC rules. A person knowingly violates an FTC rule if, under the circumstances, a reasonable, prudent person would have known of the existence of the rule and that his or her acts or practices violated the rule. United States v. National Financial Services, Inc., 98 F.3d 131, 139-40 (4th Cir. 1996); S. Conf. Rep.

93-1408, 93$^d$ Cong., 2$^d$ Sess., 7772 (1974). Dish Network does not dispute that a reasonable prudent person would have known of the TSR, but disputes that such a person would have known that Dish Network's actions violated the TSR. Dish Network argues that all the United States alleged was a normal business relationship between supplier and retailer. Dish Network argues that, based on the allegations, a reasonable prudent person would not have known that such a routine business relationship would either: (1) make the seller "cause" the retailer to violate the TSR, or (2) constitute substantial assistance for such violations.

Nevertheless, it is plausible that a reasonable prudent person would have realized that sellers, such as Dish Network, could be held liable for the TSR violations committed by their telemarketers. As explained above, the TSR used the verb "cause" without any limiting language to establish either a required degree of connection between the act and the result or the intent of the actor. The plain meaning of the word in this context would have given the reasonable prudent person notice of the risk of liability. The FTC Guide and other pronouncements would have provided notice that sellers would be liable for the TSR violations committed by their telemarketers unless the sellers took advantage of the TSR safe harbor provisions. When

viewed in the light most favorable to the United States, the allegations plausibly established that a reasonable prudent person in Dish Network's position would have known that it could have been liable for TSR violations committed by its Dealers as alleged in Counts I and II.

Count III of the Complaint alleged that: (1) the Dealers were violating the TSR by abandoning calls; (2) Dish Network knew that the Dealers were violating the TSR; (3) Dish Network could have severed its relationship with the illegal activity; (3) Dish Network, however, chose to continue the relationship, knowing that the TSR violations were continuing. As explained above, these facts state a claim for providing the Dealers substantial assistance to telemarketers that Dish Network knew were violating the TSR. It is plausible that a reasonable prudent person would have known that paying someone to continue to violate the TSR would have constituted substantial assistance for the violations. The United States has stated a claim for civil penalties for its Count III claims. The request to dismiss the claims for civil penalties is denied.

D.    COUNTS IV and V

Counts IV and V alleged that Dish Network, directly and through its Dealers acting on its behalf, violated the TCPA by making prohibited

telephone solicitations to telephone numbers on the List and by using pre-recorded messages in telephone solicitations. The Attorney General Plaintiffs (Attorneys General) brought these claims on behalf of the citizens of their states. Dish Network moves to dismiss the claims based on the actions of the Dealers. Dish Network argues that the Attorneys General failed to allege that the Dealers acted on behalf of Dish Network.

Dish Network's argument turns on the meaning of the phrase "on whose behalf" or "on behalf of". The FCC Rule uses the phrases "on whose behalf" and "on behalf of" to impose responsibility on the person "on whose behalf" a telephone solicitation is made. See 47 C.F.R. § 64.1200(c)(2). The FCC Rule, quoted above, defines the seller as the person "on whose behalf" a telephone solicitations is made. 47 C.F.R. § 64.1200(f)(7). The plain meaning of the phrases "on whose behalf" or "on behalf of" is an act by a representative of, or an act for the benefit of, another. In this case, the Complaint alleged that Dish Network entered into relationships with the Dealers and authorized the Dealers to sell Dish Network products and services through telephone solicitations. Dish Network authorized the Dealers to use Dish Network's name. Dish Network provided various types of support for the Dealers to facilitate the marketing of Dish Network

products through telephone solicitations. The Dealers made illegal telephone solicitations to sell Dish Network products and services under these arrangements. These allegations, if true, could plausibly establish that the Dealers acted on behalf of Dish Network. Counts IV and V state claims.

Dish Network argues that the Attorneys General must allege that Dish Network had a formal agency relationship with the Dealers in which Dish Network had the authority to direct the manner in which the Dealers conducted their telemarketing activities. However, the FCC Rule does not say, "agent" or "at the direction of". The FCC Rule says, "on behalf of". Thus, the Attorneys General need only plead facts that show that it is plausible that the Dealers acted as Dish Network's representatives, or for the benefit of Dish Network, when they conducted the alleged illegal telephone solicitations. The Attorneys General have met this burden.

Dish Network cites two state court cases to support its position. Worsham v. Nationwide Ins. Co., 772 A.2d 868 (Md. App. 2001); Charvat v. Farmers Ins. Columbus, Inc., 897 N.E.2d 167 (Ohio App. 2008). These cases only hold that whether a telephone solicitation is for the benefit of a seller is an issue of fact. The Attorneys General have alleged enough to

make such an issue of fact plausible.  Counts IV and V state claims.

E.    COUNTS VI through XI

Last, Dish Network argues that the TCPA preempts all of the state law claims that are based on interstate calls.

The TCPA contains the following provision regarding its effect on state law:

(e)    Effect on State law

(1)    State law not preempted

Except for the standards prescribed under subsection (d) of this section and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits--

(A)   the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements;

(B)    the use of automatic telephone dialing systems;

(C)   the use of artificial or prerecorded voice messages; or

(D)   the making of telephone solicitations.

(2)    State use of databases

If, pursuant to subsection (c)(3) of this section, the

> Commission requires the establishment of a single national database of telephone numbers of subscribers who object to receiving telephone solicitations, a State or local authority may not, in its regulation of telephone solicitations, require the use of any database, list, or listing system that does not include the part of such single national database that relates to such State.

47 U.S.C. § 227(e). This provision states that the TCPA does not preempt state laws that: (1) impose more restrictive intrastate requirements or regulations; or (2) prohibit any of the conduct set forth in subclauses (A) through (D). The state laws at issue prohibit conduct that fits within subclauses (A) through (D). Thus, there is no preemption. See e.g., Van Bergen v. Minnesota, 59 F.3d 1541, 1548 (8th Cir. 1995); Florida, Dept. of Agr. and Consumer Services v. Sports Authority Florida, Inc., 2004 WL 5383631 (M.D.Fla. June 4, 2004). The Court respectfully disagrees with the contrary District Court authority cited by Dish Network. See Klein v. Vision Lab Telecommunications, Inc., 399 F.Supp.2d 528, 541-42 (S.D.N.Y. 2005); Chamber of Commerce of United States v. Lockyer, 2006 WL 462482 (E.D.Cal. 2006). The Court respectfully concludes that the contrary opinions are based on a misreading of the section.

The Seventh Circuit cases cited by Dish Network also do not apply. Boomer v. AT & T Corp., 309 F.3d 404 (7th Cir. 2002); Dreamscape

Design, Inc. v. Affinity Network, Inc., 414 F.3d 665 (7th Cir. 2005).  These cases concern preemption under the Federal Communications Act (FCA), not the TCPA.  47 U.S.C. §§ 201(b) & 202(a).  Congress intended to preempt the field in the FCA by establishing national uniform rates, terms, and conditions for long-distance telephone service.  Boomer, 309 F.3d at 418; Dreamscape Design, Inc., 414 F.3d at 672.  Congress, however, expressly stated in TCPA § 227(e) that the state laws at issue are not preempted.  The Boomer and Dreamscape Design opinions, thus, do not apply.

THEREFORE, Defendant Dish Network, L.L.C.'s Motion to Dismiss and Motion for Oral Argument (d/e 9) is DENIED.  Defendant Dish Network is directed to answer the First Amended Complaint and Demand for Jury Trial (d/e 5) by November 30, 2009.

IT IS THEREFORE SO ORDERED.

ENTER:  November 2, 2009

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE