UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATES OF CALIFORNIA, ILLINOIS, NORTH CAROLINA, and OHIO, <br> Plaintiffs, <br> v. <br> DISH NETWORK, LLC, <br> Defendant. | Case No. 3:09-cv-03073 |

**PLAINTIFFS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS
TO DISH NETWORK, LLC**

Pursuant to Fed. R. Civ. P. 34(b)(a), Plaintiffs, the United States of America and the States of California, Illinois, North Carolina, and Ohio, request that Defendant Dish Network, LLC, produce the documents described herein within thirty (30) days pursuant to the parties' electronic production agreement.

**INSTRUCTIONS**

1. These requests impose a continuing obligation, which may extend up to and during the course of trial in this case. Responsive documents that you obtain or discover after your initial production must be produced promptly by supplemental production to the fullest extent provided by law. *See* Fed. R. Civ. P. 26(e).

2. If a document is no longer in your possession or subject to your control, state when it was most recently in your possession or subject to your control, what disposition was made of it, and the name, address, and telephone number of all persons who presently have possession or control of it. If documents have been destroyed, altered or otherwise changed, state when they were destroyed, altered or otherwise changed, identify the person who destroyed, altered, or otherwise changed them, identify the person who

       directed that they be destroyed, altered or otherwise changed, state the reasons they were destroyed, altered or otherwise changed, and identify and produce copies of all communications and documents that relate to the destruction, alteration or change of the documents.

3. Documents withheld on grounds of privilege or protection: If you withhold from disclosure any requested document on the basis of any asserted privilege or protection, including attorney-client privilege and work product protection, state the nature of the privilege or protection claimed and the basis for the claim as to each specific document request. Each document claimed as privileged or protected shall be unambiguously described by setting forth at least:

    a. the identity of all persons who initiated, received, or were privy to the document;

    b. whether any such persons were counsel to you and were acting in such capacity, and if so, which ones;

    c. if attorney-client or work-product protection is asserted, the identity of the asserted client(s);

    d. the date of the document;

    e. its Bates numbers;

    f. its length in pages (or, if it is a native-format file not easily converted to TIFF format, the document's format and size, *e.g.*, "Excel, 136 Kb");

    g. its subject matter; and

    h. a statement of the specific reasons for the assertion of privilege or protection as to the specific document. Pursuant to Fed. R. Civ. P. 26(b)(5), the statement of

    reasons must be sufficiently detailed and specific to enable plaintiff to assess the applicability of the privilege or protection as to the specific withheld document.

4. Alleged ambiguities: If you believe any request for production of documents, definition, or instruction is ambiguous in a way that affects your response, identify the specific word or phrase you believe is ambiguous; which of your document production(s) is or are affected by the alleged ambiguity; and how you are construing the alleged ambiguity in your document production(s).

5. Unless otherwise indicated, the documents to be produced are those created, used, or in force at any time from the period October 1, 2003, to the date on which production is made pursuant to these requests.

6. You are required to produce any responsive documents in your possession or control, whether in hard copy or in electronic form, and whether located in your home, place of business, a storage facility, or on a computer, laptop, Blackberry, or other electronic device, or elsewhere.

7. Submit each document in its entirety even if only a portion relates to a specific request. This means that unless you properly interpose an objection, the document shall not be edited, cut, or redacted, and shall include all appendices, tables, or other attachments, and all other documents incorporated into the document or attachments. If an objection is made to producing a document, the portion(s) of that document not subject to objection should be produced with the portion(s) objected to redacted and clearly indicated as redacted.

8. Any request for information that pertains to a company, business entity, or individual shall be deemed to include the subsidiaries, affiliates, officers, agents, servants, and

employees of the company, business entity, or individual and those persons in active concert or participation with the company, business entity, or individual.

9. The term "identify" when used with respect to a person means to state: (1) the full name of the person, (2) his or her present or last known business and residential address and telephone number, (3) his or her email address, (4) his or her employer and position, (5) a description of his or her responsibilities and (6) with respect to expert witnesses, also state the witness' profession and qualifications. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

## DEFINITIONS

1. The terms "you," "your," and "Dish Network" include Dish Network, LLC, its parents, subsidiaries, predecessors, employees, agents, and independent contractors. The terms "you," "your," and "Dish Network" also include Dish Network distributors All-Systems, Dow Electronics, Mid-State Distributing Co., CVS Systems, Inc., and RS&I, Inc., and their predecessors. For the purposes of this set of Requests for the Production of Documents only, the terms "you," "your," and "Dish Network" do not include Dish Network authorized dealers (or Order/Entry entities), such as Dish TV Now and Star Satellite.

2. The term "Authorized Dealer" means any person or entity authorized to market Dish Network goods or services.

3. The term "person" includes any natural person and any business, legal, or government entity or association.

4.	The term "document" is used in the broadest sense of the word and means any written, recorded, or graphic material that is in the defendant's possession, custody, or control including but not limited to: memoranda, reports, letters, telegrams, facsimiles, electronic mail, voice mail, other electronic correspondence, and any other communications recorded in any form or medium; notes, minutes, and transcripts of conferences, meetings, depositions, and telephone or other communications; solicitations, advertisements, offers, confirmations, contracts and other agreements; statements, ledgers, invoices, receipts, customer or vendor lists, and other records of financial matters or commercial transactions; financial models, statistical models, surveys, studies, computer printouts, and other data compilations; notebooks, calendars, and diaries; plans, proposals, scripts, and specifications; publications, manuals, supplements, indices, abstracts, pamphlets, and fliers; photographs, diagrams, graphs, charts, and other drawings; transparencies, view graphs, foils, slides, handouts, and multimedia presentations; photocopies, microfilm, microfiche, and other copies or reproductions; audio and video recordings; tape, disk (including all forms of magnetic, magneto-optical, and optical disks), and other electronic recordings.  The term includes all drafts of a document; the original document (or an identical copy if the original is no longer available); and all copies that differ in any way from the original (including as to any notations, underlining, markings, or electronically imbedded comments or codes).  The term also includes information stored in, or accessible through, computer or other information retrieval systems, together with instructions and all other materials necessary to use or interpret such data compilations.

5. The term "present" means up to and including the date of your final response to this request for the production of documents.

6. The term "telemarketer" means any person, who in connection with telemarketing, initiates or receives telephone calls to or from a customer.

7. The term "Telemarketing Sales Rule" or "TSR" means 16 C.F.R. Part 310, including all versions of the Telemarketing Sale Rule or TSR from October 1, 2003, until the present.

8. The term "telemarketing" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

9. The term "telemarketing laws" includes the TSR; the Telephone Consumer Protection Act of 1991 ("TCPA"), Pub. L. No. 102-243, 105 Stat. 2394 (as subsequently amended), *codified at* 47 U.S.C. § 227; regulations promulgated by the Federal Communications Commission under the TCPA, *codified at* 47 C.F.R. § 64.1200; and state statutes, regulations, and ordinances that restrict or prohibit telephone solicitations, including automatic-dialing and announcing devices.

10. The term "pre-recorded or abandoned calls" includes outbound telephone calls placed by a seller or telemarketer that are not connected to a sales representative within two (2) seconds of the completed greeting of the person answering the call; and includes telephone solicitations to residential telephone lines using artificial or prerecorded voices.

11. The term "Order/Entry entity" means a person who, or entity that, can directly enter sales into Dish Network's Order/Entry system, and is authorized to market Dish Network goods or services.

12. Use of the singular shall be deemed to include the plural. As used herein, the terms "and" and "or," "any" and "all," and "each" and "every" shall be interpreted liberally, as conjunctive, disjunctive, or both depending on the context, to achieve the fullest disclosure of information.

13. The phrases "referring to" and "relating to" mean referring to, relating to, regarding, reflecting, discussing, constituting, mentioning, pertaining to, alluding to, or associated with.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. For each electronic call log produced in response to the FTC's 2005 CID (including call logs produced in 2007), and in response to Plaintiffs' First Request for Production of Documents (served March 12, 2010), documents sufficient to identify which call center placed each call.

2. Documents sufficient to identify all Dish Network call centers that have been used for outbound telemarketing, including the dates during which Dish Network used the center for such purposes, the number of people involved in outbound telemarketing, and the volume of outbound telemarketing calls.

3. All complaints you received from any source relating to calls to numbers on a state or the National Do Not Call Registry.

4. All complaints you received from any source relating to pre-recorded or abandoned calls.

5. All complaints you received from any source relating to a person stating that he or she did not want to be called or contacted again or otherwise requesting that his or her name

    be placed on your entity-specific Do Not Call list or the entity-specific Do Not Call list of any telemarketer or any other entity selling Dish Network services.

6. All complaints you received from any source relating to obscene or profane language used in any telemarketing context, including obscene or profane language used in response to any Do Not Call request or complaint.

7. All complaints you received from any source that relate to any telemarketer hired or retained by Dish Network, and that relate to telemarketing.

8. All complaints you received from any source relating to any authorized dealer (including Order/Entry entities), or any telemarketer or any other entity selling Dish Network services, and that relate to telemarketing.

9. All responses to, and any other documents relating to, complaints sought in requests 3 through 8.

10. Documents sufficient to identify all persons who received or responded to any complaints sought in requests 3 though 8.

11. All documents that relate to any analysis or discussion of any complaints sought in requests 3 through 8, including all documents that discuss the relationship between a complaint and a particular call center, authorized dealer (including Order/Entry entities), or any telemarketer or any other entity selling Dish Network services.

12. All documents relating to compliance with, monitoring compliance with, enforcing compliance with, violations of, or suspected or alleged violations of, telemarketing laws by you, your authorized dealers (including Order/Entry entities), or any telemarketer or any other entity selling Dish Network services.

13. All written policies and procedures relating to compliance with, monitoring compliance with, enforcing compliance with, violations of, or suspected or alleged violations of, telemarketing laws by you, your authorized dealers (including Order/Entry entities), or any telemarketer or any other entity selling Dish Network services.

14. All documents relating to investigatory, disciplinary, enforcement, or legal actions you have taken in response to violations or suspected or alleged violations of telemarketing laws or of your policies or procedures relating to telemarketing.

15. For all authorized dealers (including Order/Entry entities), and all telemarketers and other entities selling Dish Network services, about which you have received telemarketing complaints from any source:

    a. All contracts between Dish Network and the entities;

    b. All applications from or on behalf of the entities to become an authorized dealer (including to become an Order/Entry entity) or to be a telemarketer for or otherwise to sell Dish Network services;

    c. All documents submitted with, in support of, or in relation to such applications; and

    d. All documents created while reviewing, approving, denying, responding to, addressing, or referring to such applications, or to documents submitted with, in support of, or in relation to such applications.

16. All documents relating to communications or discussions with any authorized dealer (including Order/Entry entities), or with any telemarketer or any other entity selling Dish Network services, relating to or referring to telemarketing complaints, or to violations or

suspected or alleged violations of telemarketing laws or of your policies or procedures relating to telemarketing.

17. All documents relating to your efforts to learn the identity of authorized dealers (including Order/Entry entities), or any telemarketer or any other entity selling Dish Network services, responsible for violations or suspected or alleged violations of any telemarketing law or any of your policies or procedures relating to telemarketing.

18. All documents relating to actions or communications after you learned the identity of any authorized dealer (including Order/Entry entities), or any telemarketer or any other entity selling Dish Network services, that violated or potentially violated a telemarketing law or any of your policies or procedures relating to telemarketing, where the action or communication addressed, responded to, or referred to the violation or potential violation.

19. All documents relating to cooperation, collaboration, or any other interactions with law enforcement officials at any level of government, to identify, investigate, pursue, respond to, or address violations or suspected or alleged violations of telemarketing laws by you, your authorized dealers (including Order/Entry entities), or any telemarketer or any other entity selling Dish Network services.

20. All documents relating to cooperation, collaboration, or any other interactions with any consumer protection or consumer complaint entity (such as, but not limited to, the Better Business Bureau and Internet sites that let consumers post complaints about companies), to identify, investigate, pursue, respond to, or address violations or suspected or alleged violations of telemarketing laws by you, your authorized dealers (including Order/Entry entities), or any telemarketer or any other entity selling Dish Network services.

21. All documents relating to monitoring and enforcing compliance with telemarketing laws or any of your policies or procedures relating to telemarketing.

22. All contracts between Dish Network and its Order/Entry entities.

23. For all entities hired, retained or used by Dish Network for telemarketing:

    a. All applications from or on behalf of the entities to become telemarketers for Dish Network;

    b. All documents submitted with, in support of, or in relation to such applications;

    c. All documents created while reviewing, approving, denying, responding to, addressing, or referring to such applications, or to documents submitted with, in support of, or in relation to such applications;

    d. All contracts between Dish Network and such entities;

    e. Documents sufficient to show the dates of contract or hire; sales volume for each year; outbound telemarketing call volume for each year; compensation, reimbursements, incentives, commissions, and any other payments for each year; current status; and, if not currently a telemarketer for Dish Network, the date or dates of any changes in status and the reasons for the change or changes in status.

24. All documents relating to any methods or processes by which prospective dealers or telemarketers apply or have applied to Dish Network to become authorized dealers (including Order/Entry entities), or telemarketers, including samples of all application forms sent to or used by prospective dealers or telemarketers, procedure, policies, manuals, checklists, and any other instructions or documents used by persons reviewing applications.

25. All documents relating to the actual, possible, or hypothetical costs of obtaining or maintaining compliance or increased compliance with any telemarketing law.

26. All documents relating to any study, analysis, or discussion of actual, potential, or hypothetical costs or benefits of obtaining or maintaining compliance or increased compliance with any telemarketing law, including but not limited to any cost/benefit analyses of any possible, actual, or proposed steps you might or did take to obtain or maintain compliance or increased compliance with any telemarketing law.

27. All documents referred to in, identified in, or that provide part or all of the basis for your responses to, any Interrogatory propounded by Plaintiffs.

28. All press releases and public statements that you have made or issued relating to telemarketing or compliance with, violations of, or suspected or alleged violations of telemarketing laws or any of your policies or procedures relating to telemarketing.

29. All documents relating to evaluations, assessments, analyses, or audits of compliance with, violations of, or suspected or alleged violations of telemarketing laws, or any of your policies or procedures relating to telemarketing, by you, your authorized dealers (including Order/Entry entities), and any telemarketer or any other entity selling Dish Network services.

                                          Respectfully,

Dated: May 5, 2010                        FOR THE UNITED STATES:

                                          TONY WEST

OF COUNSEL:                            Assistant Attorney General
LOIS C. GREISMAN,
Associate Director for Marketing Practices    EUGENE M. THIROLF, Director
                                          KENNETH L. JOST, Deputy Director
FRANK M. GORMAN,                  Office of Consumer Litigation
Acting Assistant Director, Marketing
Practices                                      /s Daniel K. Crane-Hirsch
                                          DANIEL K. CRANE-HIRSCH

RUSSELL DEITCH
GARY IVENS                               /s Patrick R. Runkle
Attorneys                                      PATRICK R. RUNKLE
Federal Trade Commission                 Trial Attorneys
600 Pennsylvania Ave. NW, Room 288    Office of Consumer Litigation
Washington, DC  20580                    U.S. Department of Justice
Telephone: 202-326-2585 (Deitch),        PO Box 386
           202-326-2330 (Ivens)            Washington, DC  20044-0386
Fax: 202-326-3395                          Telephone: 202-616-8242 (Crane-Hirsch),
                                              202-532-4723 (Runkle)
                                        Fax: 202-514-8742
                                        daniel.crane-hirsch@usdoj.gov
                                        patrick.r.runkle@usdoj.gov

*Signatures continue ...*

                                        /s James A. Lewis
                                      JAMES A. LEWIS
                                      Civil Division Chief
                                      U.S. Attorney's Office for the Central District
                                          of Illinois
                                      318 S. 6th St.
                                      Springfield, IL  62701-1806
                                      Telephone: 217-492-4450
                                      Fax: 217-492-4512
                                      Jim.Lewis2@usdoj.gov

| | |
|---|---|
| FOR THE PEOPLE OF THE STATE OF CALIFORNIA | FOR THE PEOPLE OF THE STATE OF ILLINOIS |
| EDMUND G. BROWN JR.<br>Attorney General of the State of California | LISA MADIGAN<br>Attorney General of Illinois |
| Albert Norman Shelden<br>Deputy Attorney General | /s Elizabeth Blackston<br>BY:  Elizabeth Blackston, Assistant Attorney General; Chief, Consumer Fraud Bureau |
| /s Albert Norman Shelden<br>BY:  Albert Norman Shelden<br>Deputy Attorney General<br>Consumer Law Section<br>Office of the Attorney General<br>110 W. "A" Street, Suite 1100<br>San Diego, CA  92101-3702<br>Telephone: 619-645-2089<br>Fax: 619-645-2062<br>albert.shelden@doj.ca.gov | /s Jeffrey M. Feltman<br>BY:  Jeffrey M. Feltman<br>Illinois Bar No. 06237048<br>Assistant Attorney General<br>Consumer Fraud Bureau<br>1001 E. Main St.<br>Carbondale, IL  62901-3100<br>Telephone: 618-529-6418<br>Fax: 618-529-6403<br>jfeltman@atg.state.il.us |

*Signatures continue …*

| | |
|---|---|
| FOR THE STATE OF OHIO | FOR THE STATE OF NORTH CAROLINA |
| RICHARD CORDRAY<br>Attorney General of Ohio | ROY COOPER<br>Attorney General of North Carolina |
| /s Erin B. Leahy<br>Michael Ziegler<br>Erin B. Leahy<br>Assistant Attorneys General<br>Consumer Protection Section<br>Ohio Attorney General's Office<br>30 E. Broad St., 14th Floor<br>Columbus, OH  43215-3414<br>Telephone: 614-466-3980 (Ziegler)<br>           614-752-4730 (Leahy)<br>Fax: 866-768-2648<br>Michael.Ziegler@ohioattorneygeneral.gov<br>Erin.Leahy@ohioattorneygeneral.gov | /s Kevin Anderson<br>Kevin Anderson<br>Assistant Attorney General<br>Office of the Attorney General<br>114 W. Edenton St.<br>Raleigh, NC  27602-0629<br>Telephone: 919-716-6000<br>Fax: 919-716-6050<br>kander@ncdoj.gov |