E-FILED
Tuesday, 12 June, 2012  08:41:11 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and the States of CALIFORNIA, ILLINOIS, NORTH CAROLINA, and OHIO, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 09-cv-3073 |
| DISH NETWORK, L.L.C., | ) ) | |
| Defendant. | ) | |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Plaintiffs' Motion to Compel Production of Documents Over Defendant's Privilege Assertions (d/e 95) (Motion). At the Court's direction, Defendant Dish Network, LLC (Dish), filed the disputed documents under seal for in camera inspection. Text Orders entered April 18, 2012, and May 2, 2012; Notices of Filing Sealed Documents (d/e 109 and 132); Sealed Documents (d/e 101, 102, 103, 104, 105, 106, 107, 108, 110, 111, 112, 113, 114, 115, 116, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, and 131).[1] Upon careful

---

[1]The Court directed Dish to supply the Court with paper copies of the documents. Dish complied with this direction. Dish provided four documents on a disc because two of the documents were digital audio files that could not be provided on paper and two were voluminous spread sheets.

review of the documents and consideration of the submissions of the parties, the Court allows the Motion in part.

## BACKGROUND

The Plaintiffs allege, <u>inter alia</u>, that Dish violated § 5(a) of the Federal Trade Commission Act (FTC Act), § 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (Telemarketing Act), and the Telemarketing Sales Rule (Rule or TSR) promulgated by the Federal Trade Commission pursuant to the FTC Act and the Telemarketing Act.  The Plaintiffs allege that Dish made improper telephone solicitations (telemarketing) to telephone numbers of the National Do Not Call Registry (Do Not Call List), improperly abandoned telemarketing calls, and wrongfully assisted and facilitated others who were violating the Rule.  <u>First Amended Complaint and Demand for Jury Trial (d/e 5) (Amended Complaint)</u>, Counts I, II, and III; 15 U.S.C. § 45(a), (16(a), 57b, and 6105; 16 C.F.R. Part 310, as amended; <u>see</u> <u>Opinion entered November 4, 2009 (d/e 20)</u>, at 2-7, for a summary of the Plaintiffs' allegations.

Dish answered the Amended Complaint and asserted several affirmative defenses including the defense that the Plaintiffs' claims are barred by the Rule's "Safe Harbor" provisions.  <u>Answer to First Amended</u>

Complaint (d/e 26) (Answer), at 17.[2]  The Safe Harbor provisions include

§ 310.4(b)(3), which provides,

> (3) A seller or telemarketer will not be liable for violating [the Rule] if it can demonstrate that, as part of the seller's or telemarketer's routine business practice:
>
> (i) It has established and implemented written procedures to comply with § 310.4(b)(1)(ii) and (iii) [the operative provisions of the Rule];
>
> (ii) It has trained its personnel, and any entity assisting in its compliance, in the procedures established pursuant to § 310.4(b)(3)(i);
>
> (iii) The seller, or a telemarketer or another person acting on behalf of the seller or charitable organization, has maintained and recorded a list of telephone numbers the seller or charitable organization may not contact, in compliance with § 310.4(b)(1)(iii)(A);
>
> (iv) The seller or a telemarketer uses a process to prevent telemarketing to any telephone number on any list established pursuant to § 310.4(b)(1)(iii)(B), employing a version of the "do-not-call" registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and maintains records documenting this process;

---

[2] Dish's relevant affirmative defense alleges, "Plaintiffs' claims against Dish Network are barred, in whole or in part, by the TSR's "Safe Harbor" provisions. 16 C.F.R. § 310.4(b)(4)(i)." Answer, Sixth Affirmative Defense. The Safe Harbor provisions encompass both § 310.4(b)(3) and § 310.4(b)(4) of the Rule. The reference to "the TSR's 'Safe Harbor' provisions," in the text would include both §§ 310.4(b)(3) and (b)(4); however, the citation to § 310.4(b)(4)(i) may indicate a limitation of the defense to that one part of the Safe Harbor. This is significant because the Plaintiffs' waiver argument in support of the Motion is premised on the fact that Dish is asserting an affirmative defense under §310.4(b)(3). See Motion, at 2 n.1, and 6. Dish agrees in its response that it is asserting all of the provisions of the Safe Harbor as an affirmative defense. See Defendant's Response in Opposition to Plaintiffs' Motion to Compel Production of Documents over Defendant's Privilege Assertions (d/e 96), at 3 n.1, 4-5. For purposes of this Opinion, therefore, the Court concludes that Dish is asserting all aspects of the Safe Harbor as an affirmative defense in this case.

(v) The seller or a telemarketer or another person acting on behalf of the seller or charitable organization, monitors and enforces compliance with the procedures established pursuant to § 310.4(b)(3)(i); and

(vi) Any subsequent call otherwise violating § 310.4(b)(1)(ii) or (iii) is the result of error.

16 C.F.R. § 310.4(b)(3).

The Plaintiffs have served requests for production of documents on Dish.  Dish has produced documents, but has also withheld documents under the attorney-client and work product privileges.  The Plaintiffs seek to compel Dish to produce the documents withheld under these claims of privilege.  The documents sought in the Motion are set forth on the Plaintiffs' Challenge Log and Supplemental Challenge Log (collectively Logs).[3]  Motion, Exhibit 1, Challenge Log; Plaintiffs' Memorandum of Law in Reply to Dish Network's Opposition to Plaintiffs' Motion to Compel Production of Documents Over Defendant's Privilege Assertions (d/e 100), Exhibit A, Supplemental Challenge Log (d/e 99).[4]  The Plaintiffs have

---

[3]The Challenge Log contains six separate lists: a grid which is untitled (Main Body), the Dish Clawed Back Documents, the Dish3 Redacted Documents, the Dish5 Redacted Documents, the DISH-Paper Redacted Documents, and the Documents Clawed Back Orally During Depositions.  The Supplemental Challenge Log contains only one list consisting of a grid using the same format as the Main Body of the Challenge Log.

[4]Dish also asserted, but later withdrew, a self-critical analysis privilege for certain documents.  Text Order entered May 21, 2012.

certified that they have attempted to meet and confer with Dish to resolve this matter before filing this Motion.  Motion, at 4.

## ANALYSIS

Dish asserts the attorney-client and work product privileges.  The work product privilege applies to documents prepared in anticipation of litigation or for trial.  Fed. R. Civ. P. 26(b)(3).  The attorney-client privilege applies to confidential communications made with an attorney in connection with the provision of legal services and in the context of an attorney-client relationship.  United States v. BDO Seidman, LLP, 492 F.3d 806, 815

(7th Cir. 2007).  The attorney-client privilege attaches to otherwise privileged attorney-client communications with third parties who share a common legal interest with respect to the communication.  Id. at 815-16; Papered Chef v. Alexanian, 737 F.Supp.2d 958, 964-66 (N.D. Ill. 2010). The privilege also extends to communications about the privileged material between non-attorneys who are properly privy to the privileged information. IBJ Whitehall Bank & Trust Co. v. Cory & Associates, Inc., 1999 WL 617842, at *6-7 (N.D. Ill. August 12, 1999).

The Plaintiffs assert that Dish waived these privileges by pleading the Safe Harbor affirmative defense.  At issue is the requirement in the Safe Harbor defense that Dish "monitors and enforces compliance" of its

procedures for complying with the Rule.  16 C.F.R. § 310.4(b)(3)(v).  The Plaintiffs argue that Dish's attorneys participated in performing this monitoring function.  The Plaintiffs argue that Dish's defense is based, in part, on the conduct of its attorneys in performing these monitoring functions, then the Plaintiffs are entitled to discover matters related to the attorneys' performance of these functions.

The Plaintiffs analogizes to Title VII hostile work environment cases in which employers assert an affirmative defense that they exercised reasonable care to prevent, investigation and promptly correct harassing behavior.  See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998). If a Title VII defendant employer asserts this defense and the employer's attorney conducts the investigation, then the attorney-client privilege is waived with respect to that communications related to that investigation because the employer has put the sufficiency of the attorney's performance of the investigation at issue.  Musa-Muaremi v. Florists' Transworld Delivery, Inc., 270 F.R.D. 312, 317-19 (N.D. Ill. 2010); Johnson v. Rauland-Borg Corp., 961 F.Supp. 208, 211 (N.D. Ill. 1997); Harding v. Dana Transport, Inc., 914 F. Supp. 1084, 1095 (D.N.J. 1996).  As the Musa-Muaremi Court explained, "One cannot assert the attorney/client privilege to keep an opponent from discovering facts about an investigation when the investigation is to be used at trial as a defense to defeat the opponent's

allegations." 270 F.R.D. at 318 (quoting <u>Fultz v. Federal Sign</u>, 1995 WL 76874, at *2 (N.D. Ill. February 17, 1995)).

The same principle applies here with respect to Dish's counsels' participation in compliance and monitoring functions. The <u>in camera</u> review shows that Dish's attorneys actively participated in monitoring compliance with the Rule. Dish attorneys investigated consumer complaints. Dish attorneys arranged for consumers to participate in sting operations designed to establish that Dish retailers and distributors were violating Dish procedures for compliance with the Rule. Dish attorneys reviewed and approved scripts for compliance with the Rule. Dish attorneys reviewed and approved calling programs for compliance with the Rule. All of these types of activities are direct evidence Dish's Safe Harbor affirmative defense.

The attorneys' communications related to monitoring also contain legal advice regarding compliance with the Dish procedures. The Court finds that advice provided as part of the attorneys' participation the monitoring functions cannot be separated from the monitoring function. As the Court in <u>Harding</u> explained in the Title VII context, "By asking [the attorney] to serve multiple duties, the defendants have fused the roles of internal investigator and legal advisor. . . . Consistent with the doctrine of fairness, the plaintiffs must be permitted to probe the substance of [the]

investigation to determine its sufficiency."   Harding, 914 F.Supp. at 1096.

Here, Dish effectively fused attorney functions and monitoring functions.

The Plaintiffs are entitled "to probe the substance" of the attorneys'

monitoring "to determine its sufficiency."  Id.  Dish, therefore, cannot assert

the defense that includes monitoring for compliance and withhold the

evidence of that monitoring behind attorney-client privilege.  See Musa-

Muaremi, 270 F.R.D. at 318.  The privilege is, therefore, waived as to

evidence relevant to Dish attorneys' monitoring of compliance with Dish's

procedures.

      Dish cites cases in which attorneys provided legal advice and

counsel, but the defendants did not rely on the advice or assert the advice

as a defense and the attorneys' activities were not part of the defense.

See e.g., In re County of Erie, 546 F.3d 222, 228 ($2^d$ Cir. 2008).   These

cases do not apply here because Dish's attorneys did more than just

provide advice that is relevant to the monitoring and compliance functions,

they (along with others) performed these functions.  If the attorneys did not

participate in performing monitoring, then the privilege would not have been

waived.  See Harding, 914 F. Supp.  at 1099 (if the attorney does not

perform the Title VII harassment investigation, then privilege is not waived).

Dish's attorneys actively participated in performing monitoring and

compliance functions.   Dish has asserted that those monitoring and

compliance functions provide part of the basis for its Safe Harbor defense.

As such, the attorneys' participation in monitoring and compliance are part

of the defense and cannot be shielded by claims of privilege.  The

privileges are therefore waived with respect to evidence relevant to the

attorneys' monitoring and compliance.[5]

Plaintiffs also argues that Dish waived the privilege in some instances

by failing to keep information confidential.  Plaintiffs argue that Dish

disseminated some information too widely among its employees.  The

attorney-client privilege extends in a corporate context to any employee

who communicates with counsel at the direction of corporate superiors

regarding matters within the scope of the employee's duties for the purpose

of securing legal advice.  See Upjohn Co. v. United States, 449 U.S. 383,

394 (1981).  The Court's review of the documents has not revealed a

waiver on this basis.  The privileged communications were properly limited

to employees who reasonably needed the information to perform their

duties for the corporation.

The Plaintiffs also argue that documents were not kept confidential

because the Dish kept its paper files in a basement.  Motion, at 13-14.  The

---

[5]The Court does not address the Plaintiffs' claim that Dish waived claims of
privilege over the subject matter of monitoring and compliance because the Court has
determined that Dish waived the privilege by asserting the Safe Harbor affirmative
defense.

Plaintiffs cite no authority for the proposition that privileged documents cannot be kept in a basement or that privileged documents must be kept under lock and key to remain confidential.  The Court will not hold that a party waives claims of privilege by keeping documents in a storage area, such as a basement, absent some evidence of special circumstance.  No such circumstance is shown to exist here.

Last, Plaintiffs argue that many of the documents are not subject to the attorney-client or work product privileges because the documents do not reflect confidential communication related to legal advice or were not prepared for litigation or trial.  The Court's review reveals several documents that are not privileged.  These include communications to or from opposing counsel, consumers, and other businesses.  The unprivileged documents also include data compilations with no evidence that the compilation was prepared in anticipation of litigation or for trial.  The communication of underlying factual information that was not prepared in anticipation of litigation or for trial is not privileged.   See Upjohn, 449 U.S. at 395-96.

Many of the documents sought by the Plaintiffs, however, are privileged.  Many documents were prepared in anticipation of litigation or for trial.  Many relate to confidential legal advice related to litigation.  Many reflect legal advice relating to matters unrelated to the Rule.  Many involve

communications with outside counsel who did not perform monitoring or compliance functions.  The Court has carefully reviewed the documents listed on the Logs and finds that the following documents, identified by the numbers used on the Logs, are privileged:

CHALLENGE LOG:

MAIN BODY:

1, 2, 3, 4, 5, 26, 28, 29, 30, 31, 33, 37, 39, 40, 58, 59, 60, 75, 131-177, 180, 181, 195, 196, 197, 215, 226–227, 233, 238, 241–246, 248–250, 252–259, 263–272, 274–284, 292, 293, 305, 306, 317, 322–336, 339, 344, 369–388, 404, 411–420, 422–426, 436, 446, 450, 473, 485, 513, 514, 520, 528, 533, 536, 543–549, 555, 556, 560, 561, 580-583, 585, 590, 610, 616–623, 630, 633, 637, 638, 644, 652–654, 656–663, 669–672, 679–685, 692, 699, 704, 710, 722, 739, 748–752, 756, 759-782, 784, 785, 798-846, 848–854, 861, 868–903, 914, 915, 919–921, 925–928, 939, 940, 955–962, 966, 967, 972, 974, 975, 977–980, 986- 993.

DISH CLAWED BACK DOCUMENTS:

Dish-00001504; Dish-00006234–Dish-00006376; Dish-00006494–Dish-00006534; Dish-00006548–Dish-00006554; Dish-00006781; DISH5-0000037801; DISH5-0000006293; DISH 5-0000037783; DISH5-0000006293; Dish-0000037783.

DISH3 REDACTED DOCUMENTS:

None privileged.

DISH5 REDACTED DOCUMENTS:

DISH5-0000066495–DISH5-0000066500; DISH5-0000066543-44; DISH5-0000066548–DISH5-0000066554-55; DISH5-0000066602; DISH5-0000066611-12; DISH5-0000066614; DISH5-0000066631-32; DISH5-0000066634; DISH5-0000066636; DISH5-0000066664; DISH5-0000066683-84; DISH5-0000066685; DISH5-0000066690; DISH5-0000066691; DISH5-0000066693-94; DISH5-0000066700; DISH5-0000066811; DISH5-0000066813-14; DISH5-0000067019–DISH5-0000067532; DISH5-0000067638; DISH5-0000067749-50; DISH5-0000067754; DISH5-0000067755-57; DISH5-0000067764-68.

DISH-Paper Redacted Documents:

DISH-Paper-023813, 19, 23; DISH-Paper-023826, 31-38, 40, 42-45; DISH-Paper-023852-53; DISH-Paper-023882-83; DISH-Paper-023904, 08, 23, 47; DISH-Paper-024031-32; DISH-Paper-024814; DISH-Paper-025477; DISH-Paper-025484; DISH-Paper-025521; DISH-Paper-025713, DISH-Paper-025714, 025715, 025716; DISH-Paper-025755; DISH-Paper-025919.

DOCUMENTS CLAWED BACK ORALLY DURING DEPOSITIONS:

None privileged.

SUPPLEMENTAL CHALLENGE LOG:

1005-1007, 1011, 1012, 1036, 1037, 1042–1045, 1062–1070, 1077, 1087,

1095–1100, 1118–1121, 1129, 1142–1158, 1167–1170, 1176, 1177,

1180–1182, 1184, 1198–1200, 1210, 1230–1232, 1239–1241, 1243,

1249–1251, 1278, 1279, 1313, 1319–1334, 1336, 1337, 1342, 1354, 1355,

1356, 1358-1363, 1365, 1400, 1407–1415, 1417, 1418, 1423–1425, 1431,

1432, 1453, 1458, 1500, 1503, 1526, 1547, 1561–1571, 1580, 1586–1592,

1596, 1605, 1616, 1617, 1619, 1620, 1622–1629, 1631–1634, 1637,

1673–1675, 1677, 1689–1695, 1697–1709, 1713, 1715–1718, 1742, 1743,

1747–1756, 1758–1764, 1769, 1774, 1790–1793, 1808,1817, 1826–1827,

1831–1835, 1844, 1851-1855, 1857–1863, 1865–1867, 1872–1876, 1882,

1883, 1891, 1896, 1905–1909, 1913–1919, 1922, 1953, 1957–1964,

1967–1973, 1976–1978, 1991–1998, 2031, 2034–2047, 2050–2060, 2085,

2086, 2106, 2110, 2111, 2113–2123, 2142, 2145, 2152–2154, 2156, 2158,

2161, 2163, 2165, 2166, 2175, 2185–2213, 2226–2242, 2251–2261,

2265–2267, 2269, 2283-2285, 2288–2295, 2297, 2307–2309, 2314, 2315,

2317, 2318, 2334, 2335, 2346, 2348-2351, 2359, 2367, 2369–2372, 2380,

2381, 2383–2386, 2388–2396, 2399-2402, 2406–2408, 2410, 2413, 2414,

2416, 2421–2426, 2431, 2441, 2442, 2538–2553, 2579–2606, 2609,

2615–2632, 2635, 2639–2641, 2645, 2652–2654, 2657, 2672, 2688, 2690,

2691, 2694, 2696, 2698, 2704, 2716, 2718, 2719, 2723, 2727, 2728, 2730,

2732, 2739, 2740, 2745–2749, 2753, 2754, 2758, 2759, 2772, 2798, 2799,

2802-2804, 2842, 2858–2861, 2865–2890, 2916–1918, 2935–2942, 2950,

2952–2960, 2970, 2971, 2977–3089, 3093–3107, 3120, 3132, 3138, 3140,

3149–3156, 3171, 3173, 3218, 3221, 3224, 3225, 3228–3232, 3243, 3244,

3246, 3247, 3251–3254, 3262, 3267, 3275, 3276, 3280, 3282, 3283,

3284–3298, 3303–3388, 3401–3412, 3415, 3418–3425, 3429, 3432–3436,

3440, 3443–3445, 3448–3453, 3459, 3461–3469, 3472–3474, 3486–3493,

3506–3508, 3511–3517, 3520, 3522, 3523, 3526, 3527, 3535, 3536, 3540,

3549, 3553–3557, 3567, 3572–3579, 3582, 3593, 3599, 3601, 3602,

3604–3611, 3615, 3624–3633, 3653–3661, 3663, 3664, 3669, 3670, 3672,

3673, 3680–3698, 3701, 3704–3726, 3743–3747, 3753, 3770–3801, 3803,

3805–3849, 3851, 3856–3860, 3862, 3876, 3881–3891, 3896, 3897,

3899–3904, 3911–3921, 3923–3926, 3964–3969, 3987, 3998, 4001, 4012,

4013, 4023–4025, 4034, 4038, 4039, 4047–4050, 4054, 4069–4083,

4087–4104, 4109, 4110, 4113, 4114, 4120, 4124–4131, 4141–4159,

4199–4205, 4220, 4228, 4231–4235, 4238, 4271–4273, 4288–4291,

4298–4301, 4315–4322, 4349–4354, 4360–4366, 4370–4379, 4381, 4388,

4389, 4391, 4395, 4437–4447, 4452, 4453, 4487–4490, 4493, 4496, 4497,

4501, 4502, 4505, 4506, 4509–4512, 4514–4517, 4524, 4532, 4533, 4535,

4568–4571, 4574–4602, 4608–4610, 4612–4615, 4617–4623, 4631–4640,

4650–4665, 4689–4691, 4696, 4700–4702, 4711–4714, 4729, 4733,

4735–4740, 4751–4762, 4773–4777, 4795–4801, 4805–4816, 4822, 4824,

4827–4831, 4838–4841, 4847–4867, 4869–4871, 4880, 4881, 4893,

4899–4915, 4928–4930, 4932, 4936–4940, 4946, 4947, 4953, 4956,

4958–4968, 4982–5015, 5023–5026, 5029–5033, 5040–5045, 5052–5056,

5062, 5064, 5070–5085, 5102–5105, 5110, 5122–5152, 5160–5166,

5171–5173, 5180–5182, 5187–5197, 5204, 5206, 5208–5220.

The Court denies the Motion with respect to these privileged documents.

The Court allows the Motion with respect to the remaining documents

on the Logs.  The remaining documents listed on the Logs either are not

privileged or Dish has waived the privilege by asserting the Safe Harbor

defense.

The Plaintiffs argue that the Court should overrule Dish's work

product privilege because their substantial need for information overcomes

privilege.  Plaintiffs, however, have failed to establish a substantial need for

the materials to prepare its case and have failed to establish that they

cannot, without undue hardship, obtain substantially equivalent material by

other means.  See Fed. R. Civ. P. 26(b)(3)(A)(ii).  Plaintiffs have

successfully discovered voluminous amounts of information with which to

prepare their case.  See Motion for Leave to File Second Amended

Complaint (d/e 135) (Motion 135), at 3-7.  Dish also evidently provided

significant amounts of data to the FTC prior to the filing of this action.

See Motion 135, Exhibit 22, Letter dated February 2, 2012, from attorney
Lisa K Hsiao to attorney Joseph A. Boyle with attachments.  The Plaintiffs
have failed to meet their burden to overcome the privilege given the
amount of information already produced.

WHEREFORE Plaintiffs' Motion to Compel Production of Documents
Over Defendant's Privilege Assertions (d/e 95) is ALLOWED in part.  The
Court denies the Motion with respect to the documents listed in this
Opinion as privileged.  The Court allows the Motion with respect to the
remaining documents listed on the Logs (Unprivileged Documents).
Defendant Dish Network, LLC, is directed to produce the Unprivileged
Documents to the Plaintiffs by June 29, 2012.

ENTER: June 12, 2012

_____*s/ Byron G. Cudmore*_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE