UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATES OF CALIFORNIA, ILLINOIS, NORTH CAROLINA, and OHIO,<br><br>   Plaintiff,<br><br>   v.<br><br>DISH NETWORK L.L.C.,<br><br>   Defendant. | Case No. 3:09-cv-03073-SEM-BGC |

**DEFENDANT DISH NETWORK, LLC'S MOTION FOR LEAVE TO CONDUCT TWO DEPOSITIONS AFTER THE CLOSE OF DISCOVERY AND TO COMPEL CERTAIN DISCOVERY FROM PLAINTIFFS**

Defendant DISH Network, LLC ("DISH"), by and through its undersigned counsel, hereby moves for: (1) leave to conduct two previously-noticed depositions after the close of discovery; and (2) to compel the United States of America to produce a witness pursuant to DISH's notice of deposition pursuant to Fed. R. Civ. P. 30(b)(6) related to the subject of "Caller Identification Spoofing" ("Spoofing 30(b)(6) Notice") served on May 24, 2012. In addition to this Motion, DISH will also rely on the accompanying declaration of Lauri A. Mazzuchetti ("Mazzuchetti Decl.") filed herewith.

**PRELIMINARY STATEMENT**

Due to circumstances beyond DISH's control, the following depositions noticed by DISH were not completed: (1) the United States' witness Kathy French; and (2) AT&T Government Solutions, Inc. ("AT&T"), pursuant to the subpoena *ad testificandum*, served on

AT&T on April 30, 2012. For the reasons set forth below, DISH respectfully requests the Court's permission to conduct these depositions after the close of discovery on June 30, 2012.

DISH also moves to compel the Plaintiffs to produce a witness pursuant to DISH's notice of deposition pursuant to Fed. R. Civ. P. 30(b)(6) related to the subject of "Caller Identification Spoofing" ("Spoofing 30(b)(6) Notice"). The Spoofing 30(b)(6) Notice was served on May 24, 2012, in response to Plaintiffs' request that DISH withdraw a notice previously directed to a Department of Justice employee. The parties had an agreement that Plaintiffs would produce a witness in response to the Spoofing 30(b)(6) Notice; however, Plaintiffs never produced the witness nor did they provide a justifiable reason for their refusal to do so.

## I.     DISH RESPECTFULLY REQUESTS THAT THIS COURT ORDER THE DEPOSITION OF AT&T TO PROCEED WITHIN 30 DAYS

On March 30, 2012, consistent with the parties' past practice, DISH sent to Plaintiffs draft deposition notices for several FTC employees, including Kathy French, leaving open the date for the depositions so that the parties could work out a mutually agreeable schedule. (Mazzuchetti Decl., Ex. A.) On May 22, 2012, DISH filed a Consent Motion for the Extension of Time to Complete Discovery (the "May 22 Consent Motion"), which was granted by the Court on May 24, 2012. (d/e 139.) One of the reasons for the May 22 Consent Motion was to allow the deposition of Kathy French to be completed. (*See id.*) On June 7, 2012, Plaintiffs' counsel advised that Ms. French was still out on medical leave and has not scheduled return date to work. (*Id.*, Ex. B.) Plaintiffs' counsel offered, and DISH agreed, to conduct the deposition after June 30, 2012. (*Id.*, Ex. C.) As DISH represented to Plaintiffs that it would, DISH seeks this Court's permission to conduct the deposition of Kathy French pursuant to the consensual agreement of the parties to do so after June 30, 2012, as soon as reasonably practicable.

## II. DISH RESPECTFULLY REQUESTS THAT THIS COURT ORDER THE DEPOSITION OF AT&T TO PROCEED WITHIN 30 DAYS

In the May 22 Consent Motion, a brief extension of discovery was sought to take depositions that were noticed on or before May 25, 2012, including depositions of the nine additional consumer witnesses that were late identified by Plaintiffs (on April 27 and May 14, 2012), and of Alan Brandvein (the principal of a third-party retailer) and Lockheed Martin, Targus and AT&T. (d/e 139.) By way of background, AT&T operated the National Do Not Call Registry (the "NDNCR") under its contract with the Federal Trade Commission (the "FTC") from its inception until 2007, and therefore is in possession of important information. Since this Court granted the May 22 Consent Motion, depositions of all of the newly identified consumers were completed in various locations around the country. (Mazzuchetti Decl., ¶ 5) In addition, Plaintiffs even identified a new third-party witness and noticed his deposition on May 25, 2012, and the parties were able to complete that deposition in San Diego, California on June 14, 2012.[1] (*Id.*, ¶ 6.) The parties were also able to complete the depositions of Lockheed Martin and Targus Information Corp. ("Targus") and AT&T. (*Id.*, ¶ 7.) For reasons beyond DISH's control, however, the AT&T deposition was not completed. (*Id.*, ¶ 8.)

DISH served AT&T with two subpoenas on April 30, 2012: (1) seeking production of documents regarding the accuracy of the NDNCR (the "Document Subpoena"); and (2) a deposition of an AT&T corporate designee on certain topics (the "Deposition Subpoena") (collectively, the "Subpoenas"). The deposition was initially noticed to occur on May 21, 2012. (Mazzuchetti Decl., Ex. D.)

---

[1] As a courtesy, DISH agreed that the Department of Justice lawyer could take that deposition by telephone from his home or office, rather than incur the burden of traveling. (Mazzuchetti Decl., ¶ 6)

3

On or about May 10, 2012, Paula Phillips, in-house counsel for AT&T, contacted DISH's counsel to acknowledge receipt of the Subpoenas and to advise that because AT&T was still in the process of collecting responsive documents, it could not comply with the dates set forth in the Subpoenas. (Mazzuchetti Decl., ¶ 10.) Ms. Phillips indicated that although no current employee could serve as a deponent for the topics listed in the Deposition Subpoena, AT&T was in the process of identifying a former employee qualified to be a witness and that once identified, AT&T would produce that witness. (*Id.*.) In response, and as a courtesy to AT&T, DISH extended the date to produce all documents and to provide the name of a deponent until May 28, 2012. (*Id.*)

AT&T subsequently advised DISH's counsel that it needed additional time to produce documents and identify and produce a witness. (*Id.*, ¶ 11.) After a number of telephone inquires as to the status of AT&T's compliance with the subpoenas, during which AT&T was advised that discovery was set to close at the end of June, AT&T finally produced several boxes of documents during the week of June 11, 2012. (*Id.*.) During a subsequent telephone conversation, AT&T represented to DISH that although it had identified a former employee qualified to serve as AT&T's 30(b)(6) designee, it was still attempting to locate that witness. (*Id.*, ¶ 12.)

During another follow-up call on June 20, 2012, however, AT&T advised DISH that it has yet to identify a qualified former employee. (*Id.*, ¶ 13.) Once again, DISH's counsel explained to AT&T's counsel that the close of fact discovery in the action was rapidly approaching and that AT&T's prompt compliance with the Deposition Subpoenas was imperative. (*Id.*) AT&T assured DISH that it would provide DISH with the name of the witness for purposes of deposition shortly. (*Id.*.)

On June 21, 2012, DISH's counsel sent a letter to AT&T's counsel summarizing the history of the communications regarding the Subpoenas, and requesting that the parties meet and confer regarding AT&T's non-compliance with the Subpoenas. (Mazzuchetti Decl., Ex. E.) On June 22, 2012, AT&T advised DISH that it determined that Heidi Myers, a former employee of AT&T, was the witness most qualified to testify in response to the subpoena. (*Id.*, ¶ 15.) AT&T assured DISH that it would get in touch with Ms. Myers to determine her availability for the deposition and advised that AT&T would represent Ms. Myers. (*Id.*.) AT&T also advised DISH on June 22, 2012 that it would produce additional documents. (*Id.*, Ex. F.) Thus, AT&T was not refusing to comply with the Subpoena, but rather identified timing issues. (*Id.*, ¶ 16.)

On Monday, June 25, 2012, AT&T's counsel advised that she was waiting to hear back from Ms. Meyer. (*Id.*, Exh. F.) Faced with the uncertainty and AT&T's lack of commitment to a date prior to June 30, 2012, DISH attempted to avoid the need for the Court's intervention and to work out a reasonable solution with Plaintiffs in order to accommodate AT&T's stated difficulty in complying with the subpoena by the close of discovery. (*Id.*, ¶ 18 and Ex. F.) On June 25, 2012, DISH's counsel emailed AT&T's counsel as follows:

> We would like to advise DOJ that it does not appear likely that AT&T can produce a witness to our subpoena before the current close of discovery, particularly because AT&T plans to designate a former employee. Can we agree that AT&T will endeavor to produce Ms. Meyers in response to the subpoena as soon as reasonably practicable?

(*Id.*, ¶ 19 and Ex. F.) AT&T's counsel responded that AT&T would try to produce Ms. Myers as soon as reasonably practicable. (*Id.*)

On June 26, 2012, DISH notified Plaintiffs that AT&T was having difficulty in producing a witness in response to the Deposition Subpoena by June 30, 2012, and conveyed to Plaintiffs AT&T's assurance that the witness would be produced as soon as reasonably

5

practicable. (*Id.*, Ex. G.) DISH requested that Plaintiffs agree that the AT&T deposition could be conducted shortly following the June 30, 2012 deadline. (*Id.*) Plaintiffs would not agree to DISH's request. (*Id.*, Ex. H.)

As such, DISH contacted AT&T requesting that it produce the witness prior to the June 30, 2012 deadline. (*Id.*, Ex. I.) AT&T advised DISH's counsel, for the first time on June 28, 2012, that it could not produce Ms. Myers because she was no longer willing to cooperate, and it would designate a different corporate designee in response to the subpoena. (*Id.*)

As set forth above, DISH was assured on numerous occasions that AT&T would identify and produce a witness. While DISH does not doubt that AT&T's counsel made good faith efforts to attempt to comply with the Deposition Subpoena that was served *two months ago*, the fact of the matter is that, through no fault of DISH, AT&T was unable to produce a witness by June 30, 2012. AT&T had represented to DISH that it would produce a witness in response to the Deposition Subpoena shortly. DISH therefore seeks the Court's permission to conduct that deposition as soon as the witness can be produced, but not later than July 30, 2012.

To alleviate Plaintiffs' concerns that Plaintiffs would not have an opportunity to use any information learned at that deposition in an expert report, DISH would consent to extend the deadline of exchanging expert reports by 30 days (to August 27, 2012).

**III.   PLAINTIFFS SHOULD BE COMPELLED TO PRODUCE A WITNESS PURSUANT TO THE 30(B)(6) DEPOSITION NOTICE ON SPOOFING**

During the course of discovery in this case, particularly through the testimony of numerous consumers, it appears that some consumers who claim that they received calls from DISH may have received calls from third parties who were misrepresenting their identity and using a practice known as "spoofing." Spoofing occurs when a caller is able to manipulate caller ID to either disguise the number from which they are calling and/or to make it appear that the

call is originating from a different number.  The United States Department of Justice is not only familiar with spoofing, but also has extensively investigated, analyzed and reported about it to the Federal Communications Committee ("FCC").

On May 4, 2012, DISH served on Plaintiffs a notice of its intent to depose the United States Department of Justice Deputy Assistant Attorney General for the Criminal Division, Jason Weinstein, who authored a statement in response to the Notice of Proposed Rulemaking released by the Federal Communications Commission ("FCC") on March 9, 2011.  (Mazzuchetti Decl., Ex. J.) After receiving the notice, Plaintiffs' counsel, Lisa Hsiao, called DISH's counsel to advise that Mr. Weinstein has a high level position at the Department of Justice, that she would need permission to even call him and that some additional administrative hurdles would need to be satisfied.  (*Id.*, ¶ 26.)    In response, DISH's counsel explained that it had sought Mr. Weinstein's deposition based upon his comments regarding spoofing.  (*Id.*)  To address Ms. Hsaio's concerns and as a professional courtesy, DISH offered to withdraw the notice and instead serve upon Plaintiffs a deposition notice pursuant to Fed. R. Civ. P. 30(b)(6) that would allow Plaintiffs to designate a substitute witness to testify on topics related to spoofing.  (*Id.*) DISH's expectation was, of course, that Plaintiffs would actually produce a witness to provide testimony regarding the topic of spoofing. ( *Id.*)  Ms. Hsaio accepted DISH's proposal without indicating that Plaintiffs may refuse to produce a witness. (*Id.*, ¶ 27.)    DISH would not have withdrawn the notice to Mr. Weinstein if Plaintiffs expressed any indication that they believed the topic of spoofing was off-limits, which is the position Plaintiffs subsequently took.  (*Id.*, ¶ 27.)

On May 24, 2012, DISH served on Plaintiffs a deposition notice pursuant to Fed. R. Civ. P. 30(b)(6) relating to the subject of "Caller Identification Spoofing" ( the "Spoofing 30(b)(6) Notice").  (*Id.*, Ex. K.)  The Spoofing 30(b)(6) Notice contained a list of nine (9) topics

narrowly tailored to the subject of spoofing. Per the parties' agreement, the Spoofing 30(b)(6) Notice was served before the May 25, 2012 deadline and was therefore among the items the parties agreed to complete during the period of the limited discovery extension. Almost two weeks after the Spoofing 30(b)(6) Notice was served, DISH received Plaintiffs' boilerplate written objections and responses to the Notice. (*Id.*, Ex. L.) During one of the subsequent telephone conferences in which outstanding discovery was discussed, counsel for DISH inquired of Ms. Hsaio about the timing of the spoofing deposition. (*Id.*, ¶ 30.) Plaintiffs' counsel was not able to provide a date or discuss timing during that conversation, but also did not mention that Plaintiffs were refusing to produce a witness.

In an email correspondence dated June 19, 2012, DISH's counsel requested to conduct the spoofing deposition during the week of June 25, 2012. (*Id.*, Ex. C.) In response, and for the first time, Plaintiffs' counsel advised DISH that Plaintiffs would not be producing a witness based on their written objections. (*Id.*, Ex. M.) When DISH expressed surprise to this position in light of the parties' agreement (*id.*), Ms. Hsaio sent back a letter June 20, 2012 stating that although "she may have acknowledged that [Dish] would re-serve [its] notice" on spoofing," she did not "represent that the United States would offer a witness on topics that [she] had not even seen." (*Id.*, Ex. N.) It is hard to see how this position is genuine because, as DISH understood, and Plaintiffs' counsel must also have assumed, the purpose of the agreement was not just to serve a notice but to actually take a deposition. Ms. Hsiao certainly understood at the time she secured DISH's agreement to withdraw the notice directed to Mr. Weinstein that DISH believed that it would be able to depose a witness on the topic of spoofing. It is now Plaintiffs position that ***no*** topic related to spoofing is appropriate for a deposition. Plaintiffs should not

have taken advantage of DISH's cooperation in withdrawing the notice without being upfront as to its position on the topic of spoofing.

In her June 20, 2012 letter, Ms. Hsiao also raised that DISH did not satisfy certain regulatory requirements necessary to depose Mr. Weinstein (*id.*), such as a "an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought"  While DISH clearly could have satisfied these requirements, it made no effort to do so because the parties had agreed that DISH would withdraw the notice and instead serve the Spoofing 30(b)(6) Notice.

The 30(b)(6) Spoofing Notice was properly served and the parties had an agreement that a witness would be produced.  It is not up to Plaintiffs to decide whether such deposition is a "huge waste of time and resources" or to claim that all potential information sought would be privileged before a question is even asked.  Plaintiffs instead should be compelled to produce the witness and raise any objections to DISH's particular questions at the time of the deposition.

## CONCLUSION

DISH respectfully requests that the Court grant leave for DISH to complete two depositions after the close of discovery and compel the United States of America to produce a witness pursuant to DISH's deposition notice related to the subject of "Caller Identification Spoofing" served on May 24, 2012.

Dated:  June 30, 2012

Respectfully submitted,

KELLEY DRYE & WARREN LLP

By:   s/ Henry T. Kelly
Joseph A. Boyle
Lauri A. Mazzuchetti
200 Kimball Drive
Parsippany, New Jersey

Phone (973) 503-5900

Henry T. Kelly
333 W. Wacker Dr.
Chicago, Illinois 60606
Phone (312) 857-2350

Attorneys for Defendant DISH Network L.L.C.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATES OF CALIFORNIA, ILLINOIS, NORTH CAROLINA, and OHIO,<br><br>Plaintiffs,<br><br>v.<br><br>DISH NETWORK L.L.C.,<br><br>Defendant. | Case No.: 3:09-cv-03073 (JES) (CHE) |

### CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby deposes and states that he caused the foregoing, **DEFENDANT DISH NETWORK, LLC'S MOTION FOR LEAVE TO CONDUCT TWO DEPOSITIONS AFTER THE CLOSE OF DISCOVERY AND TO COMPEL CERTAIN DISCOVERY FROM PLAINTIFFS** and exhibits in support thereof to be electronically filed with the Clerk of the Court on June 30, 2012, using the ECF system, and served on all counsel of record via the ECF system.

*/s/Henry T. Kelly*
Henry T. Kelly

11