IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

UNITED STATES OF AMERICA,          )
and the STATES OF CALIFORNIA,      )
ILLINOIS, NORTH CAROLINA,          )
and OHIO,                          )
                                   )
        Plaintiffs,                )
                                   )
    v.                             )          No. 09-3073
                                   )
DISH NETWORK, L.L.C.,              )
                                   )
        Defendant.                 )

OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

This cause is before the Court on the Motion for Evidentiary

Sanctions Pursuant to Federal Rule of Civil Procedure 37 (Motion for

Sanctions) (d/e 201) filed by Plaintiffs United States of America and the

States of California, Illinois, North Carolina, and Ohio.  The Motion is

GRANTED IN PART and DENIED IN PART.

Defendant's conduct during discovery has been, at times, evasive, obstructive, and willful. Therefore, the following sanctions are appropriate: (1) Defendant is precluded from using at summary judgment or at trial any documents or information about the creation and scrubbing of telemarketing campaign lists that it did not provide to Plaintiffs in discovery; (2) a finding that the Zee Sports Campaign contained a direct or indirect sales message and was conducted for commercial purposes; and (3) an instruction advising the jury that Defendant failed to preserve evidence relevant to the litigation, documents relevant to the sharing of telemarketing leads with retailers were destroyed, and that the jury may, but does not have to, infer that the destroyed evidence was not favorable to Defendant.

## I. INTRODUCTION

In the Motion for Sanctions, Plaintiffs assert that Defendant has failed to produce information, despite a court order requiring that it do so. Therefore, Plaintiffs ask that the Court impose evidentiary sanctions

so that Defendant is not rewarded for its failure to comply with its

discovery obligations.

The material requested by Plaintiffs includes: (1) documents about

how Defendant created and scrubbed certain calling campaigns (the

parties sometimes refer to this information as "data trails"); (2)

information (e.g. recordings and scripts) related to the Zee Sports free

preview weekend campaign[1]; and (3) information about Defendant

providing telemarketing leads (also referred to as lead lists[2]) to its

retailers.  Plaintiffs ask the Court to (1) preclude Defendant from

introducing any evidence about the creation or scrubbing of the

telemarketing campaigns covered by Plaintiffs' Sixth Request for

Production of Documents Nos. 2 and 3, or, in the alternative, give an

---

[1] Plaintiffs originally claimed that Defendant provided scripts for only a small fraction of the 61 prerecorded calling campaigns.  Defendant filed a response to the Motion for Sanctions indicating that, on June 29, 2012, Defendant had produced audio recordings related to 52 of the 61 automessage campaigns at issue.  Plaintiffs acknowledged their mistake in their Reply and modified their request for sanctions to a single campaign: the Zee Sports free preview weekend campaign identified by campaign code AM 100507 ZEE.

[2] Plaintiffs have described lead lists as contact information of prospective customers. See Third Motion to Compel p. 4 (d/e 143).

adverse inference instruction that Defendant did not scrub the campaigns against the National Do-Not-Call Registry or against Defendant's internal do-not-call list; (2) find as an established fact that the Zee Sports campaign contained a direct or indirect sales message and was conducted for commercial purposes; and (3) find as an established fact that "during the time period covered by this case, Dish had a practice of sharing telemarketing leads with retailers, but the extent of the practice is impossible to discern because Dish destroyed evidence about it" or, in the alternative, an adverse inference instruction that the evidence Defendant destroyed would have shown that Defendant shared telemarketing leads with its retailers, but that the extent of the practice is impossible to discern due to the missing evidence.  See Pls.' Motion (d/e 201); Reply (d/e 234).

## II.  BACKGROUND

A.  <u>Background Related to the Duty to Preserve</u>

In July 2005, the Federal Trade Commission (FTC) sent Defendant a Civil Investigation Demand (Demand).  According to the Demand, the scope of the investigation was as follows:

> To determine whether unnamed telemarketers, sellers, or others assisting them have engaged or are engaged in (1) unfair or deceptive acts or practices in or affecting commerce in violation of Section 5 of the Federal Trade Commission Act. . . and/or (2) deceptive or abusive telemarketing acts or practices in violation of the Commissions' Telemarketing Sales Rule, 16 C.F.R., part 310, including but not limited to the provision of substantial assistance or support—such as mailing lists, scripts, merchant accounts and other information, products or services – to telemarketers engaged in unlawful practices.

Pls.' Ex. 1 (d/e 201-1).

The Demand requested, among other things, Defendant's call records, documents related to its telemarketing compliance, "[d]ocuments sufficient to show all marketing materials, directions, and support [Dish] provides to a person who will be marketing or is

marketing Dish Network," and documents sufficient to support a claim

that Defendant has not violated the Telemarketing Sales Rule.  <u>See</u> Pls.'

Ex. 1 (Demand), pp. 6-7 (d/e 201-1).  The Demand provided that

Defendant shall retain all documentary material used to prepare

responses to the specifications of the Demand.  The Demand also

ordered that Defendant suspend any routine procedures for document

destruction and retain relevant documents:

> You shall retain all documentary material used in the
> preparation of responses to the specifications of this
> [Demand].  The FTC may require the submission of
> additional information or documents at a later time during
> this investigation.  Accordingly, you should suspend any
> routine procedures for document destruction and take other
> measures to prevent the destruction of documents that are in
> any way relevant to this investigation during its pendency,
> irrespective of whether you believe such documents are
> protected from discovery by privilege or otherwise.

Pls.' Ex. 1, pp. 2-3.

In March 2006, North Carolina served a demand on Defendant

asking for "all documents reflecting Dish Network's policies or

procedures for complying with federal or state do-not-call requirements,

including but not limited to all pertinent scripts, training materials, office

manual, or written guidelines or procedures that Dish Network provides

to persons that make telephone solicitations for or on behalf of Dish

Network." See Pls.' Ex. 2 (Defendant's response to North Carolina's

March 17, 2006 Investigative Demand) (d/e 201-2).

B.    Plaintiffs File This Lawsuit

On March 25, 2009, Plaintiffs filed this lawsuit.  On April 30,

2009, Plaintiffs filed an Amended Complaint (d/e 5).  In Counts I, II,

and III, Plaintiffs allege that Defendant violated the Telemarketing Sales

Rule (16 C.F.R. §§ 310.4, 310.3).  Counts IV and V allege violations of

the Telephone Consumer Protection Act (47 U.S.C. § 227).  In Counts

VI, VII, VIII, IX, X, and XI, each state Attorney General seeks relief

under each state's respective statutes that prohibit these forms of

telephone solicitations.  All proceedings related exclusively to Telephone

Consumer Protection Act matters are currently stayed.  See Opinion (d/e

86) (staying the Telephone Consumer Protection Act matters so that the

Federal Communications Commission can resolve the administrative

complaint asking the Commission to interpret the phrase "on behalf of").

Defendant has raised several affirmative defenses.  <u>See</u> Answer (d/e 26).  One of those affirmative defenses includes the Telemarketing Sales Rule's Safe Harbor provisions.  <u>See</u> Answer (d/e 26), citing 16 C.F.R. § 310.4(b)(4)(i) (providing that a seller or telemarketer is not liable for violating § 310.4(b)(1)(iv) if the seller or telemarketer has certain measures in place); <u>see also</u> Opinion, p. 3 n. 2 (d/e 151) (interpreting for purposes of the opinion that Defendant was asserting all aspects of the Safe Harbor as an affirmative defense, not just 16 C.F.R. § 310.4(b)(4)(i)); 16 C.F.R. § 310.4(b)(3) (generally providing that a seller or telemarketer will not be liable for violating § 310.4(b)(1)(ii) and (iii) if it can demonstrate, as part of its routine business practice, that it has written procedures and training in place to ensure compliance, it maintains a list of telephone numbers the seller may not contact, the seller uses a process to prevent telemarking to any telephone number on any do-not-call list, the seller monitors and enforces compliance, and any subsequent call violating § 310.4(b)(1)(ii) or (iii) was made in error).

Recently, Plaintiffs filed a Second Amended Complaint, adding a new Count II and renumbering the remaining counts.  See Second Am. Compl. (d/e 257).  The new Count II alleges Defendant violated the Telemarketing Sales Rule by engaging in or causing other telemarketers to engage in initiating outbound telephone calls to a person who has previously stated that he or she does not wish to receive such calls made by or on behalf of Defendant.  Second Am. Compl. (d/e 257).  Defendant has filed an Answer and Affirmative Defenses, including the affirmative defense that the claims are barred by the Telemarketing Sales Rule's "'Safe Harbor' provisions" and other safe harbor defenses.  See Answer and Affirmative Defenses (d/e 263) (Sixth Affirmative Defense; Sixteenth Affirmative Defense).  Plaintiffs' Motion to Strike Affirmative Defenses filed April 16, 2013 remains pending.  See d/e 276.

C.  Plaintiffs Serve Sixth Request for Production of Documents on Defendant

According to Plaintiffs, documents "trickled out in 2012" that revealed that Defendant had sent telemarketing leads to certain retailers. See Pls.' Motions for Sanctions., p. 13 (d/e 201); see also Pls.' Third

Motion to Compel Discovery Responses, pp. 4-6 (d/e 143) (stating that

in March 2012, Defendant produced documents revealing that

Defendant had provided telemarketing lead lists to retailers, despite

repeated assertions that Defendant did not supply lead lists to retailers).

Plaintiffs cite the following documents as examples of the documents

Defendant produced: (1) a March 2006 Defendant email noting that:

"Currently we do not share leads with OE Retailers.  However, we did

share one list of leads through Maulik/Amir in Q4 of the last year.  These

were sent only to Marketing Guru and Guru is no longer using the list";

(Pls.' Ex. 32, d/e 201-33); (2) a July 2007 email between Defendant and

Defender Security referencing Lead Lists for the "winback campaign"[3]

(Pls.' Ex. 33, d/e 201-34); and (3) a June 2008 email with the subject line

"Sales Leads to Defender" that references putting together a "bucket of

LTS leads" (Pls.' Ex. 34 d/e 201-35).  See Motion for Sanctions, p. 13.

---

[3] Kevin D. Whipple, the Director of Customer Care at Defender Security, explained
in his Declaration that he worked with Defendant's account during 2007.  See
Whipple Declaration, ¶ 2 (d/e 230).  One of Whipple's responsibilities included "the
"'Winback'" department in which we made outbound calls to customers that had
already inquired with us to try and win them back as customers."  Id.

In April 2012, Plaintiffs served their Sixth Request for Production of Documents on Defendant.  Plaintiffs requested: (1) call records for certain calling campaigns, including scripts for the campaigns and all documents associated with the scrubbing of the campaigns calling lists against any do-not-call list (Request Nos. 2 and 3); and (2) documents related to Defendant providing consumer leads to any retailer, regional service provider, or distributor (Request No. 4).  <u>See</u> Pls.' Ex. 6 (d/e 201-6).

D.    <u>Plaintiffs' Third Motion to Compel Discovery is Granted and Defendant is Order to Provide Certain Discovery</u>

On May 25, 2012, Plaintiffs filed under seal a Third Motion to Compel Discovery Responses.  <u>See</u> Motion to Compel (d/e 143). Plaintiffs sought, among other things, an order compelling Defendant to (1) produce documents relating to telemarketing lead lists, (2) designate a witness who would testify regarding telemarketing lead lists, and (3) produce the information requested about the calling campaigns.  <u>See</u> Motion to Compel (d/e 143); Reply (d/e 154).

On July 20, 2012, United States Magistrate Judge Byron G. Cudmore granted the motion to compel discovery in part and denied the motion in part.  See Opinion (d/e 165) (hereinafter Opinion 165).  As is relevant to the Motion for Sanctions, Magistrate Judge Cudmore overruled Defendant's objections to providing documents regarding the sharing of lead lists as requested for Sixth Request for Production No. 4. Noting that Defendant denied that it shared leads, Magistrate Judge Cudmore held that:

> Dish may not merely object and refuse to respond to discovery on the subject.  Dish must provide a representative that will testify on behalf of Dish under Rule 30(b)(6) and answer questions under oath regarding the issue.  Dish must also provide a response under oath in accordance with the Rules regarding whether it has any documents responsive to the request.

See Opinion 165, p. 8.

Defendant had also objected to producing the information requested in the Sixth Request for Production Nos. 2 and 3 (which asked for documents related to specific calling campaigns) on the ground of relevance.  See Opinion 165, p. 15.  Defendant argued that, "the only

relevant documents would be scripts, audio recordings and document[s] relating to the scrubbing of call lists for these campaigns." <u>See</u> Def.'s Resp. to Third Motion to Compel, p. 23 (d/e 152).

Magistrate Judge Cudmore overruled Defendant's objections to Sixth Request for Production Nos. 2 and 3. Magistrate Judge Cudmore specifically found that Defendant's process for developing and approving campaigns was relevant. Magistrate Judge Cudmore stated, however, that if no responsive documents exist, Defendant may so state in its response.

Magistrate Judge Cudmore directed Defendant to (1) respond to Requests for Production Nos. 2, 3, and 4 in Plaintiffs' Sixth Request for Production of Documents; and (2) designate a representative to testify on behalf of Defendant under Rule 30(b)(6) regarding Defendant's possible policy and practice of sharing with other parties, such as retailers and telemarketers, leads containing telephone numbers of consumers who may be prospective customers of Defendant. <u>See</u> Opinion 165, p. 18.

E.    Defendant Produces Information Regarding the Scrubbing of
       Telemarketing Campaign Calling Lists

On August 24, 2012, Defendant produced 116 pages of documents
which consisted of "screen shots" from the Predictive Dialer (PDialer), a
list processing and scrubbing application.  See Pls.' Ex. 16A, 16B (d/e
201-16, 201-17).  Defendant produced three screenshots for each
campaign.  See Pls.' Motion for Sanctions, p. 6 (d/e 201.

On August 28, 2012, Plaintiffs asked Defendant to (1) produce the
information contained in the screenshots in its "native electronic format"
as specified by the parties' Electronically Stored Information Agreement;
and (2) produce the entire contents of the PDialer databases.  See Pls.'
Motion for Sanctions, p. 10; Ex. 17 (d/e 201-18).  According to
Plaintiffs, the PDialer databases contain compliance information
regarding which of Defendant's calling campaigns were scrubbed against
which do-not-call lists.  Pls.' Ex. 17 (d/e 201-18); see also Dr. Richard G.
Cooper Declaration, ¶ 15 (d/e 223) (witness retained by Defendant
stating that "PDialer is the application that generates customer dialing
lists by 'campaign,' and filters or scrubs them.")

Page 14 of 44

On September 7, 2012, the parties participated in a telephone conference.  The parties dispute what occurred during that telephone conversation.  Plaintiffs claim they requested the database information underlying all of Defendant's calling campaigns.  According to Plaintiffs, Defendant's counsel said the information was not in one place but scattered across a number of Defendant IT systems.  Motion for Sanctions, p. 10; Affidavit of Patrick R. Runkle ¶ 5, Pls.' Ex. 18 (d/e 201-19).  Defendant denies this, and claims that its counsel said that PDialer is an application that does not store data but pulls and processes data from many of Defendant's enterprise systems.  See Alysa Z. Hutnik Declaration ¶ 4 (d/e 225).

On September 21, 2012, Plaintiffs sent a letter to Defendant stating that Plaintiffs had not yet received the information that Defendant indicated it would provide.  Pls.' Ex. 24 (d/e 201-25).  According to Plaintiffs, Defendant did not respond to that letter.

F.     <u>Defendant Produces Certain Automessage Campaign Recordings</u>

On June 29, 2012, Defendant produced recordings related to 52 out of the 61 automessage campaigns.  Defendant claims it was unable to locate digital audio files for nine of the automessage campaigns, including the Zee Sports campaign.  <u>See</u> Joey Montano Declaration ¶ 9 (d/e 227).

According to Defendant, eight of the nine automessage campaigns that were not produced were dialed in either October or November 2007. The ninth was dialed in June 2008.  <u>See</u> Montano Declaration ¶ 10 (d/e 227).  The digital audio files for those nine campaigns were stored on a server system that had limited capacity and Defendant had ceased using in late 2008.  Montano Declaration ¶ 12 (d/e 227).  Defendant asserts that the nine missing audio files were likely inadvertently lost when Defendant stopped using that server system in 2008.  <u>See</u> Joey Montano Declaration ¶ 12 (d/e 227).

G.     <u>Defendant Produces Information Regarding Telemarketing Lead</u>
<u>Lists</u>

On August 24, 2012, in compliance with Opinion 165, Defendant produced additional emails from 2011 relating to lead lists.  <u>See</u> Pls.'

Motions for Sanctions, p. 13 (d/e 201).  These additional documents

related to leads generated from Defendant's website that were sent to

two retailers for telemarketing follow-up.  <u>See</u> Pls.' Motion for Sanctions,

p. 13.  Defendant did not produce additional documents relating to the

2005, 2007, and 2008 incidents of lead list sharing.  <u>See</u> Pls.' Motion for

Sanctions, p. 13.

On September 13, 2012, Plaintiffs deposed Michael Mills,

Defendant's Senior Vice-President of Sales, on the topic ordered in

Opinion 165--Defendant's possible policy and practice of sharing leads

containing telephone numbers of consumers who may be prospective

customers of Defendant.  Plaintiffs claim that Mills had little or no

knowledge about anything beyond what was in the documents already

produced regarding lead lists.  <u>See</u> Pls.' Motion for Sanctions, pp. 13-14.

Moreover, when asked whether Defendant searched to find the lead list

Defendant sent to Marketing Guru, Mills testified he had not personally

looked for a list and had not spoken to Marketing Guru about a lead list

Defendant provided to Marketing Guru.  Mills Dep. pp. 17-18, Ex. 37
(d/e 201-38).

### III. LEGAL STANDARD

Plaintiffs seek sanctions pursuant to Federal Rule of Civil Procedure
37(b) and 37(c).  Rule 37(b) provides that a court may order sanctions
against a party who fails to obey an order to provide or permit discovery,
including an order under Rule 26(f), Rule 35, or Rule 37(a) [4].  The
sanctions may include prohibiting the disobedient party from introducing
specific evidence, striking pleadings, dismissing the action, or rendering a
default judgment.  <u>See</u> Fed.R.Civ.P. 37(b)((2).

Rule 37(c) provides that a party who fails to provide information or
identify a witness as required by Rule 26(a) or Rule 26(e) may not use
that information or witness on a motion, at hearing, or at trial unless the
failure was substantially justified or is harmless.  The court may also

---

[4] Rule 26(f) relates to the parties' conference to plan for discovery.  Rule 35 relates to
physical and mental examinations.  Rule 37(a) relates to motions to compel.

impose other appropriate sanctions, including those listed in Rule

37(b)(2)(A)(i)-(iv).  See Fed.R.Civ.P. 37(c)(1)(C).

It is within this Court discretion to determine whether to sanction

a party and the appropriate sanction.  Melendez v. Illinois Bell Tel. Co.,

79 F. 3d 661, 671 (7th Cir. 1996).  Any sanction imposed must be

"proportionate to the circumstance surrounding the party's failure to

comply with discovery rules."  Melendez, 79 F. 3d at 672.  When the

sanction imposed is dismissal, the Court must find bad faith, willfulness,

or fault.  E360 Insight, Inc. v. Spamhaus Project, 658 F.3d 637, 642 (7th

Cir. 2011).

A court also has the inherent power to assess sanctions for the

failure to preserve or produce documents.  Zang v. Alliance Fin. Serv. of

Ill., Ltd., 875 F. Supp. 2d 865, 884, 885 n. 19 (N.D. Ill. 2012) (also

noting that the analysis under Rule 37 and the court's inherent power is

essentially the same).  Sanctions are appropriate where (1) the party had

a duty to preserve the evidence; (2) the duty was breached; and (3) the

other party was harmed by the breach.  Zang, 875 F. Supp. 2d at 885;

see also ChampionsWorld, LLC v. U.S. Soccer Federation, 276 F.R.D.

577, 582 (N.D. Ill. 2011) (noting as a fourth factor that the breaching

party's willfulness, fault, or bad faith caused the breach).

The mere fact that a party destroyed a document or is unable to

produce a document does not, standing alone, warrant an inference that

the document would have contained information adverse to that party's

case. Park v. City of Chicago, 297 F.3d 606, 615 (7th Cir.2002) (to

obtain an adverse instruction, the movant must show the documents

were destroyed in bad faith). Before this Court will draw the inference

that the missing documents contained information adverse to Defendant,

Plaintiffs must demonstrate that Defendant "intentionally destroyed the

documents in bad faith." Norman-Nunnery v. Madison Area Technical

College, 625 F.3d 422, 428-29 (7th Cir. 2010) ("The crucial element in a

spoliation claim is not the fact that the documents were destroyed but

that they were destroyed for the purpose of hiding adverse information").

## IV. ANALYSIS

A.  <u>Motion for Sanctions was Timely Filed</u>

Defendant argues the Motion for Sanctions is untimely.

The Court's Scheduling Order provided that Motions to Compel and other motions relating to discovery must be filed no more than 60 days following the event that is the subject of the motion.  <u>See</u> d/e 34. The Scheduling Order also provided that the parties are required to meet and confer on discovery disputes as required by Rule 37(a).  <u>Id.</u>  An untimely motion will not be considered by the Court unless good cause is shown.  <u>Id.</u>

Defendant argues that the Scheduling Order required that Plaintiffs file the Motion for Sanctions within 60 days of the event that is the subject of the motion.  Defendant asserts that it fully complied with Opinion 165 by September 13, 2012.  As such, Defendant claims the Motion for Sanctions should have been filed no later than 60 days thereafter, which would have been Tuesday, November 13, 2012. Plaintiffs filed the Motion for Sanctions on November 30, 2012.

Plaintiffs respond that the Motion for Sanctions is not purely a discovery dispute.  Plaintiffs also claim they were expecting and still working to obtain documents evidencing Defendant's campaign creation, scrubbing procedures, and prerecorded message campaigns.  In fact, the day before Plaintiffs filed the Motion for Sanctions, they re-deposed Joey Montano to obtain information about how Defendant created its calling campaigns.  Pls.' Reply, p. 2 (d/e 234).

Even if the Motion for Sanctions can be characterized as a discovery motion, Plaintiffs pursued relief in a diligent manner.  See, e.g., GSI Group, Inc. v. Sukup Manufacturing Co., 2008 WL 3849695, at *4 (C.D. Ill. 2009) ("To the extent [a Rule 37(c)] motion can be characterized as a discovery motion, [defendant] pursued relief in a diligent and timely manner").  Moreover, Plaintiffs have shown good cause for failing to file the Motion sooner.

Defendant also asserts that Plaintiffs never attempted to meet and confer on the issues pertaining to the recordings and the lead lists.  However, Rules 37(b) and 37(c) do not contain a meet and confer

requirement.  <u>GSI Group, Inc.</u>, 2008 WL 3849695, at *4 (noting that

Rule 37(c) does not contain a meet-and-confer requirement); <u>Niemeyer</u>

<u>v. Williams</u>, 2011 WL 6179510, at *4 (C.D. Ill. 2011) (party was not

required to meet and confer before filing a Rule 37(b) motion for

sanctions).

B.　<u>Defendant is Precluded from Using at Summary Judgment or Trial</u>
　　<u>Any Documents or Information Defendant Did Not Provide to</u>
　　<u>Plaintiffs in Discovery Regarding the Scrubbing of Campaign</u>
　　<u>Calling Lists</u>

As noted above, Plaintiffs requested from Defendant all documents

associated with the scrubbing of the campaign calling lists against any do-

not-call list.  <u>See</u> Sixth Request for Production Nos. 2 and 3 (d/e 201-6).

Defendant objected on the grounds of relevance, and Plaintiffs filed a

Third Motion to Compel.  In Opinion 165, Magistrate Judge Cudmore

ordered Defendant to provide responsive documents or, if no responsive

documents existed, to so state in its response.  <u>See</u> Opinion 165, p. 17.

Thereafter, Defendant provided 116 pages of screenshots from the PDialer interface[5]. <u>See</u> Pls.' Ex. 16A, 16B (d/e 201-16, 201-17).

In the Motion for Sanctions, Plaintiffs complain that Defendant provided no electronically stored information identifying how PDialer actually scrubbed the lists of phone numbers. <u>See</u> Pls.' Motion for Sanctions., p. 9. Plaintiffs assert they requested additional information, but none was provided. Plaintiffs further assert that Defendant has the information Plaintiffs seek because Defendant provided that information to Defendant's own expert, John Taylor, and Defendant intends to use the information in its own defense.

In its Response, Defendant states that no electronically stored information exists or ever existed <u>See</u> Def.'s Resp. p. 21 (d/e 219). Defendant attaches to its Response the declaration of Anitha Gogineni, one of Defendant's "technical developers for an enterprise application

---

[5] Defendant describe the PDialer as "an application suite internally constructed, to interface with the Oracle database and the Unix operating system, to prepare outgoing dial lists for subsequent input to automatic dialing machines." Dr. Cooper Declaration, ¶ 13 (d/e 223, p. 3).

called PDialer." <u>See</u> Gogineni Declaration, ¶ 2 (d/e 224).  Gogineni

states that "[t]here is no electronically stored information or 'data trails'

identifying how PDialer actually created and scrubbed the lists."

Gogineni Declaration, ¶ 8.  Instead, PDialer "takes input files from

various databases, then processes it by using filter criteria that removes

records found on lists contained in an enterprise Oracle database and by

formatting for the dialer, and transmits the output files or extracts, which

is used by the dialers." <u>See</u> Gogineni Declaration, ¶ 7.

Defendant also retained Dr. Richard G. Cooper, an independent

computer scientist, to examine Plaintiffs' allegations regarding "data

trails."  Dr. Cooper verified that such data trails never existed.  <u>See</u>

Cooper Declaration, ¶ 23 (d/e 223).  Dr. Cooper states that PDialer pulls

data from Oracle, processes it, and transmits the output file to a

predetermined file location.  Cooper Declaration, ¶ 22; <u>see</u> <u>also</u> Cooper

Declaration, ¶ 15 (explaining that Defendant "maintains an Oracle

enterprise database with millions of customers and prospects").  PDialer

uses internal calculations to implement the list creation/scrubbing process and only dialer output files are created.  Cooper Declaration, ¶ 23.

Defendant blames Plaintiffs for failing to depose a Defendant representative regarding the technical/IT aspects regarding the creation and scrubbing of telemarketing campaigns and the use of the PDialer. See Def.'s Response, p. 21.  Defendant further states that Taylor used the very same information provided to Plaintiffs to create his report.  See Def.'s Resp. p. 10, citing Hutnik Decl.  ¶¶ 9-10.  The only additional information provided to Taylor was recent work product generated for this litigation as a necessary part of the analysis of the call records.  Def.'s Resp. p. 10.  That is, Defendant conducted a manual review that identified several campaign IDs associated with calls responding to consumer inquiries, campaigns directed to current and former customers within 18 months of disconnect, and campaign IDs associated with non-telemarketing calls.  Def.'s Resp., p. 10.  Defendant claims it also provided that information to Taylor in the same form that Defendant

had provided the information to Plaintiffs.  Def.'s Resp.  p. 10, citing

Hutnik Decl.  ¶ 13.

In their Reply, Plaintiffs point out that "[a]fter three years of

discovery, Defendant now offers the Court the explanation of its data

systems that it refused to give Plaintiffs."  Pls.' Reply p. 3 (d/e 234).

Plaintiffs note that they had asked these questions numerous times and

that "[i]t is ridiculous that Plaintiffs had to file a Rule 37 sanctions

motion to obtain these answers."  Id.

Plaintiffs also object to Defendant seeking to shift the blame for

Defendant's uncooperative conduct and discovery violations onto

Plaintiffs for not asking the right questions.  Pls.' Reply p. 4.  Plaintiffs

assert that they had noticed for Rule 30(b)(6) depositions topics covering

information about calling and scrubbing systems but Defendant's

designees either lacked knowledge or were instructed not to answer.  See

Reply p. 4.  According to Plaintiffs, in response to the April 2012

deposition notice, Defendant had offered a witness lacking in the basic

technical knowledge.  See Reply p. 4, citing Rule 30(b)(6) Deposition of

Dish Network (Russell Bangert) (April 18, 2012), Pls.' Ex. 6, p. 20, 27
(wherein Bangert indicated he was not a technical expert on the PDialer
system and did not understand the technical capabilities beyond how the
application worked).

Plaintiffs further argue that while Defendant admits that its
scrubbing systems create no actual records of the scrubbing process
beyond inputs and outputs, Defendant did not provide Plaintiffs with the
inputs or outputs either.  Pls.' Reply p. 6.  Plaintiffs state: "If there is a
computer system that scrubs Dish's lists using logic and data that is
stored in that computer system, Plaintiffs were entitled either to access
that system or to a copy of it years ago."  Pls.' Reply p. 6.  Therefore,
Plaintiffs ask this Court to issue an additional order (1) barring
Defendant from presenting at summary judgment and at trial compliance
information that it had failed to provide in discovery; and (2) preclude
Defendant from presenting any document or database that it had not
produce in discovery – or from testifying about the content or

significance of an unproduced document or database—to rebut Plaintiffs' claims or support Defendant's case.

The record shows that Plaintiffs have attempted to obtain the information that Defendant now provides by way of its Response to the Motion for Sanctions—that no actual records of the scrubbing process exist.  Had Defendant provided this information sooner (i.e. before the close of discovery[6]), Plaintiffs could have earlier demanded access to the system or a copy of it.  Notably, in response to Plaintiffs' Sixth Request for Production, Defendant did not indicate that no actual records are created but instead responded that it would produce documents relating to the scrubbing of all lists for the campaigns listed in the request.  See Def.'s Resp. to Third Motion to Compel, p. 23 (d/e 152) (noting that Defendant responded to Plaintiffs' Sixth Request for Production of Documents Nos. 2 and 3 by stating it would produce "documents relating to the scrubbing of call lists for these campaigns").

---

[6] Fact discovery closed May 25, 2012, with a limited extension to June 30, 2012. This Court recently extended discovery on the new claims, including the deadline for producing call record analyses.  See March 21, 2013 Text Order.

Plaintiffs did demand, on August 28, 2012, the entire contents of the PDialer, but Plaintiffs claim that Defendant did not respond. "[W]hen data is in an inaccessible form, the party responding to the request for discovery must make the data available." Crown Life Ins. Co. v. Craig, 995 F.2d 1376, 1383 (7th Cir. 1993) (finding that the plaintiff had a duty to make the data available to defendant even if the plaintiff could not access the data at the time of the request). Defendant did not make the data available.

Moreover, Defendant tendered for deposition Russell Bangert, who admitted having no technical knowledge about the PDialer system. But in response to the Motion for Sanctions, Defendant tendered the Declaration of Anitha Gogineni, who identifies herself as one of the technical developers for the PDialer application. See Def.'s Ex. 5 (Declaration dated January 2, 2013). Defendant could have offered Gogineni as the witness to testify about the PDialer system, but Defendant did not do so.

Defendant attempts to blame Plaintiffs by asserting that Plaintiffs did not follow through on taking the deposition of a technical person regarding the creation and distribution of calling campaigns.  Yet, Plaintiffs' Notice of Continuation of 30(b)(6) Deposition of Dish Network, LLC (Lead List Creation and Distribution) appears to request just such a person.  See Reply, Ex. 5 (requesting a person who could, among other things, testify regarding the technical process for assembling and creating lead lists and scrubbing lead lists and defining "lead lists" as lists of consumer telephone numbers of prospective, actual, or past customers with the goal of selling Dish products and services).

The documents submitted by Plaintiffs show that Plaintiffs have repeatedly tried to obtain information from Defendant about scrubbing campaign calling lists against any do-not-call list.   Opinion 165 ordered Defendant to respond to the Sixth Request for Production of Documents Nos. 2 and 3, which requested documents associated with the scrubbing of campaign calling lists against any do-not-call list.  Defendant has not been forthcoming with that information and sanctions are appropriate.

See, e.g., Crown Life Ins. Co., 995 F.2d at 1382 (finding that the
plaintiff's failure to make the raw data available constituted a violation of
the court's discovery orders).

Defendant's conduct has been obstructive, contumacious, and
willful.  As a sanction, Defendant is precluded from using at summary
judgment or trial any documents or information about the creation and
scrubbing of telemarketing campaigns that Defendant did not provide to
Plaintiffs in discovery.  Defendant will bear the burden of showing that
the documents and/or information was provided to Plaintiffs.  Such a
sanction will prevent Defendant from benefitting from its improper,
obstructive conduct but will not prejudice Defendant from being able to
defend this action with documents and information that Defendant did
disclose.  See, e.g. Ball v. Versar, Inc., 2005 WL 4881102, at *5 (S.D.
Ind. 2005) (refusing to dismiss, exclude evidence, or give an adverse
inference instruction as a sanction and instead ordering fees and expenses
associated with the motion for sanctions where it was not clear whether

Page 32 of 44

the information was irretrievably destroyed and it did not appear that the party conducted itself in bad faith).

C.   <u>Plaintiffs are Entitled to an Order that the Zee Sports Campaign Contained a Direct or Indirect Sales Message and Was Conducted for Commercial Purposes</u>

Plaintiffs also seek evidentiary sanctions for Defendant's failure to produce documents or recordings related to Defendant's Zee Sports free preview weekend campaign.  Plaintiffs ask for an Order from the Court finding that the Defendant's Zee Sports campaign contained a direct or indirect sales message and was conducted for commercial purposes.  <u>See</u> Pls.' Reply, p. 10 (d/e 234).

Defendant claims that information related to the Zee Sports campaign was inadvertently lost in 2008 when Defendant ceased using the server system on which those recordings were stored. <u>See</u> Def.'s Ex. 1, Joey Montano January 4, 2013 Declaration (d/e 227).  Defendant also claims it did not have a duty to preserve those recordings when they were lost.

The Zee Sports free preview weekend campaign occurred in October 2007.  Defendant had a duty to preserve the recordings and scripts due to the Demand from the FTC, issued in July 2005, which directed Defendant to suspend procedures for document destruction and take means to prevent the destruction of documents that were in any way relevant to the investigation.  <u>See</u> Demand, Pls.' Ex. 1 (d/e 201-1) (defining "document" as including "taped" and "recorded" material).

Although the FTC issued the Demand on Defendant, the FTC authorized the Attorney General to bring this action on behalf of the United States.  Therefore, Defendant owed a duty to preserve the documents in response to the Demand.  <u>See</u> <u>contra</u> <u>Delta/AirTran Baggage Fee Antitrust Litigation</u>, 770 F. Supp.2d 1299, 1308 (N.D. Ga. 2011) (holding that while Delta owed a duty to the Department of Justice to preserve and produce all relevant documents in response to a Civil Investigation Demand, Delta did not owe a preservation duty to passengers who later filed an antitrust action against Delta).

Page 34 of 44

In this case, Defendant knew the recordings and/or scripts from the Zee Sports campaign might be relevant to the investigation because Defendant suspended the Zee Sports campaign when Defendant concluded that the message contained what could be considered a sales pitch, which was a possible violation of Defendant's business rules and the Telephone Consumer Protection Act.  See Pls.' Ex. 25 (d/e 201-26) (email).  Defendant's explanation – that it inadvertently lost the recordings—is not credible.  Defendant's knowledge that the sales pitch was possibly in violation of the law, coupled with Defendant's notice of the investigation by the FTC and the Demand to preserve documents, demonstrates Defendant's bad faith and willful conduct.

Admittedly, the emails indicating that Defendant suspended the Zee Sports campaign provide Plaintiffs with some circumstantial evidence that the Zee Sports campaign violated Telemarketing Sales Rule.  However, Plaintiffs are prejudiced by Defendant's failure to preserve the recordings because the most direct way of determining

whether an automessage campaign violates the law is to examine the recording to see whether it contains a direct or indirect sales message.

Therefore, the Court issues a finding of fact that the Zee Sports campaign contained a direct or indirect sales message and was conducted for commercial purposes.

D.   Plaintiffs Are Entitled to Sanctions for Defendant's Conduct Related to the Telemarketing Lead Lists

As noted above, Magistrate Judge Cudmore ordered Defendant to respond to Request for Production No. 4, which asked for documents related to Defendant providing consumer leads to any retailer, regional service provider, or distributor.  Magistrate Judge Cudmore also ordered Defendant to provide a representative to testify regarding the issue of the possible policy and practice of Defendant sharing leads from January 1, 2003 to the present.  See Opinion 165, pp. 8-9.

In response to Magistrate Judge Cudmore's Opinion 165, Defendant produced additional emails from 2011 relating to lead lists but no additional documents relating to the 2005, 2007, and 2008 incidents of lead list sharing with Marketing Guru and Defender

Security.  Defendant also tendered Michael Mills to testify on

Defendant's behalf on the topic ordered in Opinion 165.

Plaintiffs argue that Defendant first obstructed inquiry on the lead

list topic, then admitted Defendant did share lead lists with retailers, but

no longer has the evidence or any information on the specifics.  In

response, Defendant asserts it fully complied with Opinion 165 by

producing additional documents and making Mills available for

deposition.  Defendant describes the instances of lead list sharing shown

by the emails as "extremely isolated occasions under unique

circumstances." Def.'s Resp., p. 11 (d/e 219).  Defendant also points out

that the nine retailers deposed on the topic testified they never received a

lead list from Dish.  Def.'s Resp., pp. 11-12.

Defendant also notes that Plaintiffs did not depose the retailer

Defender Security.  Defendant asserts that the sharing of a lead list with

Defender Security was a "'one-off test[]'" run by Defender so that DISH

could consider Defender's request to do outsourced telemarketing vendor

work for DISH[.]"  Def.'s Resp., p. 12.  According to Defendant, all

available documents were produced.  With respect to Marketing Guru,

Defendant asserts that no representative recalls whether any lead list was

actually sent but agrees that, if it did occur, it was an isolated incident.

Def.'s Resp., p. 12.   Finally, Defendant explains the 2011 incident of

lead list sharing as an isolated occurrence.  Dish was experiencing

technical issues with its dialer and was unable to return calls to

consumers who made inquiries.  Def.'s Resp., p. 13.

As noted above, sanctions are appropriate where (1) the party had a

duty to preserve the evidence; (2) the duty was breached; and (3) the

other party was harmed by the breach.  Zang, 875 F. Supp. 2d at 885;

see also  ChampionsWorld, 276 F.R.D. at 582 (noting as a fourth factor

that the breaching party's willfulness, fault, or bad faith caused the

breach).  In this case, Defendant had a duty to preserve the documents

related to lead list sharing because of the July 2005 Demand and the

filing of this lawsuit March 2009.  Defendant did not preserve all of

those documents, and Plaintiffs are harmed by the failure to preserve

because Defendant would be liable for its retailers' unlawful

telemarketing if Defendant provided the retailers with the lead lists. Finally, Defendant's breach in this case was willful as evidenced by several factors.

First, Defendant has played fast and loose with the facts pertaining to whether Defendant provided lead lists to retailers.  Defendant previously advised two other federal courts that it did not share lead lists with retailers.  See Blake Van Emst Affidavit ¶ 7, Ex. 30 (d/e 201-31) dated December 14, 2008 and submitted to United States District Court for the Southern District of Ohio (stating that Dish does not supply contact information to retailers to make telephone calls); Bruce Werner Affidavit ¶ 11, Ex. 31 (d/e 201-32) dated March 3, 2011 and submitted to United States District Court for the Eastern District of Virginia (stating that Dish does not supply contact information to retailers to make telephone calls).  In this Court, Mills submitted a Declaration stating that Dish does not supply contact information to retailers to make telephone calls but also stating that it was not Defendant's "general policy" not to provide lead lists to retailers.  See Declaration of Michael

Page 39 of 44

Mills ¶¶ 4, 6, Ex. 29 (June 14, 2012) (d/e 201-30) (also noting he was aware of only one instance when Dish distributed a lead list for telemarketing purposes to a third-party retailer); see also Def. Resp. to Motion to Compel, p. 10 (d/e 152) (wherein Defendant noted that Plaintiffs sought information "based on an incorrect and unstated assumption by Plaintiffs that DISH did in fact distribute lead lists to Retailers").  As noted previously, however, documents were produced during discovery that showed that Defendant had, at least on a few occasions, shared such leads with retailers.

Defendant also asserted, in the Response to the Motion to Compel, that Plaintiffs sought information about Dish's policy and practice of distributing lead lists to retailers, which Defendant could not provide because it had no such policy and practice.  Def.'s Resp. to Motion to Compel, p. 11.  Regardless of whether Dish had a policy and practice of providing lead lists to retailers, Plaintiffs were entitled to discovery on the issue, as Magistrate Judge Cudmore concluded in Opinion 165.

Second, Defendant produced Mills to testify about the sharing of Lead Lists, but he had no more information than that provided for in the few documents produced on the issue.

Third, despite admitting that Defendant, for a limited time in September and November 2011, "obtained the assistance of two retailers . . . to place outbound telemarketing calls to consumers who made inquiries to DISH about service", Defendant did not provide additional documents about those instances.  See Def.'s Resp. p. 11, 13 (d/e 219) (also admitting the sharing of lead lists with four retailers "on extremely isolated occasions and under unique circumstances").  At the very least, the lead lists themselves must have existed at one time but Defendant has not produced them, most likely because Defendant did not retain them and the documents no longer exist.

As evidenced above, Defendant's conduct in this issue has been obstructive.  Defendant continues to assert it did not have a "policy and practice" of providing lead lists to retailers, as if that excuses Defendant from providing information about the instances when lead lists were

shared.  It does appear, however, that such documents no longer exist.
Therefore, this Court concludes that despite having an obligation to
retain the documents pertaining to lead lists, Defendant did not do so.

It is within this Court's discretion to fashion the appropriate
sanction.  Plaintiffs ask that the Court either (1) issue a finding of fact
that "during the time period covered by this case, Dish had a practice of
sharing telemarketing leads with retailers, but the extent of that practice
is impossible to discern because Dish destroyed evidence about it" or (2)
give an adverse inference instruction that the evidence Defendant
destroyed "would have shown that Dish shared telemarketing leads with
its retailers, but that the extent of the practice is impossible to discern
due to the missing evidence."  Pls.' Motion for Sanctions, pp, 24-25.

However, a more appropriate sanction under the circumstances of
this case is to instruct the jury that Defendant failed to preserve
information relevant to the litigation and that additional documents
related to certain instances of sharing telemarketing lead lists—as
indicated by the 2006, 2007, 2008, and 2011 emails that were

produced—were destroyed.  The jury may infer, but does not have to,

that the destroyed evidence relating to those instances was not favorable

to Defendant.  See, e.g., ChampionsWorld, 276 F.R.D. at 584 (finding a

breach of the duty to preserve and, while finding no evidence of

willfulness or bad faith destruction of records, the court still imposed

sanctions for the failure to have done more to preserve the documents);

Plunk v. Village of Elwood, Ill., 2009 WL 1444436, at *14 (N.D. Ill.

2009) (instructing the jury that they may, but did not have to, draw

certain inferences where the court found that the defendants were at

fault for failing to preserve the documents and acted recklessly).

## V. CONCLUSION

For the reasons stated, Plaintiffs' Motion for Evidentiary Sanctions

Pursuant to Fed.R.Civ. P. 37 (d/e 201) is GRANTED IN PART and

DENIED IN PART.  The following sanctions against Defendant are

appropriate: (1) Defendant is precluded from using at summary

judgment or at trial any documents or information about the creation

and scrubbing of telemarketing campaign lists that it did not provide to

Plaintiffs in discovery; (2) a finding that the Zee Sports Campaign contained a direct or indirect sales message and was conducted for commercial purposes; and (3) an instruction advising the jury that Defendant failed to preserve evidence relevant to the litigation, documents relevant to the sharing of telemarketing leads with retailers were destroyed, and that the jury may, but does not have to, infer that the destroyed evidence was not favorable to Defendant. Under the circumstances of this case, each party shall bear its or their expenses, including attorney fees.

ENTER: April 23, 2013

FOR THE COURT:

                          s/Sue E Myerscough
                        SUE E. MYERSCOUGH
                        UNITED STATES DISTRICT JUDGE