**E-FILED**
Wednesday, 09 October, 2013  04:13:15 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| and the STATES OF CALIFORNIA, | ) | |
| ILLINOIS, NORTH CAROLINA, | ) | |
| and OHIO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 09-3073 |
| | ) | |
| DISH NETWORK, L.L.C., | ) | |
| | ) | |
| Defendant, | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on the Objections to Opinion 240

Pursuant to Fed. R. Civ. P. 72(a) (d/e 249) filed by Plaintiffs United

States of America, and the States of California, Illinois, North Carolina,

and Ohio.  In Opinion 240, United States Magistrate Judge Byron G.

Cudmore granted in part and denied in part Plaintiffs' Motion to

Compel and Reopen the Deposition of Ken Sponsler and Motion to

Compel Discovery Over Dish's Privilege Assertion (d/e 203).

Plaintiffs object to Opinion 240 in two respects.  First, Plaintiffs object to Magistrate Judge Cudmore's interpretation of the scope of "considered" as used in Rules 26(a)(2)(B)(ii) and 26(b)(4)(C)(ii) of the Federal Rules of Civil Procedure.  Plaintiffs assert that this Court should find the term "considered" encompasses all aspects of an expert's prior retentions that objectively involve the subject matters covered by the expert's report.  Second, Plaintiffs object to Magistrate Judge Cudmore's determination that Dish was not required to disclose documents (including 22 documents[1] on Dish's privilege log) relating to data given by Dish to John Taylor and PossibleNow for prior call record analyses performed in 2008.

## I.  INTRODUCTION

The facts and background pertaining to this dispute are accurately set forth in Magistrate Judge Cudmore's Opinion (d/e 240).  To

---

[1] The 22 documents include 11 documents Magistrate Judge Cudmore had previously reviewed and 11 documents that were not submitted to Judge Cudmore before his ruling.  Magistrate Judge Cudmore reserved ruling on those 11 documents and directed that they be submitted in camera.  See Opinion, p. 19 (d/e 240).  Rather than have Judge Cudmore review those additional 11 documents, this Court will review them.

summarize, Plaintiffs sought to compel the disclosure of information provided to two of Dish's expert witnesses, Ken Sponsler, Vice President and General Manager of CompliancePoint, DM Inc. (CompliancePoint), a wholly-owned subsidiary of Possible Now, Inc. (PossibleNow), and John Taylor, Director of Project Management and Quality Assurance for PossibleNow. Plaintiffs also sought to reopen the deposition of Sponsler.

In October 2012, Sponsler provided an expert report in rebuttal to the expert report provided by Plaintiffs' witness Debra Green. However, Sponsler had previously consulted for Dish for many years on matters including telemarketing compliance.

Taylor conducted an analysis of Dish's call records for the time period of 2007 through 2010 (the 2012 Analyses) and provided a report. Taylor had previously performed similar analyses of call records for the time period of 2004 through 2007during settlement negotiations with the Federal Trade Commission in this case (the 2008 Analyses).

Magistrate Judge Cudmore substantially granted Plaintiffs' Motion. Judge Cudmore: (1) ordered that Dish make Sponsler available for an

additional deposition, not to exceed three hours, at which Plaintiffs may inquire about facts and data that Sponsler learned during his past experience which he considered in forming his opinions, including facts and data that he learned during his experience with both Defendant Dish Network, L.L.C., and other businesses[2]; (2) overruled Dish's claim of privilege for disclosing (a) the identity of the businesses with which Sponsler worked and (b) the facts and data that Sponsler learned from his experience with Dish and other clients and considered in formulating his opinions; (3) directed Dish to disclose any additional documents related to Sponsler's prior experience with Dish that contain facts and data that Sponsler considered in formulating his opinions; and (4) ordered that Dish disclose the facts or data that Joey Montano, currently the Resource Manager for Customer Service Center Administration at Dish, supplied to Taylor and that Taylor considered in preparing his expert opinions, if such information had not already been disclosed.

---

[2] Sponsler made specific references to his consulting work for other companies in his report.

Page 4 of 27

Magistrate Judge Cudmore also re-reviewed 11 documents that Plaintiffs claimed Dish must disclose due to using Sponsler and Taylor as expert witnesses.  Magistrate Judge Cudmore found that "Rule 26(b)(4) did not waive the attorney client privilege" that he had already found applied to 10 of the documents.  Opinion 240, p. 14.  Magistrate Judge Cudmore found that the remaining document, EKDW 00477902, would remain privileged because the work-product privilege was not waived.  Judge Cudmore reserved ruling on 11 additional documents listed in the Motion because those documents had not yet been submitted for review.  Those 11 documents have now been submitted to the Court.

Despite substantially prevailing on the Motion, Plaintiffs object to Judge Cudmore's Opinion in two respects.  First, Plaintiffs assert that Opinion 240 seems to hold that a party may withhold work product given to a testifying expert during a past retention so long as the expert says he did not consider the information in forming his new opinions, even if the prior work product relates to the expert's new opinions.  Second, Plaintiffs assert that Opinion 240 improperly holds that Dish is

not required to disclose facts, data, and assumptions given to Taylor for his 2008 Analyses.

Plaintiffs ask this Court to: (1) hold that "considered" under Rule 26(a)(2)(B) encompasses all information an expert received during prior retentions if the information relates to the subject matter in the expert report; and (2) order Dish to produce the 22 withheld documents and all other documents or information not yet disclosed that identify facts, data, or assumptions Taylor used to perform the 2008 Analyses.

## II. LEGAL STANDARD

A magistrate judge may hear and determine matters that are not dispositive of a claim or defense.  See Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A).  Routine discovery matters are generally considered nondispositive.  Westefer v. Snyder, 472 F. Supp. 2d 1034, 1036 (S.D. Ill. 2006).  When a district court considers objections to a magistrate judge's ruling on a nondispositive matter, the magistrate judge's disposition will be set aside only if it is clearly erroneous or contrary to law.  Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A).

### III. 2010 AMENDMENTS TO RULE 26

Federal Rule of Civil Procedure 26(a)(2)(A) requires that a party

disclose "the identity of any witness it may use at trial to present

evidence under Federal Rule of Evidence 702, 703, or 705."  Fed.R.Civ.P.

26(a)(2)(A).  That disclosure must be accompanied by the written report

of any witness retained or specially employed to provide expert testimony

in the case.  Fed.R.Civ.P. 26(a)(2)(B).

Following the 2010 amendments to Rule 26, Rule 26(a)(2)(B)

required that the written report contain, among other things, "the facts

or data considered by the witness" in forming his opinions, as opposed to

"data or other information" as had been required by the former Rule.

See Fed.R.Civ.P. 26, Advisory Committee Notes to the 2010

Amendments.  The Advisory Committee Notes indicate that requiring

the disclosure of "facts or data" was "meant to limit disclosure to

material of a factual nature by excluding the theories or mental

impressions of counsel" but at the same time should be "interpreted

broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." Id.

The 2010 amendments did not change the meaning of the term "considered." Fialkowski v. Perry, 2012 WL 2527020, at *3 (E.D. Pa. June 29, 2012). Moreover, the Advisory Committee specifically notes that "[t]he disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." Fed.R.Civ.P. 26, Advisory Committee Notes to the 2010 Amendments.

The 2010 amendments also added Rule 26(b)(4)(C). Rule 26(b)(4)(C) "provide[s] work-product protection for attorney-expert communications regardless of the form of the communications," except for communications that (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed.R.Civ.P. 26(b)(4)(C); Advisory Committee Notes to the 2010

Amendments.  "The rule does not exclude protection under other

doctrines, such as privilege or independent development of the work-

product doctrine."  Advisory Committee Notes to the 2010

Amendments; see also Yeda Research & Development Co., Ltd. v. Abbott

GmbH & Co. KG, --- F.R.D. ---, 2013 WL 2995924, at *7 (D.D.C. June

7, 2013) ("The 2010 amendment was, in essence, an effort to reign in

courts that had held that the disclosure requirement of Rule 26(a)(2)(B)

trumped all claims of privilege" and also noting that the theories and

mental impressions of attorneys are protected) (emphasis in original).

## IV. ANALYSIS

**A.    Plaintiffs Are Entitled to All Relevant Facts and Data on the
Subject Matters Covered by Sponsler's Expert Report that Sponsler
Acquired by Reason of His Prior Work for Dish**

Sponsler provided a rebuttal report in response to the expert report

by Plaintiffs' expert Debra Green.  Green's report contained her opinion

on whether Dish's efforts to achieve and enforce compliance with the

telemarketing laws met industry standards.  Green opined that Dish (1)

failed to establish effective measures and policies to prevent calls to the do-not-call list, (2) did not have an effective internal compliance program, (3) did not conduct itself in accordance with industry practice with respect to ensuring that outside retailers complied with telemarketing laws, and (4) failed to take meaningful enforcement action when it learned that its retailers violated the law which created an environment that allowed Dish retailers to continue committing such violations as long as they were generating additional sales.

Dish asserts that it only asked Sponsler to provide an opinion on Green's characterizations of the relationships among sellers, telemarketers, vendors, and others involved in the telemarketing process and the bearing those characterizations have on Dish's business relationships. Dish limited Sponsler to reviewing the Green Report and the materials Green relied on for her opinion.[3]

---

[3] Green reviewed the Amended Complaint, various depositions, sample call records, and selected discovery.

However, Sponsler's Report appears to do much more than provide an opinion on Green's characterizations of the relationships among sellers, telemarketers, vendors, and others involved in the telemarketing process and the bearing those characterizations have on Dish's business relationships.  In particular, Sponsler gives the following opinions in his Report:

*   Dish-Retailers relationships in terms of compliance responsibilities can be extremely complex.

*   Dish expends significant resources to determine the nature of the complaint and initiate reasonable measures in an attempt to prevent future occurrences.

*   The "reasonableness" of these measures is highly variable and for the most part is determined by the severity and magnitude of the perceived non-compliance.

*   I have observed human or technology errors that have resulted in thousands of potentially violative dials by companies with an otherwise flawless compliance record.

*   Dish is continually challenged to balance the goals of business, consumer privacy, public image, and the retailer relationship.

      \*      Dish has limited control and recourse options in retailer relationships with severing of the contract being the ultimate course of action.

      \*      It is for this reason that Dish often expends significant resources to identify issues and work to remediate corrective measures even though they have little control over the operational compliance processes of other Sellers such as retailers.

Plaintiffs claim such information must have come from Sponsler's prior work for Dish.

Following a deposition, during which Dish's counsel objected to Plaintiffs' counsel's inquiries into Sponsler's past experience with Dish, Plaintiff filed a motion to compel.  See d/e 203.  Plaintiffs asked the Court to, among other things, require Dish to produce documents, communications, and information provided by Dish and its retailers to Sponsler on the subject matter covered by the expert reports.  See d/e 203, p. 18.

Citing Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co., 412 F.3d 745, 751 (7th Cir. 2005), Magistrate Judge Cudmore held that Sponsler must disclose all facts and data given to him

to review in preparing his opinions, even if he did not rely on them.

Opinion, p. 13 (d/e 240).  Judge Cudmore also ordered Dish and

Sponsler to produce "any documents that contain facts or data

concerning Sponsler's prior experiences (including his experience with

Dish) that he considered in formulating his opinions[.]"  Opinion, p. 14

(d/e 240).

Magistrate Judge Cudmore rejected the persuasive authority cited

by Plaintiffs which held that an expert is deemed to have considered facts

or data "if the expert 'has read or reviewed the privileged material before

or in connection with formulating his or her opinion.'"  Opinion, p. 15-

16 (d/e 240).  Judge Cudmore held that he would "following the Seventh

Circuit's interpretation of Rule 26(a)(2) set forth in <u>Fidelity National</u>

<u>Title Ins. Co. of New York</u>, as modified by the 2010 Amendments to the

Rule."  Opinion, p. 16.

Plaintiffs object to Opinion 240 to the extent that Magistrate

Judge Cudmore limited the scope of "considered" to the materials the

expert admits he used in forming his opinions.  Plaintiffs assert that they

are entitled to all relevant facts and data on the subject matter covered by the expert report that the expert acquired by reason of his prior retentions. Plaintiffs ask the Court to hold that "considered" under Rule 26(a)(2)(B)(ii) "encompasses all aspects of an expert's prior retentions that objectively involve the subject matters covered by the expert's report—not just the aspects the expert will admit he used in forming the opinions in his report." Objection, p. 8.

Dish responds that Magistrate Judge Cudmore correctly interpreted and applied Seventh Circuit law regarding the required scope of expert disclosures. Defendant asserts that Sponsler is not required to turn over every document from his prior retentions.

This case presents an interesting question. On the one hand, an expert should not be able to limit the discoverability of facts and data learned during a prior retention by simply stating that he did not consider them when forming his current opinion. On the other hand, an expert should not have to disclose all facts and data known to him relating to any work he ever performed for a party.

To the extent Magistrate Judge Cudmore interpreted "considered" to include only the materials Sponsler admits he considered and the materials Dish or its retailers specifically gave Sponsler to review, the Court finds that conclusion clearly erroneous and contrary to law. Such a reading of the term "considered" is far too narrow.

In <u>Fidelity</u>, 412 F.3d 745, the plaintiff's expert conducted a detailed investigation and prepared interview notes. The interview notes (which the expert thought were destroyed but, in fact, had not been destroyed) were not turned over because the plaintiff thought the notes were irrelevant to the expert's opinion. The Seventh Circuit rejected that argument, noting that a "litigant is required to disclose to his opponent any information 'considered' by the litigant's testifying expert." <u>Fidelity</u>, 412 F.3d at 751. The Court held:

> A testifying expert must disclose and therefore retain whatever materials are given to him to review in preparing his testimony, even if in the end he does not rely on them in formulating his expert opinion, because such materials often contain effective ammunition for cross-examination. [Citations.]

But he is not required to retain every scrap of paper that he created in the course of his preparation—only documents that would be helpful to an understanding of his expert testimony or that the opposing party might use in cross-examination.  [Citation.]

Id.

Dish appears to read Fidelity as holding that a testifying expert need only disclose the materials given to him to review in preparing his testimony.  At least one district court in the Seventh Circuit has read Fidelity narrowly.  See Allstate Ins. Co. v. Electrolux Home Products, Inc., 840 F.Supp.2d 1072 (N.D. Ill. 2012) (holding that a party was not required to disclose confidential documents provided to an expert in another matter and which did not impact the expert's opinion; the court interpreted Fidelity as holding that "considered" applies to that information an expert actively reviews and contemplates and then chooses not to rely upon; an expert does not consider, rely upon, or list confidential documents in the report where that information is simply part of his background).

However, the issue in <u>Fidelity</u> was whether an expert must preserve materials given to him even if he did not rely on them in formulating his opinion.  The Seventh Circuit did not address the specific issue here: whether "considered" includes facts and data given to a testifying expert during a prior employment/retention[4] where the prior matter involved the same subject matter covered by the expert's report.

Plaintiffs cite to several district court decisions that use "an objective test that defines 'considered' as anything received, reviewed, read, or authored by the expert, before or in connection with the forming of his opinion, if the subject matter relates to the facts or opinions expressed."  <u>Euclid Chemical Co. v. Vector Corrosion Technologies, Inc.</u>, 2007 WL 1560277, at * 4 (N.D. Ohio May 29, 2007) (footnotes

---

[4] It appears that Sponsler's prior retentions/employment by Dish were unrelated to this litigation.  Therefore, it does not appear that Rule 26(b)(4)(D) applies.  <u>See</u> Fed.R.Civ.P. 26(b)(4)(D) (a party may not generally discover facts known to an expert employed only in anticipation of litigation or for trial preparation who is not expected to testify as a witness at trial); <u>but</u> <u>see</u> <u>also</u> <u>Sara Lee Corp. v. Kraft Food Inc.</u>, 273 F.R.D. 416, 419-20 (N.D. Ill. 2011) (noting that where an expert serves both as a non-testifying consultant and a testifying expert, "the broader discovery for testifying experts applies to everything except 'materials generated or considered uniquely in the expert's role as a consultant.'") (emphasis and citations omitted).

omitted) (citing cases). These courts generally find that an expert's assertion that he did not consider certain materials when forming his opinion does not control. Id.; see also In re Commercial Money Ctr., Inc. Equip Lease Litigation, 248 F.R.D. 532, 534 (N.D. Ohio 2008) ("[E]xperts have been deemed to have considered materials even when they have testified, under oath, that they did not consider the materials informing their opinions"). "[S]uch an assertion by an expert witness could become too easy a dodge." Simon Property Group L.P. v. mySimon, Inc., 194 F.R.D. 644, 650 (S.D. Ind. June 20, 2000).

Several district courts also hold that when the subject matter of the expert's prior work relates to the facts and opinions the expert expresses in his report, "courts should order disclosure when there is at least an ambiguity as to whether the materials informed the expert's opinion." Monsanto Co. v. Aventis Cropscience, N.V., 214 F.R.D. 545, 546-47 (E.D. Mo. 2002); see also Western Resources, Inc. v. Union Pacific R. Co., 2002 WL 181494, at *10 (D. Kan. Jan. 31, 2002); but see United States v. Bazaarvoice, Inc., 2013 WL 3784240, at *3 (N.D. Cal. July 18,

2013) (noting that documentary information might have been relied on "even if [it was] not technically reviewed by the expert in preparing his report" but also noting that relying on memory is different than reviewing facts or data); <u>Employees Committed for Justice v. Eastman Kodak Co.</u>, 251 F.R.D. 101, 105 (W.D. N.Y. 2008) (finding that the results of an expert's earlier consulting work did not need to be disclosed because it was not sufficiently related to his expert work; however, the methodologies used in the earlier work were discoverable because the expert referenced the earlier methodologies in his report).

The Court finds these cases persuasive. A court should not solely credit the subjective representations of the expert when determining what the expert "considered." While the manner of applying an objective test is not entirely clear, the Court will order that Sponsler answer questions in his deposition regarding his prior work for Dish and its retailers. To the extent Plaintiffs believe the subject matter is sufficiently related to the opinions Sponsler expressed in his report, Plaintiffs can submit another request to the Court for production of documents relating to

that earlier work.  The Court can then decide whether Sponsler "considered" the earlier facts, data, or assumptions when preparing his expert report.

## B.   Facts and Data Relating to Taylor's 2008 Analyses Must Be Turned Over

Plaintiffs also object to Opinion 240 to the extent it does not require Dish turn over facts, data, and assumptions given to Taylor when performing the 2008 Analyses of Dish's call records.

Taylor supervised the team at PossibleNow that reviewed Plaintiffs' analysis of the 2007-2010 Dish call records and prepared a report of their analyses (the 2012 Analyses).  During Plaintiffs' deposition of Taylor, Taylor testified he previously performed similar analyses of Dish's calling records.

In the Motion to Compel, Plaintiffs claimed that because Taylor testified he relied on his prior analyses to inform his current analyses, Plaintiffs were entitled to full information about the earlier analyses, the results of those analyses, as well as the types of data, facts, and assumptions Dish and its attorneys gave Taylor and PossibleNow to

perform those analyses.  Plaintiffs argued that Dish waived any privilege over these documents by designating Taylor as a testifying expert.

Magistrate Judge Cudmore held that Dish was not required to disclose the facts, data, and assumptions given to Taylor for his prior analyses because (1) the prior analyses were distinct from the current analyses because they involved completely different data sets; (2) Taylor did not consider his prior analyses in formulating the new analysis; (3) although Plaintiffs may be entitled to the prior analyses as cross-examination or impeachment material, they are not subject to disclosure under Rule 26(a)(2)(B); and (4) the 11 documents already reviewed remain privileged.  Opinion at 14, 16.

These findings are clearly erroneous and contrary to law.  Taylor's 2008 Analyses and current analysis both considered call records for the month of October 2007—which Plaintiffs claim include 20 million calls during that month.  Therefore, Magistrate Judge Cudmore's factual conclusion that the two analyses involved completely different data sets was clearly erroneous.

In addition, Taylor testified that he used his prior experience analyzing Dish's call records to inform his analyses in his expert report. Taylor Dep. p. 34-35 (noting that during the earlier analyses he became familiar with Dish's "call record format, executed analysis based on that call record format, provided tabular data with numbers, no data back [sic] based on the analysis of that data" and had familiarity with the layout of Dish's calls); Dep. p. 54 (his earlier analyses assisted him because he recognized the "call record format" and "it was easy to set up the work flow to find the raw hits"); Dep. p. 101-102 (indicating his familiarity with the codes from his prior work).

Magistrate Judge Cudmore also found that Rule 26(a)(2) does not require an expert to disclose evidence of bias or all information that may be relevant or useful on cross examination.  However, as noted in Fidelity, materials that an expert "considered," even if he did not rely upon them, may contain "effective ammunition for cross-examination." Fidelity, 412 F.3d at 751.

Therefore, facts and data related to the 2008 Analyses must be disclosed.  See, e.g., Yeda Research, --- F.R.D. ---, 2013 WL 2995924, at *20 (finding that the plaintiff waived the work product protection of its expert's former work as a consultant by designating him as an expert; the subject matter of the earlier work directly related to the work as an expert).

C.    Some of the 22 Privileged Documents Must be Disclosed

Plaintiffs also object to the withholding of 22 documents on Dish's privilege log.  The Court has reviewed these documents.

Of the first 11 documents reviewed by Magistrate Judge Cudmore, the following documents remain privileged because, although they are communications between the party's attorney and the witness or the witness's employer, they are not communications that (1) relate to compensation; (2) identify facts or data that the expert considered in forming his opinions; or (3) identify assumptions that the attorney provided to the expert and that the expert relied on in forming his

opinions (Fed.R.Civ.P. 26(b)(4)(C)):  Nos. 921, 974, 975, 1251, 2396, 3424, 3448, 4447, 4452, and 4737.

The Court has also reviewed document EKDW 000477902, which is a draft document purportedly prepared by Taylor in October 2010 about telemarketing compliance guidelines employed by Dish.  The document provides information about various compliance technology tools employed by Dish, including scrubbing telephone numbers against the National Do Not Call List and identifying Do Not Call telephone numbers that qualify for the established business relationship exemption. Taylor, in his 2012 Analyses, evaluated Dish's calling records against PossibleNow's National Do Not Call Registry Historical Research Database.  See Taylor Report, p. 1.  Taylor concluded that he was able to exclude a large number of the calls Plaintiffs claim violated the law on various grounds, including that the established business relationship exception.  Because document EKDW 000477902 involves the same subject matter as that contained in Taylor's report, the document must be disclosed.

The Court reviewed the additional 11 documents requested by Plaintiffs and that Dish provided to the Court for an in camera inspection.  Three of those documents contain communications between counsel and Guy Caldwell of PossibleNow but do not contain facts, data, or assumptions as those terms are used in Rule 26(b)(4)(C).  Therefore, these documents need not be disclosed. See Nos. 3437, 4444, 4446; see also GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc., 2011 WL 5439046, at *15 (S.D. N.Y. November 10, 2011) (finding no need to consider the applicability of the attorney client privilege to a document where Rule 26(b)(4)(C) permitted the withholding of communications between an attorney and an expert witness except under three circumstances and none of those circumstances applied).

Several of the documents relate to the 2008 Analyses, which this Court has already held must be disclosed.  Some of the documents also contain facts or data counsel provided to Taylor for the 2008 Analyses. Therefore, the following documents must be disclosed: Nos. 51, 83, 1669, 2515.  Apparently document No. 3588 (2010 Do Not Call

Certification Report) has already been produced to Plaintiffs.  See

Plaintiffs' Reply p. 6 (d/e 232).  If not, the Court finds that the

document shall be produced.

The remaining documents (Nos. 78, 2454, 2455) involve emails to

and from Sponsler relating to his prior work for Dish.  Until Plaintiffs

obtain more information about Sponsler's prior work for Dish, the Court

cannot determine whether these documents should be disclosed.

## V. CONCLUSION

Plaintiffs' Objection to Opinion 240 (d/e 249) is GRANTED IN

PART.  In this case, the term "considered" under Rule 26(a)(2)(B) may

encompass information Sponsler received during prior retentions if the

information relates to the subject matter in the expert report.  Plaintiffs

may inquire of Sponsler about his prior retentions to determine whether

Dish must produce additional documents.  The Court also finds that

Taylor "considered" the 2008 Analyses when conducting the 2012

Analyses.  Therefore, Dish must produce all materials related to the 2008

analyses that identify facts, data, or assumptions Taylor used to perform

Page 26 of 27

the 2008 Analyses.  As for the 22 documents Plaintiffs sought, the following documents remain privileged: Nos. 921, 974, 975, 1251, 2396, 3424, 3448, 4447, 4452, 4737, 3437, 4444, and 4446.  The following documents must be disclosed: Nos. 51, 83, 1669, 2515, 3588, and EKDW 000477902.  The Court reserves ruling on the following documents until after Sponsler's additional deposition is completed: Nos. 78, 2454, 2455.

ENTER:  October 9, 2013

FOR THE COURT:

    s/Sue E Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE