E-FILED
Friday, 30 May, 2014  01:23:31 PM
Clerk, U.S. District Court, ILCD

# Exhibit 201

## FIRST MEETING OF MEMBERS

Star Satellite, having organized under the laws of the State of Utah, convenes its First Annual Meeting of Members on this 11th day of February 2003. Katie Myers was in attendance. It was proposed by Katie Myers that she relinquish her position as President of the Company and that Walter E. Myers be elected and appoint President. After appropriate discussion, Walter E. Myers as elected and appointed President/Treasurer of the Company.

It was proposed that the President's fees are to be $10.00 and other valuable consideration annually.

It was proposed that an Operating Agreement be created.

Dated this 11th day of February 2003.

Katie Myers
Member of Star Satellite LLC

FTC/ECHOSTAR (TENAYA) 00000268

FTC003-074610

# Exhibit
# 202

# STATEMENT OF WALTER ERIC MYERS

1. In 2003 I was 24 years old and attending college full-time.

2. To assist in financing my college education, in early 2003, I started a business named Star Satellite LLC to sell and install Dish Network Satellite TV systems during the summer months (late May - early September).

3. In 2003 Star Satellite earned a net profit of approximately $30,000.

4. In 2004 Star Satellite realized a net lost of approximately $2,000.

5. In May 2004 I wanted to find a way to keep Star Satellite's business operating and profitable during the non-summer months (September through May).

6. Star Satellite located a company on the internet known as Guardian Communications ("Guardian"), owned and operated by Kevin Baker, which advertised itself as a marketing company.

7. Guardian, through Kevin Baker, represented to Star Satellite that it operated a legal business.

8. Specifically, Kevin Baker represented to Star Satellite that Guardian "scrubbed" against all federal and state "do not call" lists every month.

9. Kevin Baker also represented to Star Satellite that Guardian spent $100,000 a year to stay in compliance with all FTC regulations!

10. Based on Kevin Baker's representations, between May and October 2004, Star Satellite began doing business with Guardian .

11. In May 2004, Star Satellite was a very small operation with only three (3) Quest phone lines.

12. By October 2004, Star Satellite had grown to 6-8 employees but still had only three (3) Qwest phone lines.

13. In October/November 2004, Guardian completely terminated marketing for Star Satellite for a period of three (3) weeks while Guardian conducted political party advertising for the United States presidential elections.

14. The fact that Guardian was being used for presidential elections confirmed my belief that Guardian was conducting all of its business within the bounds of FTC regulations.

15. In April 2005, Star Satellite qualified for and was approved for Dish Network's OE Program ("Program").

16. At the time Star Satellite qualified for the Program, I dropped out of school completely and devoted my full-time efforts to Star Satellite.

17. The Program allowed Dish Network to be responsible for all charges, installs, and maintenance of Dish Network customers.

18. Approval for the Program allowed Star Satellite to focus on marketing.

19. Star Satellite operated on the Program for only six and a half (6 ½) months from approximately May 1, 2005 until November 22, 2005.

20. In November 2005, I learned that Guardian was being investigated for violating FTC regulations.

21. At this time, I do not know if Guardian has violated FTC regulations.

22. At this time, it has been explained to me that if Guardian violated FTC regulations, Star Satellite may also be responsible for such violations because Star Satellite contracted with Guardian.

23. On November 22, 2005, I terminated Star Satellite's relationship with Guardian.

24. After Star Satellite terminated its relationship with Guardian, Star Satellite could no longer afford its building lease.

25. I attempted to locate someone to take over Star Satellite's building lease.

26. Star Satellite was able to find a new tenant that needed similar space.

27. To make the deal happen, however, Star Satellite was required to forfeit its tenant deposits, and transfer some of its personal property (conference table, computers, office equipment, etc.) to the new tenant.

28. Star Satellite is now in the process of liquidating its excess computers, phones, and office equipment.

29. In the last year and a half Star Satellite has moved 4 times and used 3 different types of phones.

30. Star Satellite has always been a young, overextended, and relatively disorganized company.

FTC003-075160

31.    Star Satellite was essentially a bunch of college students working part-time to finance their education.

32.    High employee turnover at Star Satellite was consistent and management for me has been exhausting.

33.    I was continually required to retrain young college students.

34.    I have heart problems and have already had 2 major heart surgeries.

35.    The stress of running the Star Satellite business has been exhausting for me.

36.    My doctor told me I have high blood pressure and high cholesterol and that I needed to either start taking Lipitor or reduce my stress level.

37.    I am now back in school.

38.    It will take me approximately one year to obtain a degree in construction management or general business.

39.    I am now married and have a 1 year old child.

40.    Operating Star Satellite has been very stressful and overwhelming for me.

41.    For my health and other reasons, Star Satellite is now operating at a significantly reduced level.

42.    I have inspected all computers and storage files and have located all of the documents available which are responsive to the FTC's Civil Investigative Demand (documentary material).

41.    To the best of my ability, I have provided a response to each request for documents which are categorized in the attached binder.



DATED this ⟨2-2⟩ day of March, 2006.

Walter Eric Myers

459984.1

# Exhibit
# 203

January 25, 2005

Ms. Katie S. Myers, Manager
Mr. Walter Eric Myers, Manager
Star Satellite LLC
1760 E. Downington Ave.
Salt Lake City, UT 84108

David K. Moskowitz
Echostar Satellite LLC
9601 S. Meridian Blvd
Englewood CO 80112

**Re:**   <u>**Violation of Telephone Consumer Protection Act**</u>

Dear Principals of Star Satellite LLC and Echostar Satellite LLC::

     I am writing to you regarding your recent prerecorded telephone solicitation to my residential telephone line encouraging me to purchase satellite TV service. This call was initiated without my express invitation or permission. (Please see attached memorandum of this call).

     A federal law enacted in 1991 called the Telephone Consumer Protection Act (the "TCPA") makes it unlawful for any person within the United States to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party. 47 U.S.C. § 227(b)(1). The federal law also provides that a person who makes such a call is liable for $500 in damages for each such call. If the court finds that the defendant acted willfully **or** knowingly (that is, you knew you were delivering this message without my prior express consent, regardless of whether you knew about the TCPA), the court may **triple the damage award.** *See* 47 U.S.C. § 227(b)(3).

     The laws of the State of Washington also make this activity unlawful under RCW 80.36.400. This means that in addition to the damages for violation of the federal TCPA you may also be liable for $500 in damages under state law. The Washington State Consumer Protection Act also provides that the court may **triple the damage award.** RCW 19.86

     By making this unsolicited call, you violated both state and federal laws and are now liable to pay a statutory remedy of not less than $500 per violation under 47 U.S.C. § 227(b)(3) plus $500 per violation under RCW 80.36.400(3). I have reason to believe that you willfully or knowingly violated these laws, which would make you liable for up to $3,000 per call.

**FTC/ECHOSTAR000762**

Confidential-US v. Dish                                                                                                Dish-00004661

As you can see, I am serious about enforcement of these laws. To save us both time and effort, I am willing to settle this case for a remedy of $1,000 per violation. To do this, call me at (███) ████████ and I will send you a settlement agreement.

If you do not choose to settle, I can assure you that I will do my part to help enforce the laws as Congress and the Washington State Legislature intended and I will sue you for violations of the TCPA and the Washington State Consumer Practices Act and a demand for treble damages and attorneys' fees.

This offer of settlement will remain open for ten (10) days from your receipt of this letter. I look forward to your prompt response.

Very truly yours,



Issaquah, WA 98027
(███) ████████
████████@caplanlink.com

MEMORANDUM OF CALL:

Date: Wednesday, January 25, 2005
Time: 4:00 p.m.
Originating Number: 111-111-1111
Terminating Number: 425-644-7277

Details of Call:

*Message began with "Please don't hang up," and ended by telling me to press 1 if interested. When I pressed 1 the call was connected to a screener to determine my qualification as a homeowner, then to Allan Spencer, who fully identified Star Satellite of Provo, UT as the entity responsible for the call.*

**FTC/ECHOSTAR000763**

Confidential-US v. Dish

# Exhibit
# 204

| | |
|---|---|
| **From:** | Kramer, Stephanie [Stephanie.Kramer@echostar.com] |
| **Sent:** | Friday, February 18, 2005 6:27 PM |
| **To:** | FeedBack |
| **Subject:** | FW: Authorized Dish retailers and illegal sales tactics |

**Importance:** High

I don't know what to do with this email. Please read
Brenda

-----Original Message-----
From: D███ H███ [mailto:███████████@sbcglobal.net]
Sent: Friday, February 18, 2005 10:13 AM
To: CEO; CEO of Dish Network; DeFranco, Jim; Schwimmer, Michael; Griffin, Beatrice; .
CoopAdvertising; CharlieChat; TechForum
Subject: Authorized Dish retailers and illegal sales tactics
Importance: High

To anyone who might still care:

I have been having troubled with one of your authorized retailers. I have called Dish Network
multiple times with no resolution. I am emailing to any address I can find to see if anyone at Dish
still has any business ethics at all.

I have been receiving telephone calls with a frequency of about 2 per day on both of the phone
lines in my home.

My concerns are:

1)The call is a recorded message that ends with instructions to press a key to hear more or order
the product. It is my understanding that it is illegal to make unsolicited prerecorded calls.

2) The company identifies itself as Dish Network, but will disconnect your call if you ask anymore
questions (such as business name, address, contact number). I believe you are required to
identify yourself, at least to the extent of providing a business name and contact information.

**FTC/ECHOSTAR001231**

3) The operators will hang-up if you ask for their name, or their supervisor. One operator even challenged me to "go ahead, try to report me.
Good Luck!" before she hung up.

4) The caller ID is either blocked or spoofed (caller ID shows 1-111-111-1111).

I believe Dish Network needs to be a little concerned when another company is using aggressive tactics to sell their product. In addition to the
tactics being used, the company identifies itself as Dish Network!

As a Dish Network customer for the past 6 years, I have come to expect more from this company.

The retailer in question is Star Satellite, 1922 North 1120 West, Provo, UT.
They use two numbers, (866) 347-4951, and (866) 504-3474. The second number will forward you directly to Dish Network if you follow the prompts to speak to an operator.

Having reached the end of my resources, the only action I can now take is to file an FCC complaint for every call I receive. I have started this by filing a complaint against Star Satellite, and another against Dish Network for each call I receive.

I am in the process of finding another source of programming.

Congratulations, I hope your sales tactics will allow you to gain more new customers than you lose in the process.

D███ H███

**FTC/ECHOSTAR001232**

Confidential-US v. Dish

Dish-00005131

# Exhibit
# 205

From:             Williams, Margot
Sent:             Friday, May 27, 2005 05:23 PM
To:               Medina, Jeff
CC:               Duffy, Mark; Bangert, Russell
Subject:       RE: Retail Complaint

Jeff,

I forwarded this information to Regina Thomas for further investigation. We have received a few complaints for other issues on this retailer that have also been sent to her for review and assistance.

Margot W.
Retail Analyst III
Retailer Escalations

      -----Original Message-----
      **From:** Medina, Jeff
      **Sent:** Wednesday, May 25, 2005 4:21 PM
      **To:** Williams, Margot
      **Subject:** FW: Retail Complaint

      Are these your boys again...?

      Jeff

      -----Original Message-----
      **From:** Duffy, Mark
      **Sent:** Wednesday, May 25, 2005 4:13 PM
      **To:** Medina, Jeff
      **Cc:** Bangert, Russell
      **Subject:** FW: Retail Complaint


      **Jeff:**

      Will you or someone on your Team assist Russell Bangert with this issue?

      Thanks for your help.

      Mark Duffy

      -----Original Message-----
      **From:** Bangert, Russell
      **Sent:** Wednesday, May 25, 2005 3:57 PM
      **To:** Duffy, Mark
      **Subject:** Retail Complaint

      Mark,

      Do you have any contacts in retail services that work on escalations?

      We have a retailer... Star Satellite of Provo, Utah that is telemarketing using automated messages

and our name instead of theirs. I have been getting some complaints about this from consumers thinking that this is us.

Any information you could provide me with would be a great help.

Thanks,

Russell

Confidential-US v. Dish

Dish-00001403

# Exhibit 206

# Eric Myers

**From:** Anderson, Jordan [Jordan.Anderson@echostar.com]
**Sent:** Thursday, July 28, 2005 1:48 PM
**To:** 'emyers@starsatllc.com'; 'bcs@starsatllc.com'
**Subject:** Call Center Training Help

Gentlemen-

I'm still working on getting the QA form for you, but I did find some scripts for outbound calling that you may be able to adapt and work with, if you want.

## Opening
Hello may I speak with _____.
If lead not available, ask: Are you a member of the household? If customer response is NO then proceed with Alternative Intro.

Qualified Lead Introduction and Purpose: (Speaking to lead)
Hello, my name is _____ (first name) with Dish Network and the reason for my call is to inform you that you have been PRE SELECTED to participate in our exclusive promotion available to you in (customers' city/state). This offer includes FREE equipment, FREE installation with no startup costs!

Alternative Introduction and Purpose: (If person answering is a decision maker)
Hello, my name is _____ (first name) with Dish Network and the reason for my call is to inform you that you are eligible to participate in our exclusive promotion available to you in (customers' city/state). This offer includes FREE equipment, FREE installation with no startup costs!

**Remember: Deliver quickly, given more as a statement - Sounding enthusiastic is key.**

## Overcoming Objections

"I AM HAPPY WITH CURRENT PROVIDER."
(Customer Name), I am glad to hear they are treating you well. What is it that you really like about them?
*Proceed to Probing.*

"I AM NOT INTERESTED."
(Customer Name), I would like to point out that with this offer you have the opportunity to receive more channels, better equipment and better service for less money than the competition. Let's put together a quote for you to consider and discuss with your family.
*Proceed to Probing.*

"I DON'T HAVE TIME."
(Customer Name), I understand you're busy so I will get to the point. We have a variety of GREAT promotions all FOR A LIMITED TIME. Our prices are as low as $19.99 a month for 3 months and we have even included FREE HBO and Showtime FREE for 3 months!! Again I know you are limited on time but I would like to put together a quote for you to consider and discuss with your family.
*Proceed to Probing.*

## Probing Questions

- What is it you like about your current television entertainment provider?
- What type of programming do you and your family enjoy watching?
- How important is reducing programming cost to you?
- Describe to me your ideal television provider.

FTC/ECHOSTAR (TENAYA) 00000205

FTC003-074547

**Deliver the Service Points**
Based on the information you've provided, you are eligible for our LIMITED TIME OFFER which will give you over
____ channels including 8 channels of HBO and 10 channels of Showtime, for only $_____ for 3 months. Also,
based on the information I have here you do qualify for your local channels out of (Available Networks) but just to
confirm you are still at **confirm customer's address**.

**Close**
"Pricing and programming subject to change."

My first available date for installation is (date/time).

Would you prefer mornings or afternoons?

**Qualification**

Now to qualify you for this promotion, we just need two minimum requirements. First I will need your SSN# to run
a credit score and a valid credit or debit card on which we will place a $1.00 hold 3 days, just for verification
Mr./Ms._____. Which credit card would you like to use today?

"I DON'T WANT TO GIVE THAT INFORMATION/SECURITY CONCERN"
(Customer Name), I would like to point out that the security of your account is our priority and no one can access
this information for personal gain. Since this promotion offers so much we are required to confirm your identify as
well as credit status in order to provide this to you. Over 11 million have already said "YES" lets get your started.
Can you verify your Social Security Number?

**Promotion Details**

All this for only $_____ per month for your first three months. After three months your monthly price will be
$____ per month which will include your local programming. Keep in mind we are the Lowest All Digital Price in
America. If you choose to keep the promotional HBO and Showtime after three months, it will only cost you $_____
per month, you can decide!

**Disclosures**

!!! GIVE ALL DISCLOSURES BEFORE TAKING PAYMENT !!!

**DHA Disclosures**

Before I process your payment for the activation fee, I would like to cover key points of this great promotion with
you:

- Minimum Programming

If you do not maintain the minimum programming (AT60 or DISH Latino or Great Wall), or your service is
cancelled or terminated, the equipment provided to you must be returned within 15 days of such cancellation
or termination or an equipment charge will be assessed, which at a minimum is $100 per receiver.

- All Applicable Fees

DVR Fee: There is a $4.98 fee per month for each DVR receiver. This is a great deal since our DVR allows
you to record up to 100 hours of programming, pause, rewind and replay live TV. (No charge if subscribes to
AEP or AT180 annually w/all 4 premiums of DISH Latino Max w/all 4 premiums)

Equipment Rental Fee: The 1st receiver's rental fee is included in your basic programming package. There is
an additional $5 per month rental fee per receiver beyond the first.

A $4.99 per month additional outlet programming access fee will be charged to your account for each dual-

FTC/ECHOSTAR (TENAYA) 00000206

3/14/2006

tuner receiver, but this fee will be waived on a monthly basis for each receiver that is continuously connected to your same land-based phone line.

- 1st Bill / 2 Months / $49.99 Credit

Your first bill will be for two months of services totaling $_____. You will see a $49.99 ($69.98 with 625) promotional charge as well as a $49.99 credit on your first bill. Your monthly rate will be $_____. This does not include any applicable sales tax. All payments for programming are non-refundable.

Pricing and programming subject to change.

### *Additional Disclosures for DHA 12/24*

### Cancellation Fee

There will be a cancellation fee of ($20 per remaining month in DHA 12, $10 per month in DHA 24) if you cancel your service prior to completing the 12/24 month agreement.

### DHPP

The DISH Home Protection Plan is free for the term of your agreement (12/24 months), after that it will be added to your bill monthly at $5.99 per month.

### IMPORTANT!

"Congratulations Mr. / Ms. _____! You will receive our Digital Home Advantage promotional price, which means your bill will be $12 less per month for your first three months of service, and you will receive HBO and Showtime FREE for three months as well. Your normal monthly rate of $_____ will be applicable with your third billing. After three months you can either keep the HBO and Showtime packages at a cost of an additional $22.99 per month, or call in to tailor a package that suits your needs."

**Do you Rent or Own your home? IF RENT: You must have written permission from your landlord to install the system when our technician arrives.**

### FFA Disclosures

Before I process your payment, I would like to cover key points of this great promotion with you:

- Equipment Credits

You will receive (30 months for 1 receiver / 40 months for 2 receivers) $5 monthly credits. You must remain active with the minimum programming (AT60, DISH Latino, or Great Wall TV, currently $31.99, $29.99 or $34.99 per month) to continue to receive your credits. If you disconnect, or do not have minimum programming the remaining credits will be forfeited.

- All Applicable Fees

DVR Fee: There is a $4.98 fee per month for each DVR receiver. This is a great deal since our DVR allows you to record up to 100 hours of programming, pause, rewind, replay live TV and skip commercials. (No charge if subscribes to AEP or AT180 annually wi/all 4 premiums or DISH Latino Max w/all 4 premiums)

Additional Outlet Fee: There is an additional $4.99 per month additional outlet fee per receiver beyond the

3/14/2006

first.

- 1st Bill / 2 Months

Your first bill will be for 2 months of services totaling $_____. Your monthly rate will be $_____. This does not include any applicable sales tax. All payments for programming are non-refundable.

IMPORTANT!

For customers taking the free HBO and Showtime offer:

"Congratulations Mr./ Ms. _____! You will receive HBO and Showtime FREE for your first three months of service. You will be billed $22.99 for HBO and Showtime on your third billing. After three months you can either keep the same lineup you have, or call us to tailor a package to meet your specific needs."

"Pricing and programming subject to change."

**Do you Rent or Own your home? IF RENT: You must have written permission from your landlord to install the system when our technician arrives.**

If your customer has ordered a DISH Player-DVR 625:
Mr./Ms. _____ if you like, I can waive the $19.99 lease upgrade fee for your DVR receiver. All you need to do is agree to an additional 12 months of service.

(Change promo to DHA 24 if your customer agrees)

**Welcome Message**
(Customer Name), I want to be the first one to welcome you to the DISH Network family. Is there anything else I can help you with?
If nothing else: (Customer Name), Thank you for choosing DISH Network and have a Great Day.

Ms. Jordan Anderson
Sales Partner Management
DNS LLC
EchoStar Communications Corporation
Office: 303.723.2424
Fax: 303.723.3672
Email: jordan.anderson@echostar.com
*Get 12 Million!*

3/14/2006

FTC003-074550

# Exhibit
# 207

# Eric Myers

**From:** Mills, Mike [Mike.Mills@echostar.com]
**Sent:** Thursday, November 03, 2005 3:59 PM
**To:** Eric
**Cc:** Willis, Chris
**Subject:** FW: Star Satellite Sales Script and Second Disclaimer after the OE Tool One.

Here are my comments/changes for the disclaimer. We are working on the sales script – we'll have something for you by COB tomorrow.

Mike Mills
National Sales Manager
303.723.2865

-----Original Message-----
**From:** Eric Myers [mailto:emyers@starsatllc.com]
**Sent:** Wednesday, November 02, 2005 10:55 AM
**To:** Mills, Mike; Willis, Chris
**Subject:** Star Satellite Sales Script and Second Disclaimer after the OE Tool One.

Let me know if you need me to make any changes to these scripts. Also I haven't heard back can anyone give us better info on where to go or what to do when people in the tool are scheduled 14 to 21+ days out?

Let me know.

Eric Myers
President
Star Satellite LLC
Phone 8014376524

FTC/ECHOSTAR (TENAYA) 00000210

3/14/2006

FTC003-074552

# Exhibit
# 208



DANA E. STEELE, ESQ.
Direct Dial No. (303) 723-1621
Direct Fax: (303) 723-2571

August 12, 2005

*VIA FACSIMILE (801) 437-6536*
Daniel Myers
Star Satellite LLC
3550 N. University
Provo, UT  84606

Re:    **Notice of Claim; Demand for Defense and Indemnity**
        ***Jay Connor v. Star Satellite, LLC and DNSLLC***
        **State of South Carolina, County of Charleston**
        **Small Claims Case No.: 1005-SC-86-1746**

Dear Mr. Myers:

        As you may be aware, Jay Connor has filed the attached complaint against Star
Satellite LLC and Dish Network Service L.L.C. ("DISH") for violation of the Telephone
Consumer Protection Act for a prerecorded voice call made to Mr. Connor's residential
telephone number on or about July 5, 2005.

        It is our position that, pursuant to Section 7.1 of your Retailer Agreement, you are
required, among other things, to use your best commercial efforts to further EchoStar's
business, reputation and goodwill.  Furthermore, pursuant to Section 13 of your
Agreement, we are hereby requesting that Satellites and More defend and indemnify
EchoStar from and against any and all costs Dish Network incurs therein.

        Please contact me directly, upon receipt of this correspondence, at (303) 723-1621
so that we may discuss this matter further, as an Answer is due August 31, 2005.

        Thank you for your attention to this matter.  I look forward to working with you.

                            Sincerely,

                            Dana E. Steele
                            Corporate Counsel

cc:    Robb Origer, Retail Services (w/o encl)
        Michael Spencer, Regional Director (w/o encl)

9601 S. Meridian Boulevard • Englewood, CO  80112
Tel: (303) 723-1600 • Fax: (303) 723-1699

FTC/ECHOSTAR (TENAYA) 0000080

FTC003-049633

FTC003-049634

# Exhibit
# 209

| STATE OF SOUTH CAROLINA | ) | CASE NO.: 05-SC-86-1744 |
|---|---|---|
| COUNTY OF CHARLESTON | ) | |

|  |  |
|---|---|
| JAY CONNOR, | ) |
|  | ) |
|  Plaintiff, | ) |
|  | ) **VERIFIED COMPLAINT** |
| vs. | ) |
|  | ) |
| STAR SATELLITE, LLC | ) |
| and | ) |
| DISH NETWORK SERVICE, LLC | ) |
|  | ) |
|  Defendants. | ) |
|  | ) |

FILED IN CHARLESTON COUNTY

JUL 2 1 ...

SMALL CLAIMS COURT

**ADDRESS FOR REGISTERED AGENT OF DEFENDANT STAR SATELLITE, LLC:**
Walter E. Myers
3550 N. University Ave. Suite 300
Provo, Utah 84604

**ADDRESS FOR REGISTERED AGENT OF DEFENDANT DISH NETWORK SERVICE, LLC:**
David K. Moskowitz
9601 S. Meridian Blvd.
Englewood, Colorado 80112

Plaintiff complaining of the Defendants alleges as follows:

## TYPE OF ACTION

1.  This is an action to recover statutory damages imposed by 47 U.S.C. 227, and trebled damages constituting forfeiture or other penalty.

## PARTIES

2.  Plaintiff is a resident of Charleston County, South Carolina, and the statutory violations and injury to Plaintiff occurred in Charleston County.

3.  Defendant Star Satellite, LLC (herein after "Star Satellite) is a Limited Liability Company that conducts and transacts business in Charleston County and makes telemarketing calls to residents of Charleston County.

FTC/ECHOSTAR (TENAYA) 0000082

4. Defendant Dish Network Services, LLC and (herein after "Dish Network") is a Limited Liability Company that conducts and transacts business in Charleston County and makes telemarketing calls to residents of Charleston County.

5. Defendant Star Satellite, LLC, (herein after "Star Satellite") is an authorized agent of Dish Network.

## VENUE AND JURISDICTION

6. The Telephone Consumer Protection Act ("the TCPA or "the Act") consists of 47 U.S.C. 227 as amended and the FCC's implementing rules (see generally 47C.F.R. Part 64 Subpart 1200 and Part 318). The TCPA places conduct, record keeping, and disclosure requirements on entities engaged in telephone solicitations and facsimile transmissions, and it provides a private right of action by a consumer in State court in response to violations of the TCPA's regulations.

7. This cause of action arises out of conduct of Defendants in initiating a telephone call to Plaintiff, to his residential telephone number in Charleston County.

8. Venue and jurisdiction are proper in this Court pursuant to 47 USC § 227 and SC Code Ann § 36-2-801 and the laws of the United States and Constitution as they may apply.

## ACTS OF AGENTS

9. Whenever it is alleged in this complaint that Defendants did any act, it is meant that the Defendants performed, caused to be performed, and/or participated in the act and/or that Defendants' officers, employees, contractors, assigns, successors, predecessors, affiliates, or other agent performed or participated in the act on behalf of, for the benefit of, and/or under the authority of the Defendants.

## DEFENDANTS' USE OF PRERECORDED TELEPHONE MESSAGES

10. Defendants use, directly and/or by their agents, one or more devices that calls residential telephone subscribers and delivers messages using a prerecorded or artificial voice.

11. Defendants directly and/or by their agents, did initiate the telephone calls alleged herein with a device that delivered messages using a prerecorded or artificial voice.

12. Defendants directly and/or by their agents, are aware of this device's designed operation and/or have knowledge that calls were being made using an artificial or prerecorded voice to deliver messages.

13. Defendants directly and/or by their agents, can exercise control over the content of the messages delivered by the artificial or prerecorded voice.

FTC/ECHOSTAR (TENAYA) 0000083

FTC003-074425

14. Defendants directly and/or by their agents, can exercise control over the people who make the calls that deliver messages by artificial or prerecorded voice.

## TELEPHONE CALL MADE TO PLAINTIFF

15. On or about July 5, 2005 at or about 6:49 P.M. EDT, a telephone call was initiated to the Plaintiff's residential telephone number at ██████████ by or on behalf of the Defendants.

16. The purpose of the call was, among other things, to deliver a telephone message to the called party on behalf of the Defendants.

17. In the call described herein, Defendants willfully and/or knowingly intended to deliver a recorded message solicitation to the called party.

18. A true and correct transcript of the call is attached hereto, and incorporated herein by reference, as Exhibit "A".

## FIRST CAUSE OF ACTION - 47 U.S.C. 227 (b) (1) (B)
### Delivering an unsolicited advertisement using an artificial or prerecorded voice violating

19. Paragraphs 1 through 18 are restated as if set forth herein.

20. Defendants did make a telephone call to Plaintiff's telephone using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party.

### Violation of identification requirements – 47 C.F.R. 64.1200 (b) (1)

21. Paragraphs 1 through 20 are restated as if set forth herein.

22. The recorded message in the call did not fulfill the requirements of 47 C.F.R. 64.1200 (b) (1) in that during or after the message, state clearly the identity of such individual, business, or other entity making the call.

### Violation of identification requirements – 47 C.F.R. 64.1200 (b) (2)

23. Paragraphs 1 through 22 are restated as if set forth herein.

24. The recorded message in the call initiated to Plaintiff's residence did not fulfill the requirements of 47 C.F.R. 64.1200 (b) (2) in that during or after the message, state the telephone number or address of such individual, business, or other entity making the call.

FTC/ECHOSTAR (TENAYA) 0000084

FTC003-074426

### Failure to have a Do-Not-Call policy, or to make that policy available upon demand-47 C.F.R.64.1200 (d) (1).

25. Paragraphs 1 through 24 are restated as if set forth herein.

26. Defendants had no written DO-NOT-CALL policy available that fulfilled the requirements of 47 C.F.R.64.1200 (d) (1) at the time of the call.

### Willful or Knowing Violations

27. Defendants' actions, as described in paragraphs 20, 22, 24 and 26 manifest FOUR knowing and/or willful actions in violation of 47 U.S.C. 227 within the meaning of the 1934 Communications Act and the Federal Communications Commission.

### PRAYER FOR RELIEF

28. WHEREFORE, Plaintiff prays for the following relief, temporarily and permanently:

29. For the statutory damages of $500 per violation, to be awarded to the Plaintiff in accordance with the TCPA, for each of the Defendants' violations of that TCPA and;

30. For trebled damages to be awarded to the Plaintiff in accordance with the TCPA, for each of Defendants' willful and/or knowing violations of that TCPA listed in paragraph 27 above; and

31. For unspecified punitive damages in an amount to be determined by this Court.

32. For such other and further relief as the Court may deem just and proper.

33. Plaintiff waives the excess of any award above the jurisdiction of the Court in effect at the time judgment is rendered.

Respectfully submitted,
this is the 20 day of July, 2005.



Jay Connor Plaintiff, *Pro Se*

Charleston, SC 29407

FTC/ECHOSTAR (TENAYA) 0000085

FTC003-074427

## VERIFICATION

The Undersigned states and swears that all the forgoing allegations are true and correct to the best of his knowledge and belief.



Jay Connor

Subscribed and sworn to before me by Jay Connor on this the ___ day of July, 2005.



Notary Public for South Carolina
My commission expires on _____.

FTC/ECHOSTAR (TENAYA) 0000086

FTC003-074428

# Exhibit
# 210



**SATELLITE L.L.C.**

**Number of Pages including Cover Page:** 5

**Date:**      September 29, 2005

**To:**        Eric Myers
              Star Satellite LLC

**Fax #:**     (801) 437-6536 6537

**From:**      Amy S. Conley, Paralegal
**Phone #:**   (303) 723-1603
**Fax #:**     (303) 723-2065

---

Eric,

Thanks for sending a copy of the check. Our in-house counsel did have some pertinent changes to the Agreement so I am faxing a revised copy. Please forward to your attorney and if all the changes are satisfactory, please have it executed by Mr. Connor and I will have our General Counsel sign and forward a copy to you. Let me know if you have any questions whatsoever.

Thanks.

---

THIS FACSIMILE TRANSMISSION (AND/OR THE DOCUMENTS ACCOMPANYING IT) MAY CONTAIN CONFIDENTIAL INFORMATION BELONGING TO THE SENDER. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR TENTITY NAMED AVOVE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE TO ARRRANGE FOR RETURN OF THE DOCUMENTS.

FTC016-000127

```
************* -COMM. JOURNAL- ****************** DATE SEP-29-2005 ***** TIME 11:52 ********

      MODE = MEMORY TRANSMISSION            START-SEP-29 11:50    END-SEP-29 11:52

      FILE NO.=570

 STN    COMM.    ONE-TOUCH/    STATION NAME/TEL NO.                  PAGES    DURATION
 NO.              ABBR NO.

 001     OK        ⊠           918014376536                         005/005  00:02:09


                                                 -ECHOSTAR              ~

 ************************************* -303-723-1699  - ***** -            - **********
```



**Number of Pages including Cover Page:** 5

**Date:**          September 29, 2005

**To:**            Eric Myers
                   Star Satellite LLC

**Fax #:**         (801) 437-6536

**From:**          Amy S. Conley, Paralegal
**Phone #:**       (303) 723-1603
**Fax#:**          (303) 723-2065

Eric,
Thanks for sending a copy of the check. Our in-house counsel did have some
pertinent changes to the Agreement so I am faxing a revised copy. Please forward to
your attorney and if all the changes are satisfactory, please have it executed by Mr.
Connor and I will have our General Counsel sign and forward a copy to you. Let
me know if you have any questions whatsoever.

Thanks.

THIS FACSIMILE TRANSMISSION (AND/OR THE DOCUMENTS ACCOMPANYING IT) MAY CONTAIN CONFIDENTIAL
INFORMATION BELONGING TO THE SENDER. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE
INDIVIDUAL OR ENTITY NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY
NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON
THE CONTENTS OF THIS INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION
IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE TO ARRANGE FOR RETURN OF THE DOCUMENTS.

FTC016-000128

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** ("Agreement") is made effective this 1st day of September, 2005, by and between JAY CONNOR ("Claimant") and STAR SATELLITE, LLC ("SSLLC"), DISH NETWORK SERVICE, L.L.C., KATIE S. MYERS, Individually, and WALTER E. MYERS, Individually (collectively the "Defendants") (Claimant and Defendants collectively referred to as the "Parties")

**WHEREAS**, a dispute has arisen between Claimant and Defendants;

**WHEREAS**, Claimant has filed a complaint against Defendants in the Small Claims Court, State of South Carolina, County of Charleston, Case No. 2005-SC-86-1748 ("Case");

**WHEREAS**, the Parties wish to end their dispute, resolve the matter, and dismiss the Case.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties intending to be legally bound, hereby agree as follows:

1) SSLLC shall issue a check made payable to Claimant in the amount of Two Thousand Three Hundred Dollars and Zero Cents ($2,300.00).

2) In consideration for the actions referenced in the above paragraphs, Claimant does hereby absolutely and unconditionally release and forever discharge Defendants, its parents, subsidiaries, affiliates, agents, employees, representatives, successors and assigns ("Released Parties") from any and all manner of action or actions, claims and damages, whether known or unknown, fixed or contingent, direct or indirect, liquidated or unliquidated, that Claimant may now or hereafter have against any of the Released Parties, including those that are the subject of the Case.

3) By entering into this Agreement, Defendants are not admitting any liability, any and all such liability being expressly denied.

4) The existence of this Agreement, the terms and conditions of this Agreement, and the fact that the dispute between the Parties was settled must be kept strictly confidential, unless otherwise required by applicable law.

5) This Agreement is contractual and constitutes the entire agreement of Claimant and Defendants. The Parties hereto affirmatively represent that they are entering into this Agreement of their own free will, that none of them are relying upon any representation or failure to disclose information by any other party not contained herein, and that they have made independent investigation of any and all bases for their decision to execute this Agreement.

6) In the event that there is litigation between the Parties with regard to the enforcement of this Agreement, the prevailing party in such litigation shall be entitled to recover from the non-prevailing party the reasonable costs and attorney's fees incurred by the prevailing party in connection with such litigation.

7) This Agreement shall be governed, and enforced in accordance with the laws of the State of South Carolina. Venue for any and all claims brought hereunder or in connections shall be in Charleston County, South Carolina.

8) Upon receiving a check in the amount of Two Thousand Three Hundred Dollars and Zero Cents ($2,300.00), Claimant agrees to immediately dismiss all claims with prejudice in the Case and further agrees that this Agreement may be specifically enforced and used as evidence in subsequent proceedings in which a breach of this Agreement is alleged.

**IN WITNESS WHEREFORE,** this Agreement has been duly executed as of the date first written above.

By: _____
Print Name: _____

**STATE OF SOUTH CAROLINA**

**COUNTY OF** _____

The foregoing instrument was acknowledged before me this ___ day of _____, 2005 by JAY CONNOR, personally known to me to be the same person whose name is subscribed to the foregoing instrument or who has produced _____ as identification, appeared before me this day in person and acknowledged that he/she signed and delivered said instrument at his/her own free and voluntary act and that the statements herein contained are true.

Given under my hand and notarial seal this ___ day of _____, 2005.

Notary Public, State of _____
My commission expires: _____

**[AFFIX NOTARIAL SEAL AND STAMP]**

**IN WITNESS WHEREFORE,** this Agreement has been duly executed as of the date first written above.

By: _____, on behalf of Star Satellite, LLC
Print Name: _____

**STATE OF SOUTH CAROLINA**

**COUNTY OF** _____

The foregoing instrument was acknowledged before me this ___ day of _____, 2005 by _____, personally known to me to be the same person whose name is subscribed to the foregoing instrument or who has produced _____ as identification, appeared before me this day in person and acknowledged that he/she signed and delivered said instrument at his/her own free and voluntary act and that the statements herein contained are true.

Given under my hand and notarial seal this ___ day of _____, 2005.

Notary Public, State of _____
My commission expires: _____

**[AFFIX NOTARIAL SEAL AND STAMP]**

SETTLEMENT AGREEMENT AND RELEASE
Page 3 of 4

**IN WITNESS WHEREFORE,** this Agreement has been duly executed as of the date first written above.

By: _____, on behalf of Dish Network Service L.L.C.
Print Name: _____

**STATE OF SOUTH CAROLINA**

**COUNTY OF** _____

The foregoing instrument was acknowledged before me this ___ day of _____, 2005 by _____, personally known to me to be the same person whose name is subscribed to the foregoing instrument or who has produced _____ as identification, appeared before me this day in person and acknowledged that he/she signed and delivered said instrument at his/her own free and voluntary act and that the statements herein contained are true.

Given under my hand and notarial seal this ___ day of _____, 2005.

Notary Public, State of _____
My commission expires: _____

**[AFFIX NOTARIAL SEAL AND STAMP]**

**IN WITNESS WHEREFORE,** this Agreement has been duly executed as of the date first written above.

By: _____
Print Name: _____

**STATE OF SOUTH CAROLINA**

**COUNTY OF** _____

The foregoing instrument was acknowledged before me this ___ day of _____, 2005 by _____, personally known to me to be the same person whose name is subscribed to the foregoing instrument or who has produced _____ as identification, appeared before me this day in person and acknowledged that he/she signed and delivered said instrument at his/her own free and voluntary act and that the statements herein contained are true.

Given under my hand and notarial seal this ___ day of _____, 2005.

Notary Public, State of _____
My commission expires: _____

**[AFFIX NOTARIAL SEAL AND STAMP]**

      **IN WITNESS WHEREFORE**, this Agreement has been duly executed as of the date first written above.

By: _____

Print Name: _____

**STATE OF SOUTH CAROLINA**

**COUNTY OF** _____

      The foregoing instrument was acknowledged before me this ___ day of _____, 2005 by _____, personally known to me to be the same person whose name is subscribed to the foregoing instrument or who has produced _____ as identification, appeared before me this day in person and acknowledged that he/she signed and delivered said instrument at his/her own free and voluntary act and that the statements herein contained are true.

      Given under my hand and notarial seal this ___ day of _____, 2005.

                Notary Public, State of _____

                My commission expires: _____

      [AFFIX NOTARIAL SEAL AND STAMP]

FTC016-000132