E-FILED
Wednesday, 10 September, 2014 03:33:34 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT 1

# Dish Network - Transcripts

# *Yoeli, Dr. Erez 12-11-12*

*12/11/2012*

**Condensed Transcript**

**Prepared by:**

Catharine James
Kelley, Drye & Warren, LLP

Tuesday, August 05, 2014

Page 37

1    THE WITNESS: Possibly. I provided you
2 with any e-mail that identified work or assumptions
3 or documents that I relied on.
4 BY MS. MAZZUCHETTI:
5    Q. Was there any formal retention agreement
6 for your engagement as an expert in this matter?
7    A. Not to my knowledge, no.
8    Q. Was there any formal document that defined
9 the scope of your engagement?
10    A. Not to my knowledge, no.
11    Q. What did the Department of Justice retain
12 or the FTC retain you to do in this case?
13    MS. HSIAO: Object to the form.
14    THE WITNESS: Assist with an
15 investigation.
16 BY MS. MAZZUCHETTI:
17    Q. What specifically did they ask your
18 assistance on?
19    MS. HSIAO: Same instruction with respect
20 to attorney work product, attorney-client privileged
21 communications.
22    THE WITNESS: They asked me to help them

Page 38

1 develop a strategy for analyzing call records in
2 this case.
3 BY MS. MAZZUCHETTI:
4    Q. Were you asked to count potential
5 violations within call records?
6    MS. HSIAO: Object to form.
7    THE WITNESS: I think I'm a little bit
8 confused about what you're asking 'cause you asked
9 earlier about getting retained, and now you're
10 asking about what I may have been subsequently asked
11 to do. And, so, I may not have provided the
12 clearest answer as a consequence of this confusion.
13 Yes, I was subsequently asked to do that.
14 BY MS. MAZZUCHETTI:
15    Q. What opinions were you asked to express as
16 an expert in this matter?
17    MS. HSIAO: Object to the form.
18    THE WITNESS: I provide counts of
19 violations as defined by the DOJ in Dish Network's
20 call record data of the Do Not Call list or the Do
21 Not Call rules.
22 BY MS. MAZZUCHETTI:

Page 39

1    Q. Were you asked to provide any other
2 opinions regarding or any other expert opinions in
3 this case?
4    MS. HSIAO: Object to the form.
5    THE WITNESS: I think the only other
6 opinion that I provided relates to the samples in
7 the rebuttal report.
8 BY MS. MAZZUCHETTI:
9    Q. Are you, what samples are you referring
10 to?
11    A. The six samples, I can refer, I mean, we
12 can go through this dance where I ask for my report
13 again.
14    Q. I'm just trying to understand. There are
15 various samples that I've seen referenced in your
16 reports. One were samples that you previously
17 identified that were provided to another expert;
18 right?
19    A. Yes. I don't mean those. If you give me
20 my report, I'll point you right to them.
21    Q. We'll get there.
22    A. So, then we're going to do this I don't

Page 40

1 recall bit for a --
2    Q. How about I ask the questions and you give
3 the answers? If you can't do that based on your
4 recollection, you can just tell me that, and we can
5 move on. Okay?
6    A. Okay.
7    Q. So, you indicated you were asked to
8 provide opinions regarding samples that are referred
9 to in your rebuttal report; is that correct?
10    A. Yes.
11    MS. HSIAO: Object to form.
12 BY MS. MAZZUCHETTI:
13    Q. And what samples are you talking about?
14    A. If you show me my report, I will tell you.
15    Q. You cannot tell me what samples you're
16 talking about without looking at your report?
17    A. I can, but I'm worried about potentially
18 confusing you and forgetting something.
19    Q. Okay. We can wait till we get to your
20 report, and we can clear that up. Okay?
21    A. Awesome.
22    Q. This will be Exhibit 11.

Page 41

1  (Yoeli Exhibit No. 11, Curriculum Vitae,
2 was marked for identification.)
3  MR. RUNKLE: Can we take a break for a
4 second?
5  MS. MAZZUCHETTI: Sure.
6  (Whereupon, a short recess was taken.)
7  THE WITNESS: Can I clarify something?
8 BY MS. MAZZUCHETTI:
9  Q. Sure.
10  A. The previous answer regarding what the
11 scope of my opinions are, scope should be fixed to
12 the opinion is on how to analyze the data, not on
13 the actual counts. So, I don't want to lead to any
14 confusion over those two things.
15  Q. Did your counsel just ask you to make that
16 correction on the record?
17  MS. HSIAO: Objection.
18  THE WITNESS: My counsel, my counsel
19 suggested that I may have created some confusion.
20 BY MS. MAZZUCHETTI:
21  Q. So, you're telling me now that you were
22 not asked to count violations as defined by the

Page 42

1 Department of Justice?
2  MS. HSIAO: Object to the form.
3  THE WITNESS: Could you repeat the
4 question?
5 BY MS. MAZZUCHETTI:
6  Q. Is your testimony now, after conferring
7 with your counsel, that you were not asked to
8 express an opinion to count violations as defined by
9 the Department of Justice as you previously
10 testified?
11  MS. HSIAO: Same objection.
12  THE WITNESS: That's not grammatically --
13 I don't understand. So, we're trying to be precise
14 about what my opinion was, and that sentence wasn't
15 precise about it, so --
16 BY MS. MAZZUCHETTI:
17  Q. You previously testified, prior to the
18 break, that you were asked to express an opinion
19 regarding the number of violations in Dish Network's
20 call records as violations you said were defined by
21 the Department of Justice.
22  MS. HSIAO: Same objection.

Page 43

1 BY MS. MAZZUCHETTI:
2  Q. Correct?
3  A. That's right.
4  Q. And are you now changing that testimony?
5  A. Yes. I'd like it to, I'd like the record
6 to reflect I was asked to form an opinion on how to
7 do this, not on the actual counts.
8  Q. How did the Department of Justice define
9 violations?
10  MS. HSIAO: Object to the form.
11  THE WITNESS: It varies from setting to
12 setting, and, if you give me my report, I'll walk
13 you through it.
14 BY MS. MAZZUCHETTI:
15  Q. Okay. We'll hold that one for your
16 report. You indicated previously that there were
17 certain communications or e-mail communications that
18 you did not produce in response to the subpoena that
19 was marked as Yoeli Exhibit 10. Do you know whether
20 a privilege log was produced regarding the documents
21 that were withheld from that production?
22  MS. HSIAO: Object to the form.

Page 44

1  THE WITNESS: I don't know what a
2 privilege log is.
3 BY MS. MAZZUCHETTI:
4  Q. So, therefore, you don't know whether one
5 was prepared or provided?
6  A. That's right.
7  Q. Okay. Let's look at Yoeli Exhibit 11,
8 which was placed before you just before you took
9 your break. Have you seen this document before?
10  A. Yes.
11  Q. And what is it?
12  A. It's my C.V.
13  Q. And did you prepare this C.V. or was it
14 prepared for you for use in this litigation?
15  MS. HSIAO: Object to form.
16  THE WITNESS: That's a compound question.
17 BY MS. MAZZUCHETTI:
18  Q. Did you prepare the C.V.?
19  A. Yes.
20  Q. You, personally, prepared this?
21  A. Yes.
22  Q. Did you prepare it specifically for use in

Page 73

1  BY MS. MAZZUCHETTI:
2      Q.  Putting aside the EBR data, did the 433
3  million call records comprise the entire universe of
4  the 2007 to 2010 call records produced by Dish that
5  you analyzed?
6          MS. HSIAO:  Object to form.
7          THE WITNESS:  At the time, yes.
8  BY MS. MAZZUCHETTI:
9      Q.  Why don't you walk me through the
10  methodology and explain to me what parts of the
11  methodology are your expert opinion?
12         MS. HSIAO:  Objection to the form.
13         THE WITNESS:  Okay.  So, the decision of
14  whether or not to use 1 and 1A to do the analysis,
15  that's my opinion.  That's in paragraph,
16  subparagraph A.
17  BY MS. MAZZUCHETTI:
18     Q.  So, you rendered an expert opinion that
19  you should use the total set of call records
20  produced by Dish Network?
21     A.  Based on how they had been represented to
22  me, yes.

Page 74

1          MS. HSIAO:  There's no question pending.
2  BY MS. MAZZUCHETTI:
3      Q.  I think the question is pending that
4  you're going to, I've asked you to walk us through
5  the methodology that was your expert opinion.
6      A.  Yes.  Hang on a second.  The decision of
7  using Input 4 was my opinion.  The decision of what
8  to do with campaigns with no associated campaign
9  code, that was based on discussions with, a response
10 that I received in, from either you guys or from
11 Dish Network, so that I relied on.  That's not an
12 opinion.  That's subparagraph D.
13         The decision in Steps 2 and 2A to
14 de-duplicate, we've already discussed this, that
15 this is my opinion that this is what should be done.
16 The methodology that I used in Step 3 and 3A, so the
17 decision to use 3 and 3A the way that I did, that
18 would be an opinion.  So, contrast that with the
19 number of calls that is cited that I'm telling you
20 is not an opinion.
21        I'm in subparagraph G now.  So, again,
22 both the decision to combine the lists and to

Page 75

1  de-duplicate them, that's my decision.  That's my
2  opinion.  The subsequent results are not part of my
3  opinion.  So, paragraph H.
4      Q.  I'm sorry.  Did you say paragraph H is not
5  part of your opinion?
6      A.  No, no.  I didn't say that.  I said that I
7  was referring to G in the last thing that I said.
8  Now I'm thinking about subparagraph H.  The decision
9  to use the internal lists, that was my decision
10 after having certain discussions with DOJ lawyers
11 about what those files were.  Okay.
12        I'm looking at subparagraph I.  Okay.  So,
13 the decision of combining the lists in the way that
14 I did in subparagraph I and then subsequently in L,
15 how I dealt with it, those are both opinions.
16 Resulting numbers are excluded from the opinion.
17 Again, the decision to use Input 2, that's my
18 opinion that's in subparagraph J.  The decision to
19 de-duplicate, we've already discussed that this was
20 my opinion that this should be done in Step 6 of
21 subparagraph K.  I've already discussed subparagraph
22 L.  Onto M.

Page 76

1         Okay.  So, the decision to use Input 5 is
2  my decision.  It's my opinion.  So, the methodology
3  that used to identify which DNC Registry hits were
4  made to calls that were a part of campaigns on
5  Dish's list of outbound telemarketing campaigns,
6  that's my decision based on discussions that I had
7  with you guys and Dish Network, their technical
8  folks.
9         The decision to use the EBR data the way
10 that I did was mine based on discussions that I had
11 with Dish Network's in that same phone call that I
12 was just referencing.  The methodology of choosing
13 558 days as the window, 93 days as the window, all
14 of this is still in subparagraph M, so I think,
15 other than that 32.4 million that's cited twice in
16 paragraph M, and that 2.4 million calls that's cited
17 there, everything there would be an opinion.
18        Okay.  So Step 8, the decision to merge
19 the information, that's my decision; it's my
20 opinion.  Okay.  And then the actual queries placed
21 to reach the Conclusions 1 and 1A would be part of
22 my opinion, too, and similarly for Conclusion 2 and