# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **and the STATES OF CALIFORNIA,** | ) | |
| **ILLINOIS, NORTH CAROLINA,** | ) | |
| **and OHIO,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 09-3073** |
| | ) | |
| **DISH NETWORK, L.L.C.,** | ) | |
| | ) | |
| **Defendants,** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

This matter comes before the Court on Plaintiffs' Motion for
Sanctions against Defendant Dish Network (d/e 507) (Motion).  For
the reasons set forth below, the Motion is ALLOWED IN PART and
DENIED IN PART.

## INTRODUCTION

The Plaintiffs allege that Defendant Dish Network, L.L.C.
(Dish) made or caused to be made millions of illegal telemarketing
calls in violation of the Telemarketing and Consumer Fraud and
Abuse Prevention Act, 15 U.S.C. § 6105 (Telemarketing Act); the

Federal Trade Commission Act, 15 U.S.C. § 45 (FTC Act); the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA); the Federal Trade Commission (FTC) regulation entitled the Telemarketing Sales Rule promulgated under the Telemarketing Act and the FTC Act, 16 C.F.R. Part 310 (TSR); the Federal Communications Commission (FCC) regulation promulgated under the TCPA, 47 C.F.C. § 64.1200 (FCC Rule); and the laws of each Plaintiff State.  Second Amended Complaint and Demand for Jury Trial (d/e 257) (Second Amended Complaint), Counts I through XII. The Court has entered partial summary judgment.  Opinion entered December 12, 2014 (d/e 445) (Opinion 445), at 231-38, 75 F.Supp.3d 942, 1032-34 (C.D. Ill. 2014).

The FTC started its investigation of Dish as early as 2005.  In July 2005, the FTC served a Civil Investigative Demand (FTC Demand) on Dish.  The FTC Demand imposed a duty on Dish to preserve and retain responsive documents.  Opinion entered April 24, 2013 (d/e 279) (Opinion 279), at 5-7, 34-36, 292 F.R.D. 593, 603 (C.D. Ill. 2014).  Plaintiff North Carolina served a similar Demand for documents in March 2006 (North Carolina Demand). Dish failed to retain in native electronic format responsive emails

sent to and from Dish's Retail Services Compliance Officer Reji
Musso, from August 2006 to April 2008 (Musso Electronic
Information). Dish's counsel, however, stated in a letter to
Plaintiffs' counsel that Musso kept responsive emails in paper files
in Dish's possession (Dish Paper Files) and in the shared computer
drive containing files entitled "Retail Audit" and "TCPA" (Shared
Electronic Files). Dish gave Plaintiffs access to the Dish Paper Files
and the Shared Electronic Files during discovery.

On June 12, 2015, Dish received a hard drive taken from a
computer used by a former Order Entry Retailer that did business
as JSR Enterprises (JSR). Order Entry Retailers used telemarketing
to sell Dish products and services. See Opinion 445, at 57-58, 75
F. Supp.3d at 972. The documents on the hard drive contained
communications from Dish for the period from December 19, 2006,
to March 6, 2007 (JSR Data). The JSR Data contained information
and communications with JSR that were not produced in discovery
(Non-Disclosed JSR Data). The Non-Disclosed JSR Data included
additional emails from Musso that were not produced in discovery.

The Plaintiffs argue that the JSR Data show that Dish
produced only a small percentage of its communications with JSR

from December 2006 to March 2007 and, by extension, with all Order Entry Retailers.  The Plaintiffs argue that Dish should be sanctioned for failing to retain or produce most of its responsive communications with all Order Entry Retailers.  The Plaintiffs also want sanctions for Dish's counsel certification of the production of Musso's emails in Dish's discovery responses.

For the reasons set forth below, the Court finds that the Plaintiffs have been prejudiced by Dish's failure to retain or produce the Non-Disclosed JSR Data.  The Court further finds sufficient culpability on Dish's part to sanction this failure.  The Court therefore sanctions Dish by taking as an established fact that Dish had communications with all of its Order Entry Retailers that were of the same substantive type and quantity as those contained in the JSR Data.  The request for additional sanctions is denied.

## BACKGROUND

Dish had a duty to retain documents responsive to the FTC Demand since receipt of the July 2005 FTC Demand.  Opinion 279, at 34, 292 F.R.D. at 603.  The FTC Demand specifications of responsive documents included the following:

3.     The names, addresses, and telephone numbers of all persons EchoStar has terminated or otherwise disciplined for violating the Telemarketing Sales Rule or company policies and procedures relating to telemarketing, and the dates and the reasons for termination or discipline;

4.     Notes, minutes, and other documents of meeting relating to EchoStar's monitoring and enforcement of any person's compliance with the Telemarketing Sales Rule;

. . . .

6.     All emails, memorandum, notes, letters, or other documents relating to Echostar's monitoring and enforcement of any person's compliance with the Telemarketing Sales Rule, including but not limited to, warnings issued to any person marketing Dish Network, and termination notices sent to any person marketing Dish Network;

. . . .

10.   Documents sufficient to show all marketing materials, directions, and support EchoStar provides to a person who will be marketing or is marketing Dish Network;

Defendant Dish Network L.L.C.'s Memorandum of Law in Opposition to Plaintiffs' Motion for Further Sanctions (d/e 518) (Dish Memorandum), Exhibit, 3, FTC Demand, at 6-7.  The FTC Demand referred to Dish as EchoStar because Dish was known as EchoStar Communications Corporation before it changed its name on January 1, 2008.  Opinion 445, at 2, 75 F.Supp.3d at 951.

The March 2006 North Carolina Demand covered the following similar documents:

> all documents reflecting Dish Network's policies or procedures for complying with federal or state do-not-call requirements, including but not limited to all pertinent scripts, training materials, office manual, or written guidelines or procedures that Dish Network provides to persons that made telephone solicitations for or on behalf of Dish Network.

Opinion 279, at 6-7, 292 F.R.D. at 596 (quoting Dish's response to North Carolina Demand).

In August 2006, Dish hired Musso as its Compliance Officer. Musso monitored retailers' compliance with their Retailer Agreements with Dish.  The standard Retailer Agreement with Dish required retailers, including Order Entry Retailers, to comply with state and federal law, including the TCPA and TSR.  Musso, therefore, monitored Order Entry Retailer compliance with telemarketing laws and regulations, including the TSR.  See Opinion 445, at 62 and 82-83, 75 F.Supp.3d at 973 and 980. Musso's pertinent emails and other communications with Order Entry Retailers, therefore, would have been responsive to the FTC Demand, and Dish was obligated to retain those documents.  See Opinion 279, at 34-36, 292 F.R.D. at 603.  Musso, however, did not

start retaining her emails in native electronic format until April 2008.

The Plaintiffs filed this action on March 25, 2009.  The Plaintiffs served several discovery requests on Dish.  On May 5, 2010, the Plaintiffs served a Second Document Request.  The Second Document Request requested the following documents related to Dish's efforts to monitor and enforce retailer compliance with telemarketing laws, including the TCPA and the TSR:

> 12. All documents relating to compliance with, monitoring compliance with, enforcing compliance with, violations of, or suspected or alleged violations of, telemarketing laws by you, your authorized dealers (including Order/Entry entities), or any telemarketer or any other entity selling Dish Network services.
>
> 13. All written policies and procedures relating to compliance with, monitoring compliance with, enforcing compliance with, violations of, or suspected or alleged violations of, telemarketing laws by you, your authorized dealers (including Order/Entry entities), or any telemarketer or any other entity selling Dish Network services.
>
> 14. All documents relating to investigatory, disciplinary, enforcement, or legal actions you have taken in response to violations or suspected or alleged violations of telemarketing laws or of your policies or procedures relating to telemarketing.
>
> . . . .

21. All documents relating to monitoring and enforcing compliance with telemarketing laws or any of your policies relating to telemarketing.

Plaintiffs' Motion for Evidentiary Sanctions Pursuant to FED. R. CIV. P. 37 (d/e 201), Exhibit 39, Plaintiffs' Second Request for Production of Documents to Dish Network, LLC, ¶¶ 12-14, 21. Dish generally resisted producing responsive information for retailers other than Order Entry Retailers specifically referenced in the Amended Complaint (d/e 5). The Plaintiffs moved to compel production of Dish's discovery responses as to all retailers. United States Magistrate Judge Cudmore, retired, ordered Dish to produce materials related to all retailers' compliance with the TSR and the TCPA. Opinion entered January 12, 2011 (d/e 80) (Opinion 80), at 8-9. See Motion, at 4 ("After Plaintiffs' first motion to compel, the Court overruled substantially all of Dish's objections to the relevant RFPs and interrogatories and directed Dish to respond fully as to all compliance materials for all retailers and all time periods. Opinion 80, at 7-10.").

After Judge Cudmore entered Opinion 80, the Plaintiffs reviewed the Dish Paper Files. The Plaintiffs' counsel traveled to Dish's offices in Colorado to review the Dish Paper Files. The

Plaintiffs selected portions of the files for copying.  The files selected and copied contained over 1,100 emails to or from Musso during the period from September 2006 to December 31, 2007.  <u>Dish Memorandum</u>, Exhibit 2, <u>Declaration of Elyse Echtman dated August 21, 2015</u>, ¶ 3.

On June 6, 2012, counsel for the United States Patrick Runkle wrote counsel for Dish regarding discovery disputes.  <u>Motion</u>, Exhibit 12, <u>Letter from Patrick Runkle to Lauri Mazzuchetti dated June 6, 2012</u>.  Counsel Runkle raised an issue about Musso's emails, "It also appears that Dish either did not preserve or had not produced in native electronic format well over a year's worth of emails from Reji Musso's email folders."  Runkle noted that Dish produced only six emails from Musso from before January 2008 "compared with at least two dozen emails from her email folders produced for the months of May 2008 and later."  <u>Id.</u>, at 2.

On June 20, 2012, Counsel for Dish Joseph A. Boyle responded to the June 6, 2012 letter.  <u>Motion</u>, Exhibit 13, <u>Letter from Joseph A. Boyle to Patrick Runkle dated June 20, 2012 (June 20, 2012 Letter)</u>.  Attorney Boyle responded that Dish produced the

Dish Paper Files and the Shared Electronic Files that contained

Musso's emails:

> You acknowledge that you have received documents from
> Ms. Musso after April 2008 . . . .  You also acknowledge
> that you have received emails and other documents . . .
> from the Retail Audit files, and from the paper retailer
> compliance documents.  As you know, Ms. Musso
> testified that emails and paper documents exchanged
> between her department and the independent retailers
> were preserved in the electronic and paper retailer files,
> which have been produced. . . .
>
> . . . .
>
> In August 2005, [Dish's then Corporate Counsel]
> Dana Steele had a conversation with Russell Deitch,
> counsel for the FTC, which established that the scope of
> the requests relating to independent retailers required
> the names of the independent retailers, the names of the
> retailers terminated for TSR violations, and notes
> regarding the termination of dealers. . . .  [T]he CID did
> not trigger an obligation to preserve these individuals'
> [including Musso's] native email files.  In any event, the
> files as to retailers were maintained in the Retail Audit
> and TCPA shared drive and hard copy retailer files and
> were preserved and produced.

Id., at 7-8.[1]

FTC attorney Russell Deitch disputes that he had the

conversation with Steele described in the June 20, 2012 Letter.

Deitch states in his declaration:

---

[1] The Plaintiffs do not dispute that the Shared Electronic Files contained Musso emails.

On August 4, 2005 I had a telephone call with Dana Steele, counsel for EchoStar.  We discussed Specifications 3, 4, and 6 of the CID.  During the phone call, I informed Ms. Steele that Specifications 3, 4, and 6 covered retailers and requested that EchoStar respond to these documents requests by producing documents relating to retailers.  I did not limit the scope of the documents to be produced to the names of independent retailers, to the names of retailers terminated for TSR violations, or to notes regarding the termination.  I did not waive the document retention obligations in the CID.

Reply in Support of Plaintiffs' Motion for Further Sanctions (d/e 520) (Plaintiffs' Reply), Exhibit 3, Declaration of Russell Deitch dated September 8, 2015, ¶ 10.  Neither party presented any evidence about Steele's recollection of the August 2005 conversation with Deitch.

On December 12, 2014, the Court entered partial summary judgment.  Opinion 445, at 231-38, 75 F.Supp.3d at 1032-34.  Issues of fact remaining for trial include whether Dish had an agency relationship with its Order Entry Retailers and Dish's knowledge of ongoing violations of telemarketing laws.  See Opinion 445, at 181-91, 210, 226 and 228, 75 F.Supp.3d at 1015-18, 1025, 1030-31.

On June 12, 2015, Plaintiffs extracted a hard drive from a computer located at JSR's former headquarters.  The hard drive

was copied and examined.  The hard drive contained a "deleted items" folder which contained the JSR Data.  See Motion, Exhibit 14, Declaration of Grace E. Garner, ¶¶ 3-6; Exhibit 11, Declaration of Patrick Runkle, ¶¶ 5-9; Exhibit 1, Table of JSR Data (Plaintiffs' Table).

The JSR Data consists of 38 documents identified by the Plaintiffs as relevant and responsive.  The Plaintiffs initially stated that only four of these 38 documents were produced in discovery.  Dish responded that 25 of the 38 documents were produced in discovery.  See Plaintiffs' Table; but see Dish Memorandum at 1 and Exhibit 1 Table of JSR Data (Dish's Table).  The Plaintiffs amended their position in their reply.  The Plaintiffs' Reply stated that 11 of the 38 documents were produced in discovery.  Plaintiffs' Reply, Exhibit 1, Rebuttal Table of JSR Data (Rebuttal Table), Items 1, 2, 11, 18, 19, 24, 25, 30, 31, 32, 38.  The parties agree that at least some of Musso's emails in the JSR Data were not produced in discovery.  See Dish's Table, Items 6 and 9; Rebuttal Table, Items 6 and 9.

Upon review of the JSR Data, the Plaintiffs brought this Motion.

## **ANALYSIS**

The Plaintiffs ask for sanctions for failure to produce responsive documents in violation of Opinion 80, or in the alternative, for failure to preserve documents that should have been retained under the FTC Demand and the North Carolina Demand. The Plaintiffs ask this Court to impose as a sanction of, "taking as established fact that Dish (1) had extensive knowledge of its retailers' telemarketing misconduct; and (2) exercised oversight and control over OE retailer marketing activities."  <u>Motion</u>, at 20.

The Plaintiffs also assert that the June 20, 2012 Letter contained an improper certification of the completeness of Dish's discovery production in violation of FTC Rule of Civil Procedure 26(g).  The Plaintiffs ask for an additional sanction for this violation of Rule 26(g) as follows:

> (a) the costs associated with traveling to Colorado as well as selecting and scanning the paper files in Dish's basement; (b) the costs associated with the processing of the JSR hard drive; (c) attorneys' fees for this motion; and (d) attorneys' fees for the 2012 meet and confer over Dish's failure to produce documents.  Finally, Plaintiffs request that Dish be censured over its discovery conduct.

<u>Motion</u>, at 20.  The Court will address the failure to retain or

produce documents issue first, and then the Rule 26(g) certification

issue.

A. <u>Failure to Retain or  Produce</u>

This Court previously set forth the legal standard for sanctions

for failure to produce or retain documents:

> Plaintiffs seek sanctions pursuant to Federal Rule of
> Civil Procedure 37(b) and 37(c). Rule 37(b) provides that
> a court may order sanctions against a party who fails to
> obey an order to provide or permit discovery, including
> an order under Rule 26(f), Rule 35, or Rule 37(a). The
> sanctions may include prohibiting the disobedient party
> from introducing specific evidence, striking pleadings,
> dismissing the action, or rendering a default judgment.
> <u>See</u> Fed.R.Civ.P. 37(b)(2).
>
> Rule 37(c) provides that a party who fails to provide
> information or identify a witness as required by Rule
> 26(a) or Rule 26(e) may not use that information or
> witness on a motion, at hearing, or at trial unless the
> failure was substantially justified or is harmless. The
> court may also impose other appropriate sanctions,
> including those listed in Rule 37(b)(2)(A)(i)-(iv). <u>See</u>
> Fed.R.Civ.P. 37(c)(1)(C).
>
> It is within this Court discretion to determine
> whether to sanction a party and the appropriate
> sanction. <u>Melendez v. Illinois Bell Tel. Co.</u>, 79 F. 3d 661,
> 671 (7th Cir. 1996). Any sanction imposed must be
> "proportionate to the circumstance surrounding the
> party's failure to comply with discovery rules." <u>Melendez</u>,
> 79 F. 3d at 672. When the sanction imposed is dismissal,
> the Court must find bad faith, willfulness, or fault. <u>E360</u>

Insight, Inc. v. Spamhaus Project, 658 F.3d 637, 642 (7th Cir. 2011).

A court also has the inherent power to assess sanctions for the failure to preserve or produce documents. Zang v. Alliance Fin. Serv. of Ill., Ltd., 875 F. Supp. 2d 865, 884, 885 n. 19 (N.D. Ill. 2012) (also noting that the analysis under Rule 37 and the court's inherent power is essentially the same). Sanctions are appropriate where (1) the party had a duty to preserve the evidence; (2) the duty was breached; and (3) the other party was harmed by the breach. Zang, 875 F. Supp. 2d at 885; see also ChampionsWorld, LLC v. U.S. Soccer Federation, 276 F.R.D. 577, 582 (N.D. Ill. 2011) (noting as a fourth factor that the breaching party's willfulness, fault, or bad faith caused the breach).

The mere fact that a party destroyed a document or is unable to produce a document does not, standing alone, warrant an inference that the document would have contained information adverse to that party's case. Park v. City of Chicago, 297 F.3d 606, 615 (7th Cir.2002) (to obtain an adverse instruction, the movant must show the documents were destroyed in bad faith). Before this Court will draw the inference that the missing documents contained information adverse to Defendant, Plaintiffs must demonstrate that Defendant "intentionally destroyed the documents in bad faith." Norman-Nunnery v. Madison Area Technical College, 625 F.3d 422, 428-29 (7th Cir. 2010) ("The crucial element in a spoliation claim is not the fact that the documents were destroyed but that they were destroyed for the purpose of hiding adverse information").

Opinion 279, at 18-20, 292 F.R.D. at 599-600 (footnote omitted).

The Plaintiffs have established that Dish failed to produce or

retain some documents covered by the FTC Demand and subject to

order to compel production in Opinion 80.  Dish does not state whether it did not retain the Non-Disclosed JSR Data or retained these documents, but did not produce them.  Under either circumstance, the Plaintiffs have established that Dish either breached its duty to retain documents under the FTC Demand or breached its duty to produce documents in discovery.

The prejudice to Plaintiffs from Dish's breach is an important factor in determining whether to issue sanctions.  A sanction under Rule 37(b) must be proportional to the harm or prejudice. Melendez, 79 F. 3d at 672.  Sanctions for spoliation require a demonstration of prejudice.  Zang, 875 F. Supp. 2d at 885.

The Plaintiffs suffered some prejudice from the failure to produce certain documents in the Non-Disclosed JSR Data.  The Musso December 20, 2006 email to JSR representative Richard Goodale (Rebuttal Table Item 3) contains a material statement by Musso.   The relevant document contains two emails.  Goodale sent the first to Musso to report on his investigation of a consumer telemarketing complaint.  Goodale reported that the telemarketing call came from a company called J&R Satellite, not JSR.  Goodale stated, "I know this sounds ridicules (sic) but it's true."  Musso

responded in the second email, "Richard, from where I sit, nothing sounds ridiculous any more.  I am going to send another email shortly, another TCPA allegation. . ." Motion, Exhibit 2, at 1.  Dish produced Goodale's email in discovery, but not Musso's response. Musso's response is relevant to the business relationship between Dish and JSR, which is relevant to the issue of agency.  Musso's response is also relevant to Dish's knowledge of consumer telemarketing complaints regarding telemarketing law violations. The parties disagree on the proper interpretation of Musso's omitted email, but the email is relevant and material.  Dish's failure to retain or produce this email was prejudicial.

The January 17, 2007 email from Dish Business Development Manager Chris Willis (Rebuttal Table Item 15) contains a material statement by Willis.  Willis asked a JSR representative for information about the number of employees employed by JSR, JSR's method of marketing Dish products, and the length of training given to new employee "prior to hitting the floor."  Willis explained, "We are trying to put together some basic info regarding our retailers.  Thanks for your help." Motion, Exhibit 2, at 16. Willis' request for information is relevant to the business

relationship between Dish and its retailers and Dish's knowledge of the retailers' marketing methods, which may be relevant to the issues of agency and knowledge. The Plaintiffs point out that Dish representatives have repeatedly asserted that Dish did not know which retailers engaged in outbound telemarketing. See Motion, at 14-15. Willis' email is relevant to assessing those statements.

The Plaintiffs, however, have failed to demonstrate that Dish was obligated to produce Willis' January 17, 2007 email. The Plaintiffs base the Motion on Judge Cudmore's order in Opinion 80 to produce documents related to all Dish retailers' compliance with telemarketing laws. Motion, at 4. The Willis January 17, 2007 email did not relate to compliance with telemarketing laws. Willis was the Business Development Manager. He was taking a survey for his office to put together "some basic info" on Dish retailers. This Willis email related to business development, not regulatory compliance. Dish may have been obligated to retain this email under Specification 10 of the FTC Demand, quoted above ("Documents sufficient to show all marketing materials, directions, and support EchoStar provides . . . ."), but Plaintiffs have failed to show that Dish violated Opinion 80 by failing to produce this Willis

email.  The Plaintiffs, therefore, have not shown prejudice from the failure to produce this document.

Four documents in the Non-Disclosed JSR Data are emails in which Dish representative threatened to discipline JSR for violating Dish's rule against getting an existing Dish customer to open a new Dish account through JSR.  This type of transaction may have involved poaching a customer of an existing Dish retailer or re-selling the same Dish products and collecting a second commission.  Rebuttal Table, Items 8, 14, 15, 16, 20.  Dish had a rule against such practices.  Like the Willis January 17, 2007 email, these emails may be relevant to show the business relationship between Dish and its retailers, but the emails do not concern compliance with telemarketing laws.  Plaintiffs have failed to show that Dish violated Opinion 80 by failing to produce these documents.

Much of the information in the remaining twenty-one documents in the Plaintiffs' list of Non-Disclosed JSR Data was disclosed in discovery.  The documents can be put into four categories:

1. Eight of these documents were POE notices to put a particular consumer on the retailers' internal do-not-call list.  Plaintiffs'

Table, Items 7, 12, 33-38; see Opinion 445, at 84, 75 F.Supp.3d at 981. Musso testified in her deposition that Dish sent out such POE notices to all Order Entry Retailers, and she provided a spreadsheet of POE notices that her office distributed. Dish Memorandum, at 7 and Exhibit 15 POE Spreadsheet exhibit to Musso Deposition. The Plaintiffs also received copies of other POE notices in discovery. See e.g., Motion, Exhibit 18, POE notice bearing Dish discovery Bates Stamp numbers; Dish Memorandum, Exhibit 22, Eighteen POE notices sent in 2006 and 2007 bearing Dish discovery Bates Stamp numbers.

2. Eleven of these documents were produced in discovery, but without the transmittal information contained in the JSR Data. Rebuttal Table, Items 4, 5, 12, 21, 23, 26, 27, 28, 29, 33, and 34. Some of the versions of these documents produced in discovery omitted the transmittal cover email; others omitted the "TO:" field in the transmittal to indicate the recipients of the document; others omitted the email header that would have identified the sender, recipient, and date sent. These eleven documents include training manuals, an

instruction manual for Dish's website called the "Order Entry
Tool," newsletters called "Fact Blasts," and information on
promotional marketing programs such as a program called a
"Bounty Offer."  Three of the documents (Items 12, 33, and 34)
are POE notices discussed in paragraph 1.  See Opinion 445,
at 57-60, 75 F.Supp.3d at 972 (description of Order Entry
Tool).

3. Dish produced in discovery drafts of two of these documents.
   Rebuttal Table, Items 7 and 37.  The bodies of the drafts were
   identical or almost identical to the final versions in the JSR
   Data.  The two documents are POE notices discussed in
   paragraph 1.

4. Dish did not produce seven of these documents in any form in
   discovery, but disclosed in discovery the substantive topics
   contained in the documents.  The documents included Musso
   emails regarding putting a consumer on retailer do-not-call
   lists,  Musso's email about JSR's use of a telemarketing call
   center in the Philippines, training materials,  an email to
   schedule a training visit, and an email about an investigation
   of consumer complaints by the state of Louisiana.  Rebuttal

<u>Table</u>, Items 6, 9, 10, 13, 17, 35, 36.  Two of these documents (Items 35 and 36) are POE notices discussed in paragraph 1.

The Plaintiffs argue that they were prejudiced by Dish's failure to retain or produce these documents.  The Plaintiffs argue that Dish's omission in discovery of transmittal information such as the "TO:" fields on emails or the transmittal emails, was prejudicial. The Plaintiffs argue that the transmittal information was relevant to show the degree of Dish's involvement and control of telemarketing practices by Order Entry Retailers.  Dish also argues that Dish's failure to retain or produce final versions rather than drafts was prejudicial because a draft does not prove the content of a final version or that a final version even existed.  <u>Plaintiffs' Reply</u>, at 4-6.

The Court agrees that Plaintiffs suffered some prejudice from the failure to retain or produce transmittal information and final versions of the two drafts.  The issue of agency is a factual issue that may depend, at least in part, on the manner in which Dish related to JSR as one of the Order Entry Retailers.  <u>See</u> <u>Opinion 445</u>, at 181-91, 75 F.Supp.3d at 1015-18.  Proof that Dish sent these communications to JSR is relevant to the nature of their business relationship, and so, to the issue of agency at least.

The Plaintiffs also argue that the JSR Data indicates that Dish failed to retain or produce hundreds of similar documents.  The Plaintiffs argue that the JSR Data show that 71 percent (27 out of 38) of the documents sent to JSR from December 19, 2006, to March 6, 2007 were not retained or produced.[2]  The Plaintiffs argue that Dish did not retain or produce a similar percentage of all documents sent to Order Entry Retailers generally for the entire time that Dish operated the Order Entry Retailer program.   See Motion, at 8.

The JSR Data do not support such an extrapolation or inference about Dish's handling of other documents sent to JSR or the other Order Entry Retailers.  The Plaintiffs make no showing that the JSR Data constitutes the universe of all documents that Dish sent to JSR from December 19, 2006 to March 6, 2007, or even a representative sample of all such documents.  Dish may or may not have sent many other documents to JSR during this period that may or may not have been otherwise produced in discovery.  The JSR data, therefore, does not show the percentage of communications sent between Dish and JSR that were not

---

[2] Plaintiffs made this argument using its original position that only four of the 38 documents were produced.  The Court revised the argument to reflect Plaintiffs' revised position in its Reply.

produced.  The JSR Data does not contain the information necessary to allow the Court to draw inferences or extrapolate conclusions about Dish's handling of other documents.  The JSR Data only demonstrates that these 38 particular documents existed and several of these documents should have been retained and produced in discovery, but were not.  The Plaintiffs have suffered some prejudice thereby.

Dish is sufficiently culpable to merit sanctions.  A proportionate sanction is appropriate under Rule 37 upon a finding of fault.  See Macneil Automotive Products, Ltd. v. Cannon Automotive Ltd., 715 F.Supp.2d 786, 800 (N.D. Ill. 2010).  A finding of fault is appropriate when a party fails to act in an objectively reasonable manner.  Long v. Steepro, 213 F.3d 983, 987 (7th Cir. 2000).  Dish makes no attempt to explain why it failed to produce the responsive documents in the JSR Data pursuant to Opinion 80. Given the lack of any explanation for its failure, the Court finds that Dish acted in an objectively unreasonable manner in its failure to produce the responsive documents.  The Court finds sufficient fault to sanction Dish for its failure to produce the responsive documents in the Non-Disclosed JSR Data.

After careful consideration, the Court determines that an appropriate sanction is to take as an established fact that Dish had communications with all of its Order Entry Retailers that were of the same substantive type and quantity as those contained in the JSR Data.  The Court recognizes that the JSR Data is not a representative sample, but the question before the Court is the appropriate proportionate sanction.  Finding that Dish sent and received communications of the same type and quantity with the other Order Entry Retailers remedies the prejudice in an appropriate and proportional way.  The primary prejudice to Plaintiffs comes from the content of the Musso December 20, 2006 email and the failure to produce the transmittal information.  The Plaintiffs state that the Musso December 20, 2006 email reflected her attitude about telemarketing violations.[3]  Failing to produce the email prejudiced the Plaintiffs because the Plaintiffs could not conduct additional discovery to determine whether Dish had similar communications with other Order Entry Retailers.  The Plaintiffs could not question Musso about whether she sent similar emails to other Order Entry Retailers.  The Plaintiffs also could not use the

---

[3] Dish interprets Musso's comments differently.  Such disputes may be addressed at trial.

transmittal information from the JSR Data to ask a Rule 30(b)(6) deponent whether Dish distributed such documents to Order Entry Retailers generally.  Failing to produce these documents denied the Plaintiffs this opportunity.

Taking as an established fact that Dish had communications with all of its Order Entry Retailers generally that were of the same substantive type and quantity as those contained in the JSR Data the JSR Data alleviates these harms.  The Court will take as a fact at trial that such communications occurred.  The Court will consider the fact of these communications along with the other evidence presented by the parties at trial.

The Plaintiffs ask the Court to find Dish acted in bad faith and impose more severe sanctions for spoliation of evidence.  The Plaintiffs ask the Court to take as proven that Dish had extensive knowledge of telemarketing violations and exercised oversight and control over Order Entry Retailers.  The Plaintiffs effectively ask the Court to impose a sanction that would resolve one of the major issues left for trial, Dish's knowledge of violations, and would resolve a critical element of the issue of agency, Dish's right to control the telemarketing activities of the Order Entry Retailers.

See Opinion 445, at 181-91, 210, 226 and 228, 75 F.Supp.3d at
1015-18, 1025, 1030-31.

Sanctions for spoliation require a demonstration of bad faith.
Norman-Nunnery, 625 F.3d at 428-29.  To establish bad faith, the
Plaintiffs must show that Dish destroyed documents to hide adverse
evidence.  Bracey v. Grondin, 712 F.3d 1012, 1019 (7th Cir. 2013).
In this case, the Court does not find evidence of bad faith, and so,
declines to impose more severe sanctions suggested by the
Plaintiffs.

The Plaintiffs argue that Dish's failure to retain in native
electronic format the Musso Electronic Information proves bad
faith.  The Court disagrees.  If Dish were intentionally hiding
Musso's emails, it would have done a better job.  Rather, Dish
produced many Musso emails from before April 2008 in paper form.
Plaintiffs copied over 1,100 of these paper emails from this period.
Dish also produced Musso's emails in the Shared Electronic Files.
Musso also started retaining her emails in native electronic format
in April 2008, almost a year before the case was filed.  Dish also
provided other information about Musso's interactions with Order
Entry Retailers.  See e.g., Opinion 445, at 82-84, 107-09, 112-13,

75 F.Supp.3d at 980-81, 989, 991.  Finally, the JSR Data contained only three Musso emails that were not produced in discovery. Under these circumstances, the failure to keep Musso's emails in native electronic format before April 2008 does not show bad faith.

Dish also failed to produce the Willis January 17, 2007 email and the four emails concerning JSR's attempts to sell Dish products to existing customers.  These documents may have related to the issues of agency and knowledge, but were not related to compliance with telemarketing laws.  Opinion 80 required production of documents related to compliance.  The Court cannot say that Dish acted with bad faith in not producing these documents pursuant to Opinion 80.

Dish produced much of the information in the remaining twenty-one documents that make up the Plaintiffs' Reply list of Non-Disclosed JSR Data.  If Dish were acting in bad faith, it would have hid this information better.  Dish's failure to produce the transmittal evidence for these documents was prejudicial and merits a sanction for fault under Rule 37, but not a finding of bad faith.

The Plaintiffs cite three cases in which Dish was sanctioned for either failing to preserve or destroying evidence.  See Motion, at 10-11 (citing Broccoli v. Echostar Communications Corp, 229 F.R.D. 506, 511 (D. Md. 2005); VOOM HD Holding LLC v. EchoStar Satellite L.L.C., 939 N.Y.S.2d 321, 326 (N.Y. App. Div. 2012); Air Communications & Satellite, Inc. v. EchoStar Satellite LLC, No. 2000-cv-3130 (State of Colorado District Court, April 2, 2010).  The Plaintiffs argue that these cases put Dish on notice of the importance of preserving evidence.  One or more of these cases may have provided some notice to Dish about preserving documents. The Broccoli case, in particular, in 2005 may have provided some notice.  These cases, however, do not show that Dish attempted to hide the information contained in the JSR Data.  Absent proof of such intent, the Court will not find that Dish acted in bad faith.

The Court will not impose the more severe sanction suggested by the Plaintiffs for the failure to retain or produce documents in the JSR Data.

B. Request for Sanctions under Rule 26(g)

The Plaintiffs seek sanctions under Rule 26(g) for the June 20, 2012 letter sent by Dish's counsel.  Rule 26(g) states that every

discovery request, response, or objection must be signed by an

attorney of record for a represented party such as Dish.  The

signature constitutes a certification:

> **(1)Signature Required; Effect of Signature**. . . .  By
> signing, an attorney . . . certifies that to the best of the
> person's knowledge, information, and belief formed
> after a reasonable inquiry:
>
> A) with respect to a disclosure, it is complete and
>    correct as of the time it is made; and
>
> B) with respect to a discovery request, response, or
>    objection, it is:
>
>> (i)    consistent with these rules and warranted by
>>        existing law or by a nonfrivolous argument for
>>        extending, modifying, or reversing existing law,
>>        or for establishing new law;
>>
>> (ii)   not interposed for any improper purpose, such
>>        as to harass, cause unnecessary delay, or
>>        needlessly increase the cost of litigation; and
>>
>> (iii)  neither unreasonable or unduly burdensome
>>        or expensive, . . . .
>
> . . . .
>
> **(3)Sanction for Improper Certification**. If a
> certification violates this rule without substantial
> justification, the court, on motion or on its own, must
> impose an appropriate sanction on the signer, the
> party on whose behalf the signer was acting, or both.
> The sanction may include an order to pay the
> reasonable expenses, including attorney's fees, caused
> by the violation.

Page **30** of **34**

Fed. R. Civ. P. 26(g) (emphasis in the original).

To meet the requirements of Rule 26(g) the attorney must make an inquiry before signing the certification. The inquiry must be reasonable under the circumstances. In appropriate cases, the attorney may rely on statements of his client and information from other attorneys in the case:

> In making the inquiry, the attorney may rely on assertions by the client and on communications with other counsel in the case as long as that reliance is appropriate under the circumstances. Ultimately what is reasonable is a matter for the court to decide on the totality of the circumstances.

Fed. R. Civ. P. 26(g) Advisory Committee Notes to the 1983 Amendments.

Sanctions for violation of Rule 26(g) are mandatory. <u>Rojas v. Town of Cicero, Ill.</u>, 775 F.3d 906, 909 (7th Cir. 2015). An attorney's letter to opposing counsel that makes representations about a discovery production, such as the June 20, 2012 Letter, is subject to the requirements of Rule 26(g). <u>See</u> <u>Phinney v. Paulshock</u>, 181 F.R.D. 185, 204 (D.N.H. 1998).

The Plaintiffs argue that Dish's counsel Boyle improperly certified Dish's production of Musso's emails in violation of Rule

26(g).  The relevant portions of the June 20, 2012 Letter concern the production of Musso's emails in discovery, not the other documents in the JSR Data.

Attorney Boyle represented in the June 20, 2012 Letter that Musso kept her emails with retailers in paper form in the Dish Paper Files, and those files were produced.  Boyle represented that Dish was not obligated to retain Musso's emails in native electronic format under the terms of the FTC Demand.  Boyle finally represented that, "In any event, the files as to retailers were maintained in the Retail Audit and TCPA shared drive and hard copy retailer files and were preserved and produced." June 20, 2012 Letter, at 8.

The Court finds that Boyle's certification was made on reasonable inquiry under the circumstances and did not violate Rule 26(g).  Boyle relied on Musso's statements under oath at her deposition that she retained her emails with Order Entry Retailers in paper files and in the Shared Electronic Files.  The Court finds that Boyle could reasonably rely on a sworn statement of Musso, a representative of his client, Dish, who by her position would have personal knowledge of the matter is question.

Boyle also relied on information he received about a conversation between Dish Corporate Counsel Steele and FTC attorney Deitch.  Boyle was informed that attorneys Steele and Deitch agreed to modify the scope of the FTC Demand to limit the information Dish had to produce and retain about Order Entry Retailers.  Under this modified scope, the FTC Demand did not cover matters such as Musso's communications with Order Entry Retailers.  For purposes of Rule 26(g) Boyle could reasonably rely on the information that he received about a conversation between Dish's corporate counsel and the responsible FTC attorney about the scope of the FTC Demand.

The Plaintiffs present Deitch's declaration to establish that he did not agree to any modification of the scope of the FTC Demand. The issue, however, is not whether Steele and Deitch agreed to modify the scope of the FTC Demand.  The issue is whether Boyle made the certification in the June 20, 2012 Letter to the best of his knowledge and belief after reasonable inquiry.  Fed. R. Civ. P. 26(g). Boyle could reasonably "rely on assertions by the client and on communications with other counsel in the case as long as that reliance is appropriate under the circumstances."  Fed. R. Civ. P.

26(g) Advisory Committee Notes to the 1983 Amendments.  Attorney Boyle could reasonably believe that Dish's Corporate Counsel and the FTC attorney on the FTC investigation could agree to modify aspects of the FTC Demand.  Under the totality of the circumstances, the Court finds that Boyle made a reasonable inquiry before signing the June 20, 2012 Letter.  The Court finds that Boyle did not violate Rule 26(g).

## CONCLUSION

THEREFORE Plaintiffs' Motion for Sanctions against Defendant Dish Network (d/e 507) is ALLOWED IN PART and DENIED IN PART.

Enter:  October 9, 2015


_____/s Sue E. Myerscough_____
UNITED STATES DISTRICT JUDGE