## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF CALIFORNIA, ILLINOIS, NORTH CAROLINA, and OHIO, | Case No.: 3:09-cv-03073-SEM-TSH |
| Plaintiffs, | |
| v. | |
| DISH NETWORK L.L.C., | |
| Defendant. | |

---

### DEFENDANT DISH NETWORK L.L.C.'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE EVIDENCE POST-DATING THE CLOSE OF FACT DISCOVERY

---

Peter A. Bicks
Elyse D. Echtman
John L. Ewald
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
pbicks@orrick.com
eechtman@orrick.com
jewald@orrick.com

Joseph A. Boyle
Lauri A. Mazzuchetti
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
Telephone: (973) 503-5900
jboyle@kelleydrye.com
lmazzuchetti@kelleydrye.com
Henry T. Kelly
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 857-2350
hkelly@kelleydrye.com

*Attorneys for Defendant DISH Network L.L.C.*

## PRELIMINARY STATEMENT

Plaintiffs seek a "significant mandatory injunction that would affect much of Dish's ongoing business practices." Dkt. No. 445 at 229. To prevail on that request, Plaintiffs must prove, among other things, a reasonable likelihood of future telemarketing violations. Yet, the vast majority of violations that this Court identified at summary judgment occurred almost a decade ago. Since that time, DISH's telemarketing compliance has continued to improve.

To confirm that improvement, DISH hired a third party—a subsidiary of PossibleNOW, which the United States trusts to manage hygiene for the Registry—to audit all of the telemarketing calls that DISH and its vendors made from August 1, 2015 to October 20, 2015. Those audits show that "Dish Network's dials for this time period adhered to the applicable requirements of the National DNC Registry." Declaration of Elyse D. Echtman ("Echtman Decl."), Exs. A at 3; *id.*, Ex. B at 3. Indeed, DISH committed only one potential telemarketing violation out of 1,065,949 calls, an error rate of about 0.000001 percent. DISH also bolstered its written processes and procedures to satisfy the TSR Safe Harbor standards that this Court articulated. And, DISH's complaint tracking shows significant improvement as well. While DISH received 683 telemarketing complaints from State Attorneys General and the Better Business Bureau in 2006, the numbers were down to 131 in 2010, 23 in 2013, and only 9 through September 2015. Echtman Decl., Ex. C. Similarly, on the Retailer front, DISH received 1,615 complaints in 2006. Echtman Decl., Ex. D. After reducing its OE Retailer base substantially— to less than 20 Retailers—DISH has only 3 Retailer complaints as of September 2015. *Id*.

Plaintiffs prefer to ignore the existence of this current evidence and do not want the Court to see it. DISH offered to produce Rule 30(b)(6) witnesses to testify about the documents, but Plaintiffs rejected that offer. Instead, Plaintiffs ask the Court to grant a sweeping injunction

1

based on stale information that they know does not accurately reflect DISH's current compliance efforts. The current documents were properly produced and should be considered by the Court at trial.

In addition to DISH's document production, Plaintiffs ask this Court to preclude DISH from calling certain witnesses on DISH's witness list on the ground that they were not named in DISH's Rule 26(a)(1) disclosures. But, this Court has already held that a Rule 26(a)(1) disclosure is not necessary if the information was otherwise provided in discovery. Dkt. No. 499 at 19. Plaintiffs ask that DISH be precluded from calling Josh Sitko and Supriya Surender notwithstanding that they were identified at depositions as individuals working in Outbound Operations within the discovery time period with responsibility for processing lists. The names of those individuals appear on documents produced in discovery, and even on some of Plaintiffs' trial exhibits. Plaintiffs also ask that the Court preclude DISH from calling its Chief Financial Officer, Steven Swain, whose name appears on the face of DISH's publicly filed financial statements, as well as preclude testimony from Kevin Gelston, DISH's Vice President of Corporate Accounting.

Plaintiffs incorrectly assume, among other things, that DISH intends to call all of the witnesses they challenge to testify to current compliance efforts.[1] In fact, only Matt Cagle and Steve Gniadek are offered for that purpose. Those individuals performed the recent CompliancePoint audits, and could not have been disclosed earlier, because they had no earlier

---

[1] Plaintiffs declined DISH's invitation to meet and confer telephonically prior to the filing of motions *in limine* to explore whether any evidentiary disputes might be resolved or narrowed without intervention by the Court. Echtman Decl. ¶ 7, Ex. E. If Plaintiffs had been willing to get on the phone with DISH, they might have learned the topics on which these witnesses will provide testimony.

connection to this case.  These witnesses can provide the most relevant evidence on Plaintiffs'

injunction request, by speaking to DISH's current telemarketing compliance record.

This Court should deny Plaintiffs' preclusion request and allow DISH to present relevant

evidence at trial.

## ARGUMENT

## I.   DISH'S DISCLOSURES COMPLY WITH THE FEDERAL RULES

### A.   DISH's Timely Production Is Critical To This Court's Mandatory Injunction Analysis

Plaintiffs request a "significant mandatory injunction that would affect much of Dish's

ongoing business practices."  Dkt. No. 445 at 229.  The requested injunction seeks, among other

things, to halt DISH's telemarketing practices, to require a third party audit and report approved

by this Court, to restrain DISH from working with retailers that have not been approved by a

third party audit, and to allow DISH to begin telemarketing again only if it transmits all

compliance materials to Plaintiffs on a quarterly basis for the next decade, and subject to

additional petitions to this Court.  *See* Dkt. No. 528-6 at ¶¶ 107-111.  To justify any injunction,

let alone one this sweeping, Plaintiffs will need to prove that there is "some reasonable

likelihood of future violations."  *C.F.T.C. v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979).  In

assessing the injunction request, this Court must consider, among other things, "the likelihood

that the defendant's customary business activities might again involve [it] in such transactions."

*S.E.C. v. Holschuh*, 694 F.2d 130, 144 (7th Cir. 1982).  Plaintiffs have argued that "fencing in"

injunctive relief is necessary, claiming that there is a likelihood that DISH will use illegal

telemarketing methods in the future.  Dkt. No. 402 at 166.  DISH is entitled to defend against

that assertion.

In this case, 90% of the violations that this Court identified at summary judgment were committed by two retailers—Star Satellite and Dish TV Now—and occurred over a decade ago. *See* Dkt. No. 445 at 3-5.  DISH's customary business activities—which are central to the injunction analysis—have since evolved, leaving Plaintiffs' evidence related to this crucial issue outdated.  DISH therefore produced a new set of documents necessary to provide this Court with the full picture when it rules on whether a mandatory injunction is appropriate here.  As required by Rule 26(a)(3)(A)(iii) and this Court's pretrial order, DISH did so before the parties' exhibit lists were due.  DISH produced the following categories of documents:

**1. Audits.**  DISH produced two audits of all of its recent outbound telemarketing campaigns, which were completed by CompliancePoint, a subsidiary of PossibleNOW.  Echtman Decl., Exs. A and B.  DISH gave these documents to Plaintiffs *within one week of each audit report's completion*.  Echtman Decl. at ¶¶ 3, 4.  These two documents demonstrate that DISH has a near-perfect do-not-call compliance record.  The September 2015 audit of 620,342 calls from August 1, 2015 to September 19, 2015 revealed only one possible telemarketing violation, which resulted from a technical error.  Echtman Decl., Ex. A.  The October 26, 2015 audit analyzed 445,607 calls made from September 20, 2015 to October 20th, 2015, and did not find a single violation.  Echtman Decl., Ex. B.  Overall, this is an error rate of 0.000001%.  The audits provide a clear snapshot of DISH's current compliance with do-not-call laws, and discredit any inference that DISH is likely to commit future violations.  DISH should not only be permitted to present these business records at trial, but it should also be permitted to present testimony from the individuals who performed the audit, Matt Cagle and/or Steve Gniadek of CompliancePoint.

**2. Outbound Operations Policy.**  DISH produced a comprehensive written policy titled "DISH Outbound Operations – Summary of Processes and Procedures," finalized after the

issuance of this Court's summary judgment decision.  Echtman Decl., Exs. F and G.  DISH

created this document memorializing its processes and procedures in direct response to this

Court's summary judgment opinion on the TSR Safe Harbor.  Plaintiffs' assertion that DISH will

use this manual to ask the Court to reconsider its safe harbor decision at summary judgment is

completely off base.  *See* Dkt. No. 531 at 12.  DISH openly acknowledges that this written

document did not exist until recently, and offers it only as evidence of its current compliance

efforts, relevant to this Court's analysis of whether an injunction is appropriate.  The policy

provides written documentation of the Outbound Operations Group's procedures.

   **3. TCPA Tracker**.  DISH produced several updated charts tracking the number of TCPA

complaints that DISH received in recent years.  These are not necessarily violations, but rather

complaints reported from consumers.  DISH received 541 State Attorney General complaints in

2006, and 142 from the Better Business Bureau.  The number dropped significantly in 2010, to

131 state Attorney General complaints and 45 Better Business Bureau complaints.  Continuing

this trend, DISH received only 12 complaints from State Attorneys General in 2013, 7 in 2014,

and 9 as of September 2015.  Echtman Decl., Ex. C.  Similarly, DISH received 22 Better

Business Bureau complaints in 2013, 14 in 2014, and only 11 as of September 2015.  *Id.*  The

trackers provide an important, objective picture of DISH's improvement.[2]  DISH produced an

updated chart documenting a parallel drop in complaints regarding Retailer calls.  *See* Echtman

Decl., Ex. D.  For example, DISH received 1,615 complaints in 2006, and only 3 complaints as

of September 2015.  *Id.*

   **4. Do-Not-Call Policy**.  DISH produced a copy of its Do-Not-Call Policy revised in April

2014.  Echtman Decl., Ex. H.  This policy is largely consistent with DISH's prior Do-Not-Call

---

[2] During discovery, DISH provided an earlier version of the same document to Plaintiffs that
recorded TCPA complaints up to 2011.  Echtman Decl., Ex. K at 144:4-145:3.

Policies, and is complemented by the new 2015 Outbound Operations document described above.  DISH produced this document so that the Court will have a copy of its current do-not-call policy when considering whether DISH's current procedures will result in future violations.

     **5. Do Not Call Escalations Form Workflow Update**.  DISH uses a Do Not Call Escalations form to remove customer phone numbers from DISH lists in escalated situations.  In February 2015, DISH updated its form to streamline the process for DISH employees.  Echtman Decl., Ex. I.  This form provides important information to the Court regarding DISH's efforts to improve its do-not-call compliance.

     6. **Standard Operating Procedures**.  DISH has produced its current Standard Operating Procedures.  *See e.g.,* Echtman Decl., Ex. J.  These procedures provide detailed instructions to DISH Outbound Operations employees for processing specific calling lists.  DISH could not have produced these particular documents during discovery.  DISH simply asks the Court to look at these documents, which are used today, as evidence of DISH's current practices, relevant to the injunction analysis—and not as evidence that DISH documented those practices years ago.

     In all, as this Court's summary judgment opinion makes clear, DISH made many efforts to improve its compliance over the years.  For example, the Court recognized that, in late 2007, DISH retained PossibleNOW (the source of Plaintiffs' own fact witness, Rick Stauffer), to assist with its telemarketing compliance.  *See* Dkt. No. 445 at 71.  The new documents that DISH produced, which reflect its current practices, complete this picture, and are therefore central to the Court's mandatory injunction analysis.[3]

---

[3] DISH also produced a number of publicly available consent judgments, complaints, and orders demonstrating how the government has valued violations in other cases.  It pulled almost all of these documents from PACER.  Some of these documents were created in 2014 and 2015, while others existed while discovery was open.  DISH produced these documents only as a courtesy: a party has no obligation to produce publicly available cases during discovery.  *See Bey v. Pollard*,

**B.      DISH Fulfilled its Discovery Obligations**

Plaintiffs assert that DISH cannot produce these new documents now because DISH argued in 2013 that it had no duty to supplement its responses at that time.  But Plaintiffs fail to disclose that DISH did supplement the record in 2013—in direct response to Plaintiffs' requests—and that the parties developed a clear understanding of what DISH was and was not willing to produce.  Plaintiffs never challenged that understanding.

### 1.      DISH Satisfied its Obligations

DISH had three main discovery obligations relevant to this dispute.  First, DISH had a Rule 26(a)(1)(A)(ii) duty to disclose "a copy—or a description by category and location" of all documents in its "possession, custody, or control" that it might use to support its claims or defenses.  DISH's disclosures encompassed the documents that it has produced.  DISH disclosed that it would rely on "Telemarketing compliance materials regarding internal Do Not Call list compliance, including DISH Network's 'Do Not Call' policies and their revisions."  Dkt. No. 526-3 at 3.

DISH had a second obligation: a duty to respond to Plaintiffs' discovery requests pursuant to Rule 34.  Plaintiffs' relevant requests were time-limited, however, and did not include the period now at issue.  On May 5, 2010, Plaintiffs requested documents regarding DISH's telemarketing compliance monitoring and enforcement.  *See* Dkt. No. 47-2 at 9 ¶¶ 12, 13.  The requests instructed DISH to produce the "documents . . . created, used, or in force at any time from the period October 1, 2003, *to the date on which production is made* pursuant to these requests."  *Id.* at 3 ¶ 5 (emphasis added).  As this Court has recognized, the recipient of a request for production need not "generate new documents."  Dkt. No. 80 at 11.  The duty to respond to

---

No. 13-CV-952-JPS, 2014 WL 4113127, at *3 (E.D. Wis. Aug. 20, 2014).  Even if this Court found production of these documents necessary, however, Plaintiffs cannot allege any possible prejudice from receiving them months before trial.

the requests terminated at the time that DISH responded, unless DISH had a further duty to supplement the record, which—as discussed below—it did not.

DISH's third obligation was to produce documents before pretrial filings were due, pursuant to Rule 26(a)(3) and this Court's discovery order.  Under this Court's Text Order dated June 29, 2015, pretrial exhibit lists and motions in limine were due by November 2, 2015.  DISH produced all documents now at issue prior to this deadline.  Therefore, DISH met all three of its discovery obligations, unless it had some duty to supplement its responses under Rule 26(e) not satisfied by its productions.  It did not.

### 2.    DISH Had No Rule 26(e) Duty to Supplement

Under Rule 26(e), a party must supplement its discovery responses only when it "learns that in some *material respect* the disclosure or response is incomplete or incorrect."  (emphasis added.)  There is not a "general and on-going duty of supplementation throughout the entire life of an action, regardless of the procedural posture of the case or the relative significance of the discovery to a final resolution." *Thompson v. Ret. Plan for Employees of S.C. Johnson & Sons, Inc.*, No. 07-CV-1047, 2010 WL 2735694, at *1 (E.D. Wis. July 12, 2010).  DISH did not believe that the duty was triggered in 2013, but nevertheless produced a number of documents in response to Plaintiffs' requests.

In July 2013, Plaintiffs sent DISH a letter requesting that DISH update and supplement its discovery responses.  *See* Dkt. No. 526-4.  The parties held a meet and confer regarding outstanding discovery issues.  Echtman Decl., Ex. K.  Plaintiffs took the position that DISH "has a duty to supplement its prior discovery responses up to and including the day of trial." *Id.* at 138:20-22.  Plaintiffs stated, "we want DISH to fulfill its obligation to supplement and whatever DISH conceives that obligation as being, it should feel free to go and do it.  That way, we can

evaluate what we think." *Id*. at 139:9-12. DISH correctly disputed any such duty, in the absence of incompleteness or incorrectness, but did agree to provide some supplementation.

First, Plaintiffs requested an updated version of DISH's internal do-not-call list. *Id*. at 142:7-8. They received one. Second, DISH agreed to consider producing an updated copy of its data recording consumers' do-not-call complaints. *Id*. at 148:22-4. DISH produced updated complaint data in the form of TCPA trackers. Echtman Decl., Ex. L.

Apparently satisfied with DISH's supplementation, which did not include call records, Plaintiffs did not to move to compel. Plaintiffs now assert that DISH "led Plaintiffs to believe that it would not be presenting any testimony or evidence from after June 2012 at all." Dkt. No. 526 at 8. This position is not credible when DISH supplemented the record in 2013—pursuant to Plaintiffs' request—with post-2012 data.

After this Court issued its summary judgment opinion, DISH took proactive steps to bolster its written policies and procedures. For example, DISH further memorialized its Outbound Operations processes and procedures and instituted outside call record audits, all prior to the November 2, 2015 pretrial deadline in this case. DISH made a timely production of these new materials in good faith compliance with the discovery rules. That is all that was required. In all, DISH's production of newly created material was appropriate under both this Court's pretrial order and under Rule 26(a)(3)(A), which governs pretrial disclosures.

Even if this Court disagreed with DISH's analysis, and found the new production to be a necessary supplement under Rule 26(e), DISH complied with the requirements of that rule. As discussed above, DISH timely produced the new documents (*supra*, at 4-7), and therefore satisfied the Rule 26(e) requirements.

## II.     RULE 37 DOES NOT BAR THE DOCUMENTS OR THE PROPOSED TRIAL WITNESSES

Even if this Court finds that DISH's production of the documents or its addition of certain individuals to its witness list violated Rule 26, Rule 37 sanctions would nevertheless be inappropriate.  Rule 26 violations do not necessitate the automatic exclusion of evidence. Instead, evidence is admissible if the failure to disclose it earlier is either "substantially justified" or "harmless."  Fed. R. Civ. P. 37(c)(1).

The "determination of whether a . . . violation is justified or harmless is entrusted to the broad discretion of the district court."  *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).  The following four factors "should guide the district court's discretion": "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date."  *Id.*

### A.     Documents

Under Rule 37(c)(1), a party's failure to timely disclose is "substantially justified" when it lacked the "actual ability to timely disclose," or "had a legal basis to argue that disclosure was not actually required."  *Bull v. Bd. of Trustees of Ball State Univ.*, No. 1:10-CV-00878-JMS, 2012 WL 76137, at *2 (S.D. Ind. Jan. 10, 2012).  Here, as discussed above, DISH was fully justified in producing these discovery materials, which *did not exist* while discovery was open. Plaintiffs' cases barring the admission of documents do not counsel otherwise.  *See* Dkt. No. 526 at 12, 14.  Instead, the decisions simply exclude evidence where the proponent failed to explain why the documents were not produced earlier.  *See, e.g., Lujano v. Town of Cicero*, No. 07 C 4822, 2011 WL 6822204, at *3 (N.D. Ill. Dec. 23, 2011) (excluding evidence produced after the close of discovery when documents existed at the outset of the case); *Spina v. Forest Preserve of*

10

*Cook County*, No. 98 C 1393, 2001 WL 1491524, at *11 (N.D. Ill. Nov. 23, 2001) (precluding use of hundreds of documents produced weeks before trial when proponent previously ignored two court orders demanding their production); *Sys. Dev. Integration, LLC v. Computer Sci. Crp.*, No. 09-cv-4008, 2012 WL 2953063, at *3 (N.D. Ill. July 19, 2012) (precluding new evidence where proponent provided no explanation of when it learned of the new information).  As described above, those cases are very different from this one, where DISH has explained why the documents post-date fact discovery.  Where Plaintiffs seek a far-reaching mandatory injunction that would have devastating effects on DISH's business, the Court should have the relevant documents before it.

Furthermore, any potential discovery violation is harmless.  *See United States Sec. & Exch. Comm'n v. Berrettini*, No. 10-CV-1614, 2015 WL 5159746, at *2 (N.D. Ill. Sept. 1, 2015) (finding production of documents three months before trial harmless).  DISH produced these documents in good faith.  For example, DISH sent Plaintiffs the audit reports within a week of their creation.  Echtman Decl. at ¶¶ 3-4.  DISH is not withholding documents, but rather supplementing the record with those necessary to give the Court—and the government—a full picture of DISH's current compliance.  Far from disrupting the trial, these documents will allow it to run smoothly, with all evidence presented squarely to the Court.

Moreover, DISH offered Plaintiffs an opportunity to conduct Rule 30(b)(6) depositions to learn more about these documents, but Plaintiffs declined it.  DISH made this offer months before trial, when there was plenty of time to gather the relevant evidence.  *See* Dkt. No. 526-7, Dkt. No. 526-8.  Plaintiffs also declined to file any motion to exclude the evidence when they became aware that DISH was going to present it in May 2015, after receiving DISH's proposed findings of fact.  *See, e.g.* Echtman Decl., Ex. M at ¶¶ 34, 108.  Similarly, they did not ask for

any additional discovery records that they now claim they would need.  Instead, they let the clock tick down, filing this motion at the eleventh hour, when they claim that it is too late to learn more about DISH's production.  Plaintiffs are not interested in the state of DISH's current compliance efforts, despite their request for a massive mandatory injunction.  Instead, they are trying to freeze this case in the past, asking this Court to cripple DISH's business based upon decade-old evidence of its practices.

Plaintiffs assert that DISH cherry-picked evidence of its good behavior by producing audits without the underlying call records.  *See* Dkt. No. 526 at 12-14.  But those audits—which evaluated all DISH outbound telemarketing campaigns during the relevant time period—were completed by CompliancePoint, a subsidiary of PossibleNOW.  Plaintiffs themselves intend to use a PossibleNOW representative as a witness to their case, and PossibleNOW is the company the United States trusts to manage hygiene for the Registry.  *See* Dkt. No. 528-8 (listing Rick Stauffer).  Given the reliability of these documents—which audited *all* of DISH's telemarketing calls from August 1, 2015 through October 20, 2015—Plaintiffs' citation to *Simon Property Group*, which involved a *selective* disclosure of certain discovery materials, is wholly inapposite. *See* Dkt. 526 at 13 (citing *Simon Property Group, L.P. v. mySimon, Inc.*, No. IP 99-1195-C H/S, 2003 WL 1807135 (S.D. Ind. Mar. 26, 2003).

Plaintiffs' argument that the Court cannot allow these audits into evidence without the last five years of call records, *see* Dkt. 526 at 13-14, is even more misguided.  DISH is not using these audits to demonstrate that its calling records over the last five years were perfect.  It is simply using them to demonstrate its current compliance, so that this Court can determine whether future violations are likely.

###### B.      Trial Witnesses

Plaintiffs claim that DISH omitted eight witnesses from its Rule 26(a) disclosures who are now included on DISH's trial witness list, and ask this Court to preclude those witnesses from testifying.[4]  DISH will agree to withdraw two of these witnesses from its list: Men Wang and Krystle Davidson, leaving only six witnesses at issue: Kevin Gelston, Steve Swain, Josh Sitko, Supriya Surender, Matt Cagle, and Steve Gniadek.  DISH disclosed two of these witnesses eight months in advance of trial:   Kevin Gelston and Steve Swain.  Echtman Decl., Ex. N.  In September 2015, DISH disclosed the remaining four witnesses.  Dkt. No. 528-9.  DISH is unlikely to call all six witnesses at trial, but included these witnesses on in its pretrial disclosures to preserve its ability to use them, depending on Plaintiffs' affirmative case.

These witnesses fall into three categories:  First, DISH presents two witnesses who will speak to its outbound dialing operations.  The introduction of these witnesses is harmless, as both names appear in deposition testimony and record documents, including Plaintiffs' own exhibits.  Second, DISH offers two witnesses who will speak about the September and October 2015 audits.  The introduction of these witnesses is substantially justified, as the audits did not exist until very recently, and the witnesses therefore could not have been included on earlier Rule 26(a) disclosures.  Finally, DISH will present witnesses who will speak to DISH's current financial condition.  Plaintiffs have put the testimony of these witnesses at issue, arguing that DISH can afford to pay astronomical civil penalties in this case.

---

[4] Plaintiffs also argue that DISH is at fault because it "still has not disclosed the subjects on which most of these witnesses will testify."  Dkt. No. 526 at 10.  Plaintiffs have similarly declined to disclose this information in their witness list.  *See* Dkt. No. 528-8.  And, Plaintiffs did not request the subject matter of the testimony before moving *in limine* to preclude the witnesses.  Indeed, Plaintiffs declined DISH's offer to meet and confer on the motions before they were made.  Echtman Decl., Ex. E.  In any event, the subject matter of each witness's potential testimony should be apparent from the discovery record and from those individuals' positions at DISH.

As this Court has explained, a party need supplement its Rule 26 disclosures only if "the additional or corrective information has not otherwise been made known to the other parties during the discovery process."  Dkt. No. 499 at 19 (citing Fed. R. Civ. P. 26(e)).  A failure to disclose a witness in Rule 26 disclosures is "harmless" if the "witness was disclosed in discovery."  *Id.* (citing *Stolarczyk ex rel. Estate of Stolarczyk v. Senator Intern. Freight Forwarding, LLC*, 376 F.Supp.2d 834, 843 (N.D.Ill.2005)).  In *Stolarczyk*, for example, the court declined to exclude witness testimony, despite the fact that the witness was not included in Rule 26 disclosures, because deposition testimony revealed that the witness "may have had information relevant to the case."[5]  376 F. Supp. 2d at 843.

Plaintiffs assert that they "found few or no Dish documents mentioning any" of these witnesses.  *See* Dkt. 526-5.  Plaintiffs apparently did not look very hard, because the record contains plenty of relevant information associated with Josh Sitko and Supriya Surender.  For example, Joey Montano, then Resource Manager of the Outbound Team, testified about both individuals during his deposition.  He identified Mr. Sitko and Ms. Surender as business operations specialists in the Outbound Operations Department who worked under him.  Echtman Decl., Ex. O at 18:17-25.  Mr. Montano explained that both Mr. Sitko and Ms. Surender were responsible for dialer operations, which included "processing lists, assigning agents to

---

[5] Plaintiffs ignore this Court's ruling, and instead offer a series of cases whose facts have virtually no relevance here.  *See* Dkt. No. 526 at 8, citing *Minemyer v. R-Boc Representatives, Inc.*, 283 F.R.D. 392, 397-99 (N.D. Ill. 2012) (personal jurisdiction argument waived when not raised in pretrial order); *Tribble v. Evangelides*, 670 F.3d 753, 759-60 (7th Cir. 2012) (reversing verdict in favor of defendant when defendant presented undisclosed expert testimony at trial, contradicting district court's order barring such testimony); *Bronk v. Ineichen*, 54 F.3d 425, 431-32 (7th Cir. 1995) (affirming district court's preclusion of expert testimony when expert was not listed on pretrial witness list); *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1245-46 (7th Cir. 1982) (affirming district court's exclusion of witness when witness was not listed on final pre-trial witness list, and proponent gave opposing party only three days' notice of desire to call witness).

campaigns, and troubleshooting dialer technology." *Id.* at 19:22-20:4.  Bob Davis, a former

Outbound Operations Manager at DISH, also identified Josh Sitko as a business operations

specialist who reported to Joey Montano and described his responsibilities as "list processing"

and "list distribution."  Echtman Decl., Ex. P at 20:17-21:16, Ex. Q 259:4-23.  As in *Stolarczyk*,

Plaintiffs were on notice that Mr. Sitko and Ms. Surender might have relevant information in this

case.

      The discovery record provided abundant additional notice to Plaintiffs.  Mr. Sitko's name

appears in three of Plaintiffs' proposed trial exhibits:  PX 1172, PX 556, and PX 773.  Moreover,

the name "Sitko" retrieves 271 hits in the discovery database.  Similarly, Ms. Surender's name

retrieves 131 hits in the discovery database.  Echtman Decl., ¶ 23.

      The omission of the remaining DISH witnesses is also harmless and substantially

justified.  Steve Swain, Senior Vice President and Chief Financial Officer of DISH, may testify

about DISH's ability to pay in this case, a factor that this Court must consider in awarding any

civil penalties under 15 U.S.C. § 45(m)(1)(C).  In the alternative, Kevin Gelston, Vice President

of Corporate Accounting at DISH, may testify about the same issue.  The introduction of these

witnesses is both harmless and substantially justified:  This narrow issue is important to the

resolution of this case, in the event that the Court finds penalties appropriate, and Plaintiffs

themselves introduced the issue by arguing at summary judgment that DISH could afford to pay

a massive civil penalty, as well as by seeking to introduce evidence of DISH's financial

condition.  DISH's publicly filed 2014 Annual Report identifies Mr. Swain as the Senior Vice

President and Chief Financial Officer of the company.  Echtman Decl., Ex. R at 25, 26.  And, as

demonstrated by their summary judgment filings, Plaintiffs have already collected substantial

information about DISH's finances.  Dkt. No. 402 at 149-50.

The two remaining witnesses, Matt Cagle and Steve Gniadek, are CompliancePoint employees who conducted the September and October 2015 audits that Plaintiffs now oppose. Echtman Decl., Exs. A and B. DISH intends to introduce these individuals solely to testify about the audits. DISH was substantially justified in omitting these witnesses from its Rule 26(a) disclosures, as they did not perform these audits until September and October 2015. Their introduction is similarly harmless, as DISH released the audits in good faith at the earliest possible date, in order to supply crucial information to Plaintiffs and this Court.

## III.    EVEN IF RULE 37 BARRED THE EVIDENCE, THIS COURT SHOULD EXERCISE ITS DISCRETION TO PERMIT IT

Even if this Court finds that Plaintiffs have satisfied the requirements of Rule 37, it should nevertheless exercise its discretion and decline to exclude the proffered evidence in these circumstances. Under Rule 37(c)(1), a party who fails to provide the proper Rule 26(a) and (e) disclosures "is not allowed to use that information or witness to supply evidence" unless "the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1)(A).

Given the importance of the evidence at issue—particularly the documents reflecting DISH's improved compliance with telemarketing laws—to resolving whether a mandatory injunction is appropriate in this case, DISH requests that the Court exercise its vast discretion to allow that evidence and decide this case on the merits.

## CONCLUSION

For the reasons stated above, DISH requests that this Court deny Plaintiffs' Motion in Limine to Preclude Evidence Post-Dating the Close of Fact Discovery, and allow DISH to present the relevant evidence to this Court.

Dated:  November 19, 2015    Respectfully submitted,


        By: /s Peter A. Bicks    

        Peter A. Bicks
        Elyse D. Echtman
        John L. Ewald
        ORRICK, HERRINGTON & SUTCLIFFE LLP
        51 West 52nd Street
        New York, New York 10019
        Telephone: (212) 506-5000
        pbicks@orrick.com
        eechtman@orrick.com
        jewald@orrick.com

        Joseph A. Boyle
        Lauri A. Mazzuchetti
        KELLEY DRYE & WARREN LLP
        200 Kimball Drive
        Parsippany, New Jersey 07054
        Telephone: (973) 503-5900
        jboyle@kelleydrye.com
        lmazzuchetti@kelleydrye.com
        Henry T. Kelly
        KELLEY DRYE & WARREN LLP
        333 West Wacker Drive
        Chicago, Illinois  60606
        Telephone: (312) 857-2350
        hkelly@kelleydrye.com

        *Attorneys for Defendant DISH Network L.L.C.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2015, I electronically filed the above document and supporting documentation with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

_/s/ Peter A. Bicks_____

Peter A. Bicks
ORRICK HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
pbicks@orrick.com

*Attorney for Defendant DISH Network L.L.C.*

**WORD COUNT CERTIFICATION**

Peter A. Bicks, an attorney of record in the above captioned matter, hereby certifies that the foregoing memorandum contains 5,451 words and 29,583 characters, in compliance with the Court's type volume limitations as set forth in Local Rule 7.1(B)(4), as calculated by the word count function of the word processing system used to prepare the foregoing memorandum.

By: ___/s/ Peter A. Bicks_____
         Peter A. Bicks