**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| and the STATES of CALIFORNIA, | ) | |
| ILLINOIS, NORTH CAROLINA, | ) | |
| and OHIO, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 09-3073 |
| | ) | |
| DISH NETWORK LLC, | ) | |
| | ) | |
| Defendant, | ) | |

## <u>OPINION</u>

**SUE E. MYERSCOUGH, U.S. District Judge:**

This matter comes before the Court on Plaintiffs' Motion to Preclude the Expert Testimony of Kenneth Sponsler and Strike his Expert Report (d/e 522) (Motion 522); Plaintiffs' Motion to Preclude the Expert Testimony of Avery Abernethy and Strike his Expert Report (d/e 523) (Motion 523); and Plaintiffs' Motion to Preclude the Expert Testimony of Robert Fenili and Strike his Expert Report (d/e 524) (Motion 524) (collectively the Motions).  For the reasons set forth below, the Motion 523 is ALLOWED in part and DENIED in part, and Motions 522 and 524 are DENIED.

# **BACKGROUND**

The Plaintiffs allege that Defendant Dish Network, L.L.C. (Dish) made or caused to be made millions of illegal telemarketing calls in violation of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6105 (Telemarketing Act); the Federal Trade Commission Act, 15 U.S.C. § 45 (FTC Act); the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA); the Federal Trade Commission (FTC) regulation entitled the Telemarketing Sales Rule promulgated under the Telemarketing Act and the FTC Act, 16 C.F.R. Part 310 (TSR); the Federal Communications Commission (FCC) regulation promulgated under the TCPA, 47 C.F.C. § 64.1200 (FCC Rule); and the laws of each Plaintiff State. Third Amended Complaint and Demand for Jury Trial (d/e 483), Counts I through XII. The Court has entered partial summary judgment. Opinion entered December 12, 2014 (d/e 445) (Opinion 445), at 231-38, 75 F.Supp.3d 942, 1032-34 (C.D. Ill. 2014). The matter is set for bench trial commencing on January 19, 2016.

Dish has listed Kenneth Sponsler, Dr. Avery Abernethy, Ph.D., and Dr. Robert Fenili, Ph.D., as expert witnesses whose opinion

evidence Dish intends to present at trial in this matter.  See Pretrial

Order (d/e 564), Attachment I, Defendant's Witness List, at 1; Joint

List of Witnesses to Appear in Person (d/e 563), at 4.  Dish

disclosed Sponsler, Dr. Abernethy, and Dr. Fenili as expert

witnesses during discovery and provided expert reports.  See Fed.

R. Civ. P. 26(a)(2).  The Plaintiffs move in limine to exclude the

expert opinion testimony of Sponsler, Dr. Abernethy, and Dr. Fenili

at trial and to strike their expert reports.[1]

## ANALYSIS

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge,
skill, experience, training, or education may testify in the
form of an opinion or otherwise if:

> (a)    the expert's scientific, technical, or other
> specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in
> issue;

> (b)    the testimony is based on sufficient facts or
> data;

> (c)    the testimony is the product of reliable
> principles and methods; and

> (d)    the expert has reliably applied the principles
> and methods to the facts of the case.

---

[1] The Plaintiffs do not move in limine to bar Sponsler as a fact witness.  Motion 522, at 1 n.1.

Fed. R. Evid. 702.  This Court must perform a gate-keeping function to determine that expert testimony is reliable and relevant under the principles codified in Rule 702.  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993).  In performing this function, the Court must determine the reliability and the relevance of the evidence.  Ammons v. Aramark Uniform Services, Inc., 368 F.3d 809, 816 (7th Cir. 2004).  The Court must evaluate the qualifications of the expert.  The Court must determine that the expert's opinions are based on sufficient facts and data. The Court then must determine whether the expert testimony is reliable and relevant and whether his opinions will assist the trier of fact in determining a fact in issue.  See Ammons, 368 F.3d at 816; Wasson v. Peabody Coal Co., 542 F.3d 1172, 1176 (7th Cir. 2008).

The Court must evaluate the reliability of the expert's methodology.  Manpower, Inc. v. Insurance Co. of Pennsylvania, 732 F.3d 796, 806 (7th Cir. 2013).  The Court, however, does not evaluate the quality of the underlying data or the quality of the expert's conclusions.  "The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's

conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment." Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000).

The Court must also evaluate whether the expert's opinions are relevant and fit the issue to which the expert is testifying. See Deimer v. Cincinnati Sub-Zero Prods., Inc., 58 F.3d 341, 344 (7th Cir. 1995). The Court will evaluate each expert's opinions under these principles separately. The Court will address Dr. Abernethy last because he relies in part on Dr. Fenili's opinions.

This Opinion relates solely the Court's gatekeeping function under Rule 702. The Court is not deciding the weight to be given to any of these opinions at trial or the merits of any position of any party on any issues to which the opinions may relate. The Court is only deciding whether the opinions meet the standard for admissibility as expert opinion evidence.

### A. **Kenneth Sponsler**

Sponsler prepared a report responding to the report of Plaintiffs' expert Debra Green. Both Green and Sponsler are experts in the field of telemarketing. Green is a business

consultant with over twenty years of experience in telesales and call center services in the financial services and telecommunications industries.  Sponsler has years of experience as a consultant in the field of compliance with telemarketing laws.  <u>Defendant Dish Network L.L.C.'s Opposition to Plaintiffs' Motion to Preclude the Expert Testimony of Kenneth Sponsler and Strike his Expert Report (d/e 545) (Opposition 545)</u>, attached <u>Declaration of John L. Ewald</u>, Exhibit A, <u>Expert Report of Debra Green (Green Report)</u>, ¶ 1; and Exhibit C, <u>Curriculum Vitae of Kenneth R. Sponsler</u>.  The Plaintiffs do not challenge Sponsler's qualifications as an expert in this field.

The Plaintiffs provided Green with the Amended Complaint (d/e 5), discovery deposition transcripts, and other documents produced in discovery.  <u>Green Report</u>, ¶ 2.  Green opined on whether Dish's "efforts to achieve and enforce compliance with the FTC Telemarketing Sales Rule ('TSR') and the Telephone Consumer Protection Act ('TCPA') comported with industry standards and best practices."  <u>Green Report</u>, ¶ 7.  Green opined that:

(1)     "Dish did repeatedly make calls to numbers on the [National Do Not Call Registry (Registry)]."

(2)     "Dish did make . . . automated sales calls."

(3)   "Dish did not have an effective internal compliance program"

to "monitor and enforce its own compliance with the

telemarketing laws."

(4)   "Dish did not conduct itself in accordance with industry

standards" in "its policies and practices for ensuring that its

outside retailers' (sic) complied with the telemarketing laws."

(5)   "Dish's lack of monitoring, its failure to take meaningful

enforcement action when it learned or found that its retailers

had violated the TCPA or TSR, and its apparent tolerance of

such telemarketing violations in light of a retailers continued

sales, created an environment that allowed Dish's retailers to

continue committing such violations as long as they were

generating additional sales for Dish."

Green Report, ¶¶ 53, 54, and 65.  The Plaintiffs intend to call Green

as an expert witness at trial.  Pretrial Order, Attachment H,

Plaintiffs' Witness List, at 2; Joint List of Witnesses to Appear in

Person (d/e 563), at 2.

Dish retained Sponsler to respond to the Green Report.

Motion 522, Exhibit 2, Expert Report of Ken Sponsler (Sponsler

Report), at 1.[2]  Sponsler reviewed the same material that Green had

reviewed.  Id.  Sponsler described his methodology as follows:

> In drafting this report and rendering my opinions in this
> case, I considered the expert report of Debra Green as
> well as my experience in compliance matters from client-
> seller, service provider (call center) and mutual support
> standpoints.  I stay current with industry
> developments—both in terms of technology and
> compliance—and this has also informed my opinions.

Id.

Sponsler criticized Green for what he described as

"inconsistencies" in the terms she used to refer to business entities

that offer Dish products and services through telemarketing.

Sponsler Report, at 1.  Sponsler opined that business entities that

offer Dish products and services through telemarketing fit into two

categories: "Service Providers" and "Retailers."   Id., at 3-4.  Service

Providers are "typically neither sellers [such as Dish] nor retailers. .

. . .  [T]hese entities provide telemarketing related services that may

assist others in telemarketing."  Id., at 3.  Sponsler stated that a

subset of Service Provides called "Service Bureaus" may provide

outbound telemarketing services for a Seller.  Id.  Sponsler stated

Retailers "are independently owned companies that may contact

---

[2] The Sponsler Report has no page numbers.  The Court refers to the pagination assigned by
the Court's CM/ECF system to the copy of the Sponsler Report attached to Motion 522.

consumers through telemarketing to offer Dish Network, other satellite provider services as well as services or products unrelated to satellite services." Id., at 4.

Sponsler opined that the Green Report "accurately describes many of the due diligence requirements that the Seller/Service Bureau relationship requires including contracts, compliance guidelines and training, monitoring and enforcement as well as audits." Sponsler Report, at 4.

Sponsler, however, disagreed with Green's opinion that the same "due diligence requirements" applied to the relationship between Sellers and Retailers, "In my experience Seller compliance responsibilities in relationships with "retailers" and "vendors" are not accurately described in [the Green Report]. . . .  Sellers enter into contractual relationships with Service Bureaus specifically for services related to inbound/outbound telemarketing . . . on their behalf." Sponsler Report, at 4.  Sponsler opined that "Dish-Retailer relationships in terms of compliance responsibilities can be extremely complex. . . .  [R]etailers are sellers in their own right. . . . [E]ach retailer is responsible to insure their telemarketing and other activities are incompliance with the applicable laws . . . ." Id., at 5.

Sponsler opined that consumers often misdirect their complaints about a Retailer's telemarketing violations to Dish rather than the responsible Retailer.  Sponsler opined Dish acts reasonably in its response to these types of complaints,

> [D]ish expends significant resources to determine the nature of the complaint and initiate reasonable measures in an attempt to prevent future occurrences.  The "reasonableness" of these measures is highly variable and for the most part is determined by the severity and magnitude of the perceived non-compliance.  . . .  Dish has limited control and recourse options in retailer relationships with severing of the contract being the ultimate course of action.  It is for this reason that Dish often expends significant resources to identify issues and work to remediate corrective measures even though they have little control over the operational compliance processes of other Sellers such as retailers.

Sponsler Report, at 5.   Sponsler effectively opines Dish acted reasonably by dealing with each complaint of a Retailers' telemarketing law violation on a case-by-case basis.

The Court finds that Sponsler's opinion is based on sufficient data.  Fed. R. Evid. 702(b); see Wasson, 542 F.3d 1172, 1176 (7th Cir. 2008).  The Plaintiffs provided Green with the Amended Complaint and extensive deposition transcripts and other discovery materials on which to base her opinions.  Sponsler reviewed the

same materials.  These materials provide a sufficient factual basis for each expert's opinion.

In this case, Sponsler's reliance on his experience is an appropriate methodology for opining on whether Dish's actions in monitoring and enforcing compliance with telemarketing laws were reasonable or consistent with industry standards. In appropriate circumstances, an expert opinion may be based on the expert's experience in the industry.  See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999) ("In other cases, the relevant reliability concerns may focus upon personal knowledge or experience."); Metavante Corp. v. Emigrant Sav. Bank, 619 F.3d 748, 761 (7th Cir. 2010) ("An expert's testimony is not unreliable simply because it is founded on his experience rather than on data. . . ."). Both Green and Sponsler base their opinions on their experience in the industry.  Green describes her opinion of industry standards in much greater detail, but she relies on her experience as the basis for those opinions.  See e.g., Green Report, ¶ 53 (I have been asked to render an opinion  . . . based on my expertise in the field . . . ."). Neither expert relies on any published reference materials or other authority to support their opinions.

Nonetheless, Sponsler and Green substantially agree on the applicable industry standards for monitoring and enforcing compliance with respect to telemarketers that Sponsler calls Service Bureaus.  They disagree on whether the same standards apply to telemarketers that Sponsler calls Retailers.  Green opines that the same standards apply to any authorized third party who uses outbound telemarketing to sell Dish's products and services. Sponsler opines that the telemarketing industry applies a different standard to Retailers, as he defines the term.

In this situation, where no recognized authoritative published industry standards or other authority apparently exist, these experts' opinions based on their experience in the industry will assist the Court as the fact finder in determining whether Dish's practices were consistent with industry standards.  The Court finds that Sponsler used a reliable methodology.

The Plaintiffs rely on cases that involve scientific or engineering questions to challenge Sponsler's use of his experience as a basis for his opinions.  See e.g., Bielski v. Louisville Ladder, Inc., 663 F.3d 887, 894 (7th Cir. 2011).  In cases involving scientific or technical issues, the experts should evaluate the specific

circumstances using scientific or technical testing methods.  The
Court's gatekeeping inquiry under Rule 702, however, is "'a flexible
one'" that "must be tied to the facts of a particular case." Kumho
Tire Co., 526 U.S. at 150 (quoting Daubert, 509 U.S. at 591, 594).
In this case, Green and Sponsler both opine on industry standards
in the telemarketing industry.  Each expert has special knowledge
of the practices in the telemarketing industry because of his or her
experience.  That knowledge gained from experience provides a
sufficient basis to provide opinions that will aid the trier of fact.  In
this context, the evaluation of the data based on experience is an
appropriate method of analysis.  See Kumho Tire Co., 526 U.S. at
150.

The Plaintiffs argue that Sponsler's use of a case-by-case
approach to evaluate Dish's conduct lacks any methodology at all.
The Court does not agree that Sponsler uses a case-by-case
approach.  Rather, Sponsler opines that Dish uses a case-by-case
approach to monitor and enforce Retailer compliance with
telemarketing laws and regulations. Sponsler opines that Dish's
case-by-case approach is reasonable.  Sponsler bases that opinion
on his experience in the telemarketing compliance industry.  Green

disagrees.  She bases her opinion on her experience in the telemarketing industry.  Counsel may demonstrate the relative credibility of these differing opinions through direct and cross-examination.  Both experts, however, use the same appropriate experienced-based methodology in this context.

For purposes of Motion 522, the Court will not address whether Sponsler's opinions are relevant and fit an issue in this case.  See Deimer, 58 F.3d at 344.  The parties do not identify the issues to which either of these expert's opinions are relevant.  This case is about whether Dish violated federal and state telemarketing laws and regulations, not whether it violated industry standards. The Plaintiffs, however, do not challenge Sponsler's opinions on relevance grounds.  The Court will consider both Green and Sponsler's opinions presented at trial and give them the appropriate weight.  Motion 522 is denied.

## B. Dr. Robert Fenili

Dr. Fenili is an experienced economist qualified to perform statistical analyses.  Dr. Fenili rendered opinions of (1) the number of telephone lines registered on the Registry that fit into each of four categories: residential, wireless, business, and inactive lines in each

year from 2003 to 2011; and (2) the percentage of the lines registered on the Registry that fit into each of the four categories in each year from 2003 to 2011.  Dr. Fenili used three sets of data: (1) a 2004 published analysis of the make-up of the Registry as of September 2004 (2004 Data); (2) a 2009 analysis of the make-up of the telephone lines registered on the Registry as of March 2009 (2009 Data); and (3) the FTC's National Do Not Call Registry Data Book for Fiscal Year 2011 (2011 Data Book).   The 2011 Data Book contained data on the number of lines registered on the Registry for each year from its inception in October 2003 to 2011.

Dr. Fenili is qualified to analyze data to estimate rates of change and growth in data sets, such as rates of change and growth types of telephone lines registered on the Registry.  He has experience in analyzing such data sets.  See Motion 524, Exhibit A, Report of Robert N. Fenili, ¶¶ 4-9.  He is qualified to analyze data sets to estimate the proportions of sets of data and rates of change in sets of data.

The Plaintiffs argue that Dr. Fenili is not qualified to perform any analysis of data of the make-up of the Registry because he is not an expert in the Registry.  The Court disagrees.  Dr. Fenili

analyzed three sets of data about the size and make-up of the Registry to estimate rates of change and growth in different types of telephone lines registered on the Registry.  He is qualified to perform these types of analyses.  The significance of Dr. Fenili's analyses depends, in part, on the validity of 2004 Data, the 2009 Data, and the 2011 Data Book.  The Court does not evaluate the quality of the data when performing the <u>Daubert</u> gatekeeping function.  <u>Smith</u>,  215 F.3d at 718.

The Plaintiffs argue that Dr. Fenili's opinions are really "an attempt to launder specific inadmissible facts through an expert in order to admit what is otherwise not admissible."  <u>Motion 524</u>, at 5. The Plaintiffs argue that Dish is using Dr. Fenili as a vehicle to present the 2009 Data.  The 2009 Data comes from a report issued by PossibleNOW, Inc. (PossibleNOW Report).  The Plaintiffs argue that the PossbileNOW Report is inadmissible hearsay.  The Plaintiffs argue that Dr. Fenili is only parroting the inadmissible information in the PossibleNOW Report as expert opinion to allow Dish to skirt the hearsay rule.

Dr. Fenili, however, may rely on inadmissible information if experts in his field would reasonably rely on such data.  Fed. R.

Evid. 703.  The Plaintiffs do no dispute that economists studying

rates of change and growth rely on data sets that may be

inadmissible hearsay under the Federal Rules of Evidence.  The

Court will not bar Dr. Fenili's opinion on these grounds.

The validity of the PossibleNOW Report, as well as the 2004

Data and the 2011 Data Book, are relevant to determining the

weight to be given Dr. Fenili's opinions. See Smith, 215 F.3d at 718.

The Court also will not consider the underlying data as evidence

unless the data are otherwise admissible.  See Matter of James

Wilson Associates, 965 F.2d 160, 173 (7th Cir. 1992).

Dish asserts that it can lay a proper foundation to admit the

PossibleNOW Report under exceptions to the hearsay rule.

Defendant Dish Network L.L.C.'s Opposition to Plaintiffs' Motion In

Limine to Preclude the Expert Testimony of Robert Fenili and Strike

His Expert Report (d/e 551) (Opposition 551), at 3.  If so, the

Plaintiffs' concerns about "laundering" inadmissible evidence will be

moot.

The Plaintiffs also argue that Dr. Fenili's opinions are

irrelevant.  The Court disagrees.  As the Court recently explained,

the types of telephone numbers registered on the Registry are

relevant to this case:

> In this case, the composition of the telephone
> numbers on the Registry is relevant to Count V at least.
> Count V alleges violations of the Telephone Consumer
> Protection Act (TCPA), 47 U.S.C. § 227, and the Federal
> Communications Commission Rule (FCC Rule)
> promulgated thereunder, 47 C.F.R. § 12.6400. Third
> Amended Complaint and Demand for Jury Trial (d/e 483)
> (Complaint), Count V.  The applicable portions of the
> TCPA and the FCC Rule bar calls to residential telephone
> subscribers whose telephone numbers are on the
> Registry. See Opinion entered December 12, 2014 (d/e
> 445), at 202. The types of numbers on the Registry (e.g.,
> residential landlines, Voice over Internet Protocol (VoIP),
> wireless) may be relevant to determining whether
> telemarketing calls were directed to residential telephone
> subscribers.

Opinion entered December 7, 2015 (d/e 562) (Opinion 562), at 2-3.

Dr. Fenili's opinions on the make-up of types of telephone lines on

the Registry are relevant.

Last, the Plaintiffs argue that Dr. Fenili's opinions should be

excluded under Rule 403 because his opinions are confusing and

will waste time.  The Court again disagrees.  This Court also

explained in Opinion 562 that the Court would not be confused by

evidence regarding the composition of the Registry:

> The Plaintiffs also argue that the evidence will be
> confusing.  The Court may exclude relevant evidence if its

probative value is substantially outweighed by a danger
of confusion. Fed. R. Evid. 403. This is a bench trial. The
Court has reviewed the extensive filings in this case and
is quite familiar with the legal and factual issues. The
risk that the Court would be confused is minimal. The
Plaintiffs have not shown that this minimal risk
outweighs the probative value of the evidence.  The Court
will not exclude this evidence under Rule 403.

Opinion 562, at 3.  The Court similarly will not be confused by Dr.

Fenili's opinion in the bench trial.  Motion 524 is denied.

## C. **Dr. Avery Abernethy**

Dr. Abernethy is an economist specializing in the economics of

advertising and marketing, including telemarketing.  See Motion

524, Exhibit A, Expert Report of Avery M. Abernethy in the Matter

of United States of America and the States of California, Illinois,

North Carolina, and Ohio v. Dish Network, LLC (Abernethy Report),

at 2. Dr. Abernethy states the scope of his opinions as follows:

1] I was retained . . . to provide expert opinion and
testimony regarding the public policy underlying the
National Do Not Call Registry ("DNCR") from a marketing
and economic standpoint.  I was also asked for an
explanation as to whether a DNCR over-populated with
numbers that do not belong to properly registered
consumers is consistent or inconsistent with the goal of
the DNCR from an economic and public policy
standpoint.  I was also asked to consider the costs to
consumers and business (sic) when consumers who want
to receive telemarketing calls do not receive them, the
costs of an inaccurate DNCR, and the costs to consumers

and the economy of legitimate telemarketers being impeded due to an inaccurate DNCR.

Abernethy Report, at 1.  Dr. Abernethy reviewed the Fenili Report and the three data sets on which Dr. Fenili relied; the Telemarketing Act and related statutes; and publically available documents, including published statements by the FTC.  Dr. Abernethy relied on peer reviewed academic articles on the economics of advertising, including the economics of telemarketing.  Dr. Abernethy states thirteen major conclusions based on his review of these materials:

My major conclusions are:

> 2] Truthful advertising benefits consumers.[3]
>
> 3] Telemarketing provides benefits to consumers and the economy.
>
> 4] Do Not Call Registry provides benefits and costs to consumers and the economy.
>
> 5] Do Not Call Registry is based on legislation and the FTC documents that establish it was intended to provide consumers a choice.  It is opt in and opt out.
>
> 6] Do Not Call rules explicitly exclude some groups from coverage including those who contact the firm with inquiries, those with an established business relationship and all business lines.

---

[3] Dr. Abernethy's conclusions begin with the number 2 because he numbered his statement of the scope of his opinions, quoted above, as paragraph 1.

7] Legislation (Do Not Call Improvement Act of 2007) requires an accurate Do Not Call Registry.

8] To provide consumer choice and maximize consumer welfare, the Do Not Call Registry must be accurate.

9] The Federal Trade Commission ("FTC") has not made a good faith effort to remove business and other improper numbers from the Do Not Call Registry.

10] Dish Network has the legal right to contact business numbers.  From a marketing perspective, many businesses are a potentially profitable target market for Dish Network.

11] The FTC has imposed somewhat burdensome requirements on consumers who change their minds and want telemarketing calls.

12] An inaccurate Registry discourages and penalizes legitimate commerce.  The DNCR appears to be highly inaccurate.

13] According to the FTC and my professional judgment, many telemarketing complaints are erroneous.  FTC has not made a good faith effort to determine which consumer complaints are accurate.  Erroneous complaints penalize legitimate commerce.

14] An inaccurate Registry is not consistent with the goals of Do Not Call from an economic and public policy standpoint.  An inaccurate Registry imposes costs on consumers, businesses, and telemarketers.

Abernethy Report, at 1-2.  Dr. Abernethy expounded on each of these conclusions in the Abernethy Report.

Dr. Abernethy is not qualified to render some of the quoted opinions. Dr. Abernethy is an economist, not an expert in administrative agency process. He therefore is not qualified to opine on whether the FTC made good faith efforts. He also is not qualified to opine on Congressional intent. He also is not qualified to interpret statutes and regulations. All such opinions are barred.

Dr. Abernethy is qualified to render opinions about the economic effect of public policy. The Court finds that the vast majority of Dr. Abernethy's opinions regarding economic public policy are not relevant and do not fit an issue in this case. See Deimer, 58 F.3d at 344. Dr. Abernethy's discussion of economic public policy is not relevant to any liability issues in the case. The Plaintiffs will prove or fail to prove their cases, and Dish will either prove or fail to prove any affirmative defenses. Policy concerns are not relevant to liability.

Most of Dr. Abernethy's opinions are also irrelevant to the remedial issues in the case. Dr. Abernethy opines extensively about the effect of inaccuracies in the Registry. Any inaccuracies in the Registry will be resolved at the liability phase of this case. Dr. Abernethy repeatedly mentions business telephone numbers are

not subject to the TSR, and so, he opines that those numbers are not supposed to be on the Registry.  Dr. Abernethy also mentions that Dish may call the telephone numbers of consumers who have an Established Business Relationship with Dish.  Dish has an affirmative defense to claims of liability under the TSR for calls to businesses.  See Opinion 445, at 162.   The State Plaintiffs must prove that Dish initiated calls to residential telephone subscribers to establish liability under the TCPA.  See Opinion 445, at 200.  Dish also has an affirmative defense for calls to consumers that have an Established Business Relationship with Dish.  See Opinion 445, at 162.  Therefore, Dish should not be held liable for calls to business numbers on the Registry or calls to consumers who have Established Business Relationships with Dish.  Dr. Abernethy's concerns about the economic impact of business numbers on the Registry or about calls to consumers who have Established Business Relationships with Dish are not relevant to the remedies phase of the trial.

Dr. Abernethy incorrectly states certain other numbers are inaccurately on the Registry.  Dr. Abernethy incorrectly states that wireless numbers are not properly on the Registry.  Telemarketing

calls to wireless numbers are subject to the TSR, and so, can properly be registered on the Registry.  Opinion 445, at 15-16.  The Federal Communications Commission has stated that wireless numbers may be registered on the Registry because consumers may use wireless numbers as residential telephones for purposes of the TCPA.  See Opinion 445, at 29-30.  The presence of wireless numbers on the Registry does not constitute an inaccuracy in the Registry.

Dr. Abernethy criticizes the FTC for leaving disconnected numbers on the Registry.  Congress directed the FTC to keep valid telephones number on the Registry indefinitely and to remove valid telephone numbers only if the numbers have been both disconnected and reassigned.  15 U.S.C. § 6155; see Opinion 445, at 23.  The FTC's compliance with this federal statute does not constitute an inaccuracy.  Congress wants these disconnected numbers to remain on the Registry.

Dr. Abernethy states two opinions concerning consumer injury that may have some relevance to the remedial phase of the case:

1. An inaccurate DNCR removes or curtails consumer choice.  If a consumer that desires or is indifferent to

telemarketing calls is placed on the DNCR, then that consumer choice was removed from them.

2. Similarly, although a consumer effectively exercises the choice to remove a number from the DNCR when they disconnect a phone number that was previously registered, the FTC maintains that number on the DNCR unless and until it is reassigned.  There are an unspecified quantity of telephone numbers on the DNCR which if called by a telemarketer would not result in annoyance to any consumers.  But if those inactive numbers were called the FTC might seek to fine telemarketers for calling.

Abernethy Report, at 6 (Consumer Injury Opinions).[4]  The

Consumer Injury Opinions could support an inference that two

types of telemarketing calls to numbers on the Registry may violate

the relevant telemarketing laws, but do not cause consumer

injuries: (1) calls to numbers on the Registry even though the call

recipients do not want their numbers on the Registry, and (2) calls

to inactive numbers.  The latter may occur during the time period

when a number is disconnected but not yet reassigned.  The former

may occur for various reasons.  For example, a lag time may

sometimes exist from the date that a registered number is

reassigned to a new consumer who does not want the number

registered to the date that Registry is updated and the reassigned

---

[4] The Consumer Injury Opinions are not numbered in the Abernethy Report, but are statements within the body of the text.

Page **25** of **30**

number is removed from the Registry (The Reassignment Lag

Time).[5]  Dr. Abernethy's Consumer Injury Opinions may be relevant

to whether Dish caused consumer injury if any of the illegal calls in

this case were made to these two classes of telephone numbers.

The question of consumer injury may be relevant to the award

of civil penalties.  Section 5(m) of the FTC Act direct that this Court

"shall take into account the degree of culpability, any history of

prior such conduct, ability to pay, effect on ability to continue to do

business, and such other matters as justice may require," when

deciding that amount of civil penalties, if any, to award for

violations of the TSR. 15 U.S.C. § 45(m)(1)(C).  Congress ratified the

establishment of the Registry in order to protect consumers.  15

U.S.C. § 6151, see Opinion 445, at 15.  Justice may require the

Court to consider consumer injury in this case.  The Court finds

that the Consumer Injury Opinions are relevant to the issue of civil

penalties in this case for purposes of Rule 702.  All of Dr.

Abernethy's other opinions are barred because Dr. Abernethy is not

---

[5] The comments in this Opinion regarding Reassessment Lag Time are made for conducting the
Rule 702 gatekeeping function only.  The Court similarly does not preclude Dish from
presenting evidence on reasons that telephone numbers may be on the Registry, but the
consumer holding of the number does not want the number to be registered. The Court is not
making findings of fact for purposes of trial.

competent to render the opinions or the opinions are not relevant and do not fit an issue in this case.

The Consumer Injury Opinions are based on sufficient facts and data, and Dr. Abernethy's methodology for these two opinions is reliable.  Dr. Abernethy reviewed the Fenili Report and the underlying data on which Dr. Fenili relied.  Dr. Abernethy also relied on publically available statements by the FTC concerning the Registry and relevant statutes.  These provide sufficient facts and data on which to base the Consumer Injury Opinions.  Dr. Abernethy based his analysis on published scholarly articles on the economics of advertising, including the economics of telemarketing. Reliance on scholarly articles is a reliable method for economists performing the type of qualitative analysis performed by Dr. Abernethy.  The qualitative opinions may assist the Court as a trier of fact in the bench trial.  The Court finds that Dr. Abernethy's Consumer Injury Opinions meet the requirements of Rule 702 for expert opinion testimony.

The Plaintiffs argue that the Consumer Injury Opinions are speculative and not based on any methodology.  The Court disagrees.  Congress directed the FTC to leave valid telephone

numbers on the Registry until the numbers are both disconnected
and reassigned.  This statutory requirement supports the inference
that: (1) valid disconnected numbers are on the Registry; and (2)
reassigned numbers may remain on the Registry during the
Reassignment Lag Time.  The scholarly economic articles cited by
Dr. Abernethy support his opinion that telemarketing calls provide
benefits to some consumers.  The existence of these two classes of
numbers on the Registry and the economic theory cited by Dr.
Abernethy provides a sufficient basis and a reliable methodology for
the Consumer Injury Opinions.  The Consumer Injury Opinions are
qualitative and the weight to be given to them is a matter for trial.
The Consumer Injury Opinions, however, are not speculative.  The
Consumer Injury Opinions meet the requirements of Rule 702.

Dish argues that Dr. Abernethy's other opinions about the
economic and public policy effect of the Registry and its
maintenance may be relevant to: (1) the State Plaintiffs' burden to
prove that calls were made to the residential telephone subscribers
and (2) Dish's burden to prove its affirmative defense to the TSR
claims that calls were made to businesses.  Defendant Dish
Network L.L.C.'s Opposition to Plaintiffs' Motion to strike the Expert

<u>Report of Avery Abernethy and Preclude His Expert Testimony (d/e 555)</u>, at 3-5; <u>see</u> <u>Opinion 445</u>, at 162, 202.

The Court disagrees.  Dr. Abernethy's opinions about public policy and economic effects do not tend to prove or disprove that calls were made to a residential telephone subscriber or to a business.  Dr. Abernethy's statements about the composition of the Registry or its maintenance are mere recitations of the Fenili Report, the data underlying the Fenili Report, or other information provided to him. Dish may present Dr. Fenili to admit his opinions at trial. Dr. Abernethy will not be allowed to rehearse them a second time.  His remaining opinions, such as his opinions about the FTC's lack of good faith, are not admissible because he is not competent to present opinions.  Dr. Abernethy's opinions, other than the Consumer Injury Opinions, are not relevant and do not fit the issues of whether calls were made to residential telephone subscribers or whether calls were made to businesses.  Dr. Abernethy's opinions are barred except for the two Consumer Injury Opinions.

## <u>CONCLUSION</u>

THEREFORE Plaintiffs' Motion to Preclude the Expert Testimony of Kenneth Sponsler and Strike his Expert Report (d/e 522) is DENIED; Plaintiffs' Motion to Preclude the Expert Testimony of Avery Abernethy and Strike his Expert Report (d/e 523) is ALLOWED in part and DENIED in part; and Plaintiffs' Motion to Preclude the Expert Testimony of Robert Fenili and Strike his Expert Report (d/e 524) is DENIED.

Enter: January 13, 2016

_____/s Sue E. Myerscough_____
UNITED STATES DISTRICT JUDGE