<u>Revised Supplemental Expert Report of Dr. Erez Yoeli for</u>
<u>Plaintiff States of California, Illinois, North Carolina & Ohio</u>
<u>July 7, 2016</u>

**Professional Background**

1. I incorporate by reference my professional background and prior expert experience information from paragraphs 1-6 of my December 14, 2012 Revised Initial Expert Report. Since December 2012 and my trial testimony in January 2016, my employment situation has changed.  I am currently a research scientist and lecturer at Harvard University.  My revised CV is included as Appendix A.

2. For this report, I was compensated $340 per hour for my work.  My payment is not contingent in any way on the outcome of this case.

**Request**

3. In my prior reports for this case, I was asked to provide counts of telemarketing calls that were purported violations of various telemarketing laws for both the U.S. Department of Justice as well as the States of California, Illinois, North Carolina and Ohio (herein "Plaintiff States"). I used the area code of the phone number called and the NANPA listing of area codes to identify whether a call was to a number in a Plaintiff State.

4. Following the January-February 2016 trial, Dish Network (herein "Dish") produced additional data that related to whether its telemarketing calls were placed to a Plaintiff State.  These data included addresses associated with telephone numbers called by Dish.  Of the Dish telemarketing calls that I previously identified as having been made to telephone numbers associated with each Plaintiff State, I was asked to use these new data to determine how many of those calls were made to addresses in that Plaintiff State.

**Methods**

5. To prepare this report, I considered and relied upon the new data produced by Dish, an email sent by Plaintiff States to Dish on June 10, 2016 (see Appendix B), and two emails sent by Dish's attorneys to Plaintiff States on May 26, 2016 and June 22, 2016 (see Appendices C and D).  I also used the same NANPA listing of area codes used previously in this case (see www.nationalnanpa.com).

6. Two analysts working under my supervision ran the analyses. They sorted, matched, and summarized the data using the software SAS and R. These software facilitate reliable analyses of large volumes of data contained in multiple datasets and are commonly used by economists and others for this purpose.

7. To ensure accuracy, each analyst formulated their own logic to yield a list of calls that satisfied the search parameters.

**Data Description**

8.  State Plaintiffs requested that Dish provide address information for seven sets of call records—
    "Call Sets"—consisting of calls on which the Court granted summary judgment or which were at
    issue during trial in January-February 2016.

9.  For most of the call records in these seven Call Sets, Dish provided address data drawn from
    eleven different data sources.   Dish identified and described the sources of address data in an
    email to State Plaintiffs (see Appendix D).  For example, Dish explained that Set 1 contained
    address information drawn from Dish's Customer Account databases, while Set 10 contains
    address information obtained from the credit reporting agency, TransUnion.  Dish did not
    provide data from all eleven address sources for all seven Call Sets.

10. Dish produced these address data in 72 files containing data ("datasets") that it named using the
    format <Name>_Set<Number >.  The <Name> field indicates Dish's name for the Call Set, and
    the <Number > represents the data source from which Dish obtained the address information.
    For example, the dataset named DTX907_Set10 contains address data for the call records in
    DTX907 obtained from TransUnion, the source Dish identified as Set 10.  To avoid confusion
    between the terms "Call Set" and "Set," this report refers to the "Set" as the "address source"
    going forward.

11. My and Dish's names for each Call Set and the number of calls in each Call Set  appear in the
    table below:

**Table 1. Call Set Summary**

| Dish Name for Call Set | Name I Use | Count of Calls |
|---|---|---|
| **DTX903** | Dish 2007-2010 Federal DNC Violations | 501,650 |
| **DTX905** | Dish 2007-2010 Uncompleted Calls | 309,931 |
| **DTX907** | Dish 2007-2010 Inquiry Calls | 873,551 |
| **DTX909** | Dish 2007-2010 Wrong Number/No English | 12,522 |
| **PX1410** | Dish 2007-2010 AM Internal + Disposition Positive Voice (DPV) | 98,054 |
| **Fed_tmy_ebrn** | Dish 2007-2010 Conclusion 1 | 1,112,125 |
| **Fed_tmu_ebrn** | Dish 2007-2010 Conclusion 1A | 2,230,290 |

12. In the 72 datasets that Dish produced, Dish provided address-related information associated
    with the call records in the Call Sets.  For each call record, Dish provided varying numbers of
    addresses associated with each record.  For example, Dish provided no address information for
    some call records, provided only one address from a single address source for others, and

provided multiple addresses from multiple address sources for still others.  Dish also provided these data in different formats and with different associated fields.  Common patterns observed in the data were:

    a.  Location Start & End Dates
        i.  Address Sources: 1,4,6,8 and 10
        ii.  Description: Contains at least the state of the address associated with the phone number and two date fields that are described as "location begin date" and "location end date".

    b.  Creation Date
        i.  Address Sources: 2,3 and 7
        ii.  Description: Contains at least the state of the address associated with the phone number and a field "create date" and/or "update date".

    c.  Action Date
        i.  Address Source: 11
        ii.  Description: Contains at least the state of the address associated with the phone number, a field called the "speedeon_date" and a field called "speedeon_action", which takes only the values "I" (capital i) or "D".

    d.  No Dates
        i.  Address Source: 5,9
        ii.  Description: Contains at least the state of the address associated with the phone number but no date fields.

**Assumptions**

13.  On June 10, 2016, the Plaintiff States sent an email to Dish that presented my working assumptions about these datasets and asked Dish to correct any inaccuracies (Appendix B). Dish's responsive email (Appendix  D) did not dispute my assumptions, which are as follows:

    a.  When Dish provided information in the Location Start and End Date format, I associated that address with all calls to that phone number within that Call Set that were made on/after the location begin date and on/before the location end date.[1][2][3]

---

[1] Instead of matching only within each Call Set, I also tried matching address information from across all datasets to each phone numbers.  The results did not meaningfully differ.

[2] In Appendices G and H, I present results of analyses that use one additional assumption.  There, I assume that the call date must be between the "primary phone begin" and "primary phone end" dates provided by Dish.  Dish's June 22, 2016 email (Appendix D) describes the phone begin and end dates as representing the first and last dates that the phone number as associated with the account.

[3] Dish also provided "secondary phone begin" and "secondary phone end" dates.  In addition to the assumption listed in footnote 2, I also assumed that an address was valid when the call date was between the "secondary phone begin" and "secondary phone end" dates. The results did not meaningfully differ from the analysis described in footnote 2.

b. When Dish provided information in the Creation Date format, I associated that address with all calls to that phone number within that Call Set that were made on/after the create date.

c. When Dish provided information in the Action Date format[4]:
   i. An "I" in the "speedeon_action" field means an "insert" of a record into the database, while a "D" in the "speedeon_action" field means a "delete" of a record from the database.

   ii. If the address has only an "I" in the action column, then I associated that address with all calls within that Call Set to that phone number on/after the action date.

   iii. If the address has only a "D" in the action column, then I associated that address with all calls within that Call Set to that phone number on/before the action date.

   iv. If the address has both an "I" and a "D" in the action column, then I associated that address with all calls on/after the "I" action date and on/before the "D" action.

d. When Dish provided information in the No Date format, I used that address for all calls within that Call Set to that phone number.

14. Based on Dish's June 22 email (Appendix D), I also incorporated one additional assumption:

a. When Dish provided an update date for data in the Create Date format, I associated that address with all calls to that phone number within that Call Set that were made on/after the update date.

**Methodology**

15. Below I lay out the methodology my team used to analyze the new address data for this report:

a. Step 1: Each of the 72 datasets was loaded into SAS.

b. Step 2: Phone call information from each dataset was limited to calls identified as being to a Plaintiff State, based on area codes of telephone numbers called that corresponded to an area code of a Plaintiff State, using NANPA's listing of area codes.

---

[4] Address data for this set was particularly limited.  Dish's description indicated that these data were provided only when other address information could not be found.

c. Step 3: In many datasets, call data and address data were provided in different rows. Therefore, rows with address information in each dataset were removed and placed in a separate file.

d. Step 4: Using the assumptions above, each call was checked against the address information, and, when relevant, associated with a Plaintiff State.

e. Step 5: Because Dish's new data showed that a call to an individual telephone number could be associated with addresses in more than one state, the resulting number of calls associated with a Plaintiff State were counted using two criteria:

    i. Dish called a phone number associated with multiple addresses, all of which were located in a Plaintiff State, and the phone number area code matched the Plaintiff State area code inferred by using the NANPA listing. I refer to this count as "All States Match".

        1. This count yields a conservative count of the number of calls made to each Plaintiff State, as the presence of even one associated address outside the Plaintiff State precludes that call from the count.

    ii. Dish called a phone number associated with multiple addresses, at least one of which was in a Plaintiff State, as inferred by using the NANPA listing. I refer to this count as "Any States Match".

        1. In this count, the call is included in the count so long as at least one of the associated states matches a Plaintiff State. This count may include some calls that may have been intended to reach addresses outside the Plaintiff State.

**Results**

In Tables 2A-2G of Appendix E, I provide: the number of calls in each Call Set for a particular Plaintiff State using the NANPA listing, the number of calls that resulted from my queries in Step 5 (paragraph 15.e), the percentage of calls to which this corresponds as a proportion of all calls[5], and the percentage of calls to which this corresponds as a proportion of calls with address data.

In Appendix F, I provide the same information in as in Appendix E, broken by campaign name.

---

[5] Using the total number of calls with NANPA area codes associated with the state as the denominator is conservative because calls without address information are treated as though they would not have matched under either method.

My analysis shows that, for all Call Sets and all Plaintiff States, the percentage of calls to addresses in the Plaintiff State was at least 82%.  These conclusions provide further evidence that a significant percentage of Dish's and its retailers' calls were made to residential landline numbers associated with the Plaintiff States.

I reserve the right to supplement my testimony and this report in response to any further information provided by the parties, or in light of additional documents or testimony provided during supplemental discovery during this case, at trial, or otherwise, which may be brought to my attention after the date of my signature below.

July 7, 2016

_____

Erez Yoeli

**Appendix A. CV of Dr. Erez Yoeli**

This page was intentionally left blank.  Please see next page.

## Appendix B. Email from Plaintiff State Attorneys to Dish

**From:** Jinsook Ohta
**Sent:** Thursday, June 09, 2016 11:25 PM

**To:** Echtman, Elyse D.
**Cc:** Kirkman, David; erin.leahy@ohioattorneygeneral.gov; givens@ftc.gov; Hsiao, Lisa K.; Ankoma-Sey, Angela; Blume, Michael S.; Crane-Hirsch, Daniel; Runkle, Patrick; eblackston@atg.state.il.us; Garner, Grace E. (CIV); jeffrey.loeser@ohioattorneygeneral.gov; Jon Worm; Lee, Sang H.; Martin, Erinn D. (CIV); pisaac@atg.state.il.us; pheimlich@atg.state.il.us; rdeitch@ftc.gov; jboyle@kelleydrye.com; lmazzuchetti@kelleydrye.com; Bicks, Peter A.; Ewald, John L.
**Subject:** RE: U.S. v. DISH - DISH Production

Elyse,

Thank you for your detailed email describing the contents of your additional production responsive to our requests for address information.  We have some follow-up questions for you on your production based on our preliminary look at the address information that you have provided.  Also, please let us know if any of the assumptions that we set forth below are incorrect.

1)     The datasets appear to use the filename convention, <Call Set>_Set## .  We understand sets 10 and 11 to be the Speedeon and Transunion data that Dish collected.  Please provide a brief description of each of sets 1 – 9.

 2)     The files for call set DTX903 typically have approximately 501K calls, but DTX903_Set6 only has approximately 331K addresses.  We will assume that the information for the remaining calls within this set was not available.

 3)     The files for call set DTX905 typically have approximately  310K calls, but DTX905_set6 only has approximately 283K.  We will assume that the address information for the remaining calls within this set was not available.

4)     For the Transunion data, we did not receive files for the call sets "Fed_TMY_EBRN" and "PX1410".  We will assume that Transunion information for these calls sets was not provided to us.

5)     For the Speedeon data, we did not receive files for the call sets "DTX909","FED_TMY_EBRN" and "PX1410".  We will assume that the Speedeon information for these calls sets was not provided to us.

 6)     Begin & End Dates  for Sets 1,4,6,8 and 10: Each row containing an address typically has columns that are labeled "location_begin_date" and "location_end_date" or something similar.   We will assume Dish has provided this information as proof of the physical location of the phone call  during that time period range, inclusive of end points.

7)    Create Date  for Sets 2,3 and 7: Each row  containing an address typically has a column that is labeled "create_date","lead_date" or similar.  We will assume that Dish has provided this information as proof of the physical location of the phone call as of the date of the  "create_date" and going forward.

8)    No Dates for Set 5: Each row containing an address does NOT contain any additional date fields. We will assume Dish has provided these addresses as proof of the physical location of the phone calls during the entire relevant period.

9)    Action Dates/Actions for Set 11:  Each row containing an address has a date field and a column taking "I" or "D".  Please let us know what  "I"  and "D" represent (excerpt below).

| phone_number | speedeon_result_address1 | State | speedeon_action | speedeon_date |
|---|---|---|---|---|
| 513 █████ | ███████ | OH | I | 11/28/2006 |
| 513 █████ | ██████ | OH | I | 5/18/2007 |
| 513 █████ | ███████ | OH | D | 12/11/2007 |

If "I" and "D" indicate "Insert" and  "Delete," we note that the insert and delete dates provided do not provide us with sufficient information to recreate the start and end dates of each location.  In cases where the record has an "I", we will assume that address is valid for the period after the date field.  In cases, where the record has a "D", we will assume that address is valid for the period prior to the date field.   Please confirm whether that Dish is providing these state address as proof of physical location for the time periods as described above.

We would appreciate it if you could provide us with a response to the above before the end of next week. Thank you.

Regards,

Jin

11

**Appendix C. First Email From Dish**

**From:** Echtman, Elyse D. [mailto:eechtman@orrick.com]
**Sent:** Thursday, May 26, 2016 8:52 AM
**To:** Jinsook Ohta
**Cc:** Kirkman, David; erin.leahy@ohioattorneygeneral.gov; givens@ftc.gov; Hsiao, Lisa K.; Ankoma-Sey, Angela; Blume, Michael S.; Crane-Hirsch, Daniel; Runkle, Patrick; eblackston@atg.state.il.us; Garner, Grace E. (CIV); jeffrey.loeser@ohioattorneygeneral.gov; Jon Worm; Lee, Sang H.; Martin, Erinn D. (CIV); pisaac@atg.state.il.us; pheimlich@atg.state.il.us; rdeitch@ftc.gov; jboyle@kelleydrye.com; lmazzuchetti@kelleydrye.com; Bicks, Peter A.; Ewald, John L.
**Subject:** U.S. v. DISH - DISH Production

Dear Ms. Ohta,

DISH has produced additional materials responsive to the State Plaintiffs' discovery requests.

As you will see from the production, DISH located address information in its records associated with 99.99% of the call records requested for "current and former customer" calling campaigns.

With regard to "cold call" campaigns, Russell Bangert testified at trial that DISH had access to consumer address information from Equifax "in some cases."  For that reason, DISH does not believe that it ever had address information in its records associated with 100% of those phone numbers.  Similarly, DISH does not believe that it ever had address information in its records associated with 100% of the phone numbers for "inquiry" campaigns.

As you may recall from the deposition and trial testimony in this case, DISH obtained leads for its "cold call" campaigns from an Equifax marketing database.  DISH approached Equifax to obtain its consumer marketing data from the relevant 2007 to 2010 time frame in order to produce relevant consumer address information from that database.  DISH learned that Equifax no longer had its consumer marketing data, because it was transferred to Epsilon in 2010 as part of Equifax's sale of that line of business to Epsilon.  DISH approached Epsilon for access to the marketing database, and learned that Epsilon only maintained that data going back to 2011.

To replicate the Equifax/Epsilon consumer marketing data, DISH looked to the other two of the similarly situated "big three" credit agencies, TransUnion and Experian.

TransUnion has its own marketing database, containing analogous consumer marketing data for the 2007 to 2010 time frame.  DISH obtained address information from TransUnion to fill address gaps for phone numbers requested for "cold call" campaigns, as a proxy for data that it had originally obtained from Equifax.  DISH produced that address information from TransUnion.

Additionally, and in an effort to assist the State Plaintiffs and the Court, DISH produced TransUnion consumer marketing data to fill address gaps for all remaining phone numbers, regardless of the type of campaign.  To the extent that an address could not be found in TransUnion's marketing database, DISH obtained consumer

12

marketing data from Speedeon (another provider of marketing data, who obtains data from the final "big three" credit agency, Experian, and has a marketing database containing analogous consumer marketing data for the 2007 to 2010 time frame) to attempt to fill any remaining gaps.  The data that came from TransUnion or Speedeon, rather than from DISH's records, is specifically identified within the production.

 Also included within the production are requested "intermediate lists" that DISH obtained from PossibleNOW.  After expending considerable effort, PossibleNOW was able to retrieve from its archives intermediate lists that DISH sent for scrubbing from January 2009 through March 2010.  However, PossibleNOW has encountered significant technical difficulties in retrieving from its older set of archives intermediate lists that DISH sent for scrubbing in 2008, and PossibleNOW has indicated that it may not be able to reasonably access them without undue time and expense.

 Using information in DISH's records, the "intermediate lists" obtained from PossibleNOW and the TransUnion and Speedeon consumer marketing data, we are pleased to report that DISH's aggregate production includes address information associated with 99.83% of the call records requested by the State Plaintiffs.

As we have previously informed you, and as I trust that you can see from the above, DISH has engaged in extensive efforts to locate and collect responsive information, as well as to produce it in the specific format requested by the State Plaintiffs.  To the extent that additional responsive information might be located, DISH will produce it in accordance with its supplementation obligations under the Federal Rules.


 Best Regards,


 Elyse

**ELYSE D. ECHTMAN**

*Attorney At Law*

ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142

tel +1-212-506-3753
fax +1-212-506-5151
eechtman@orrick.com
bio • vcard

www.orrick.com

**Appendix D. Dish's Reply to Plaintiff State Email in Appendix B**

**From:** Echtman, Elyse D. [mailto:eechtman@orrick.com]
**Sent:** Wednesday, June 22, 2016 6:58 AM
**To:** Jinsook Ohta
**Cc:** Kirkman, David; erin.leahy@ohioattorneygeneral.gov; givens@ftc.gov; Hsiao, Lisa K.; Ankoma-Sey, Angela; Blume, Michael S.; Crane-Hirsch, Daniel; Runkle, Patrick; eblackston@atg.state.il.us; Garner, Grace E. (CIV); jeffrey.loeser@ohioattorneygeneral.gov; Jon Worm; Lee, Sang H.; Martin, Erinn D. (CIV); pisaac@atg.state.il.us; pheimlich@atg.state.il.us; rdeitch@ftc.gov; jboyle@kelleydrye.com; lmazzuchetti@kelleydrye.com; Bicks, Peter A.; Ewald, John L.
**Subject:** RE: U.S. v. DISH - DISH Production

Counsel:

Below are responses to Jin's questions with respect to DISH's April and May 2016 document production.

**Sets 1 and 1A** contain Customer Account data. This information was pulled from DISH's Customer Account database within DISH's Teradata environment in DISH's Data Warehouse.

"Location begin date" reflects the date when DISH received the location information. It is the first date when the account was associated with the address.

"Location end date" reflects the last date that the account was associated with the address. If the date is in the future, such as 2199-12-31, then the address was currently associated with the account at the time that the information was pulled.

Phone "begin" and "end" dates similarly represent the first and last dates that the phone number was associated with the account. If the phone "end" date is in the future, then the phone number was currently associated with the account at the time that the information was pulled.

**Set 2** contains lead data pulled from the Lead Tracking System in use at DISH prior to May 22, 2013.

The "Lead creation" field represents the date the record was generated.

**Set 3** contains lead data pulled from the Lead Tracking System in use at DISH as of May 22, 2013.

The "Lead creation" field represents the date the record was generated.

**Set 4** contains information from DISH's "Do Not Contact" database. This information was pulled from the "Do Not Mail" portion of DISH's "Do Not Contact" database. The mailing addresses in this database may be associated with customer account numbers. DISH cross-referenced account numbers associated with phone numbers in the call records to identify addresses associated with those same account numbers within this database.

The "Effective date" field represents the date when the Do Not Contact information became effective.

The "Expiration date" field represents the date when the Do Not Contact information expired.

**Set 5** contains MKTG_RAID data. This information was pulled from external hard drives associated with DISH's Marketing Department, which contain historical marketing data.

**Set 6** contains SALESCOMM data. This information was pulled from a database containing customer accounts generated by retailers and used to determine retailer compensation. SalesComm is the database of record for all payments that are made to retailers.

In connection with the process of appending Set 6 information to DTX 903, DTX905, and DTX 909, the DTX files were de-duplicated. That de-duplication accounts for the discrepancy in the number of lines. We are providing amended files as part of a **Set 6A** that do not remove any lines. The original files that were produced are nonetheless complete in providing available information from SALESCOMM with respect to every phone number contained in those files.

The "Eff date" field represents the date when the sales commission data became effective.

The "Exp date" field represents the date when the sales commission data expired.

**Set 7** contains data from DISH's Siebel database. This information was pulled from a database containing information on customer accounts generated by order entry retailers.

The "Created date" field represents the effective date of the Siebel data.

The "Last updt date" field represents the latest date when the Siebel data was updated.

**Set 8** contains data pulled from DISH's Production Operational Data System ("PODS") which was DISH's Operational Data store prior to its implementation of the current version of the Data Warehouse. This information was restored from tape drives created around 2009. This specific information came from "ad hoc" sets of data tables created by a former employee who pulled data for use by the Marketing Department. Those tables contained an association between phone numbers and account numbers. For any phone numbers contained on the seven lists identified by the State Plaintiffs that appeared within these tables, DISH used the associated account numbers to pull address information from its Customer Account data.

"Location begin date" reflects the date when DISH received the location information. It is the first date when the account was associated with the address.

"Location end date" reflects the last date that the account was associated with the address. If the date is in the future, such as 2199-12-31, then the address was currently associated with the account at the time that the information was pulled.

**Set 9** contains data from DISH's Production Operational Data System ("PODS") (explained above), and specifically from subscriber and address information from DISH's Billing System-CSG that had been imported into this Production Operational Data System.

**Set 10** contains TransUnion data. TransUnion data was only provided for phone numbers that did not have any associated addresses within DISH's records. DISH did not provide Transunion data for the call set files identified in the email below.

**Set 11** contains Speedeon data. Speedeon data was only provided for phone numbers that did not have any associated addresses within DISH's records or within TransUnion's data. DISH did not provide Speedeon data for the call set files identified in the email below.

According to Speedeon, the "I" date represents the date that the address record was created at Speedeon and the "D" date represents a date as of which Speedeon no longer associated the telephone number with that address.

15

In response to questions raised about "proof" in your inquiries, DISH has not endeavored to provide "proof" of the physical address of any telephone line at any point in time.  Instead, DISH produced information requested pursuant to the Court's order:  "documents in Dish's possession that contain information regarding the residential addresses associated with the telephone numbers contained in the Dish 2007-2010 calling records."  [Dkt. 624] at 5.

Best regards,

 Elyse

**Appendix E. Number and Percent of Calls Made to Plaintiff State**

*Table 2A. Dish 2007-2010 Federal DNC Violations (DTX903)*

| State | # Calls to State using NANPA | # Calls to State with Address Data | % All Calls to State with Address Data | # Any State Matches | # All State Matches | % of All Calls Where Any State Matches | % of All Calls Where All State Matches | % of Calls with Address Data where Any State Matches | % of Calls with Address Data where All State Matches |
|---|---|---|---|---|---|---|---|---|---|
| California | 53,167 | 52,305 | 98% | 52,031 | 48,007 | 98% | 90% | 99% | 92% |
| Illinois | 24,096 | 23,595 | 98% | 23,544 | 20,438 | 98% | 85% | 100% | 87% |
| North Carolina | 16,005 | 15,380 | 96% | 15,340 | 13,029 | 96% | 81% | 100% | 85% |
| Ohio | 23,853 | 22,899 | 96% | 22,863 | 19,206 | 96% | 81% | 100% | 84% |

*Table 2B. Dish 2007-2010 Uncompleted Calls (DTX905)*

| State | # Calls to State using NANPA | # Calls to State with Address Data | % All Calls to State with Address Data | # Any State Matches | # All State Matches | % of All Calls Where Any State Matches | % of All Calls Where All State Matches | % of Calls with Address Data where Any State Matches | % of Calls with Address Data where All State Matches |
|---|---|---|---|---|---|---|---|---|---|
| California | 34,997 | 34,283 | 98% | 33,956 | 31,601 | 97% | 90% | 99% | 92% |
| Illinois | 15,228 | 14,969 | 98% | 14,824 | 13,762 | 97% | 90% | 99% | 92% |
| North Carolina | 11,718 | 11,443 | 98% | 11,318 | 10,289 | 97% | 88% | 99% | 90% |
| Ohio | 13,294 | 13,030 | 98% | 12,898 | 12,082 | 97% | 91% | 99% | 93% |

17

Table 2C. Dish 2007-2010 Inquiry Calls (DTX907)

| State | # Calls to State using NANPA | # Calls to State with Address Data | % All Calls to State with Address Data | # Any State Matches | # All State Matches | % of All Calls Where Any State Matches | % of All Calls Where All State Matches | % of Calls with Address Data where Any State Matches | % of Calls with Address Data where All State Matches |
|---|---|---|---|---|---|---|---|---|---|
| California | 126,150 | 116,173 | 92% | 113,448 | 100,025 | 90% | 79% | 98% | 86% |
| Illinois | 44,191 | 40,582 | 92% | 39,233 | 33,422 | 89% | 76% | 97% | 82% |
| North Carolina | 39,413 | 35,916 | 91% | 34,981 | 30,090 | 89% | 76% | 97% | 84% |
| Ohio | 40,401 | 37,495 | 93% | 36,596 | 32,016 | 91% | 79% | 98% | 85% |

Table 2D. Dish 2007-2010 Wrong Number/No English (DTX909)

| State | # Calls to State using NANPA | # Calls to State with Address Data | % All Calls to State with Address Data | # Any State Matches | # All State Matches | % of All Calls Where Any State Matches | % of All Calls Where All State Matches | % of Calls with Address Data where Any State Matches | % of Calls with Address Data where All State Matches |
|---|---|---|---|---|---|---|---|---|---|
| California | 2,103 | 2,087 | 99% | 2,080 | 1,961 | 99% | 93% | 100% | 94% |
| Illinois | 470 | 469 | 100% | 466 | 435 | 99% | 93% | 99% | 93% |
| North Carolina | 455 | 448 | 98% | 447 | 421 | 98% | 93% | 100% | 94% |
| Ohio | 443 | 442 | 100% | 440 | 413 | 99% | 93% | 100% | 93% |

18

*Table 2E. Dish 2007-2010 AM Internal + Disposition Positive Voice (DPV) (PX1410)*

| State | # Calls to State using NANPA | # Calls to State with Address Data | % All Calls to State with Address Data | # Any State Matches | # All State Matches | % of All Calls Where Any State Matches | % of All Calls Where All State Matches | % of Calls with Address Data where Any State Matches | % of Calls with Address Data where All State Matches |
|---|---|---|---|---|---|---|---|---|---|
| California | 23,019 | 22,951 | 100% | 22,726 | 22,434 | 99% | 97% | 99% | 98% |
| Illinois | 5,830 | 5,813 | 100% | 5,703 | 5,597 | 98% | 96% | 98% | 96% |
| North Carolina | 2,282 | 2,273 | 100% | 2,251 | 2,187 | 99% | 96% | 99% | 96% |
| Ohio | 1,759 | 1,754 | 100% | 1,713 | 1,659 | 97% | 94% | 98% | 95% |

*Table 2F. Dish 2007-2010 Conclusion 1 (fed_tmy_ebrn)*

| State | # Calls to State using NANPA | # Calls to State with Address Data | % All Calls to State with Address Data | # Any State Matches | # All State Matches | % of All Calls Where Any State Matches | % of All Calls Where All State Matches | % of Calls with Address Data where Any State Matches | % of Calls with Address Data where All State Matches |
|---|---|---|---|---|---|---|---|---|---|
| California | 134,559 | 134,533 | 100% | 134,021 | 129,418 | 100% | 96% | 100% | 96% |
| Illinois | 46,332 | 46,328 | 100% | 46,184 | 44,699 | 100% | 96% | 100% | 96% |
| North Carolina | 38,871 | 38,851 | 100% | 38,696 | 37,113 | 100% | 95% | 100% | 96% |
| Ohio | 45,905 | 45,894 | 100% | 45,732 | 44,638 | 100% | 97% | 100% | 97% |

*Table 2G. Dish 2007-2010 Conclusion 1A (fed_tmy_ebru)*

| State | # Calls to State using NANPA | # Calls to State with Address Data | % All Calls to State with Address Data | # Any State Matches | # All State Matches | % of All Calls Where Any State Matches | % of All Calls Where All State Matches | % of Calls with Address Data where Any State Matches | % of Calls with Address Data where All State Matches |
|---|---|---|---|---|---|---|---|---|---|
| California | 300,993 | 288,827 | 96% | 285,145 | 265,551 | 95% | 88% | 99% | 92% |
| Illinois | 111,385 | 106,759 | 96% | 104,957 | 95,192 | 94% | 85% | 98% | 89% |
| North Carolina | 73,677 | 69,121 | 94% | 67,963 | 59,937 | 92% | 81% | 98% | 87% |
| Ohio | 92,626 | 88,362 | 95% | 87,124 | 78,251 | 94% | 84% | 99% | 89% |

20

**Appendix F. Number and Percent of Calls Made to Plaintiff State by Campaign Name**

Because of the table's size, I have incorporated this appendix as an attachment (AppendixF_Revised.xlsx)

**Appendix G. Number and Percent of Calls Made to Plaintiff State using Primary Phone Assumption**

*Table 2A. Dish 2007-2010 Federal DNC Violations (DTX903)*

| State | # Calls to State using NANPA | # Calls to State with Address Data | % All Calls to State with Address Data | # Any State Matches | # All State Matches | % of All Calls Where Any State Matches | % of All Calls Where All State Matches | % of Calls with Address Data where Any State Matches | % of Calls with Address Data where All State Matches |
|---|---|---|---|---|---|---|---|---|---|
| California | 53,167 | 44,175 | 83% | 43,744 | 42,548 | 82% | 80% | 99% | 96% |
| Illinois | 24,096 | 17,001 | 71% | 16,886 | 16,298 | 70% | 68% | 99% | 96% |
| North Carolina | 16,005 | 11,614 | 73% | 11,522 | 10,999 | 72% | 69% | 99% | 95% |
| Ohio | 23,853 | 14,015 | 59% | 13,924 | 13,477 | 58% | 57% | 99% | 96% |

*Table 2B. Dish 2007-2010 Uncompleted Calls (DTX905)*

| State | # Calls to State using NANPA | # Calls to State with Address Data | % All Calls to State with Address Data | # Any State Matches | # All State Matches | % of All Calls Where Any State Matches | % of All Calls Where All State Matches | % of Calls with Address Data where Any State Matches | % of Calls with Address Data where All State Matches |
|---|---|---|---|---|---|---|---|---|---|
| California | 34,997 | 31,168 | 89% | 30,600 | 29,482 | 87% | 84% | 98% | 95% |
| Illinois | 15,228 | 13,567 | 89% | 13,339 | 12,854 | 88% | 84% | 98% | 95% |
| North Carolina | 11,718 | 10,322 | 88% | 10,125 | 9,665 | 86% | 82% | 98% | 94% |
| Ohio | 13,294 | 11,689 | 88% | 11,491 | 11,183 | 86% | 84% | 98% | 96% |

22

*Table 2C. Dish 2007-2010 Inquiry Calls (DTX907)*

| State | # Calls to State using NANPA | # Calls to State with Address Data | % All Calls to State with Address Data | # Any State Matches | # All State Matches | % of All Calls Where Any State Matches | % of All Calls Where All State Matches | % of Calls with Address Data where Any State Matches | % of Calls with Address Data where All State Matches |
|---|---|---|---|---|---|---|---|---|---|
| California | 126,150 | 75,867 | 60% | 73,173 | 72,366 | 58% | 57% | 96% | 95% |
| Illinois | 44,191 | 26,016 | 59% | 24,717 | 24,429 | 56% | 55% | 95% | 94% |
| North Carolina | 39,413 | 25,790 | 65% | 24,873 | 24,492 | 63% | 62% | 96% | 95% |
| Ohio | 40,401 | 25,934 | 64% | 25,060 | 24,853 | 62% | 62% | 97% | 96% |

*Table 2D. Dish 2007-2010 Wrong Number/No English (DTX909)*

| State | # Calls to State using NANPA | # Calls to State with Address Data | % All Calls to State with Address Data | # Any State Matches | # All State Matches | % of All Calls Where Any State Matches | % of All Calls Where All State Matches | % of Calls with Address Data where Any State Matches | % of Calls with Address Data where All State Matches |
|---|---|---|---|---|---|---|---|---|---|
| California | 2,103 | 2,035 | 97% | 2,013 | 1,926 | 96% | 92% | 99% | 95% |
| Illinois | 470 | 447 | 95% | 440 | 421 | 94% | 90% | 98% | 94% |
| North Carolina | 455 | 436 | 96% | 430 | 411 | 95% | 90% | 99% | 94% |
| Ohio | 443 | 435 | 98% | 429 | 411 | 97% | 93% | 99% | 94% |

23

Table 2E. Dish 2007-2010 AM Internal + Disposition Positive Voice (DPV) (PX1410)

| State | # Calls to State using NANPA | # Calls to State with Address Data | % All Calls to State with Address Data | # Any State Matches | # All State Matches | % of All Calls Where Any State Matches | % of All Calls Where All State Matches | % of Calls with Address Data where Any State Matches | % of Calls with Address Data where All State Matches |
|---|---|---|---|---|---|---|---|---|---|
| California | 23,019 | 22,588 | 98% | 22,340 | 22,137 | 97% | 96% | 99% | 98% |
| Illinois | 5,830 | 5,714 | 98% | 5,594 | 5,512 | 96% | 95% | 98% | 96% |
| North Carolina | 2,282 | 2,251 | 99% | 2,221 | 2,179 | 97% | 95% | 99% | 97% |
| Ohio | 1,759 | 1,728 | 98% | 1,684 | 1,645 | 96% | 94% | 97% | 95% |

Table 2F. Dish 2007-2010 Conclusion 1 (fed_tmy_ebrn)

| State | # Calls to State using NANPA | # Calls to State with Address Data | % All Calls to State with Address Data | # Any State Matches | # All State Matches | % of All Calls Where Any State Matches | % of All Calls Where All State Matches | % of Calls with Address Data where Any State Matches | % of Calls with Address Data where All State Matches |
|---|---|---|---|---|---|---|---|---|---|
| California | 134,559 | 134,357 | 100% | 133,073 | 129,392 | 99% | 96% | 99% | 96% |
| Illinois | 46,332 | 46,263 | 100% | 45,908 | 44,725 | 99% | 97% | 99% | 97% |
| North Carolina | 38,871 | 38,785 | 100% | 38,429 | 37,157 | 99% | 96% | 99% | 96% |
| Ohio | 45,905 | 45,842 | 100% | 45,535 | 44,666 | 99% | 97% | 99% | 97% |

24

*Table 2G. Dish 2007-2010 Conclusion 1A (fed_tmy_ebru)*

| State | # Calls to State using NANPA | # Calls to State with Address Data | % All Calls to State with Address Data | # Any State Matches | # All State Matches | % of All Calls Where Any State Matches | % of All Calls Where All State Matches | % of Calls with Address Data where Any State Matches | % of Calls with Address Data where All State Matches |
|---|---|---|---|---|---|---|---|---|---|
| California | 300,993 | 235,021 | 78% | 231,259 | 228,530 | 77% | 76% | 98% | 97% |
| Illinois | 111,385 | 83,234 | 75% | 81,423 | 80,331 | 73% | 72% | 98% | 97% |
| North Carolina | 73,677 | 53,684 | 73% | 52,490 | 51,327 | 71% | 70% | 98% | 96% |
| Ohio | 92,626 | 65,983 | 71% | 64,753 | 63,960 | 70% | 69% | 98% | 97% |

25

**Appendix H. Number and Percent of Calls Made to Plaintiff State by Campaign Name using Primary Phone Assumption**

Because of the table's size, I have incorporated this appendix as an attachment (AppendixH_Revised.xlsx)

26