IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATES OF CALIFORNIA, ILLINOIS, NORTH CAROLINA, and OHIO, ) ) ) ) ) ) Plaintiff, ) ) v. ) ) DISH NETWORK, L.L.C., ) ) Defendant. ) | No. 09-3073 |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

This matter comes before the Court on the Plaintiffs' Revised Motion to Exclude Rebecca Kirk Fair's Revised Responsive Expert Report (Kirk Fair Report) and Strike Related Testimony as Inadmissible Under Rule 702 (d/e 718) (Motion 718). The Court previously excluded a portion of the Kirk Fair Report. <u>Text Order entered October 25, 2016</u>. Motion 718 only concerns the remaining portions of the Kirk Fair Report and her testimony. For the reasons set forth below, Motion 718 is DENIED.

BACKGROUND

This matter came for bench trial on January 19, 2016. The Plaintiff States of California, Illinois, North Carolina, and Ohio alleged that Defendant Dish Network, LLC (Dish), made either directly or indirectly or as a result of a third party acting on its behalf, illegal telemarketing calls directed at residential telephone subscribers residing in the Plaintiff States in violation of the Telemarketing Consumer Protection Act (TCPA), and the rule (FCC Rule) promulgated thereunder by the Federal Communications Commission (FCC), 47 U.S.C. § 227 and 47 C.F.R. § 64.1200. Second Amended Complaint (d/e 257), Counts V and VI. Each Plaintiff State also brought one or more claims for violations of each Plaintiff State's laws regulating telemarketing or deceptive business practices generally. Second Amended Complaint, Counts VII-XII.

The parties' experts Dr. Erez Yoeli, Ph.D., and John Taylor used telephone area codes to determine whether a call recipient resided in a Plaintiff State. See e.g., Opinion entered December 12, 2014 (d/e 445) (Opinion 445), at 124-39, 145. Dish challenged at summary judgment the accuracy of area codes to prove states of residency of telephone subscribers. Opinion 445, at 204. The

Court found that issues of fact existed regarding whether area codes proved the telephone subscribers' states of residence.  The Court determined at summary judgment that Dish engaged in a pattern and practice of making illegal telemarketing calls in violation of the TCPA to residents of the Plaintiff States.  The evidence regarding the accuracy of area codes to prove telephone subscribers' state of residence was relevant to the appropriate amount of statutory damages or civil penalties under the various counts.  Opinion 445, at 205-07.

Dish's employees testified at trial that Dish had address information for the intended recipients of Dish's telemarketing calls (Dish Telemarketing Call Recipients).[1]  See T 628: 2740-41 (Bangert); T 629: 3209-10 (Montano); T 627: 2639-40 (Dexter); T 617: 630 (Davis).[2]  The Court determined that Dish should have produced that address information in discovery.  The Court ordered Dish to produce in supplemental discovery, "Documents in Dish's possession that contain information regarding the residential

---

[1] For purposes of this Motion 718, calls made by Dish include calls made by Dish's Telemarketing Vendors eCreek Service Group and EPLDT.  Dish selected the telephone numbers that eCreek and EPLDT dialed to make telemarketing calls on behalf of Dish.  See Opinion 445, at 56, 63-65.

[2] The Court cites to the trial transcript in the following format:  letter "T," the docket entry number of the day's transcript, a colon, the page number of the cited material, and the name of the witness testifying in parentheses.

addresses associated with the telephone numbers contained in the Dish 2007-2010 calling records." (Supplemental Discovery). Opinion entered February 24, 2016 (d/e 624) (Opinion 624), at 5. The Court further continued the trial to October 25, 2016, to allow completion of the Supplemental Discovery. See Opinion 624, at 7-10. The trial resumed on October 25, 2016, and was completed on November 2, 2016.

During the Supplemental Discovery, Dish produced 11 different sets of data containing address and telephone number information of Dish Telemarketing Call Recipients (Address Data Sets). On May 26, 2016, Dish's counsel sent an email to Plaintiff California's counsel regarding the production. Dish's counsel described the source of two of the Address Data Sets, sets 10 and 11. PX 1446, Revised Supplemental Expert Report of Dr. Erez Yoeli for Plaintiff States of California, Illinois, North Carolina & Ohio, dated July 7, 2016 (Yoeli July 2016 Report), Appendix C, Email from Dish's Counsel to Plaintiff California's Counsel dated May 26, 2016 (May 26, 2016 Email).[3]

---

[3] The Court refers to documents by the exhibit numbers used at trial. The Plaintiffs used the prefix "PX" their exhibit numbers. Dish used the prefix "DTX" for its exhibits relevant to this Motion 718.

Counsel for Plaintiff States sent an email to Dish's counsel asking for a description of Address Data Sets 1-9.  PX 1446, Yoeli July 2016 Report, Appendix B, Email from Plaintiff States' Counsel to Dish Counsel dated June 9, 2016 (June 9, 2016 Email), ¶ 1.  Dish's counsel responded with a description of all of the Address Data Sets.  PX 1446, Yoeli July 2016 Report, Appendix D, Email from Dish's Counsel to Plaintiff State California's Counsel dated June 22, 2016 (June 22, 2016 Email).

On July 7, 2016, Plaintiffs' expert Dr. Yoeli issued his report.  Dr. Yoeli relied on the 11 Address Data Sets produced by Dish; the May 26, 2016 Email; the June 10, 2016 Email; the June 22, 2016 Email; and the information regarding the list of geographical assignment of telephone area codes by the North American Numbering Plan Administration (NANPA).  PX 1446, Yoeli July 2016 Report, at 1; see T 710:99-100 (Yoeli).  Dr. Yoeli also used seven sets of call records admitted at the initial phase of the trial in January and February 2016 (Call Records).  The Call Records contained records of telemarketing calls that Dish made from September of 2007 through March of 2010.

Based on this information, Dr. Yoeli opined on the time period when address information in any Address Data Set was valid (Valid Address). Dr. Yoeli identified the calls in the Call Records made to telephone numbers with area codes assigned to the Plaintiff States by the NANPA (Relevant State Call Records). PX 1446, Yoeli July 2016 Report, at 4.

Dr. Yoeli compared the telephone numbers in the Relevant State Call Records with the Valid Addresses associated with those telephone numbers at the times of the calls to determine the extent to which the state of residence in the Address Data Sets agreed with the state assigned to the telephone numbers' area codes by NANPA. Dr. Yoeli concluded, "My analysis shows that, for all Call Sets and All Plaintiff States, the percentage of calls to addresses in the Plaintiff State was at least 82%." PX 1446, Yoeli July 2016 Report, at 5-6; T 710: 100-02, 173-74 (Yoeli).

Dish's expert Rebecca Kirk Fair critiqued Yoeli's opinions set forth in July 2016 Report. DTX 1096, Kirk Fair Report. Kirk Fair holds an MBA in finance and applied economics. She has over 20 years of experience analyzing large data sets. The Plaintiffs do not

dispute her qualifications as an expert in the analysis of large data sets.  See T 711:448-49, 451 (Kirk Fair).

Kirk Fair made a qualitative critique of Dr. Yoeli's report.  She opined that Dr. Yoeli should have considered the purposes for which the address and telephone data were collected in each of the 11 Address Data Sets, the meaning of the dates in the Address Data Sets, and the purpose of the calls made to numbers in the various Call Records.  She opined that Dr. Yoeli's analysis was unreasonable and unreliable because of these failings.  See Kirk Fair Report, at 5-6, 44-45; T 711: 450-65, 474-97 (Kirk Fair).  In making this critique, Kirk Fair relied on the June 22, 2016 Email's descriptions of the Address Data Sets.  See T 711:500-01 (Kirk Fair).  Kirk Fair did not quantify the extent to which Dr. Yoeli's errors affected the validity of his opinions.  See T 711:511, 528 (Kirk Fair).

In addition to criticizing Dr. Yoeli's analysis, Kirk Fair presented an alternative method of analysis that she referred to as "triangulation."  Kirk Fair "triangulated" or looked for logical consistencies and inconsistencies between the data in light of her opinions of the purpose and reliability of the data collection and the

purpose of the calling campaigns.  Kirk Fair opined that such consistencies between the purpose of the calls and the relevant types of data sets corroborated the address information in the Address Data Sets.  See  T 711: 490-96 (Kirk Fair).

Kirk Fair prepared an alternative analysis of the address data and call records using her triangulation method.  DTX 1096, Kirk Fair Report, 24-32 and Exhibit 11.  Kirk Fair divided the calls into ten categories with differing degrees of reliability based on her triangulation method.  She also broke the call record data into the seven different Call Records that Dr. Yoeli used in his analysis. Kirk Fair did not draw any quantitative conclusions of the overall reliability of the address information.  She also did not compare states of residence in the Address Data Sets with the states assigned to the area codes of the telephone numbers associated with the addresses.  She testified that her assignment was to critique Dr. Yoeli's opinions, not offer an alternative opinion of the reliability of area codes.  See T 711: 547, and T 712: 692 (Kirk Fair).

The Plaintiffs move to strike Kirk Fair's testimony and bar admission of the Kirk Fair Report.

## ANALYSIS

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and
>
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Generally, this Court must perform a gate-keeping function to determine that expert testimony is reliable and relevant under the principles codified in Rule 702.  See <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 597 (1993).  The Court must determine the reliability and the relevance of the evidence.  <u>Ammons v. Aramark Uniform Services, Inc.</u>, 368 F.3d 809, 816 (7th Cir. 2004).

Kirk Fair is an expert qualified to analyze large, complicated data sets.  The Plaintiffs do not challenge her qualifications.  The

Court must determine whether her expert testimony is reliable and relevant and whether her opinions will assist the Court as the trier of fact in determining a fact in issue.  See Ammons, 368 F.3d at 816.  The Court must evaluate the reliability of the expert's methodology.  Manpower Inc. v. Ins. Co. of Penn., 732 F.3d 796, 806 (7th Cir. 2013).  In performing the gatekeeping function, the Court does not evaluate the quality of the underlying data or the quality of the expert's conclusions.  "The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact . . . ."  Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000).

    The Court's gatekeeping function is less important in a bench trial because the Court is also the finder of fact.  The Court can allow the evidence to be admitted at trial, but "disregard it if it turns out not to meet the standard of reliability established by Rule 702."  In re Salem, 465 F.3d 767, 777 (7th Cir. 2006).

    In light of this lessened importance of the gatekeeping function in this bench trial, the Court will not strike Kirk Fair's testimony and will allow the admission of her expert report.  She clearly is an

expert in analyzing large data sets. She made a qualitative critique of Dr. Yoeli's report. A qualitative critique in a rebuttal report can be a valid methodology. See U.S. Gypsum Co. v. Lafarge N. Am. Inc., 670 F. Supp. 2d 768, 776 (N.D. Ill. 2009); Reginald Martin Agency, Inc. v. Conseco Medical Ins. Co., 2007 WL 831613, at *4 (S.D. Ind. March 5, 2007). The Court, therefore, will not strike her opinions as inadmissible.

As with all the expert evidence in this case, the Court, as the finder of fact, will disregard any opinion of Kirk Fair that "turns out not to meet the standard of reliability established by Rule 702" when the Court makes its findings of fact and conclusions of law. In re Salem, 465 F.3d at 777.

The Court will also allow the admission of Kirk Fair's expert report. Expert reports are hearsay and generally inadmissible. See e.g., Bianco v. Globus Med., Inc., 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014). In a bench trial, however, a court can admit evidence and later disregard incompetent, irrelevant, or inadmissible evidence when making the decision. See e.g., United States v. Reed, 744 F.3d 519, 525 (7th Cir.), cert. denied, __ U.S.__, 135 S. Ct. 130 (2014); see also, Manual for Complex Litigation, § 12.51 (4th

ed. 2004) (During a bench trial, the court may achieve efficiency by allowing witnesses, including experts, to present opinions through prepared statements which the expert adopts during trial testimony which is then subject to cross examination.).  In this case, the Court has admitted the expert reports of the parties' other experts during their testimony, sometimes by the agreement of the parties and sometimes over objection.[4]  The Court sees no reason to treat Kirk Fair's report differently.  The Court will, as with all the other expert reports, give the appropriate consideration to the report when the Court makes its findings of fact and conclusions of law.

     The Plaintiffs complain that Kirk Fair has no factual basis for her opinions.  The Plaintiffs argue that Kirk Fair relied entirely on the June 22, 2016 Email for the factual underpinning of her report.  The Plaintiffs argue that the June 22, 2016 Email is inadmissible hearsay.  Even if true, an expert can rely on hearsay in appropriate circumstances.  Fed R. Evid. 703.  In this case, Dr. Yoeli relied on the June 22, 2106 Email as part of the basis for his opinions.  Under these circumstances, Kirk Fair similarly can rely on the same source to critique his opinions.  The Court will evaluate "the

---

[4] The parties agreed to submit the opinions of Dish's expert Dr. Robert Fenili, Ph.D., by his report and excerpts of his deposition testimony.  Other experts testified in person.

soundness of the factual underpinnings" of Kirk Fair's opinions and the "correctness of [her] conclusions" when the Court makes its findings of fact and conclusions of law.  See Smith v. Ford Motor Co., 215 F.3d at 718.  The fact that Kirk Fair relied on possible hearsay is not a basis for striking her expert testimony.

      The Plaintiffs ask the Court to exclude the Kirk Fair Report because Dish may attempt to use her report to support claims that certain calls were not illegal because Dish had an Established Business Relationship exception for those calls.  See generally, Plaintiffs' Supplemental Brief on Dish's Belated Established Business Relationship ("EBR") Assertions (d/e 717) (Plaintiffs' Supplemental Brief).[5]  Kirk Fair did not offer any opinions on the Establish Business Relationship exception.  See T 712:729-31 (Kirk Fair).  Dish may or may not attempt to use her report to make some argument to the Court.  The Court will not anticipate possible arguments.  If and when Dish makes such arguments, the United States can address the specifics of the arguments.  The Court will not speculate on the validity of possible arguments at this time.

---

[5] For a discussion of the Establish Business Relationship exception, see Opinion 445, at 14-15, 17-18, 162-63, 213,

Dish and the United States both raise issues regarding the effect of the Court's prior decisions on Dish's ability to claim Established Business Relationship exceptions, and Dish even asked the Court to set aside part of the findings made at summary judgment.  See e.g., Plaintiffs' Supplemental Brief, at 3-9; Dish Network L.L.C.'s Further Opposition to Plaintiffs' Brief Seeking to Exclude Dish's EBR Evidence (d/e 723), at 2-4.  These matters are not raised by Motion 718 and are not properly before the Court.  The Court will not set aside the summary judgment decision.  The Court will not decide issues related to Established Business Relationship exceptions at this time.  The parties may raise matters such as these in their proposed findings of fact and conclusions of law and related memoranda of law, or by other procedurally appropriate means.  If they choose to do so, the parties can brief the issues fully at that time.

At this time the Court only decides, in the exercise of its gatekeeping function, not to strike Kirk Fair's testimony, and the Court will allow Dish's motion to admit her report.  Again, as with any expert evidence in a bench trial, the Court will "disregard it if it turns out not to meet the standard of reliability established by Rule

702" when the Court makes its findings of fact and conclusions of law.  In re Salem, 465 F.3d 767, 777 (7th Cir. 2006).

**THEREFORE Plaintiffs' Revised Motion to Exclude Rebecca Kirk Fair's Revised Responsive Expert Report and Strike Related Testimony as Inadmissible under Rule 702 (d/e 718) is DENIED.**

**Enter: December 7, 2016**

                         **/s Sue E. Myerscough**
                      **UNITED STATES DISTRICT JUDGE**