## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA and the STATES OF CALIFORNIA, ILLINOIS, NORTH CAROLINA, and OHIO,** | ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 09-3073** |
| **v.** | ) ) | |
| **DISH NETWORK L.L.C.,** | ) ) | |
| **Defendant.** | ) | |

## ORDER FOR PERMANENT INJUNCTION

Plaintiffs, the United States of America, acting upon
notification and authorization to the Attorney General by the
Federal Trade Commission ("FTC" or the "Commission"), and the
States of California, Illinois, North Carolina, and Ohio ("Plaintiff
States") filed their Complaint, subsequently amended as the Third
Amended Complaint and Demand for Jury Trial (the "Complaint"),
for a permanent injunction, civil penalties, and other relief in this
matter. The FTC's claims are pursuant to Sections 13(b), 19,
16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C.
§§ 53(b), 57b, and 56(a)(1), and various provisions of the

Telemarketing Sales Rule, 16 C.F.R. Part 310. The Plaintiff States'
claims are pursuant to the Telephone Consumer Protection Act
("TCPA"), 47 U.S.C. § 227, California Business & Professions Code
§§ 17592 and 17200, Illinois Automatic Telephone Dialers Act 815
ILCS 305/1 *et seq.*, North Carolina General Statutes §§ 75-101, 75-
102 and 75-104, and Ohio Consumer Sales Practices Act, Revised
Code § 1345.01 *et seq.*

The Court granted Plaintiffs' motion for summary judgment in
part on December 11, 2014 (Opinion 445), finding *inter alia,* that
Defendant Dish Network, L.L.C. ("Dish," or Dish Network"), was
liable for committing violations of the Telephone Sales Rule and FTC
Act as alleged by the United States, and reconsidered and vacated
parts of Opinion 445 in Opinion 478; the rulings in Opinions 445
and 478 incorporated by reference herein. The Court tried the
Plaintiffs' remaining claims, including claims for civil penalties and
damages and injunctive relief during a bench trial that was
conducted January 19 through February 17, 2016, October 25
through 27, 2016, and November 2, 2016, and has issued its
Findings of Fact and Conclusions of Law on the same date as this
Injunction Order. Pursuant to the Findings of Fact and

Conclusions of Law, the Court hereby enters this Order for Permanent Injunction ("Injunction Order").

**THEREFORE,** it is **ORDERED** as follows:

## FINDINGS

1. This Court has jurisdiction over this matter.

2. The Complaint charges that Defendant Dish participated in acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, the Telemarketing Sales Rule, the TCPA, and various state laws by making telemarketing calls to persons with telephone numbers on the National Do Not Call Registry, making telemarketing calls to persons who previously stated that they did not wish to receive telemarketing calls on behalf of Defendant Dish, abandoning calls, using automated voice telemarketing ("prerecorded telemarketing calls"), and assisting others in these violations.

3. Entry of this Injunction Order is in the public interest.

## DEFINITIONS

For the purpose of this Injunction Order, the following definitions shall apply:

1. "Activation" means a completed sale of Dish Network goods or services to a new customer.

2. "Authorized Telemarketer" means a person who has received express, written authorization from Dish Network to use telemarketing to market Dish Network goods or services except for National Accounts. The term Authorized Telemarketer also includes any employee, agent, assign, independent contractor, or any other person hired, retained or used by an Authorized Telemarketer to engage in, or provide any assistance in, telemarketing.

3. The term "Automatic Telephone Dialing System" means equipment which has the capacity—

> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

> (B) to dial such numbers.

This definition is derived from TCPA, 47 U.S.C. § 227(a)(1), and shall be interpreted consistently with that statutory definition.

4. "Customer" means any person who is or may be required to pay for goods or services.

5. "Defendant," "Dish Network," or "Dish" means Dish Network L.L.C., its subsidiaries, successors, officers, agents, servants, employees, and attorneys.

6. "Dish Network goods or services" means satellite television programming and all other goods or services marketed by Dish now or in the future while this Injunction Order remains in effect.

7. "Effective Date" means the date of entry of this Injunction Order; provided however, that if this Injunction Order is subject to a stay pending appeal, the term "Effective Date" shall mean that date that such stay pending appeal is lifted.

8. "Established business relationship" or "EBR" means a relationship between the seller and a person based on: (a) the person's purchase, rental, or lease of the seller's goods or services or a financial transaction between the person and seller, within the eighteen (18) months immediately preceding the date of the telemarketing call; or (b) the person's inquiry or application regarding a product or service offered by the seller, within the three months immediately preceding date of a telemarketing call.

9. "Internal Do Not Call List" means a list or compilation pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(A) containing telephone numbers of persons who have stated to Dish, an Authorized Telemarketer, or a Retailer that they do not wish to receive telemarketing calls for Dish Network goods or services.

10. "National Accounts" means a person who markets Dish Network goods or services and who operates ten (10) or more retail stores in ten (10) or more different states, which stores also market goods or services other than Dish Network goods or services to customers in person in the stores.

11. "National Do Not Call Registry" means the National Do Not Call Registry maintained by the FTC pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(B).

12. "Outbound telemarketing call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

13. "Person" means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

14. "Plaintiff States" means the States of California, Illinois, Ohio, and North Carolina.

15. "Plaintiffs" means the FTC and the Plaintiff States.

16. "Prerecorded telemarketing call" means an outbound telemarketing call that uses an artificial or prerecorded voice to deliver a message without the prior express written consent of the

called party, except for a prerecorded message authorized by 16 C.F.R. § 310.4(b)(1)(v) or (b)(4)(iii) and 47 C.F.R. § 64.1200(b).

17. "Primary Retailer" means every Authorized Telemarketer or Retailer that, during the calendar year 2016, or any subsequent calendar year while this Injunction Order is in effect:

a. used directly or indirectly, or through a third party, an Automatic Telephone Dialing System in connection with telemarketing Dish Network goods or service; or

b. secured 600 activations of Dish Network goods or service.

"Primary Retailer" also includes any employee, agent, assign, vendor, service provider, independent contractor, or any other person or third-party affiliate contracted with, hired, retained, or used by a Primary Retailer to engage in, or provide any assistance in, marketing Dish Network goods or services.

18. "Relevant State Statutes" means California Business & Professions Code §§ 17592 and 17200, North Carolina General Statutes §§ 75-101, 75-102 and 75-104, and Ohio Consumer Sales Practices Act, Ohio Revised Code §§ 1345.01-1345.03.

19. "Retailer" means any person who markets Dish Network goods or services, solicits orders for Dish Network goods or services, or

offers Dish Network goods or services except for National Accounts. "Retailer" also includes any employee, agent, assign, vendor, service provider, independent contractor, or any other person or third-party affiliate contracted with, hired, retained, or used by a Retailer to engage in, or provide any assistance in, marketing Dish Network.

20. "Safe Harbor Provisions" means the Telephone Sales Rule safe harbor provision 16 C.F.R. §§ 310.4(b)(3) and (b)(4) and the TCPA safe harbor provision 47 C.F.R. §§ 64.1200(c)(2)(i).

21. "Seller" means:

> a. any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration, whether or not such person is under the jurisdiction of the FTC, or

> b. any person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

22. "Signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

23. "Telemarketer" means:

    a. any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor, or

    b. any person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

24. "Telemarketing" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog which: contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitation does not solicit

customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term "further solicitation" does not include providing the customer with information about, or attempting to sell, any other item included in the same catalog which prompted the customer's call or in a substantially similar catalog.

25. The "Telemarketing Sales Rule" or "Rule" means the FTC Rule entitled "Telemarketing Sales Rule," 16 C.F.R. Part 310, attached hereto as Appendix A, and as it may hereafter be amended.

26. The "Telephone Consumer Protection Act" or "TCPA" means 47 U.S.C. § 227, and as 47 U.S.C. § 227 may hereafter be amended, and any rule enacted pursuant to it, including but not limited to 47 C.F.R. § 64.1200, and as 47 C.F.R. § 64.1200 may hereafter be amended. A copy of the TCPA and 47 C.F.R. § 64.1200 are attached as Appendix B.

27. "Third-party monitoring service" means a qualified, independent third-party monitoring organization experienced in monitoring and producing reports on compliance with the Telemarketing Sales Rule.

# ORDER

## I. TELEMARKETING BY DISH AND PRIMARY RETAILERS

**IT IS HEREBY ORDERED** that within 90 days of the Effective Date, Defendant Dish shall demonstrate to the Plaintiffs, to the Plaintiffs' satisfaction, that Dish and each Primary Retailer: (1) are fully complying with the Safe Harbor Provisions; and (2) have made no prerecorded telemarketing calls at any time during the five (5) years immediately preceding the Effective Date (collectively the Demonstration Requirements).

If Dish fails to prove the Demonstration Requirements to the Plaintiffs' satisfaction within the 90 day period, the Plaintiffs shall file a notice to that effect (Plaintiffs' Notice) with the Court and serve a copy of the Notice on Dish.  Unless Dish files a request for a hearing with this Court within two (2) business days of service of Plaintiffs' Notice, then for a period of two (2) years from the filing of the Plaintiff's Notice, Dish and the Primary Retailers shall be barred from conducting any outbound telemarketing of Dish Network goods or services and Dish shall be barred from accepting any orders from any Primary Retailer.  If Dish files a timely request for a hearing, the Court will set the matter for a hearing within 30 days

of Dish's request.  No additional discovery will be allowed before the hearing.  Dish shall have the burden to prove the Demonstration Requirements to the Court at the hearing.  If Dish fails to prove that Dish's direct marketing operations meets the Demonstration Requirements, Dish shall be barred from conducting any outbound telemarketing for two (2) years.  If Dish fails to prove that a Primary Retailer meets the Demonstration Requirements, Dish shall be barred from accepting orders from such Primary Retailer for two (2) years.

## II. TELEMARKETING COMPLIANCE PLAN

**IT IS FURTHER ORDERED THAT**

A. Defendant Dish shall:

1. Within 60 days of the Effective Date, hire a telemarketing-compliance expert who will prepare a plan to ensure that Primary Retailers and Dish shall continue to comply with the telemarketing laws and this Injunction Order;

2. Within 120 days of the Effective Date, transmit the expert's plan to the Court and the Department of Justice,

the Federal Trade Commission, and the Plaintiff States; and

3. Fully implement the plan prepared by the expert.

B. Within 180 days of the Effective Date, Dish and the telemarketing-compliance expert shall transmit to the Court and the Plaintiffs a comprehensive written Status Report regarding telemarketing compliance of Dish and the Primary Retailers.

1. Within 30 days of receipt of the Status Report, Plaintiffs may respond to the Status Report and petition the Court for further injunctive relief.

2. Unless otherwise ordered, the Court shall decide such a petition without allowing additional discovery beyond the Status Report and the Plaintiffs' response.

## III. TELEMARKETING COMPLIANCE MATERIALS AND INSPECTIONS

**IT IS FURTHER ORDERED** that Dish shall retain all telemarketing compliance materials and transmit them to the Plaintiffs on a semi-annual basis for a period of ten (10) years from the Effective Date.

A. The telemarketing compliance materials to be retained and transmitted shall include:

    1. All outbound telemarketing call records;

    2. All records of leads, EBRs, and consents-to-call associated with those call records;

    3. All telemarketing complaints Dish received during the prior quarter;

    4. All internal emails, internal instant messages, and internal Siebel database entries discussing telemarketing compliance over the prior quarter; and

    5. Any other relevant telemarketing-compliance related information.

B. After the Effective Date and while this Injunction Order remains in effect, a Plaintiff may make ex parte applications to this Court for approval of unannounced inspections of any Dish or Primary Retailer facility or records.

    1. An ex parte application to inspect Dish must demonstrate probable cause necessary for administrative warrants to believe that Dish is violating this Injunction Order; the plan developed by the telemarketing-

compliance expert; or the TSR, TCPA, or any Relevant State Statute. An ex parte application to inspect a Primary Retailer must demonstrate probable cause necessary for administrative warrants to believe that subject of the requested inspection is violating the TSR, TCPA, or any Relevant State Statute. An ex parte application must state with reasonable specificity for administrative inspections the location to be inspected and the information sought from the inspection.

2. If upon review of the application the Court determines that the requisite probable cause exists, the Court may issue an Order (Inspection Order) authorizing the requested inspection, either as requested or as modified by the Court (Authorized Inspection).

3. Within forty-eight (48) hours of the issuance of an Inspection Order, the requesting Plaintiff shall conduct the Authorized Inspection upon presentation of the Inspection Order to the person or persons at the location subject to the Authorized Inspection. The Plaintiff conducting the Authorized Inspection must also notify

Dish of the Authorized Inspection within thirty (30) minutes of the commencement of the inspection and provide Dish with a copy of the Inspection Order.

4. The inspecting Plaintiff shall make any information secured during an Authorized Inspection available to Dish within thirty (30) days of the inspection.

C. Within ninety (90) days of (1) receipt of any semi-annual transmission of telemarketing compliance materials from Dish or (2) an Authorized Inspection, Plaintiffs may petition the Court for further injunctive relief, up to and including a complete telemarketing ban. Unless otherwise ordered, the Court shall decide such a petition on the record only and without allowing additional discovery beyond the telemarketing compliance materials Dish transmitted to Plaintiffs, any information acquired during an Authorized Inspection, and the parties' analyses of those materials.

# IV. PROHIBITIONS AGAINST AN ABUSIVE PATTERN OF TELEMARKETING CALLS

**IT IS HEREBY ORDERED** that, Defendant Dish Network, whether acting directly or indirectly through Authorized Telemarketers or Retailers, is hereby permanently restrained and enjoined from:

A. Initiating or causing the initiation of any outbound telephone call to a person when:

1. that person previously has stated to Dish Network or an Authorized Telemarketer or Retailer that he or she does not wish to receive an outbound telephone call made by or on behalf of Dish Network;

2. that person's telephone number is on the National Do Not Call Registry, unless:

a. Dish Network has obtained the express agreement, in writing, of such person to place calls to that person, which clearly evidences such person's authorization that calls made by or on behalf of Dish Network may be placed to that person, and the authorization includes the telephone number to which the calls may be placed

and the signature of that person, and that person has not revoked the express agreement; or

b. Dish Network has an established business relationship with such person, and that person has not stated to Dish Network or an Authorized Telemarketer or Retailer, pursuant to 310.4(b)(1)(iii)(A) of the Telemarketing Sales Rule, that he or she does not wish to receive outbound telephone calls.

B. Initiating or causing the initiation of any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in 16 C.F.R. § 310.4(b)(4)(iii), unless:

1. prior to making any such call to induce the purchase of any good or service, the seller has obtained from the recipient of the call an express agreement, in writing, that:

a. the seller obtained only after a clear and conspicuous disclosure that the purpose of the

agreement is to authorize the seller to place prerecorded telemarketing calls to such person;

b. the seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;

c. evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and

d. includes such person's telephone number and signature; and

2. in any such call to induce the purchase of any good or service, the seller or telemarketer:

a. allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call; and

b. within two (2) seconds after the completed greeting of the person called, plays a prerecorded message that promptly provides the disclosures required by 16 C.F.R. § 310.4(d) or (e), followed

immediately by a disclosure of one or both of the following:

(1) in the case of a call that could be answered in person by a consumer, that the person called can use an automated interactive voice and/or keypress-activated opt-out mechanism to assert a Do Not Call request pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(A) at any time during the message. The mechanism must:

(a) automatically add the number called to the seller's entity-specific Do Not Call list;

(b) once invoked, immediately disconnect the call;

(c) be available for use at any time during the message; and

(2) in the case of a call that could be answered by an answering machine or voicemail service, that the person called can use a toll free-number to assert a Do Not Call request

pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(A). The number provided must connect directly to an automated interactive voice or keypress-activated opt-out mechanism that:

>(a) automatically adds the number called to the seller's entity-specific Do Not Call list;

>(b) immediately thereafter disconnects the call; and is accessible at any time throughout the duration of the telemarketing campaign; and complies with all other requirements of the Telemarketing Sales Rule and other applicable federal and state laws; and

>(c) complies with all other requirements of the Telemarketing Sales Rule and other applicable federal and state laws.

C. Abandoning or causing the abandonment of any outbound telephone call to a person by failing to connect the call to a representative within two (2) seconds of the person's

completed greeting, unless the following four (4) conditions are met:

1. Dish Network or an Authorized Telemarketer employ technology that ensures abandonment of no more than three (3) percent of all calls answered by a person, measured over the duration of a single calling campaign, if less than thirty (30) days, or separately over each successive 30-day period or portion thereof that the campaign continues;

2. Defendant or an Authorized Telemarketer, for each telemarketing call placed, allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting;

3. Whenever a representative is not available to speak with the person answering the call within two (2) seconds after the person's completed greeting, Dish Network or an Authorized Telemarketer promptly plays a recorded message that states the name and telephone number of the seller on whose behalf the call was placed; and

4. Dish Network or an Authorized Telemarketer retains records, in accordance with 16 C.F.R. § 310.5(b)-(d), establishing compliance with the preceding three conditions.

D. Violating the Telemarketing Sales Rule, 16 C.F.R. Part 310, attached as Appendix A.

E. Violating the rules promulgated pursuant to the Telephone Consumer Protection Act, 47 C.F.R § 64.1200, attached as Appendix B.

If any of Dish's Authorized Telemarketers or Retailers violate the TSR or TCPA, Dish shall be liable for those violations as if Dish itself had placed the calls.

Nothing in this Section IV shall be construed to supersede the Safe Harbor Provisions.

## V. ADDITIONAL PROHIBITIONS

**IT IS HEREBY ORDERED THAT**:

A. If a Plaintiff notifies Dish, or if Defendant Dish otherwise knows or should know, that a Primary Retailer is not complying with the Safe Harbor Provisions, then within two (2)

days of receipt of a Plaintiff's notice or of otherwise learning of the noncompliance, Dish shall:

> 1. Notify the Primary Retailer in writing that it is not complying with the Safe Harbor Provisions, and inform the Primary Retailer that it will be terminated if it does not comply fully with the Safe Harbor provisions within thirty (30) days; and

> 2. Terminate the Primary Retailer if the Primary Retailer does not comply fully with the Safe Harbor provisions within the thirty (30) day period.

B. Dish shall terminate any Retailer that Dish knows or should know is telemarketing without express written authorization from Dish; and

C. Dish shall not accept any activations from a Retailer unless Dish can prove that either the Retailer was authorized in writing by Dish to engage in telemarketing or the activations or sales did not involve any telemarketing.

## VI. PROHIBITION ON ASSISTING AND FACILITATING

**IT IS FURTHER ORDERED** Dish is hereby permanently restrained and enjoined from providing substantial assistance and support to

any Authorized Telemarketer or Retailer when Dish Network knows or consciously avoids knowing that the Authorized Telemarketer or Retailer is engaged in one or more violations of the TSR, the TCPA, or any Relevant State Statute.

## VII. COMPLIANCE WITH STATE LAW PROVISIONS

**IT IS FURTHER ORDERED** that, Dish Network is enjoined and prohibited from:

A. Violating the following California state statutes:

1. California Business and Professions Code Section 17592(c), by making or causing to be made telephone calls marketing Dish Network's goods or services to California telephone numbers on the Registry;

2. California Civil Code Section 1770(a)(22)(A), by disseminating unsolicited prerecorded messages by telephone with an unrecorded, natural voice, without first informing the person answering the telephone of the name of the caller or the organization being represented, and either the address or the telephone number of the caller, and without obtaining the consent of that person to listen to the pre-recorded message; or

3. California Business and Professions Code Section 17200 by violating California Business and Professions Code Section 17592(c); California Civil Code Section 1770(a)(22); or the TCPA.

B. Violating the following North Carolina state statutes:

1. The North Carolina Unwanted Telephone Solicitations Act, N.C. Gen. Stat. §§ 75-102(a), 75-102(d), by making telephone solicitations to a North Carolina telephone subscriber's telephone number if the subscriber's telephone number appears in the latest edition of the Registry; or

2. N.C. Gen. Stat. § 75-102(d), by failing to implement systems and procedures to prevent telephone solicitations to telephone subscribers whose numbers appear in the Registry and to monitor and enforce compliance by its employees and independent contractors in those systems and procedures; or

3. N.C. Gen. Stat. § 75-104, by placing prerecorded unsolicited telephone calls using an automated dialer unless a live operator states the nature of the call and

receives the recipient's prior approval to play the recording.

C. Violating the following Ohio state statutes:

1. Consumer Sales Practices Act, Revised Code Section 1345.02 by engaging in a pattern or practice of initiating outbound telemarketing calls to consumers in the State of Ohio more than thirty-one (31) days after such consumers' telephone numbers are listed on the National Do-Not-Call Registry; or

2. Consumer Sales Practices Act, Revised Code Section 1345.02 by engaging in a pattern or practice of initiating outbound telemarketing calls to consumers in the State of Ohio using artificial or prerecorded voices to deliver a message without the prior express consent of the called party or without falling within specified exemptions delineated within the TCPA in violation of the TCPA, 47 U.S.C. 27(B)(1)(b) and 47 C.F.R. 64.1200(a)(2); or

3. Consumer Sales Practices Act, Revised Code Sections 1345.02 and 1345.03 by engaging in a pattern or practice of initiating outbound telemarketing calls to

consumers in the State of Ohio while failing to record and honor prior do-not-call requests made by those respective consumers.

If any of Dish's Authorized Telemarketers or Retailers violates any of the State statutes as set forth in this section of the Injunction Order, Dish shall be liable for those violations as if Dish itself had placed the calls.

## VIII. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendant's compliance with the Injunction Order:

A. Within fourteen (14) days of receipt of written notice from Plaintiffs, Dish Network must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce document, for inspection and copying. The Plaintiffs are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69;

B. For matters concerning this Injunction Order, Plaintiffs are authorized to communicate with Dish Network through counsel of record in this litigation, or such other counsel as Dish may designate in writing to the Plaintiffs. If at any time counsel no longer represents the Dish Network, the Plaintiffs are authorized to communicate directly with the Dish Network. All notices to Dish related to this Injunction Order shall be in writing and shall be emailed or sent by overnight courier;

C. Dish Network must permit representatives of Plaintiffs to interview any employee or other person affiliated with Dish Network who has agreed to such an interview. The person interviewed may have counsel present; and

D. Plaintiffs may use all other lawful means, including posing, through their representatives, as consumers, suppliers, or other individuals or entities, to Dish Network or to any individual, vendor, Retailer, or other entity affiliated with Defendant, without the necessity of identification or prior notice.

E. Nothing in this Injunction Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and

20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1. Nor shall anything in this Injunction Order limit any of the Plaintiff States' lawful use of compulsory process granted to any such Plaintiff pursuant to the State laws of that Plaintiff.

## IX. COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Dish Network make timely submissions to Plaintiffs:

A. One hundred eighty (180) days after the Effective Date, Dish Network must submit a compliance report, sworn to under penalty of perjury. This report must:

(a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which Plaintiffs' representatives may use to communicate with Defendant; (b) identify all of Dish Network's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales; (d) describe in detail whether and how Dish Network is in compliance with

each Section of this Injunction Order; and (e) provide a copy of each Injunction Order Acknowledgment obtained pursuant to this Injunction Order, unless previously submitted to the Plaintiffs.

B. For 20 years after the Effective Date, Dish Network must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in (a) any designated point of contact; or (b) the structure of Dish Network or any entity that Dish Network has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Injunction Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Injunction Order;

C. Dish Network must submit to Plaintiffs notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against Dish Network within 14 days of its filing.

D. Any submission to the Plaintiffs required by this Injunction Order to be sworn under penalty of perjury must be true and

accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:_____" and supplying the date, signatory's full name, title (if applicable), and signature.

E. Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Injunction Order must be emailed to DEbrief@ftc.gov or sent by overnight courier to:

> Associate Director for Enforcement
> Federal Trade Commission
> 600 Pennsylvania Avenue, NW
> Washington, DC 20580
> The subject line must begin: US v. Dish Network
> X090039

F. For the purposes of this Injunction Order, unless otherwise directed by the Plaintiff States' authorized representatives, Dish Network shall send all submissions to the Plaintiff States by email or overnight courier to the following addresses:

Jinsook Ohta
Deputy Attorney General
Consumer Law Section
Office of the Attorney General
110 W. "A" Street, Suite 1100
San Diego, California 92101-3702
Telephone: 619-645-3182
Fax: 619-645-2062
jinsook.ohta@doj.ca.gov


Elizabeth Blackston
Paul Isaac
Philip Heimlich
Assistant Attorneys General
Office of the Attorney General
500 S. Second St.
Springfield, IL 62706
217-782-4436
217-782-1097 (facsimile)
eblackston@atg.state.il.us
pisaac@atg.state.il.us
pheimlich@atg.state.il.us


Teresa Townsend
Assistant Attorney General
Consumer Protection Division
N.C. Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: 919-716-6000
Fax: 919-716-6050
ttownsend@ncdoj.gov

Erin B. Leahy
Assistant Attorney General
Consumer Protection Section
Ohio Attorney General's Office
30 East Broad St., 14th Floor
Columbus, Ohio 43215
Direct telephone: (614) 752-4730
Toll Free: (800) 282-0515
Fax: (866) 768-2448
erin.leahy@ohioattorneygeneral.gov

## X. RECORD KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that Dish Network must create records for 20 years after Effective Date, and retain each such record for 5 years. Specifically, Dish Network, in connection with telemarketing must create and retain the following records:

A. Accounting records showing the revenues from all goods or services sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B. Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name, addresses, and telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

C. Complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D. All records necessary to demonstrate the full compliance with each provision of this Injunction Order, including all submissions to the Commission;

E. Telemarketing call records;

F. Records necessary to show the existence of EBRs with specific consumers, including inquiries and consents to be contacted; and

G. Requests from persons who have previously stated that he or she does not wish to receive an outbound telemarketing call made to promote Dish Network goods or services or made by or on behalf of Dish Network.

## XI. DISTRIBUTION AND ACKNOWLEDGEMENT OF INJUNCTION ORDER

**IT IS FURTHER ORDERED** that Dish Network obtain acknowledgments of receipt of this Injunction Order:

A. Dish Network, within seven (7) days of the issuance of this Injunction Order, must submit to Plaintiffs an acknowledgment of receipt of this Injunction Order sworn under penalty of perjury.

B. For five (5) years after the Effective Date, Dish Network must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in telemarketing; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of the Effective Date for current personnel. For all others, delivery must occur before they assume their responsibilities.

C. From each individual or entity to which Dish Network delivered a copy of this Injunction Order, Dish Network must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Injunction Order.

## XII. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Injunction Order.

Dated June 5, 2017.

**IT IS SO ORDERED.**


_____/s Sue E. Myerscough_____
UNITED STATES DISTRICT JUDGE