## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and the STATES of CALIFORNIA, ILLINOIS, NORTH CAROLINA, and OHIO, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 09-3073 |
| DISH NETWORK LLC, | ) ) | |
| Defendant. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

This matter comes before the Court on Defendant Dish Network LLC's (Dish) Motion to Clarify, Alter and Amend the Order for Permanent Injunction (d/e 798) ("Injunction Order") (d/e 808) (Motion 808). On December 11, 2014, the Court entered an Order allowing partial summary judgment finding Dish liable on some of Plaintiffs' claims. Opinion entered December 11, 2014 (d/e 445) (Opinion 445). On June 5, 2017, this Court entered its Findings of Fact and Conclusions of Law (d/e 797) (Findings and Conclusions) and the Injunction Order. On July 3, 2017, Dish filed Motion 808

to ask the Court to alter, amend, or clarify the Injunction Order, and to extend its time to comply with portions of the Injunction Order. The Court addresses each request in order.

## I.    Alter or Amend Judgment

To prevail on a motion to alter or amend a judgment, Dish must establish the existence of a manifest error of law or fact, or must present newly discovered evidence. Fed. R. Civ. P. 59(e); Blue v. Hartford Life & Acc. Ins. Co., 698 F.3d 587, 598 (7th Cir. 2012); see Caisse Nationale de Credit Agricole v. CBI Industries, Inc., 90 F.3d 1264, 1269 (7th Cir. 1996). Dish may not rely on evidence and arguments that could have been presented at trial. See Bordelon v. Chicago School Reform Bd. of Trustees, 233 F.3d 524, 529 (7th Cir. 2000).

Dish identified two manifest errors. First, the Injunction Order incorrectly describes California Civil Code Section 1770(a)(22)(A). Injunction Order, § 7.A.2 at 25. The correct language is:

> 2. California Civil Code 1770(a)(22)(A), by disseminating unsolicited prerecorded messages by telephone without an unrecorded, natural voice first informing the person answering the telephone of the name of the caller or the organization being represented, and either the address or

> the telephone number of the caller, and without
> obtaining the consent of that person to listen to the
> prerecorded message; or

The Court will amend the Injunction Order to include the revised language.

Second, the definition of Relevant State Statute in the Injunction Order does not properly limit the applicability of California Business and Professions Code § 17200 to telemarketing law violations. <u>Injunction Order</u>, Definition 18 at 7. Section 17200 is extremely broad potentially covering any business practice that violated any state or federal law. <u>See</u> <u>Findings and Conclusions</u>, at 382-83; <u>Opinion 445</u>, at 217. Dish correctly notes that the reference to § 17200 in the definition should be limited to telemarketing calls. Plaintiff State of California agrees that a limitation should be included, but Plaintiff State of California disagrees on Dish's proposed language. California does not want the Injunction Order to include language that limits the definition to calls to California telephone numbers. California states that the limitation is unnecessary. The Court agrees. The relevant California statutes apply to telemarketing calls to California residents. <u>See</u> <u>Opinion 445</u>, at 206-07, 238-39. As a result, the

additional language limiting the definition to calls to California telephone numbers is superfluous. Therefore, the Court will adopt the Plaintiffs' proposed language. The language sufficiently limits the applicable scope of § 17200 in this case to California telephone numbers. The revised language adopted by the Court states:

> "Relevant State Statutes" means California Business and Professions Code sections 17592 and 17200 (with respect to unlawful telephone calls marketing Dish Network goods or services);

Dish also asks for limiting language in § VII.A.3 of the Injunction Order. Injunction Order, § VII.A.3 at 26. The Court will add the same language to this provision. The additional language is appropriate to limit the applicability of the provision to telemarketing calls.

Dish demonstrates no other manifest errors on law or fact in the Injunction Order. Dish further presents no new evidence. Dish only presents supplemental declarations from two of its trial witnesses, Joey Montano and Blake Van Emst. At the time of trial, Montano and Van Emst had all of the information that they presented in their supplemental declarations. The information,

therefore, is not new evidence and does not support a motion to alter or amend.

Dish also disputes the Court's description in the Findings and Conclusions of the evidence Dish presented regarding the issuance of an injunction. The Court correctly described the evidence presented. The request to alter or amend the Injunction Order is denied except for the two changes set forth above.

II.   Clarification of Injunction Order

Dish also asks the Court to clarify several provisions in the Injunction Order. A party may seek clarification of a judgment under Rule 59(e). See Tri-State Business Machines, Inc., v. Lanier Worldwide, Inc., 221 F.3d 1015, 1019, n.2 (7th Cir. 2000); Lentomyynti Oy v. Medivac, Inc., 997 F.2d 364, 368 (7th Cir. 1993); The Court addresses Dish's requests for clarification below.

1.   "Authorized Telemarketer" Definition

Dish asks the Court to clarify and modify the definition of "Authorized Telemarketer" in the Injunction Order. Injunction Order, Definition 2 at 4. The Court denies the request. The definition is clear and accurately defines the entities intended to be within that term. The term covers all entities that Dish authorizes

to engage in telemarketing except National Accounts. The evidence showed that Order Entry Retailers and TVRO retailers engaged in telemarketing. See e.g., Findings and Conclusions, at 13. The Court intended the Injunction Order to cover all of these entities as a prophylactic measure to ensure that all entities authorized to telemarket Dish programming and services will comply with relevant telemarketing laws.

2. Meaning of "Telemarketing"

Dish asks the Court to clarify throughout the Injunction Order whether the term "telemarketing" includes only outbound telemarketing or both inbound and outbound telemarketing. The term telemarketing includes both inbound and outbound telemarketing. Dish is correct that this case concerns outbound telemarketing. See Findings and Conclusions, at 12. The Plaintiffs point out, however, that inbound telemarketing calls provide significant sources of information relevant to outbound telemarketing compliance. Consumers may call Dish's inbound telemarketing centers to make do-not-call requests. Inbound telemarketing calls may also provide information regarding the commencement of Inquiry Based Established Business

Relationships.  See e.g., Findings and Conclusions, at 17-18, 30.

The Injunction Order covers inbound telemarketing to monitor and

provide data on this and any other aspects of inbound

telemarketing that may be relevant to making sure Dish complies

with the TSR, TCPA, and Relevant State Statutes.

In addition, numerous Order Entry Retailers used press 1

prerecorded telemarketing calls, which obscured the fact that they

were engaging in illegal outbound telemarketing.  Under this

system, the prerecorded message on the outbound call invites the

consumer to press the number 1 on the phone key pad to speak to

a telemarketer.  The telemarketer receives what appears to be an

inbound call from the recipient who pressed 1.  See Findings and

Conclusions, at 84-85.   The Court wants to make sure that the

Injunction Order covers this type of activity.  The Court, therefore,

intended that the term "telemarketing" cover all inbound and

outbound telemarketing.

   3. "Primary Retailer" Definition

Dish asks the Court to clarify or modify the definition of

"Primary Retailer."  Injunction Order, Definition 17 at 7.  The Court

denies this request.  The term is accurate as written.  The term

covers the major entities engaged in telemarketing except National Accounts. The Court defined the term to include major retailers that engaged in telemarketing. The Court did not use Dish's current categories of telemarketers because those categories could change over time. The evidence at trial showed that retailers that made 150 activations per month engaged in telemarketing. See Findings and Conclusions, at 76. The Court, therefore, defined the term to cover all significant retailers that the evidence showed would engage in telemarketing.

Dish states that approximately 100 TVRO Retailers are included in the definition because they make 150 activations per month or 600 per year. The Court finds that inclusion of those retailers is an appropriate prophylactic measure to ensure that all major retailers engaged in telemarketing will comply with the applicable requirements of the Injunction Order.

The Court included within the term "Primary Retailer" Authorized Telemarketers and Retailers that used Automatic Telephone Dialing Systems because the evidence showed that Retailers used those systems to initiate massive numbers of illegal prerecorded calls. See e.g., Findings and Conclusions, at 124.

Entities that use these systems also need to be subject to the prophylactic provisions of the Injunction Order that address Primary Retailers. The Court notes that this latter portion of the definition should not affect TVRO Retailers. Van Emst states that Dish does not authorize TVRO Retailers to use Automatic Telephone Dialing Systems. See Motion 808, Exhibit C, Van Emst Declaration ¶ 9.

 4. Demonstration Requirements

 Dish asks the Court to clarify that Dish must demonstrate that Primary Retailers comply with the Safe Harbor Provisions in their telemarketing of Dish Network goods or services in order to prove the Demonstration Requirements. The Court intended the Demonstration Requirements to relate to Primary Retailers' telemarketing of Dish Network goods or services rather than telemarketing of other goods. The Court will clarify this provision.

 The Court, however, intended to cover all telemarketing by Dish. The Court is concerned that Dish may start telemarketing other products or services that Dish's parent Dish Network Corporation (Dish Corp.) may offer for sale now or in the future. See T 621: 1440-42 (DeFranco) (discussing Sling TV). Dish Corp.

has also invested billions of dollars in broadband spectrum. Dish Corp. will certainly develop products and services that use this broadband spectrum. See T 621: 1532-35 (DeFranco); see also Findings and Conclusions, at 438. The Injunction Order may fail to reach Dish's telemarketing of these other products if Dish only has to prove the Demonstration Requirements for Dish Network goods or services. Dish must show that all of its telemarketing meets the Demonstration Requirements.

    5. "Retailer" Definition

Dish asks the Court to clarify the definition of "Retailer" in several respects. Injunction Order, Definition 19 at 7-8. Dish asks the Court to clarify that the definition only applies to telemarketing Dish Network goods or services. The Court intended the definition to apply to marketing of Dish Network goods or services rather than marketing of some other product. The Court will make that clarification in the last phrase of the definition.

Dish asks the Court to limit the definition to outbound telemarketing. The Court will not limit the definition to outbound telemarketing for the reasons set forth above.

Dish also asks the Court to include only retailers authorized by Dish to sell Dish Network goods and services. The Court will allow this request in part. The Court included retailers that Dish did not directly authorize to sell Dish Network goods or services because the evidence showed that third party entities often sold Dish services and programming indirectly through authorized retailers. For example, third parties marketed Dish services and programming through Order Entry Retailer Dish Nation's affiliate program or under Dish Nation's umbrella. <u>See</u> <u>Findings and Conclusions</u>, at 131, 144. Order Entry Retailers also used third parties to make illegal calls on their behalf. <u>See</u> <u>Findings and Conclusions</u>, at 112, 121-27 (discussing Dish TV Now and Star Satellite's use of Guardian to make prerecorded calls.) The Court intended the Injunction Order to cover the activities of these entities. The last sentence of the definition of Retailer, however, covers a "third-party affiliate . . . used by a Retailer to engage in, or provide any assistance in marketing" Dish Network goods or services. <u>Injunction Order</u>, Definition 19 at 8. Dish had no objection to this language in the definition. This last sentence covers the situations that concerned the Court. The Court will limit

the first sentence of the definition to Retailers authorized by Dish and will broaden the last sentence slightly to include third parties "allowed" by Dish to engage in or provide assistance in marketing Dish Network goods or services.

Dish also asks the Court to exclude from the definition marketing activity to businesses. The Court will make this change. The Court only intended to cover marketing to consumers. The Plaintiffs complain that Injunction Order should cover telemarketing to a consumer at his or her place of employment or business. The Court agrees. See Opinion entered December 11, 2014, (d/e 444), at 53 (citing FTC v. Publishers Business Services, Inc., 821 F.Supp.2d 1205, 1221 (D. Nev. 2010)). The Court will exclude from the definition of "telemarketing" activity that meets the business exclusion provision in the TSR. 16 C.F.R. § 310.6(b)(7); see Opinion 445, at 18-19. That will ensure that the Injunction Order still covers telemarketing calls to consumers at work.

6. Injunction Order Sections IV, and VII.E

Dish asks the Court to clarify or modify these provisions of the Injunction Order. Injunction Order § IV at 17 and 23; and § VII,

at 28.[1]  The Court denies the request.  The terms are accurate and do not need modification or clarification.  The provisions impose on Dish an obligation to cause parties telemarketing Dish goods or services to comply with the TSR, TCPA, and Relevant State Statutes and imposes liability for failure to do so.  Under the TSR, Dish's liability for causing illegal telemarketing can extend to such third party retailers.  See Findings and Conclusions, at 327; Opinion entered December November 2, 2009 (d/e 20), at 13-15.  The provisions are appropriate prophylactic measures to ensure compliance to all telemarketing within the scope of the TSR as well as the TCPA and the Relevant State Statutes.  Sections IV and VII need no clarification or modification.

7.  "National Accounts" Definition

Dish asks the Court to clarify or modify the definition of National Accounts to include local exchange carriers, competitive local exchange carriers, or other types of telecommunications carriers.  Injunction Order, Definition 10 at 6.  The evidence at trial supports this modification.  The evidence showed that Dish's

---

[1] Dish denominates the concluding paragraph of § IV as §IV.F and the concluding paragraph of § VII as § VII.E.  The concluding paragraphs are not so denominated in the text of the Injunction Order.  The concluding paragraphs apply to all portions of the respective sections.

marketing consisted of a "direct channel" and an "indirect channel." The direct channel was Dish's internal marketing and Telemarketing Vendors. The indirect channel consisted of TVRO Retailers, Order Entry Retailers, and National Accounts. The National Accounts were major retailers, such as Radio Shack and Sears, and telecommunication companies such as AT&T. <u>See</u> <u>Findings and Conclusions</u>, at 64, 74. The evidence at trial showed that the telecommunication companies in the National Accounts also included other telephone companies. <u>See</u> <u>T 625: 2113, 2115 (Neylon)</u>; <u>T 626: 2287-88 (Ahmed)</u>. The current definition does not cover these other telephone companies. The Court will modify the definition to exclude from the definition the following entities: incumbent local exchange carriers as defined in 47 C.F.R. § 51.5, competitive local exchange carriers as defined in 47 C.F.R. § 51.903, and other telecommunications carriers as defined in 47 C.F.R. § 51.5.

The Plaintiffs argue that this clarification could swallow the rule because so many telecommunications carriers exist. The Court disagrees. The Plaintiffs presented no evidence that the telecommunications companies in Dish's indirect marketing

channel engaged in illegal outbound telemarketing.  The Court intended to exclude the telecommunications companies in the indirect channel from the scope of the Injunction Order.  The clarification will achieve this purpose.

Dish also asks the Court to modify the definition of National Accounts to include businesses that have ten or more retail stores in ten or more different states or territories.  The definition currently does not mention territories.  The Court will make this clarification.

8.  <u>"Internal Do Not Call List" Definition</u>

Dish asks the Court to clarify or modify the definition of Internal Do Not Call List to limit its coverage to Telemarketing Vendors and Primary Retailers.  <u>Injunction Order</u>, Definition 9 at 5. The Court denies the request.  The definition says that the Internal Do Not Call List includes the "telephone numbers of persons who have stated to Dish, an Authorized Telemarketer, or a Retailer that they do not wish to receive telemarketing calls for Dish Network goods and services."  <u>Id</u>.  The Internal Do Not Call List should include all entities with which Dish has an agency relationship with Dish to telemarket Dish services and programming.  <u>See</u> <u>Findings</u>

and Conclusions, at 288-92; Opinion 445, at 182-84.  Dish's failure to maintain a proper Internal Do Not Call List for all of its marketing agents resulted in millions of illegal calls to consumers. Dish authorized the Authorized Telemarketers to use telemarketing to sell Dish services and programming.  The inclusion of Authorized Telemarketers in this definition is an appropriate prophylactic measure to ensure that Dish will honor all do-not-call requests made to all of its marketing agents.

The term Retailers, as modified above, now covers entities that Dish authorized to engage in marketing Dish Network goods or services.  Under the circumstances of this case, The Court finds as an appropriate prophylactic measure that Dish should not call consumers who have told Dish's Retailers that they do not want to be bothered by Dish telemarketing.  The Court notes that Dish witnesses stated that Dish did not want to call people who made do-not-call requests in any event.  See T 629: 3224 (Montano).  The inclusion of Retailers in the provision of the Injunction Order, therefore, should not interfere significantly with Dish's marketing, but should provide significant protections to consumers who do not want calls telemarketing Dish Network goods or services.

9.  <u>Compliance Material Retention</u>

Section III of the Injunction Order requires Dish to retain certain compliance materials and transmit them to Plaintiffs semiannually.  <u>Injunction Order</u>, § III, at 13-16.  The Court intended this provision to apply to Dish's internal compliance materials.  Dish asks the Court to make that clear.  The Court agrees.  Section III will be modified to clarify that the materials referenced are Dish's internal compliance materials.  The Plaintiffs argue that Dish should be required to maintain compliance material on all telemarketing by all Retailers.  The Court agrees with Dish that such a requirement would be unnecessarily burdensome on thousands of TVRO Retailers.

Dish asks that the material retention provision be limited to Dish's telemarketing of Dish Network goods or services.  The Court denies this request.  As discussed above, the Injunction Order covers all of Dish's telemarketing, not just telemarketing of Dish goods or services.

Dish asks the Court to clarify § III to state that Dish must only provide the Plaintiffs with unprivileged documents.  The Plaintiffs agree that Dish may withhold privileged documents, but Plaintiffs

oppose any clarification of the Injunction Order on this point.  <u>See</u>

<u>Plaintiffs' Opposition to Dish's Motion to Clarify, Alter and Amend</u>

<u>the Order for Permanent Injunction (d/e 808) (d/e 815) (Plaintiffs'</u>

<u>Response)</u>, at 17.  The Court will clarify § III by stating that Dish

must retain all the documents currently identified in § III, Dish may

withhold privileged documents from the regular document

productions called for in § III, but Dish must accompany each

production with a privilege log of all withheld documents.  The

privilege log must meet the requirements of Federal Rule of Civil

Procedure 26(b)(5).  Dish and the Plaintiffs must meet to resolve any

dispute regarding the validity of the privilege claims.  The Plaintiffs

may ask the Court to compel production of the withheld documents

in accordance with the procedures for compelling discovery in

Federal Rule of Civil Procedure 37(a) if the parties are unable to

resolve the dispute claims of privilege by themselves.

Dish also asks the Court to delete § III.A.5.  This provision

requires Dish to retain "Any other relevant telemarketing-

compliance related information."  Dish argues that the phrase is

vague for an injunction term.  The Court agrees.  The Court will

modify § III.A.4 to include "documents" in the list of materials discussing telemarketing compliance that must be retained.

    10.  <u>Compliance Reports</u>

Section X of the Injunction Order requires Dish to create records for 20 years after the Effective Date. Injunction Order, § X at 34-35. Dish asks for several clarifications or modifications to this section. Dish asks that the Court clarify that Dish must create these records from its own internal records. The Court intended § X to be limited to Dish's internal records. The Court will clarify § X to state this more clearly.

Dish asks that the requirement to collect information on complaints and refund requests be limited to those related to telemarketing. Section X states in the opening paragraph that all of the records created pursuant to § X are limited to matters that are "in connection with telemarketing." Thus, the provision is limited to telemarketing related complaints and requests for refunds. No additional clarification is necessary.

Dish asks that the Court clarify that the telemarketing records to be retained are outbound telemarketing records only. The Court

denies this request. As explained above, the Injunction Order covers inbound and outbound telemarketing.

Dish asks to limit the reports under § X to telemarketing of Dish Network goods or services. The Court denies this request. The reports under § X cover all of Dish's telemarketing, not just telemarketing of Dish Network goods or services.

Dish asks the Court to delete the word "previously" from § X.G. Subsection X.G requires Dish to keep the following records:

> G. Requests from persons who have previously stated that he or she does not wish to receive an outbound telemarketing call made to promote Dish Network goods or services or made by or on behalf of Dish Network.

Injunction Order, § X.G at 35. As written, the subsection is limited to records of requests from persons who made a previous do-not-call request. The Court intended to require retention of records of all do-not-call requests, not just persons who made two or more requests. The Court will delete the word "previously" from § X.G of the Injunction Order.

11. Telemarketing Compliance Plan

The Injunction Order directs Dish to retain a telemarketing compliance expert to develop a telemarketing compliance plan for

Dish and the Primary Retailers.  <u>Injunction Order</u>, § II at 12-13.

Dish asks the Court to clarify that the plan will only cover the marketing of Dish services and programming.  Dish notes that some Primary Retailers market other products.  The Court agrees that the telemarketing compliance plan with respect to Primary Retailers will be limited to marketing Dish Network goods or services.  The compliance plan will cover all of Dish's telemarketing for the reasons discussed above.  The Court will clarify this provision of the Injunction Order.

The Injunction Order also directs the telemarketing compliance expert to develop a plan to ensure continued compliance with the telemarketing laws generally.  Dish asks the Court to clarify that the term telemarketing laws means the TSR, the TCPA, and the Relevant State Statutes.  The Court agrees that such a revision will provide greater clarity and guidance to the parties.  The Court will make this revision.

12.  <u>Modification of term "Telephone Call"</u>

Several provisions in the Injunction Order use the term "telephone call" rather than telemarketing call.  The language tracks language in the TSR.  The TSR, however, defines the term

"telephone call" to mean "a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution." 16 C.F.R. § 310.2(x). The Plaintiffs have no objection including the TSR definition of the term "telephone call" in the Injunction Order. <u>Plaintiffs' Response</u>, at 11 n.2. The Court will add the TSR definition of "telephone call" to the Injunction Order to clarify this aspect of the Injunction Order.

13. <u>TCPA Safe Harbor Reference</u>

Dish states that the definition of the Safe Harbor Provisions contains a typographical error in the citation to the FCC Rule provision. <u>Injunction Order</u>, Definition 20 at <u>8</u>. The Court made an error, but not the error suggested by Dish. The Court correctly cited the applicable FCC safe harbor provision, 47 C.F.R. § 64.1200(c)(2)(i), but inadvertently included a double section sign "§§". The Court will correct the typographical error. Dish suggested that the Court intended to include the additional subparagraph § 64.1200(c)(2)(ii). The additional provision relates to a prior written agreement with a customer granting permission to call for purposes of telemarketing. The Court did not intend to include that provision. The Court intended to include in the Injunction Order

the safe harbor provisions that set forth policies, procedures, and practices designed to avoid making illegal telephone calls. Section 64.1200 (c)(2)(i) contains the provisions that the Court intended to include in the Injunction Order. The Court will correct the typographical error.

14. Illinois Automatic Telephone Dialers Act

Dish suggests that the Court inadvertently omitted from the definition of "Relevant State Statutes" the Illinois Automatic Telephone Dialers Act, 815 ILCS 305/1 et seq. Injunction Order, Definition 18, at 7. The omission was not inadvertent. Illinois failed to prove a violation of the Illinois Automatic Telephone Dialers Act. See Findings and Conclusions, at 401-03. The Court, therefore, did not grant injunctive relief under that Illinois statute.

15. Outside Counsel

Dish asks the Court to clarify or modify the Injunction Order to indicate clearly that the reference to attorneys in the definition of Defendant Dish does not include outside counsel. Injunction Order, Definition 5, at 4. The definition states that references to Dish includes Dish's "subsidiaries, officers, agents, servants, employees, and attorneys." The Court intended to include in-house

counsel in the definition of Dish, not all outside counsel. The Plaintiffs argue that Dish's outside counsel should be aware of the Injunction Order and its terms. The Court agrees, but that purpose can be achieved by amending § XI.B of the Injunction Order to require delivery of the Injunction Order to all of Dish's outside attorneys. The Court will clarify and modify the Definition of Dish and § XI.B accordingly.

16. <u>Notice to Non-Complying Primary Retailers</u>

Dish asks for clarification of the notice provision in § V.A of the Injunction Order. The introductory statement of § V.A provides:

> A. If a Plaintiff notifies Dish, or if Defendant Dish otherwise knows or should know, that a Primary Retailer is not complying with the Safe Harbor Provisions, then within two (2) days of receipt of a Plaintiff's notice or of otherwise learning of the noncompliance, Dish shall: . . . .

<u>Injunction Order</u>, § V.A at 23. Dish asks that the notice time be two business days. The Plaintiffs argue that modification of the Injunction Order is not necessary because two days in a federal court order means two business days. Fed. R. Civ. P. 6(a). The Plaintiffs are incorrect. The Federal Rules only exclude Saturdays, Sundays, and holidays if those days are the last days of the time periods. Fed. R. Civ. P. 6(a)(1)(C). Counting only business days

would also exclude those days even if they were intermediate days in the time period. The Court used two business days in § I of the Injunction Order. Injunction Order, § I at 11. For consistency, the Court will clarify this provision to state two business days for consistency.

Dish also asks the Court to modify § V.A.1. This provision states that Dish must notify a Primary Retailer that it is not complying with the Safe Harbor Provisions. Dish asks the Court to clarify the provision to state that the notice states that Dish or the Plaintiffs believe the Primary Retailer is not complying with the Safe Harbor Provisions. The Plaintiffs object to the term "believe" as being too subjective. The Court sees no reason to change the language of this provision. The language is clear as stated. The word "believe" does not add anything to the substance of the notice.

III.    Request for Extension of Time

The Injunction Order required Dish to prove the Demonstration Requirements to the Plaintiffs to the Plaintiffs' satisfaction within 90 days of the Effective Date. Injunction Order, § I at 11. Dish asks for 30 additional days to prove the

Demonstration Requirements for the Primary Retailers.[2]  The

Plaintiffs argue that Dish has had plenty of time to collect this

information.  The Court will allow the extension.  The Primary

Retailers include approximately 100 TVRO Retailers.  Collecting

information from them may reasonably require additional time.  The

Court, however, will extend the time for Dish to prove all of the

Demonstration Requirements to the Plaintiffs.  The Plaintiffs' duty

to notify the Court and Dish's right to ask for a hearing is triggered

if Dish fails to prove the Demonstration Requirements to the

Plaintiffs to the Plaintiffs' satisfaction within the time set by the

Injunction Order.  The Court designed the Injunction Order to have

one triggering event, not two.  The Court, therefore, will extend the

time to prove all of the Demonstration Requirements to the

Plaintiffs.

**THEREFORE, Defendant Dish Network LLC's (Dish) Motion
to Clarify, Alter and Amend the Order for Permanent Injunction
(d/e 798) ("Injunction Order") (d/e 808) is ALLOWED in part
and DENIED in part.  The Court will enter an amended**

---

[2] Requests for extension of time may be made in Rule 59 motions.  See U.S. E.E.O.C. v. Gurnee Inns, Inc., 956 F.2d 146, 148 (7th Cir. 1992).

Injunction Order consistent with this Opinion.  The Clerk will enter an amended judgment under Federal Rule of Civil Procedure 58.

ENTER:   August 10, 2017


                                     _____s/ Sue E. Myerscough_____
                                     UNITED STATES DISTRICT JUDGE